# **<u>EXHIBIT A</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

|  |  |
|---|---|
| *In re: Shale Oil Antitrust Litigation* | Case No. 1:24-md-03119-MLG-LF |
| | Judge Matthew L. Garcia |
| This Document Relates to: | Magistrate Judge Laura Fashing |
| ALL ACTIONS | |

**PLAINTIFFS' FIRST SET OF REQUESTS TO PIONEER NATURAL
RESOURCES COMPANY FOR THE PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, all Plaintiffs, on behalf of themselves and all others similarly situated, and by and through counsel, hereby request that Pioneer Natural Resources Company ("Pioneer") respond to this First Set of Requests for Production of Documents and Electronically Stored Information and produce the documents and electronically stored information requested herein no later than 30 days after receipt, by secure electronic file transfer, or by such other mutually agreeable means of transfer or delivery, in accordance with the ESI Protocol, to be agreed by the Parties or entered by the Court. Corrections to, and supplemental responses of, the production of documents and electronically stored information are required as provided for in the Federal Rules of Civil Procedure.

## DEFINITIONS

1.    The definitions and rules of construction set forth in Federal Rule of Civil Procedure 34 are hereby incorporated and shall apply to Plaintiffs' First Set of Requests to

Pioneer for the Production of Documents and Electronically Stored Information ("Requests").

2.    "Communications" includes every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, electronically, by document, telecopier, mail, personal delivery, text message, third-party messaging application, or otherwise.

3.    "Complaint" refers to *Cavaliere v. Permian Resources Corp., et al.*, 1:24-cv-01128, (D.N.M. November 4, 2024), ECF No. 1.

4.    "Custodial Files" means all previously produced Documents or Communications that were created, sent, received, saved, stored, or otherwise possessed by an individual and could have been collected from that individual, even if the Document or Communication was not collected specifically from that individual.

5.    "Defendant" means any company, organization, entity, or person presently or subsequently named as a Defendant in this litigation including its predecessors, wholly owned or controlled subsidiaries or affiliates, successors, parents, owners, other subsidiaries, departments, divisions, joint ventures, other affiliates and any organization or entity managed or controlled by a named Defendant, including those merged with or acquired, together with all present and former directors, officers, Employees, agents, attorneys, representatives or any person acting or purporting to act on behalf of a Defendant.

6.    "Document" shall have the same meaning as used in Rule 34 of the Federal Rules of Civil Procedure, and includes without limitation, the original and all non-identical copies of writings, including without limitation, handwritten, typed, printed or

electronically stored electronic material.  Each and every draft of a Document is a separate Document for purposes of these Requests.

7.      "Document Custodian" refers to any of Your Employees and/or representatives who the parties agree, or the Court orders, must have Documents in Your, the Employee's, and/or representative's possession, custody, or control, from whom the Documents shall be collected and produced in a manner consistent with the ESI Protocol, to be agreed by the parties or entered by the Court.

8.      "Employee" means, without limitation, current and former officers, directors, executives, managers, sales personnel, secretaries, clerical staff, messengers, or any other person paid directly or indirectly by You, whether on a regular, contract, or any other basis, during the Relevant Time Period.

9.      "ESI" or "electronically stored information" means information that is stored electronically, regardless of media or whether it is in the original format in which it was created.

10.     "ESI Protocol" means the ESI Protocol that will be agreed upon by the parties or entered by the Court, as amended or supplemented from time to time.

11.     "FTC" means the United States Federal Trade Commission.

12.     "FTC Investigations" means any inquiry or investigation by the FTC from January 2021 to the present, that concerns anticompetitive conduct in the oil industry or potential anticompetitive effects of a merger or acquisition, including:

        i.      In the matter of Exxon Mobil Corporation, FTC File No. 241 0004;

    ii.     In the matter of Chevron Corporation and Hess Corporation, FTC File No. 241 0008;

    iii.    The FTC's inquiry into and requests for information concerning Occidental Petroleum's acquisition of CrownRock LP;

    iv.    The FTC's inquiry into and requests for information concerning the merger between Diamondback Energy and Endeavor Energy;

    v.    The FTC's inquiry into and requests for information concerning ConocoPhillips' acquisition of Marathon Oil;

    vi.    The FTC's inquiry into and requests for information concerning the merger between Chesapeake Energy and Southwestern Energy; and

    vii.    The FTC's inquiry into and requests for information concerning the merger between Centennial Resource Development and Colgate Energy.

13.    "OPEC" means the Organization of the Petroleum Exporting Countries.

14.    "Person" means, without limitation, any natural person, corporation, partnership, limited liability company, proprietorship, joint venture, association, government entity, group, or other form of legal entity.

15.    "Protective Order" means the Protective Order that will be agreed upon by the parties or entered by the Court in this matter, as amended or supplemented from time to time.

16.    "You" or "Your" means Pioneer and any of its officers, directors, Employees, partners, parents, subsidiaries, affiliates, divisions, predecessors, successors, representatives, agents, attorneys, and assigns, and also includes any other entities or individuals acting or purporting to act on their behalf or at their direction.

17.    The following additional definitions and rules of construction shall apply:

A.    The singular form of a word includes the plural and vice versa;

B.    The present tense shall be construed to include the past tense and vice versa;

C.    "And" and "or" shall be construed either disjunctively or conjunctively, whichever is appropriate to have the broadest reach;

D.    "Any" means one or more, "Each" means each and every, and "All" means all and any;

E.    "Concerning" means relating to, referring to, describing, evidencing or constituting;

F.    "Including" means including but not limited to and including without limitation;

G.    "Person" shall be interpreted in the broadest sense, and shall include any natural person or any business, legal, governmental, or nongovernmental entity, association, or organization;

H.    The masculine, feminine, or neuter pronoun(s) shall not exclude other genders; and

I.    References to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents.

The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of Plaintiffs that such definition is accurate, meaningful, or appropriate for any other purpose in this action.

## **INSTRUCTIONS**

1.    These instructions hereby incorporate the Protective Order and ESI Protocol, which have yet to be filed but whose terms shall prevail in the event of a conflict between those orders and these Instructions.

2.    These Requests are deemed to be continuing in accordance with Federal Rule of Civil Procedure 26(e).  You shall supplement Your responses within a reasonable time if You obtain or become aware of any further Documents responsive to these Requests.

3.    Unless otherwise indicated, the Documents requested include all Documents and data in Your possession, custody, or control.  Without limitation of the terms "possession, custody, or control," as used in the preceding sentence, a Document is in Your possession, custody, or control if You have actual possession or custody or the right or practical ability to obtain the Document or a copy thereof upon demand from one or more of Your representatives, advisors, attorneys, or any other person or public or private entity that has actual physical possession thereof.

4.    As the term "possession" relates to e-mail, the term includes, but is not limited to, email contained in Your electronic e-mail directories, including but not limited to: (a) "deleted" emails which have not been permanently deleted, including all

subdirectories irrespective of the title of such subdirectories; (b) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

5.      With respect to the Documents produced, You shall produce them as they are kept in the usual course of business, including producing any tabs, labels, or directories of files identifying the Documents.

6.      You must produce entire Documents including attachments, enclosures, cover letters, memoranda, and appendices.  Documents not otherwise responsive to the Requests are to be produced if such Documents are attached to, or enclosed with, any Document that is responsive.  Examples of such Documents include email attachments, routing slips, hyper-links to internal shared folders or files, transmittal memoranda or letters, comments, evaluations, or similar Documents.  In the case of email attachments or embedded hyperlinks, if either the email or any of its attachments or embedded hyperlinks are responsive, produce the email and all of the corresponding attachments or hyperlinks. Documents attached to each other shall not be separated.

7.      A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

8.      The term "original" includes the file copy or copies of any Document if there is no actual original copy.

9.      All Documents shall be produced in their native format where available.

10.     All data is to be produced in a spreadsheet or nonproprietary database format. For data in trading systems or other proprietary databases, You should identify the system used to create, store, and/or maintain that data.  The data can be exported to a spreadsheet or delimited text files, using pipe ("|") delimiters, in a manner that preserves the precision of and relationships among the original data, and with a schema description containing column names and data types/sizes.

11.     All data is to be accompanied by documentation sufficient to understand the meaning of all fields in the data provided and the methods, models, and data used in their calculation.

12.     Pursuant to Federal Rule of Civil Procedure 26(b)(5), if any Document responsive to a Request below is withheld from production on the basis of any claim of privilege, You shall submit, in lieu of any such Document, a privilege log in accordance with the eventual Protective Order.

13.     Pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), if You object to any individual Request, You must state whether any responsive materials are being withheld on the basis of that objection, and You must specify the part of the Request to which You are objecting and produce all materials that are responsive to the remainder of the Request.

14.     In the event that You object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in Your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which You have narrowed that Request for purposes of Your response and the factual basis for Your conclusion.  When a Document or ESI contains

both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document or ESI, you must clearly indicate the portions as to which the privilege is claimed. When a Document or ESI has been redacted, identify as to each such Document or ESI the reason for the redaction. Any redaction must be clearly indicated on the face of the redacted Document or ESI.

15. In the event that any Document responsive to any Request once was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document as completely as possible, including without limitation, the following information:

     A.   the nature of the Document;

     B.   the person who prepared or authorized the Document and, if applicable, the person to whom the Document was sent; the date on which the Document was prepared or transmitted; and

     C.   if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

16. Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request.

17.     Each Document is to be produced along with all drafts, without abbreviation or redaction.

18.     If no Documents are responsive to a particular Request, You are to state that no responsive Documents exist.  If You object to the scope or breadth of any of these Requests, You should identify, to the extent possible, those Documents that You will produce notwithstanding the objection.

19.     Unless a specific Request indicates otherwise, each Request calls for production of Documents and data dated, prepared, or received during, or otherwise related to, the period from January 1, 2016, through the date of your response (the "Relevant Time Period").  However, if a Document prepared before January 1, 2016, is necessary for a correct and/or complete understanding of any Document covered by the Request, such earlier Document shall be produced.  If any Document is undated, or the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.  Plaintiffs will meet and confer with You regarding the appropriate custodians whose email accounts and other Documents should be searched in responding to these Requests and whether any search terms or other culling parameters are appropriate.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All Documents and Communications cited in the complaint published by the FTC on May 2, 2024, in the Matter of Exxon Mobil Corporation, FTC File No. 241 0004.

**REQUEST NO. 2:**

All Documents and Communications produced to the FTC from the Custodial Files of Scott Sheffield in any of the FTC Investigations.

**REQUEST NO. 3:**

All Documents and Communications produced to the FTC from the Custodial Files of Timothy Dove in any of the FTC Investigations.

**REQUEST NO. 4:**

All Documents and Communications You produced to the United States House of Representatives Energy & Commerce Committee or any individual known by You to be acting on behalf of the United States House of Representatives Energy & Commerce Committee in response to the May 21, 2024, letter requesting documents concerning Your communications with OPEC and competitors regarding, *inter alia*, oil production output, crude oil prices, and the relationship between the production and pricing of oil products. The May 21, 2024, letter is attached as Exhibit A.

**REQUEST NO. 5:**

All Documents and Communications produced to any government or regulatory body that concern or relate to the allegations, descriptions, information, and conduct described in the Complaint.

Dated November 18, 2024

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
*/s/Patrick McGahan*
Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Karin E. Garvey (*pro hac vice*)
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
Isabella De Lisi (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com
idelisi@scott-scott.com

**THE WARD LAW FIRM**
Vincent J. Ward
PO Box 7940
Albuquerque, NM 87194
Tel: (505) 944-9454
vincent@wardlawnm.com

*Counsel for Plaintiffs Daniel Rosenbaum, Reneldo Rodriguez, and Thomas Caron*

**BURNS CHAREST LLP**
Warren T. Burns (*pro hac vice* forthcoming)
Daniel H. Charest (*pro hac vice* forthcoming)
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com

**BURNS CHAREST LLP**
Korey Nelson (*pro hac vice* forthcoming)
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Tel: (504) 799-7845
knelson@burnscharest.com

**SHARP LAW LLP**
Rex A. Sharp (*pro hac vice* forthcoming)
Isaac L. Diel (*pro hac vice* forthcoming)
W. Greg Wright (*pro hac vice* forthcoming)
Brandon C. Landt (*pro hac vice* forthcoming)
Hammons P. Hepner (*pro hac vice* forthcoming)
4820 W. 75th Street
Prairie Village, KS 66208
Tel: (913) 901-0505
rsharp@midwest-law.com
idiel@midwest-law.com
gwright@midwest-law.com
blandt@midwest-law.com
hhepner@midwest-law.com

**STEVEN WILLIAMS LAW, P.C.**
Steven N. Williams (*pro hac vice* forthcoming)
Gerald S. Williams (*pro hac vice* forthcoming)
Kai'Ree K. Howard (*pro hac vice* forthcoming)
201 Spear Street, Suite 1100
San Francisco, California 94105
Tel: 415-697-1509
swilliams@stevenwilliamslaw.com
gwilliams@stevenwilliamslaw.com
khoward@stevenwilliamslaw.com

*Counsel for Plaintiffs Matthew Foos, Andrew Hund, Michael Ackerman, Jarrod Johnson, Mackey and Sons Inc., Castillo Construction and Management LLC, John Castillo, Southwest Elite Real Estate Inc., and David Overstreet*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Brent W. Johnson (*pro hac vice*)
Benjamin Brown (*pro hac vice*)
Robert W. Cobbs (*pro hac vice*)
Nina Jaffe-Geffner (*pro hac vice*)
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel: (202) 408-4600
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
rcobbs@cohenmilstein.com
njaffegeffner@cohenmilstein.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michael Eisenkraft (*pro hac vice*)
Christopher Bateman (*pro hac vice*)
Aaron Marks (*pro hac vice*)
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 883-7797
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com
amarks@cohenmilstein.com

*Counsel for Plaintiffs Western Cab Company, Andrew Caplen Installations LLC, and Edward Allegretti, d/b/a Alfred Auto Center*

**LOCKRIDGE GRINDAL NAUEN PLLP**
Brian D. Clark (*pro hac vice*)
Rebecca A. Peterson (*pro hac vice*)
Arielle S. Wagner (*pro hac vice*)
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
bdclark@locklaw.com
rapeterson@locklaw.com
aswagner@locklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Stephen J. Teti (*pro hac vice*)
265 Franklin St., Suite 1702
Boston, MA 02110
Tel: (617) 456-7701
sjteti@locklaw.com

*Counsel for Plaintiff These Paws Were Made For Walkin' LLC*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
Jennifer Sprengel (*pro hac vice*)

**DODD LAW OFFICE, LLC**
Christopher A. Dodd
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

*Local Counsel for Plaintiffs Matthew Foos, Andrew Hund, Michael Ackerman, Jarrod Johnson, Mackey and Sons Inc., Castillo Construction and Management LLC, John Castillo, Southwest Elite Real Estate Inc., and David Overstreet*

**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan (*pro hac vice*)
Douglas A. Millen (*pro hac vice*)
Robert J. Wozniak (*pro hac vice* forthcoming)
100 Tri-State International, Suite 128
Lincolnshire, Illinois 60069
Tel: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

**FREED KANNER LONDON & MILLEN LLC**
Kimberly A. Justice (*pro hac vice* forthcoming)
Jonathan M. Jager (*pro hac vice* forthcoming)
923 Fayette Street
Conshohocken, Pennsylvania 19428
Tel: (610) 234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

*Counsel for Plaintiffs Brian Courtmanche, Laura J. Faber, Patricia Mancieri, David Silver, and Josselyn's Getaway Log Cabins LLC*

**GROSS KLEIN PC**
Stuart G. Gross (*pro hac vice*)
Travis H. Smith (*pro hac vice*)
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Tel: (415) 671-4628
sgross@grosskleinlaw.com
tsmith@grosskleinlaw.com

**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**

Daniel O. Herrera (*pro hac vice*)
Kaitlin Naughton (*pro hac vice*)
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312.782.4880
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
knaughton@caffertyclobes.com

*Counsel for Plaintiff Laurie Olsen Santillo*

**PEARSON WARSHAW, LLP**
Daniel L. Warshaw (*pro hac vice*)
Bobby Pouya (*pro hac vice*)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Tel: (818) 788-8300
dwarshaw@pwfirm.com
bpouya@pwfirm.com

*Counsel for Plaintiff Richard Beaumont*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel: (312) 984-0000
malmstrom@whafh.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Thomas H. Burt (*pro hac vice* forthcoming)
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
burt@whafh.com

*Counsel for Plaintiffs Patrick Brown, Abraham
Drucker, Christopher Gallant, and Stephen
Price*

**LONG, KOMER & ASSOCIATES, P.A.**
Nancy R. Long
Jonas M. Nahoum
P.O. Box 5098
Santa Fe, NM 87502-5098
Tel: (505) 982-8405
nancy@longkomer.com
jonas@longkomer.com
email@longkomer.com

**GUSTAFSON GLUEK PLLC**

Todd M. Schneider (*pro hac vice* forthcoming)
Matthew S. Weiler (*pro hac vice* forthcoming)
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

*Counsel for Plaintiff John Mellor*

**SPECTOR ROSEMAN & KODROFF, P.C.**
William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
Diana J. Zinser (*pro hac vice*)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
bcaldes@srkattorneys.com
jspector@srkattorneys.com
dzinser@srkattorneys.com

**REINHARDT WENDORF &
BLANCHFIELD**
Garrett D. Blanchfield (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com

**MCLAFFERTY LAW FIRM, P.C.**
David P. McLafferty (*pro hac vice* forthcoming)
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 940-4000
dmclafferty@mclaffertylaw.com

*Counsel for Plaintiffs Barbara and Phillip
MacDowell*

**CUNEO GILBERT & LADUCA, LLP**
Christian E. Hudson (*pro hac vice* forthcoming)
Michael J. Flannery (*pro hac vice* forthcoming)
Charles J. LaDuca (*pro hac vice* forthcoming)
300 Cadman Plaza West
12th Floor, Ste. 12060
Brooklyn, N.Y. 11201

Daniel E. Gustafson (*pro hac vice* forthcoming)
Daniel C. Hedlund (*pro hac vice* forthcoming)
Michelle J. Looby (*pro hac vice* forthcoming)
Mary M. Nikolai (*pro hac vice* forthcoming)
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
mnikolai@gustafsongluek.com

**ZIMMERMAN REED, LLP**
David M. Cialkowski (*pro hac vice* forthcoming)
1100 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
Tel: (612) 341-0400
david.cialkowski@zimmreed.com

**TAUS, CEBULASH & LANDAU, LLC**
Brett Cebulash (*pro hac vice* forthcoming)
Kevin Landau (*pro hac vice* forthcoming)
123 Williams St., Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
bcebulash@tcllaw.com
klandau@tcllaw.com

*Counsel for Plaintiffs Michael Blackburn Strupp, Premium Solution, Inc., James Kinkead, John Smith, and Best Expedite, Inc.*

**DURHAM, PITTARD & SPALDING, L.L.P.**
Justin R. Kaufman
Rosalina B. Bienvenu
505 Cerrillos Rd Suite A209
Santa Fe, New Mexico 87501
Tel: (505) 986-0600
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com

**REINHARDT WENDORF & BLANCHFIELD**
Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (651) 287-2100

Tel: (202) 789-3960
christian@cuneolaw.com
mflannery@cuneolaw.com
charlesl@cuneolaw.com

**BARRETT LAW GROUP, P.A.**
Don Barrett (*pro hac vice* forthcoming)
Katherine Barrett Riley (*pro hac vice* forthcoming)
404 Court Square North
P.O. Box 927
Lexington, MS 39095
Tel: (662) 834-2488
dbarrett@barrettlawgroup.com
donbarrettpa@gmail.com
KBRiley@barrettlawgroup.com

*Counsel for Plaintiff Melvin Short*

**MURRAY, PLUMB & MURRAY**
Kelly W. McDonald (*pro hac vice* forthcoming)
Richard O'Meara (*pro hac vice* forthcoming)
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
Tel: (207) 773-5651
kmcdonald@mpmlaw.com
romeara@mpmlaw.com

*Counsel for Plaintiff Robert Carignan*

**PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP**
Gregory P. Hansel (*pro hac vice*)
Michael S. Smith (*pro hac vice*)
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Tel: (207) 791-3000
ghansel@preti.com
msmith@preti.com

**KOHN SWIFT & GRAF, P.C.**
Joseph C. Kohn (*pro hac vice*)
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700

g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

**THE VAN WINKLE LAW FIRM**
David M. Wilkerson (*pro hac vice*
forthcoming)
11 North Market Street
Ashville, NC 28801
Tel: (828) 258-2991
dwilkerson@vwlawfirm.com

*Counsel for Plaintiff Garvin Promotion Group,*
*LLC*

**BERGER MONTAGUE PC**
Michael Dell'Angelo (*pro hac vice*
forthcoming)
Candice Enders (*pro hac vice* forthcoming)
Najah Jacobs (*pro hac vice* forthcoming)
Hope Brinn (*pro hac vice* forthcoming)
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
cenders@bm.net
njacobs@bm.net
hbrinn@bm.net

**BERGER MONTAGUE PC**
Richard D. Schwartz (*pro hac vice*
forthcoming)
1720 W. Division
Chicago IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

**FARRA & WANG PLLC**
Adam Farra (*pro hac vice* forthcoming)
Times Wang (*pro hac vice* forthcoming)
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
Tel: (202) 505-5900
afarra@farrawang.com
twang@farrawang.com

**BALTIMORE CITY LAW DEPARTMENT**
Sara Gross
Chief, Affirmative Litigation Division
100 N. Holliday Street, Suite 109
Baltimore, MD 21202
Tel: (410) 396-3947
sara.gross@baltimorecity.gov

jkohn@kohnswift.com

**KENNEDY HERNANDEZ & HARRISON,
PC**
Paul J. Kennedy
Jessica M. Hernandez
201 12th St. NW
Albuquerque, NM 87102-1815
Tel: (505) 842-8662
pkennedy@kennedyhernandez.com
jhernandez@kennedyhernandez.com

**LAPAYOWKER JET COUNSEL, P.A.**
Stewart H. Lapayowker (*pro hac vice*)
501 E. Las Olas Blvd., Suite 300
Fort Lauderdale, FL 33301
Tel: (954) 202-9600
Stewart@JetCounsel.Law

*Counsel for Plaintiff TBC Services, LLC*

**AHDOOT & WOLFSON, PC**
Tina Wolfson (*pro hac vice* forthcoming)
Theodore W. Maya (*pro hac vice* forthcoming)
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com

*Counsel for Plaintiff Gustave Link*

**COTCHETT, PITRE, & McCARTHY, LLP**
Karin B. Swope (*pro hac vice*)
Ellen Wen (*pro hac vice*)
999 Northlake Way, Suite 215
Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
ewen@cpmlegal.com

**COTCHETT, PITRE, & McCARTHY, LLP**
Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
Vasti S. Montiel (*pro hac vice*)
840 Malcolm Road

**NACHAWATI LAW GROUP**
Brian McMath (NM Bar #148105)
Brian Moore (NM Bar #146721)
Gale Pearson (*pro hac vice* forthcoming)
5489 Blair Road
Dallas, Texas 75231
Tel: (214) 890-0711
bmcmath@ntrial.com
bmoore@ntrial.com
gpearson@ntrial.com

*Counsel for the Mayor and City Council of Baltimore*

Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
vmoniel@cpmlegal.com

**COUNTY OF SAN MATEO**
John D. Nibbelin, County Counsel
David A. Silberman, Assistant County Counsel
Brian J. Wong, Legal Deputy County Counsel
500 County Center, 4th Floor
Redwood City CA 94063-1664
Tel: (650) 363-4749
jnibbelin@smcgov.org
dsiblerman@smcgov.org
bwong@smcgov.org

**CITY OF SAN JOSE**
Nora Frimann, City Attorney
Ardell Johnson, Assistant City Attorney
200 E. Santa Clara St.
San Jose CA, 95113-1905
Tel: (408) 535-1900
nora.frimann@sanjoseca.gov
ardell.johnson@sanjoseca.gov

*Counsel for San Mateo County and City of San Jose*

**LAW OFFICES OF MARY TORRES**
Mary T. Torres – NM Bar # 7279
201 Third Street NW, Suite 1950
Albuquerque, NM 87102
Tel: (505) 944-9030
mtt@marytorreslaw.com

*Local Counsel for San Mateo County and City of San Jose*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 18, 2024, a true and correct copy of the foregoing

PLAINTIFFS' FIRST SET OF REQUESTS TO PIONEER NATURAL RESOURCES

COMPANY FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY

STORED INFORMATION was served by email on Defendant Pioneer's counsel of record.


*/s/ Daniel J. Brockwell*
Daniel J. Brockwell

# EXHIBIT A

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States

## House of Representatives

### COMMITTEE ON ENERGY AND COMMERCE

2125 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6115

Majority  (202) 225-3641
Minority  (202) 225-2927

May 21, 2024

Darren W. Woods
Chairman and Chief Executive Officer
ExxonMobil Corporation
22777 Springwoods Village Parkway
Spring, TX 77389

Dear Mr. Woods:

I write to express my deep concern and to demand answers about how Exxon Mobil Corporation (Exxon) will ensure it complies with U.S. law in the wake of recent revelations from the Federal Trade Commission's (FTC) probe into the behavior of Scott Sheffield, the former CEO of Pioneer Natural Resources Company (Pioneer).

At a hearing last Congress, Committee Democrats raised concern that oil companies were artificially inflating gas prices to gouge consumers and produce record profits for shareholders. CEOs of the largest oil companies, including Pioneer and Exxon, assured us that they "do not set or have significant influence over" oil prices, and that prices are "dictated by a complex global commodity market."[1] However, the FTC's complaint details troubling actions by Mr. Sheffield, who allegedly attempted to illegally collude and coordinate crude oil production levels with Pioneer's competitors and representatives from the Organization of the Petroleum Exporting Countries (OPEC) and OPEC+.[2]

OPEC and OPEC+ are cartels in which many of the major oil producing nations of the world collude to artificially limit production and manipulate crude oil prices.  Traditionally, over the past few decades and until 2014, OPEC producers were regarded as the world's so-called "swing producers" and attempted to artificially and anti-competitively "manage" global crude oil

---

[1] House Committee on Energy and Commerce, *Hearing on Gouged at the Gas Station: Big Oil and America's Pain at the Pump*, 117th Cong. (Apr. 6, 2022).

[2] Federal Trade Commission, *In the Matter of Exxon Mobil Corporation* (https://www.ftc.gov/system/files/ftc_gov/pdf/2410004exxonpioneercomplaintredacted.pdf) (accessed May 20, 2024).

Mr. Darren W. Woods
May 21, 2024
Page 2

supply and prices to their benefit.[3]  OPEC has also shown a significant willingness to use its oil leverage for geopolitical reasons, such as when it caused the 1973 oil crisis.  OPEC's ability to manipulate global crude oil production remains a significant geopolitical challenge for the United States and our allies abroad.

However, starting in the 2010s, increasing U.S. crude oil production—driven by so-called "independent" producers that exploited unconventional oil reservoirs—limited OPEC's ability to manage global supply.  This limitation was imposed upon OPEC because U.S. producers, subject to antitrust and competition laws in the United States, refused to artificially limit supply.  Unable to combat the rising tide of American crude oil production, OPEC member countries banded together with other large oil producing nations, including Russia, to form OPEC+ in 2016, expanding their collusive practices to more countries.[4]

OPEC and OPEC+ have not been able to impose long-term devastating costs upon American consumers in recent years because oil producers here have become the crude oil market's "swing producers" and must adhere to the antitrust and competition laws of the United States.[5]  Without those protections, American consumers would be at the mercy of OPEC and OPEC+'s member nations, including Russia.

Unfortunately, Mr. Sheffield and Pioneer appear to have flouted those laws, as the FTC complaint notes that Mr. Sheffield "…has attempted to coordinate with producers and OPEC countries in an effort to cut production in the Permian basin" and communicated directly with high-ranking OPEC+ officials.[6]  Mr. Sheffield bragged publicly about his collusion, noting in 2023 that he "…followed OPEC closer than almost any CEO in the history of our industry."[7]

Even more troubling, Mr. Sheffield appears to have attempted to encourage *other* U.S. oil producers to follow his and Pioneer's lead in colluding with a cartel to drive up energy costs at Americans' expense.  Mr. Sheffield publicly threatened competitors, stating, "All the shareholders that I've talked to said that if anybody goes back to growth, they will punish those companies."[8]  When discussing efforts in 2020 to lobby the Texas Railroad Commission to impose mandatory production cuts in coordination with OPEC and OPEC+, Mr. Sheffield expressed the hope that, "If Texas leads the way, maybe we can get OPEC to cut production.  Maybe Saudi and Russia will follow… I was using the tactics of OPEC+ to get a bigger OPEC+ done."[9]

---

[3] Science Direct, *OPEC* (https://www.sciencedirect.com/topics/earth-and-planetary-sciences/opec) (accessed May 20, 2024).

[4] U.S. Energy Information Administration, *What is OPEC+ and How is it Different from OPEC?* (May 9, 2023) (https://www.eia.gov/todayinenergy/detail.php?id=56420).

[5] *Tellurian Chairman: The Permian Basin is the 'Swing Producer in the World'*, CNBC (July 11, 2019).

[6] See note 2.

[7] *Id*.

[8] *Id.*

[9] *Id.*

Mr. Darren W. Woods
May 21, 2024
Page 3

Concerningly, publicly available data seems to suggest that U.S. oil producers have not increased drilling activity despite high prices over the period that Mr. Sheffield was trying to influence his competitors. Since the Russian invasion of Ukraine created a global supply crunch, markers of increased domestic drilling—such as active rig counts—have remained far below their levels throughout most of the 2010s, despite the inventory of drilled-but-uncompleted (DUC) wells sinking to its lowest levels in a decade.[10, 11] Meanwhile, crude oil prices have soared as high as $120 per barrel.[12]

Mr. Sheffield's brazen statements and the allegations that he colluded with OPEC and OPEC+, including Russia, to manipulate global crude oil prices contributed to high gas prices at the pump—directly harming American consumers and allowing Pioneer to profit off of potentially egregious violations of U.S. laws.

While Pioneer is now fully owned by Exxon, and Mr. Sheffield has been barred from serving on Exxon's board as a condition of the acquisition, I am concerned that Mr. Sheffield's behavior may represent common practices across the industry, as reporting and the FTC complaint have suggested.[13, 14] Indeed, the FTC consent order approving Exxon's acquisition of Pioneer specifically prohibits any "Pioneer Representative" from serving on Exxon's board for five years.[15] Simply put, I am worried that Mr. Sheffield's actions, rather than being "entirely inconsistent with how we do business," as Exxon has claimed, are instead industry-standard practice—directly contradicting what the largest oil companies, including Pioneer and Exxon, testified to the Committee last Congress.[16, 17]

Furthermore, Mr. Sheffield's alleged actions may have contributed to a culture of corruption and collusion within Pioneer. Now that Exxon's acquisition of Pioneer has closed, and as Exxon works to integrate the former elements of Pioneer into its corporate structure, I am deeply concerned that the culture that allowed Mr. Sheffield's actions at Pioneer could spread throughout Exxon.

---

[10] U.S. Energy Information Administration, *Petroleum & Other Liquids: U.S. Crude Oil Rotary Rigs in Operation* (Apr. 30, 2024) (https://www.eia.gov/dnav/pet/hist/LeafHandler.ashx?n=PET&s=E_ERTRRO_XR0_NUS_C&f=M).

[11] U.S. Energy Information Administration, *Petroleum & Other Liquids: Drilling Productivity Report* (May 13, 2024) (https://www.eia.gov/petroleum/drilling/).

[12] U.S. Energy Information Administration, *Petroleum & Other Liquids: Cushing, OK Crude Oil Future Contract 1* (May 15, 2024) (https://www.eia.gov/dnav/pet/hist/RCLC1D.htm).

[13] *OPEC Collusion Claim Sends Tremor Through US Shale Oil Patch*, Financial Times (May 3, 2024).

[14] *See* note 2.

[15] Federal Trade Commission, *In the Matter of Exxon Mobil Corporation: Decision and Order* (https://www.ftc.gov/system/files/ftc_gov/pdf/2410004exxonpioneerorderredacted.pdf) (accessed May 20, 2024).

[16] *F.T.C. Clears Exxon Mobil's Acquisition of Pioneer Natural Resources*, New York Times (May 2, 2024).

[17] *See* note 2.

Mr. Darren W. Woods
May 21, 2024
Page 4

These concerns are magnified by former Exxon CEO Lee Raymond's famous declaration that Exxon was, "…not a U.S. company, and I don't make decisions based on what's good for the U.S."[18] I am also troubled by your unwillingness to explain to the Committee at a hearing last Congress any steps Exxon had taken to stop investing in governments run by violent adversaries of global peace.[19] I am concerned Exxon's culture may be made worse once combined with Pioneer's culture of allegedly colluding with OPEC and the United States' adversaries to increase prices at the pump.

If U.S. oil companies are colluding with each other and foreign cartels to manipulate global oil markets and harm American consumers who then pay more at the pump, Congress and the American people deserve to know. Additionally, I want to know what guardrails will be put in place to ensure that Pioneer's extremely troubling culture of collusion does not infect the newly enlarged corporation. To that end, I request the following information and documents by June 5, 2024:

1. All communications between Exxon's current or former employees involved in developing future production plans or who have authority to alter existing production plans for any of Exxon's production assets and representatives of OPEC, OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia), since January 1, 2014. If any communication was conducted via a messaging application that automatically deletes messages or records after a period of time, and the contents of the message are no longer available, please include a list of all such communications.

2. All communications between Pioneer employees who were involved in developing production plans or who had authority to alter existing production plans for any of Pioneer's production assets and representatives of OPEC, OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia), since January 1, 2014. If any communication was conducted via a messaging application that automatically deletes messages or records after a period of time, and the contents of the message are no longer available, please include a list of all such communications.

3. A list of meetings between Exxon's employees involved in developing future production plans or who have authority to alter existing production plans for any of Exxon's production assets and representatives of OPEC, OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia), since January 1, 2014. The list should include:

    a. The name and title of each relevant Exxon employee at the time of such identified meeting and current employment status of each identified employee. For

---

[18] *Oil's Dark Heart Pumps Strong*, New York Times (Apr. 26, 2012).

[19] *See* note 1.

Mr. Darren W. Woods
May 21, 2024
Page 5

    individuals who are no longer employed by Exxon, include the date of severance and the name of the employee who assumed the former employee's duties related to the development of future production plans or management of existing production plans for any production assets.

    b.  The date of each meeting attended by an identified employee where representatives from OPEC, OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia), were present and the names and affiliations of such representatives in attendance at each identified meeting.

    c.  The date of each identified meeting involving an identified employee involving representatives from OPEC, OPEC or OPEC+ member nations (including Russia) or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia) and the names and affiliations of such representatives involved in each identified communication.

    d.  The topic of discussion during each identified meeting.

    e.  Any formal or informal meetings at or in connection to industry conferences, such as CERAWeek, the Energy Intelligence Forum (formerly known as "Oil & Money"), or OPEC conferences.

4.  A list of meetings between Pioneer's employees who were involved in developing future production plans or who had authority to alter existing production plans for any of Pioneer's production assets and representatives of OPEC, OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member nations (including Russia), since January 1, 2014.  The list should include:

    a.  The name and title of each relevant Pioneer employee at the time of such identified meeting and current employment status of each identified employee. For individuals who are no longer employed by Pioneer, include the date of severance and the name of the employee who assumed the former employee's duties related to the development of future production plans or management of existing production plans for any production assets.

    b.  The date of each meeting attended by an identified employee where representatives from OPEC or OPEC+ member nations (including Russia), or state-owned oil-and-gas-related enterprises from OPEC, OPEC or OPEC+ member nations (including Russia), were present and the names and affiliations of such representatives in attendance at each identified meeting.

    c.  The date of each identified meeting involving an identified employee involving representatives from OPEC, OPEC or OPEC+ member nations (including Russia)

Mr. Darren W. Woods
May 21, 2024
Page 6

>      or state-owned oil-and-gas-related enterprises from OPEC or OPEC+ member
>      nations (including Russia) and the names and affiliations of such representatives
>      involved in each identified communication.
>
>    d.  The topic of discussion during each identified meeting.
>
>    e.  Any formal or informal meetings at or in connection to industry conferences, such
>        as CERAWeek, the Energy Intelligence Forum (formerly known as "Oil &
>        Money"), or OPEC conferences.

5.  Any guidance pertaining to antitrust, competition, or sanctions issues provided by legal or
    compliance functions to identified employees of Exxon and Pioneer ahead of the
    meetings identified in response to Request 3 and Request 4, respectively.

6.  Any communications between Exxon's current or former employees involved in
    developing future production plans or who have authority to alter existing production
    plans for any of Exxon's production assets and representatives of competing U.S. oil
    producers, including BP, Shell, Chevron, Occidental Petroleum, Devon Energy, Hess, and
    Pioneer (prior to the completion of the acquisition by Exxon), since January 1, 2014, that
    describe or allude to in any way present, planned, or projected production.  If any
    communication was conducted via a messaging application that automatically deletes
    messages or records after a period of time, and the contents of the message are no longer
    available, please include a list of all such communications.

7.  Any communications between Pioneer's employees who were involved in developing
    future production plans or who had authority to alter existing production plans for any of
    Pioneer's production assets and representatives of competing U.S. oil producers,
    including Exxon, BP, Shell, Chevron, Occidental Petroleum, Devon Energy, and Hess,
    since January 1, 2014, that describe or allude to in any way present, planned, or projected
    production.  If any communication was conducted via a messaging application that
    automatically deletes messages or records after a period of time, and the contents of the
    message are no longer available, please include a list of all such communications.

8.  A list of meetings between Exxon's current or former employees involved in developing
    future production plans or who have authority to alter existing production plans for any of
    Exxon's production assets and representatives of competing U.S. oil producers, including
    BP, Shell, Chevron, Occidental Petroleum, Devon Energy, Hess, and Pioneer (prior to the
    completion of the acquisition by Exxon), since January 1, 2014.  The list should include:

    a.  The date of each meeting attended by an identified employee where
        representatives of competing U.S. oil producers, including BP, Shell, Chevron,
        Occidental Petroleum, Devon Energy, Hess, and Pioneer (prior to the completion
        of the acquisition by Exxon), were present and the names and affiliations of such
        representatives in attendance at each identified meeting.

Mr. Darren W. Woods
May 21, 2024
Page 7

    b.  The topic of discussion during each identified meeting or summary of each identified communication.

    c.  Any such meetings or communications at or in connection to industry conferences, such as CERAWeek or the Energy Intelligence Forum (formerly known as "Oil & Money"), or OPEC conferences.

    d.  If any identified communications or meetings were conducted via messaging applications that automatically delete messages or records after a specified amount of time.

9. A list of meetings between Pioneer's employees who were involved in developing future production plans or who had authority to alter existing production plans for any of Pioneer's production assets and representatives of competing U.S. oil producers, including Exxon, BP, Shell, Chevron, Occidental Petroleum, Devon Energy, and Hess, since January 1, 2014.  The list should include:

    a.  The date of each meeting attended by an identified employee where representatives of competing U.S. oil producers, including Exxon, BP, Shell, Chevron, Occidental Petroleum, Devon Energy, and Hess, were present and the names and affiliations of such representatives in attendance at each identified meeting.

    b.  The topic of discussion during each identified meeting or summary of each identified communication.

    c.  Any such meetings or communications at or in connection to industry conferences, such as CERAWeek or the Energy Intelligence Forum (formerly known as "Oil & Money"), or OPEC conferences.

    d.  If any identified communications or meetings were conducted via messaging applications that automatically delete messages or records after a specified amount of time.

10. Any guidance pertaining to antitrust or competition issues provided by legal or compliance functions to identified employees of Exxon and Pioneer ahead of meetings identified in response to Request 8 and Request 9, respectively.

11. Any non-public communications or meetings that Exxon executives have had with shareholders or equity owners since January 1, 2014, on crude oil production levels or prices, including any communications or meetings in which shareholders mentioned

Mr. Darren W. Woods
May 21, 2024
Page 8

comments, verbatim or paraphrased, by Mr. Sheffield that "All the shareholders that I've talked to said that if anybody goes back to growth, they will punish those companies."[20]

12. A detailed description of, and documents sufficient to show, Exxon's policies and procedures for ensuring employee and organizational compliance with U.S. antitrust, competition, and sanctions laws.  To the extent policies or procedures have changed since January 1, 2014, provide copies of each iteration and a detailed description of steps taken to inform employees of changes to policies or procedures.

13. A detailed description of, and documents sufficient to show, Pioneer's policies and procedures for ensuring employee and organizational compliance with U.S. antitrust, competition, and sanctions laws prior to the completion of the acquisition by Exxon.  To the extent policies or procedures have changed since January 1, 2014, provide copies of each iteration and a detailed description of steps taken to inform employees of changes to policies or procedures.

14. A detailed description of any efforts by Exxon, either on its own, or in coordination with competing U.S. oil producers or industry trade associations to influence potential federal or state government efforts to artificially limit crude oil production, including the Texas Railroad Commission's decision in May 2020 to refuse to limit crude oil production in the state of Texas.[21]

15. A detailed description of Exxon's process for developing or changing production plans, including plans for drilling wells, completing DUC wells, or limiting or increasing production from owned or leased production assets.  Include details about the protections in-place to insulate employees that participate in this process from being influenced by or coordinating with representatives from OPEC, OPEC or OPEC+ member states, state-owned oil and gas companies, or Exxon's foreign or domestic competitors.

16. A detailed description of how former employees of Pioneer will be incorporated into Exxon's corporate structure and their role in developing future production plans or in altering existing production plans for any of Exxon's production assets.  Provide a list of any former employees of Pioneer that will have a role in determining or altering future or existing production plans for any of Exxon's production assets.

17. A detailed description of any guardrails Exxon plans on implementing in the wake of the acquisition to ensure that the alleged behavior by Mr. Sheffield is not replicated within Exxon, and that the corporate culture within Pioneer that allowed Mr. Sheffield's alleged behavior and led the FTC to broadly prohibit Exxon from appointing representatives of Pioneer to its board is not allowed to infect Exxon.

---

[20] *See* note 2.

[21] AdminMonitor, *Texas – Railroad Commission of Texas – Open Meeting* (May 5, 2020) (https://www.adminmonitor.com/tx/rrc/open_meeting/20200505/).

Mr. Darren W. Woods
May 21, 2024
Page 9

     If you have any questions about this request, please contact the Committee Democratic staff at (202) 225-2927.

           Sincerely,

           Frank Pallone, Jr.
           Ranking Member

cc:    The Honorable Cathy McMorris Rodgers
        Chair