**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>*This Document Relates To:*<br>*All Actions* | Case No. 1:24-md-03119-MLG-LF<br><br>Honorable Matthew L. Garcia<br>Magistrate Judge Laura Fashing |

**CONTINENTAL RESOURCES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

PLAINTIFFS' ALLEGATIONS ....................................................................................................2

LEGAL STANDARD.....................................................................................................................3

ARGUMENT ..................................................................................................................................4

    I.    The Complaint Does Not Allege That Continental Acted in Parallel With Any Other Defendant ................................................................................................4

    II.    No "Plus Factors" Against Continental Are Adequately Pleaded ...........................6

        A.    *Alleged Industry Characteristics Do Not Make Plaintiffs' Claim Plausible* ......................................................................................................7

        B.    *Plaintiffs Concede Their "Common Ownership" "Plus Factor" Does Not Apply to Continental* ...................................................................7

        C.    *Plaintiffs Do Not Plausibly Plead that Continental's Constant Growth Was Against its Self-Interest* .............................................................7

        D.    *Alleged Interfirm Communications and Public Announcements Are Not Plausible "Plus Factor" Allegations as to Continental* .......................9

CONCLUSION.............................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*,
 74 F.4th 525 (7th Cir. 2023) ...............................................................................................12

*Ass'n of Surgical Assistants v. Nat'l Bd. Of Surgical Tech. & Surgical Assisting*,
 127 F.4th 178 (10th Cir. 2025) ..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................................3, 7

*Brown v. JBS USA Food Co.*,
 2023 WL 6292717 (D. Colo. Sept. 27, 2023)....................................................................3, 4

*Brown v. JBS USA Food Co.*,
 2023 WL 6294161 (D. Colo. Sept. 27, 2023)....................................................................3, 4

*Burtch v. Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011).................................................................................................9

*City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*,
 92 F.4th 381 (2d Cir. 2024) ..........................................................................................11, 12

*D'Augusta v. Am. Petroleum Inst.*,
 117 F.4th 1094 (9th Cir. 2024) .........................................................................................8, 9

*Gibson v. Cendyn Grp., LLC*,
 2024 WL 2060260 (D. Nev. May 8, 2024).........................................................................11

*Gibson v. MGM Resorts Int'l*,
 2023 WL 7026984 (D. Nev. Oct. 24, 2023) .......................................................................12

*Housey v. Procter & Gamble Co.*,
 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2022 WL 17844403 (2d
 Cir. 2022) ............................................................................................................................12

*In re Beef Indus. Antitrust Litig.*,
 907 F.2d 510 (5th Cir. 1990) ................................................................................................6

*In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*,
 328 F. Supp. 3d 217 (S.D.N.Y. 2018).................................................................................11

*In re Crop Inputs Antitrust Litig.*,
 2024 WL 4188654 (E.D. Mo. Sept. 13, 2024)......................................................................6

*In re Domestic Airline Travel Antitrust Litig.*,
  2023 WL 5930973 (D.D.C. Sept. 12, 2023) ..................................................................6

*In re Domestic Airline Travel Antitrust Litig.*,
  691 F. Supp. 3d 175 (D.D.C. 2023) ............................................................................5

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022) ..................................................................................8, 10

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Litig.*
  2020 WL 8459279 (N.D. Cal. Nov. 24, 2020),
  *aff'd*, 28 F.4th 42 (9th Cir. 2022) ..............................................................................10

*In re Eur. Gov't Bonds Antitrust Litig.*,
  2022 WL 768680 (S.D.N.Y. Mar. 14, 2022) ................................................................6

*In re Interest Rate Swaps Antitrust Litig.*,
  261 F. Supp. 3d 430 (S.D.N.Y. 2017) ........................................................................5

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  2021 WL 5359731 (S.D. Fla. Nov. 17, 2021) ..............................................................9

*In re Mexican Gov't Bonds Antitrust Litig.*,
  412 F. Supp. 3d 380 (S.D.N.Y. 2019) ........................................................................3

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ..................................................................................11

*In re Pork Antitrust Litig.*,
  2019 WL 3752497 (D. Minn. Aug. 8, 2019) ...............................................................5

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
  910 F.3d 927 (7th Cir. 2018) ..............................................................................8, 11

*Kleen Prods. LLC v. Int'l Paper*,
  276 F. Supp. 3d 811 (N.D. Ill. 2017) ........................................................................12

*La. Mun. Police Emps. Ret. Sys. v. Cont'l Res., Inc.*,
  2013 WL 2152041 (W.D. Okla. May 16, 2013) ........................................................10

*Llacua v. W. Range Ass'n*,
  930 F.3d 1161 (10th Cir. 2019) .............................................................................3, 6

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) ......................................................................................3

*Miami Prods. & Chem. Co. v. Olin Corp.*,
  449 F. Supp. 3d 136 (W.D.N.Y. 2020) ......................................................................5

*Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*,
   2024 WL 4202680 (S.D.N.Y. Sept. 13, 2024) ............................................................................4

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ....................................................................................................3

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
   2016 WL 4574357 (S.D. Cal. July 14, 2016) ...........................................................................7

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   803 F.3d 1084 (9th Cir. 2015) ..................................................................................................9

*Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
   328 F. Supp. 3d 824 (N.D. Ill. 2018) ........................................................................................7

**PRELIMINARY STATEMENT**

Plaintiffs claim that in 2021, a group of shale oil producers, OPEC, and OPEC+ agreed to limit shale oil production. But Plaintiffs' Complaint shows that one member of that group—Continental Resources, Inc. ("Continental")—continued its historical growth during the alleged conspiracy. Continental should never have been named as a defendant in this case, and Plaintiffs' conspiracy claims against Continental should be dismissed for two reasons.

*First*, Plaintiffs' allegations establish that Continental did not act in parallel with its alleged co-conspirators. Plaintiffs identify multiple producers' reduced growth *rates* during the alleged conspiracy, but Continental's growth rate stayed virtually the same: 43% before the alleged conspiracy began, and 42% after.

Table 1: Defendants' U.S. Oil Production Growth Rates in Pre- and Post-Class Period

| Defendant | 2017-2019 U.S. Oil Production Growth Rate | 2021-2023 U.S. Oil Production Growth Rate |
|---|---|---|
| Centennial/Permian[149] | 123% | 56% |
| Chesapeake | 31% | -63% |
| Continental | 43% | 42% |
| Diamondback | 220% | 19% |
| EOG | 36% | 6% |
| Hess | 25% | -6% |
| Occidental | 89% | 8% |
| Pioneer | 34% | 3% |
| Defendants' Production Weighted Average | 63% | 14% |
| Average Crude Oil Price per Barrel | $55.01 | $78.42 |
| Average U.S. Consumer Gasoline Price | $2.67 | $3.61 |

Plaintiffs' chart further illustrates the implausibility of their alleged conspiracy because some alleged co-conspirators cut production during the supposed conspiracy, but Continental and others grew, with Continental near the front of the pack at 42%. It is implausible that Continental's competitors would have agreed to let Continental grow that much while they shrank. Plaintiffs do not explain why anyone would have accepted that bargain.

***Second***, the Complaint lacks actionable "plus factors" as to Continental. For starters, Plaintiffs admit that their "common ownership" plus factor uniquely does not apply to Continental. To try to keep Continental in the case, Plaintiffs mention a few of Continental's public statements (only one during the alleged conspiracy), two nondescript meetings from years before the alleged conspiracy, and Continental's participation in trade organizations. But these limited allegations do not plausibly plead that Continental joined a conspiracy to limit shale oil supply.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Continental agreed with multiple domestic shale oil producers, OPEC, and OPEC+ to restrain domestic shale oil production starting on January 1, 2021. ECF No. 86, Consolidated Class Action Complaint ("CCAC") ¶¶ 1, 9, 85, 261. Specifically, Plaintiffs claim that shortly after the effects of the COVID-19 pandemic began to subside in 2021 and oil prices began to rise, Defendants, OPEC, and OPEC+ conspired to limit shale oil supply instead of producing more shale oil to take advantage of rising prices. *Id.* ¶¶ 10, 13–14.

Although the crux of Plaintiffs' Complaint is that Defendants conspired to restrict the supply of shale oil, Plaintiffs concede that Continental kept growing at virtually the same rate during the alleged conspiracy and actually increased its production by 42%, more than all but one of the other Defendants. *Id.* ¶ 160 & Table 1.

The other circumstantial allegations naming Continental are thin. Plaintiffs allege that Continental must have entered the alleged conspiracy because: (*i*) in 2016, Harold Hamm, Continental's Founder, Chairman, and former CEO, stated—years before the conspiracy—that it was time for OPEC and Russia to reduce oil production, *id.* ¶ 111; (*ii*) in 2017, "Continental executives" allegedly met with OPEC's Secretary General, *id.* ¶ 118; (*iii*) in 2018, Mr. Hamm attended a board meeting at Saudi Aramco, the oil company owned by the Kingdom of Saudi Arabia, an OPEC member, *id.* ¶ 125; (*iv*) in February 2022, Continental's then-CEO Bill Berry

2

said on an earnings call that the company projected flat to 5% growth over the next five years, *id.* ¶ 149(b); and (*v*) in 2022, Continental's revenue increased by $3 billion, *id.* ¶ 161 & Fig. 7.

## LEGAL STANDARD

A complaint alleging a violation of Sherman Act § 1 must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Each defendant's participation in the alleged conspiracy must be adequately pled. *Brown v. JBS USA Food Co.*, 2023 WL 6292717, at *8–17 (D. Colo. Sept. 27, 2023) (defendant dismissed in conspiracy case where there were no well-pled allegations that it joined the alleged conspiracy). "Post-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the *specific* defendants named in the complaint fails to state a claim." *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388 (S.D.N.Y. 2019).

"[T]he facts showing such an agreement can be direct or circumstantial." *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1174 (10th Cir. 2019). "Direct facts are explicit," such as "a written contract or agreement" or "admissions of an agreement." *Id.* at 1174 n.24. "[T]his type of 'smoking gun' can be hard to come by, especially at the pleading stage." *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). "Thus a complaint may, alternatively, present circumstantial facts supporting the inference that a conspiracy existed." *Id.*

Where, as here, an antitrust plaintiff's claim is premised on circumstantial evidence, the plaintiff must initially allege that defendants engaged in parallel conduct. *Llacua*, 930 F.3d at 1177; *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 517 (8th Cir. 2018). But "mere allegations of parallel conduct, absent additional contextual facts, fail to state a plausible conspiracy claim." *Brown v. JBS USA Food Co.*, 2023 WL 6294161, at *9 (D. Colo. Sept. 27, 2023); *Llacua*, 930 F.3d at 1178. "A plaintiff must also allege 'plus factors' which allow a factfinder to infer a conspiracy." *Brown*, 2023 WL 6294161 at *9. Such "plus factors" include "a

3

common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." *Id.*

## ARGUMENT

The Court should dismiss all claims[1] against Continental. First, even assuming that the conspiracy is viewed as one between U.S. shale producers only,[2] the Complaint's allegations plead that Continental did not act in parallel with other shale producers. Second, Plaintiffs' alleged "plus factors" are not sufficient to keep Continental in the case.

### I. The Complaint Does Not Allege That Continental Acted in Parallel With Any Other Defendant.

Plaintiffs' theory is that, beginning in 2021, Defendants agreed to limit their production of shale oil, which "depart[ed] from their historical practice." CCAC ¶ 14. But the Complaint pleads Continental out of that conspiracy—the Company grew by 43% prior to the alleged conspiracy, and then by 42% during the alleged conspiracy. *Id.* ¶ 160 & Table 1. Plaintiffs' own allegations show that Continental did not act in parallel with Defendants, which is fatal to Plaintiffs' claim against Continental. *See Okla. Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, 2024 WL 4202680, at *7 (S.D.N.Y. Sept. 13, 2024) ("parallel conduct in which *each defendant* participated" must be alleged) (emphasis added); *Brown*, 2023 WL 6292717, at *10 (defendant dismissed where it was not alleged to have engaged in parallel conduct with other defendants).

---

[1] Because Plaintiffs' federal claim fails, their state law claims fail as well. *See, e.g., Ass'n of Surgical Assistants v. Nat'l Bd. Of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 189 n.11 (10th Cir. 2025).
[2] Plaintiffs plead that Continental, other shale oil producers, OPEC and OPEC+ joined and participated in the alleged conspiracy. *See, e.g.*, CCAC ¶¶ 10–13. The inclusion of these allegations requires dismissal under the political question and state action doctrines. *See* Defendants' Joint Motion to Dismiss ("J. MTD") § I.

4

Because the alleged conspiracy here is one to limit supply, the inquiry is whether Continental limited shale oil production *in parallel* with the other Defendants.[3] Plaintiffs' own allegations disprove this:

| Table 1: Defendants' U.S. Oil Production Growth Rates in Pre- and Post-Class Period | | |
|---|---|---|
| **Defendant** | **2017-2019 U.S. Oil Production Growth Rate** | **2021-2023 U.S. Oil Production Growth Rate** |
| Centennial/Permian[149] | 123% | 56% |
| Chesapeake | 31% | -63% |
| Continental | 43% | 42% |
| Diamondback | 220% | 19% |
| EOG | 36% | 6% |
| Hess | 25% | -6% |
| Occidental | 89% | 8% |
| Pioneer | 34% | 3% |
| Defendants' Production Weighted Average | 63% | 14% |
| Average Crude Oil Price per Barrel | $55.01 | $78.42 |
| Average U.S. Consumer Gasoline Price | $2.67 | $3.61 |

*Id.* ¶ 160 & Table 1. Continental's virtually identical production growth rates are not "parallel" to the other producers' growth rates or overall productions. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 691 F. Supp. 3d 175, 194 (D.D.C. 2023) ("Discernible parallel conduct requires more than simply indefinite 'higher' prices or 'lower' output alone."); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 466 (S.D.N.Y. 2017) ("meaningful" parallel conduct must be alleged).

Further underscoring the implausibility of Continental's participation in the alleged conspiracy is the unreasonable inferences that would have to be made to conclude Continental conspired. Plaintiffs' growth rate table alleges that Defendants grew on average 63% in the years prior to the conspiracy but grew only 14% during the alleged conspiracy. But Continental grew

---

[3] *See, e.g.*, *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) (focusing on the similarity of defendants' alleged production decisions to assess whether parallel conduct was met in supply reduction case); *see also Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 163 (W.D.N.Y. 2020).

42%, three times the average rate, during this same period. And while some Defendants allegedly reduced production, Continental grew more than all but one Defendant. CCAC ¶ 160 & Table 1 (Chesapeake: negative 63%; Hess: negative 6%).

Plaintiffs' claims against Continental can only be deemed plausible if one infers that Continental's alleged co-conspirators allowed Continental to grow substantially while other Defendants shrank. However, Plaintiffs never explain why any other company would have agreed to such a deal. When asked to make such an implausible inference, courts decline to do so, reasoning that such an inference would be inconsistent with basic economics. *Llacua*, 930 F.3d at 1181 (conspiracy claim properly dismissed where "alleged conspiracy d[id] not make economic sense" because it "lock[ed] in substantial advantages for [certain] competit[ors]" and not others); *In re Domestic Airline Travel Antitrust Litig.*, 2023 WL 5930973, at *11 (D.D.C. Sept. 12, 2023) ("It would be contrary to [the alleged co-conspirators'] economic interests to participate in a conspiracy where [Continental] could increase production and market share at the expense of other co-conspirators.") (citation omitted); *see also In re Beef Indus. Antitrust Litig.*, 907 F.2d 510, 516 (5th Cir. 1990) (similar).

Because "adequately alleging parallel conduct is the first prerequisite for an antitrust plaintiff lacking direct evidence," *In re Eur. Gov't Bonds Antitrust Litig.*, 2022 WL 768680, at *23 (S.D.N.Y. Mar. 14, 2022), and Continental's conduct was not parallel to anyone else's, Plaintiffs' claims against Continental must be dismissed. *In re Crop Inputs Antitrust Litig.*, 2024 WL 4188654, at *7 (E.D. Mo. Sept. 13, 2024) ("[T]he failure to plausibly plead concerted parallel conduct by the defendants, by itself, is fatal to a § 1 conspiracy claim.").

II. **No "Plus Factors" Against Continental are Adequately Pleaded.**

Plaintiffs' Complaint is further deficient as to Continental because it fails to allege the required "plus factors." *Llacua*, 930 F.3d at 1178 ("[P]arallel conduct, absent some additional

6

type of contextual evidence, is generally not sufficient to nudge an antitrust conspiracy allegation beyond the line from possible to plausible.").

### A. Alleged Industry Characteristics Do Not Make Plaintiffs' Claim Plausible.

Plaintiffs claim that various industry characteristics of the market for crude oil make it susceptible to collusion, including that crude oil "is a daily-use commodity," the demand for gasoline is "highly inelastic," and that the shale oil industry is "consolidated at the top." CCAC ¶¶ 190–92. But "we know from *Twombly* and its progeny that industry structure alone cannot get the complaint across the finish line" because all antitrust complaints "targeting any industry with those features would survive a motion to dismiss regardless of whether there were any additional facts suggesting an agreement." *Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 841 (N.D. Ill. 2018). These market features are equally consistent with independent conduct and conspiracy. *Id.*; *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 2016 WL 4574357 (S.D. Cal. July 14, 2016) (inelastic demand for gasoline did not make plaintiff's conspiracy claim plausible).

### B. Plaintiffs Concede Their "Common Ownership" "Plus Factor" Does Not Apply to Continental.

Plaintiffs also allege that "Defendants' core shareholders overlap substantially," claiming that this "creates an additional factor enabling and facilitating Defendants' agreed output restrictions." CCAC ¶¶ 197–98. But Plaintiffs admit that this purported "plus factor" is inapplicable to Continental and therefore cannot make the claim against Continental plausible. *Id.* ¶ 197 (Continental is "the lone exception" to Plaintiffs' "common ownership" "plus factor").

### C. Plaintiffs Do Not Plausibly Plead that Continental's Constant Growth Was Against its Self-Interest.

Plaintiffs' next alleged "plus factor"—that Defendants' conduct was allegedly against their self-interest, *see* CCAC ¶¶ 204-312—is also insufficient as to Continental. Plaintiffs' theory is

7

that Continental agreed to limit its production at a time when prices were rising and therefore the only economically rational thing to do was expand. *Id.* ¶ 209. But Continental *did* continue to grow at that time.

As discussed above, Continental's double-digit growth during the alleged conspiracy was virtually identical to its growth in the years predating the conspiracy. CCAC ¶ 160 & Table 1. Because it continued to grow at the same pace, allegations concerning Continental's growth rate do not create the inference that Continental conspired with other shale producers to limit supply. *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 937 (7th Cir. 2018) ("continuation of a historic pattern . . . does not plausibly allow one to infer the existence of a cartel"); *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 49 (9th Cir. 2022) (supply cut during alleged conspiracy not indicative of conspiracy because defendant acted similarly before alleged conspiracy).

This undeniable conclusion is reinforced by the context in which Continental (and other shale producers) made production decisions during the relevant period, beginning in January 2021—shortly after the emergence of the COVID-19 pandemic. Plaintiffs allege that during the early days of the pandemic, "demand dropped precipitously" for gasoline and other crude oil derivatives, sending a "shockwave through the oil supply chain." CCAC ¶ 12. Their theory for Continental is that, right after this "shockwave," Continental should have grown even faster than it did before the alleged conspiracy right when demand and prices increased. *Id.* ¶ 13.

Unsurprisingly, courts have dismissed similar claims premised upon this same implausible theory. The Ninth Circuit, for example, affirmed dismissal of claims against Continental and various oil producers for allegedly colluding with each other to raise the price of oil, including by limiting production. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024).

There, the Ninth Circuit held that the outbreak of COVID-19 was an "obvious alternative explanation" for defendants' conduct. *Id.* (COVID-19 pandemic was a "historical event," which led to "even a brief period when the price of barrel of oil was negative!"). Aside from COVID-19, courts often dismiss conspiracy claims where economic circumstances occurring during the alleged conspiracy provide alternative non-conspiratorial explanations for the defendants' conduct. *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1092 (9th Cir. 2015) (plaintiff unreasonable in pointing to low input costs during certain year and ignoring same input costs' aggressive fluctuation during surrounding years); *In re Jan. 2021 Short Squeeze Trading Litig.*, 2021 WL 5359731, at *21 (S.D. Fla. Nov. 17, 2021) ("historic market volatility" provided "ample independent business reasons" for allegedly unlawful restrictions).

These authorities apply with even more force to the allegations against Continental. The Company is being sued not for reducing production in the wake of COVID-19, but for not expanding production faster. The unprecedented circumstances surrounding Continental's production decisions during a time of economic uncertainty "provide a logical explanation for why [Continental] would" not have exponentially expanded output. *D'Augusta*, 117 F.4th at 1104–05. "Accordingly, Plaintiffs' 'speculative' and 'bare assertion[s]' of antitrust conspiracy are nearly identical to cases holding that the claims were implausible." *Id.* at 1105.[4]

### D. Alleged Interfirm Communications and Public Announcements Are Not Plausible "Plus Factor" Allegations as to Continental.

Plaintiffs' final alleged "plus factor," "opportunities to collude and interfirm communications," also fails to plausibly allege Continental's participation in the supposed conspiracy. The few allegations of this sort that name Continental are not indicative of conspiracy.

---

[4] Continental's increased revenue during the alleged conspiracy, CCAC ¶ 161, is also not a "plus factor." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 229 (3d Cir. 2011) (increased profits is not "evidence of a 'plus factor'").

9

For example, Plaintiffs rely on part of a statement made by then-CEO Bill Berry on Continental's Q4 2021 public earnings call that Continental was projecting flat to 5% annual production growth over the next five years.[5] CCAC ¶ 149(b). "[N]either the context of [such] statements—earnings calls and investor presentations, where the statements were made in response to direct questions—nor their substance—observations and forecasts of competitors' actions and affirmance of own actions—suggest conspiracy because they equally demonstrate interdependence." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Litig.* 2020 WL 8459279, at *6 (N.D. Cal. Nov. 24, 2020)*, aff'd*, 28 F.4th 42 (9th Cir. 2022). Indeed, Mr. Berry's complete earnings call statement (incorporated in Plaintiffs' Complaint) shows why such statements do not plausibly support conspiracies. Mr. Berry's generalized statement regarding future production plans was made to investors to show them that Continental was focused on reducing capital expenditures and delivering maximum returns. *See* Ex. A at 3 (immediately before the portion of the statement at issue, Mr. Berry said: "First, we are committed to expanding return of capital to shareholders and continuing to deliver industry and S&P 500 competitive [Return on Capital Employed]."). Explaining to investors—at a publicly-held earnings call—how a company plans to maximize its return to shareholders is not the mark of conspiracy. *DRAM*, 28 F.4th at 50 ("If no conspiracy existed, Defendants would likely make the same public statements about their observations, predictions, and strategies for the future, particularly in response to investor and analyst questions.").

Further, Continental had already publicly disclosed its future production plans in the years predating the alleged conspiracy. *See, e.g.*, Ex. B at 5, 9 (February 2016 Form 8-K[6]: "[f]or 2016,

---

[5] It is ordinary for public companies to host earning calls for their investors. Continental itself held earnings calls from Q4 2007 until Q1 2022, right before Continental became a private company.
[6] "[C]ourts may take judicial notice of federally regulated filings, including SEC filings." *La. Mun. Police Emps. Ret. Sys. v. Cont'l Res., Inc.*, 2013 WL 2152041, at *3 (W.D. Okla. May 16, 2013).

10

we will remain patient and disciplined in our activities while striving to enhance shareholder value through continued improvements in our core plays," and it reported that it "has four operated drilling rigs in the North Dakota Bakken and plans to maintain this level through year end"). A "continuation of a historic pattern . . . does not plausibly allow one to infer the existence of a cartel." *Kleen Prods.*, 910 F.3d at 937.

Likewise, even if Continental employees attended a "regular in-person roundtable" with Hess and EOG employees to "discuss extraction processes, measuring wells, and other construction and operation methods," CCAC ¶ 195(c), those meetings do not suggest an illegal agreement. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196–97 (9th Cir. 2015) (meetings between competitors "often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services"); *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *5 (D. Nev. May 8, 2024).

Plaintiffs also rely on evidence from years earlier, including one public statement from Harold Hamm to investors at a Singapore investment conference in the fall of 2016, CCAC ¶ 111 (referring to Ex. C), a claim that Continental met with OPEC's Secretary General in 2017, *id.* ¶ 118 (referring to Ex. D), and the fact that Mr. Hamm attended a Saudi Aramco board meeting in May 2018, *id.* ¶ 125 (referring to Ex. E). But even the latest of these events occurred years before the alleged conspiracy, severing any plausible link to the alleged anticompetitive conduct. *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 398 (2d Cir. 2024) (interfirm communications could only create the inference that anticompetitive conduct was occurring when statements made, not over the eight-and-a-half-year class period); *In re Commodity Exch., Inc. Gold Futures & Options Trading Litig.*, 328 F. Supp. 3d 217, 228

(S.D.N.Y. 2018) (similar). And each of these events are used to suggest Continental conspired with OPEC and OPEC+, which presents a non-justiciable controversy under the political question and state action doctrines. *See* J. MTD § I.

Even had they happened this decade, these statements would not be indicative of conspiracy. For example, Plaintiffs rely on an alleged general understanding discussed between OPEC's Secretary General, Continental, and Hess in 2017 that the downturn in oil prices caused by the alleged "price war" was "not in the interest of anybody." CCAC ¶ 118 (relying on Ex. D).[7] But "[i]t should not be a mark of conspiracy to say what is true, already known by the audience, and articulated by countless third-party analysts, academicians, and jurists alike." *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 841 (N.D. Ill. 2017); *Amory Invs. LLC v. Utrecht-Am. Holdings, Inc.*, 74 F.4th 525, 527 (7th Cir. 2023).

Plaintiffs' remaining alleged interfirm communications consist of general assertions against "Defendants" and unnamed "shale executives." *See, e.g.*, CCAC ¶ 194; *id.* ¶¶ 112–17, 119–24, 126–35. These allegations carry a "basic pleading defect" in that they "do not reveal whether—and if so, which—[] Defendants . . . participated in the alleged conversations or, more broadly, the conspiracy." *BNP Paribas*, 92 F.4th at 396. Continental and its executives are not even mentioned in most of the news articles cited in support of these group pleading allegations. *Gibson v. MGM Resorts Int'l*, 2023 WL 7026984, at *3 (D. Nev. Oct. 24, 2023).

## **CONCLUSION**

For the reasons above, Continental's motion should be granted.

---

[7] Plaintiffs quote this and many other articles in the Complaint. The Court must "consider the articles," as opposed to "merely [Plaintiffs'] characterization of the evidence as alleged in [the CCAC]." *Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *6 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2022 WL 17844403 (2d Cir. 2022). The article does not mention the CERAWeek conference, and it does not describe the meeting(s) between Continental, Hess, and the OPEC Secretary General in any detail. *See* Ex. D; *contra* CCAC ¶ 118.

12

Dated: February 24, 2025								Respectfully submitted,

										By: /s/ *Christopher E. Ondeck*
Michael Burrage									Christopher E. Ondeck
WHITTEN BURRAGE								Stephen R. Chuk
512 North Broadway Avenue, Ste 300						PROSKAUER ROSE LLP
Oklahoma City, OK 73102							1001 Pennsylvania Ave., NW
Telephone: (888) 783-0351							Suite 600 South
mburrage@whittenburragelaw.com						Washington, DC 20004
										Telephone: (202) 416-6800
H. Brook Laskey									Facsimile: (202) 416-6899
McCCOY LEAVITT LASKEY							condeck@proskauer.com
317 Commercial St. NE, Suite 200						schuk@proskauer.com
Albuquerque, NM 87102
Telephone: (505) 246-0455							Kyle A. Casazza
blaskey@MLLlaw.com								PROSKAUER ROSE LLP
										2029 Century Park East, Suite 2400
										Los Angeles, CA 90067-3010
										Telephone: (310) 284-5677
										kcasazza@proskauer.com

										Jared DuBosar
										PROSKAUER ROSE LLP
										2255 Glades Road, Suite 421 Atrium
										Boca Raton, FL 33431
										Telephone: (561) 995-4702
										jdubosar@proskauer.com

										Hannah Silverman
										Henrique Carneiro
										PROSKAUER ROSE LLP
										Eleven Times Square
										New York, NY 10036
										Telephone: (212) 969-3193
										Facsimile: (212) 969-2900
										hsilverman@proskauer.com
										hcarneiro@proskauer.com

										*Attorneys for Continental Resources, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

*/s/ Christopher E. Ondeck*
Christopher E. Ondeck