IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL CASES | Case No. 1:24-md-03119-MLG-LF<br>Judge Matthew L. Garcia<br>MDL No. 3119 |

**DEFENDANT EOG RESOURCES, INC.'S INDIVIDUAL MOTION
TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant EOG Resources, Inc. ("EOG") joins the concurrently filed Defendants' Joint Motion to Dismiss, filed on behalf of all Defendants, and submits this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to present additional grounds for dismissal that apply specifically to EOG.

**I.     Introduction**

Seven paragraphs. Of the 385 paragraphs of Plaintiffs' sprawling 148-page Consolidated Class Action Complaint (MDL Dkt. 86) ("Complaint" or "Compl."), only *seven paragraphs* make substantive allegations specific to EOG, applying a generous definition of the term "substantive." A review of those specific allegations—taking every one of them as true and in the light most favorable to Plaintiffs—reveals clearly that Plaintiffs have failed to state a claim against EOG. Notably, not one of these seven paragraphs (or any other paragraph in the Complaint) identifies even a single meeting between EOG and OPEC, or a single meeting between EOG and any other Defendant, to discuss "curtail(ing) crude oil production," let alone to reach an agreement to do so as Plaintiffs must plausibly allege as to EOG. Instead, the allegations consist only of: (1) three scattered public statements to investors about general market conditions, (2) two anonymous

statements about interactions between field-level employees drilling in the same areas that relate to "best practices" on "extraction processes, measuring wells, and other construction and operation methods," and (3) two bits of basic public information on EOG's hedge position and production levels over time.[1] None of these allegations, individually or combined, permits an inference that EOG engaged in any unlawful conduct. In fact, some of the sources that Plaintiffs cite affirmatively establish that the conduct was justified.

In this Motion, EOG provides a detailed examination of every one of Plaintiffs' specific allegations against EOG and the legal precedent that dictates that those allegations are insufficient to sustain the Complaint against EOG. EOG also addresses the conclusory (and therefore non-cognizable) allegations generically cast against "all Defendants" that make no reference and bear no connection to EOG.

To survive dismissal, Plaintiffs must state sufficient facts to plausibly allege that EOG participated in the asserted conspiracy. The law dictates that they cannot meet this challenge by relying on conclusory assertions and are not entitled to favorable inferences based on ambiguous evidence. But a technical analysis under the law (although required) is not necessary to see that Plaintiffs' allegations against EOG are paltry and speculative. In short, Plaintiffs' Complaint establishes no connection between EOG and the alleged unlawful conduct. It should be dismissed.

**II.    Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] The seven relevant paragraphs of the Complaint are: ¶140; ¶143(f); ¶149(d) and (f); ¶150(b); ¶156; ¶160 and ¶195(a) and (c). There are only 12 other mentions of EOG in the complaint outside of these paragraphs; these either reference the company in listing the Defendants or provide general company background information.

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. 544 at 570).  The Supreme Court has emphasized the critical importance of a plausible claim for relief in the antitrust context due to the "high costs and frequent abuses associated with antitrust discovery."  *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citing *Twombly*, 550 U.S. at 546).

In keeping with Supreme Court precedent, the Tenth Circuit holds that "[t]he conspiracy is not plausible if in light of common economic experience[,] the alleged conduct is equally likely to result from independent action."  *Llacua v. Western Range Association*, 930 F.3d 1161, 1175 (10th Cir. 2019) (citing *Twombly*, 550 U.S. at 556-57, 567-68).  Thus, allegations of "parallel conduct or interdependence, without more" fail to state a plausible conspiracy claim because the behavior is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. 544 at 570).  In analyzing whether behavior is consistent with rational business strategy, the court must consider the larger context. *See Llacua*, 930 F.3d at 1180-81 (affirming dismissal and rejecting plaintiffs' implicit invitation to "assume" unlawful conduct based on "exceedingly limited factual allegations" in complaint).

**III.    Argument**

The thesis of Plaintiffs' Complaint is that EOG, and other Defendants, conspired with OPEC and with each other to reach an illegal agreement "to curtail their respective crude oil production to keep U.S. and global crude oil prices artificially high."  Compl. ¶ 82.  But, as

explored in detail below by examining *every* allegation specified against EOG, Plaintiffs do not spell out a plausible claim against EOG. They fail to make a single specific factual allegation that: (1) EOG *ever* met with any representative of OPEC or any OPEC member, (2) that EOG *ever* had any discussion with any other Defendant concerning that Defendant's purported communications or agreements with OPEC, or (3) that EOG *ever* discussed or reached agreement with any other Defendant regarding its planned shale oil production levels. Instead, they rest their circumstantial conspiracy claims against EOG entirely on three categories of allegations: (1) three public statements by EOG executives to its investor audience; (2) two vague references to interactions between EOG and other shale producers about best practices in drilling operations and procedures; and (3) two observations about EOG's announced shale oil output during the relevant time period. That is all. These meager allegations do not remotely support Plaintiffs' claim against EOG, whether examined individually or collectively.

### A. Allegations Against EOG

#### i. Plaintiffs' Primary Allegations Against EOG Are Lawful Public Statements to the EOG Investor Community and Industry Media.

As their primary evidence, Plaintiffs cite three public statements made by EOG executives:

(1) First, they cite EOG's former CEO, Bill Thomas as stating in a news article: "In the future, certainly we believe OPEC will be the swing producer – really, totally in control of oil prices …We don't want to put OPEC in a situation where they feel threatened, like we're taking market share while they're propping up oil prices." Compl. ¶ 140.

(2) Second, they cite Mr. Thomas as saying, on an August 2021 earnings call, that the market is in a "new era" with a "more positive macro environment than we've been in since really the shale business started. I think OPEC+ is solid. I think the U.S. will

4

remain disciplined.  And so, I think the industry is in for a long run of really good results." *Id*. ¶ 143(f).

(3) Third, they splice together comments by two other EOG executives on a Q2 2022 earnings call, stating that EOG was "committed to remaining disciplined" and expected production growth in the "low single digits" in 2023." *Id*. ¶ 149(f).

Plaintiffs rely on these three investor statements as the strongest evidence of EOG's alleged involvement in an alleged conspiracy with OPEC and other Defendants.  But these statements imply nothing of the sort.  For example, the cited 2022 earnings call transcript shows that EOG's stated commitment to "discipline" was in fact a commitment to EOG's "disciplined reinvestment strategy."[2]  And Mr. Thomas' responses to questions about the dynamics of the global oil market cannot be taken as an indication of EOG's participation in a conspiracy.  Statements to investors regarding prevailing market conditions, in particular, do not "tend to exclude the possibility of independent behavior." *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1306 (11th Cir. 2003) (holding company's announcement of plan not to increase prices was a "legitimate communication within the market"); *see also  In re Delta/AirTran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1374 (N.D. Ga. 2017) (noting that taking all public statements as invitations to collude "would take unilateral action by a company…and deem it collusive merely because it was preceded in time by another unilateral action by a competitor").  They do not allow a plausible inference of conspiracy because "[i]f no conspiracy existed, Defendants would likely make the

---

[2] *See* Exhibit A: EOG Resources (EOG), *Q2 2022 Earnings Call Tr.,* THE MOTLEY FOOL (Aug. 5, 2022), https://www.fool.com/earnings/call-transcripts/2022/08/05/eog-resources-eog-q2-2022-earnings-call-transcript/, cited in footnote 123 of the Complaint by Plaintiffs to support the allegation against EOG. EOG cites the same sources as Plaintiffs pursuant to the Tenth Circuit exception at the Rule 12 stage, which permits citation to "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

same public statements about their observations, predictions, and strategies for the future, ***particularly in response to investor and analyst questions***." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F4th 42, 50 (8th Cir. 2022) (emphasis added).[3] In fact, "Courts have refused to construe corporate communications [even] as invitations to collude where the communications contain 'the type of information companies legitimately convey to their shareholders,' instead restricting such findings to cases involving 'far more detailed communications with no public purpose.'" *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1373 (N.D. Ga. 2017).

### ii. Plaintiffs' Vague References to Oil Field Operations Do Not Support a Claim Against EOG.

The second category of EOG-specific allegations comprises two anonymous statements regarding supposed interactions between EOG and other Defendants' field-level drilling employees. Notably, these are not contained in Plaintiffs' "Factual Allegations" of conspiracy but are identified as mere "plus factors" purportedly showing a possibility of collusion. Specifically, Plaintiffs first assert that an unidentified "fracking consultant" said "most major operators in the Midland Basin 'all work together to share resources'" and noted "instances where Centennial asked EOG Resources to *modify its fracking schedule* to accommodate Centennial's production plans." Compl. ¶ 195(a) (emphasis added). Plaintiffs add the vague and (under *Twombly*) clearly conclusory statement that "He said that 'gentleman's agreements' are prevalent in the U.S. shale industry."[4]

---

[3] Plaintiffs also try to contort the first of these statements by characterizing it as reflecting "Defendants' willingness, as a group, to follow OPEC's lead on pricing," but it is clear that Mr. Thomas was speaking only on behalf of EOG as its CEO.
[4] Note carefully that only two words, "gentleman's agreements," are attributed to the anonymous speaker. The remainder of the sentence is a characterization by Plaintiffs' counsel.

Second, Plaintiffs allege that an unidentified former senior "construction manager" for a shale oil producer "attended a regular in-person roundtable with 'all top tier producers,' including EOG Resources and Continental Resources, to discuss extraction *processes*, measuring wells, and other *construction and operation methods*." Compl. ¶ 195(c) (emphasis added). Even taking these vague allegations as true, they reveal nothing—and permit no inference—about EOG's involvement in a purported conspiracy with OPEC and other Defendants to "curtail their respective crude oil production to keep U.S. and global crude oil prices artificially high." *Id.* ¶ 82. The allegations are clear, on their face, that they relate to field operation "best practices," including "extraction processes, measuring wells, and other construction and operation methods." *Id*. ¶ 195.

Plaintiffs do not allege who attended the meetings on behalf of EOG (or any Defendant). And Plaintiffs do not allege that any agreement was reached at these meetings. Indeed, the best spin that Plaintiffs can put on these toothless assertions is that they provided "additional opportunities to collude." Compl. ¶196.

The Tenth Circuit has noted that "[t]he *Twombly* Court was particularly critical of complaints that mentioned no specific time, place, or person involved in the alleged conspiracies." *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008). That guidance is particularly relevant here, where Plaintiffs' threadbare allegations make no mention of these specific facts in connection with any allegedly unlawful agreement. Simply put, these allegations do not plausibly support any inference that the alleged meetings were in furtherance of the purported unlawful agreement.

    iii. **EOG's Output and Hedging Decisions Do Not Support an Inference of Conspiracy.**

Plaintiffs' final offering in support of showing EOG's alleged participation in a conspiracy is to provide two observations that EOG reduced the pace of expansion after 2020 and eliminated

7

certain hedge positions. Compl. ¶¶ 156, 160. Again, these allegations do not support any inference of an unlawful agreement. The Supreme Court has made clear that "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case . . . [C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Plaintiffs' allegations here perfectly exhibit this principle. They allege that EOG "pulled back" its oil market hedge positions that were "previously established to protect against oil price movements," purportedly to show EOG's awareness of a supply restriction conspiracy. Compl. ¶ 156. However, while Plaintiffs attempt to characterize the removal of the hedge as showing EOG's "advanced knowledge of OPEC's planned production cuts," the very article they cite states that: "Producers pulled back on hedges to avoid a repeat of last year [2022], when they left billions of dollars on the table by locking in prices at an average of about $55 a barrel before Russia's full-scale invasion of Ukraine sent crude [prices] soaring well above $100."[5] The article further notes that "[h]edging has become less attractive as the oil futures curve has slumped along with the spot price."[6] In other words, Plaintiffs' own source establishes that the conduct was rational business conduct consistent with permissible competition. To draw any other conclusion would imply that *every* decision to remove a hedge position is a sign of a conspiracy.

The Tenth Circuit has noted that a "conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct." *Cayman Exploration*

---

[5] *See* Exhibit B: Justin Jacobs, *Shale Oil Drillers Left Exposed After Pulling Back Price Hedges*, FIN. TIMES (Mar. 28, 2023), https://www.ft.com/content/c3baf69f-41fc-42ea-b13a-5ef6f546e143, cited in footnote 145 of the Complaint to support Plaintiffs' allegation against EOG.
[6] *See id.*

8

*Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989); *see also Mitchael v. Intracorp, Inc.*, 79 F.3d 847, 860 (10th Cir. 1999) ("Plaintiffs' failure to place the asserted instances of cost and treatment cuts in a larger economic context renders plaintiffs' claimed conspiracy entirely speculative."). That justification is plain even within the context of the Plaintiffs' allegations.

Finally, Plaintiffs assert that EOG "restrain[ed] oil growth," "planned to keep production growth to 'low single digits,'" and increased production by an average of only 6% in 2021-23 as compared to 36% in 2017-2019. Compl. ¶¶ 149(d) and (f), 160. But this reveals nothing about EOG's participation in an alleged conspiracy; it is simply a statement of EOG's output. Indeed, it is not even "parallel conduct," as the alleged production changes by Defendants are all over the map, ranging from a 63% decrease to a 56% *increase* during that latter period. *See id*. ¶160. It is also notable that the Complaint affirms that EOG *never reduced* output. To the contrary, EOG *increased* its output both before *and after* 2020, as reflected in Plaintiffs' chart, but did so at very different rate than every other alleged co-conspirator—a bizarre and illogical way for alleged co-conspirators to coordinate on output, and which belies an inference of conspiracy. EOG's alleged conduct, in the face of great marketplace instability and uncertainty, is at least as "consistent with permissible competition as it is with illegal conspiracy." *Matsushita*, 475 U.S. at 588. As the Ninth Circuit noted last year in affirming dismissal of allegations nearly identical to these:[7]

> [A]llegations of parallel conduct alone are not enough to raise an inference of an agreement when an "obvious alternative explanation" accounts for that same conduct. *Twombly*, 550 U.S. at 567. The "obvious alternative explanation" was the outbreak of the global Covid-19 pandemic. We take judicial notice of this historical event to acknowledge an alternative explanation. ***It is not hard to see why Defendants may have chosen to cut oil production beginning in March 2020***.

---

[7] The *D'Augusta* case, filed in N.D. Cal. in 2022, alleged that OPEC conspired with a *different* set of defendants to fix the output of oil and price of gasoline in the same time frame as alleged here. That case was dismissed by the district court and affirmed by the Ninth Circuit.

*D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (citation omitted) (emphasis added).

### B. Other Allegations: Plaintiffs' Vague Allegations of "Defendants" Meeting with OPEC Fail to Support a Claim Against EOG.

Separately, Plaintiffs also allege that "Defendants and members of OPEC began meeting and sharing dinners together," citing the annual CERAWeek Conference in Houston along with other large international industry events, including the 2018 OPEC International Seminar in Vienna and the 2019 World Economic Forum in Switzerland. *See* Compl. ¶¶ 112-135. To be clear, while Plaintiffs specify some other Defendants who are alleged to have attended these events and dinners, they do *not* specifically allege that EOG attended any of these events, but instead vaguely make reference to attendance by "Defendants" or "Defendants' shale executives" at various meetings or industry gatherings. *Id*. ¶ 133.

Plaintiffs' obfuscatory references to "Defendants" as a collective cannot be credited as allegations against EOG. That is because *Twombly* and its progeny demand "specificity in pleading." *Twombly*, 550 U.S. at 558. A Section 1 complaint must plausibly suggest that *each* individual defendant joined and participated in the conspiracy. Simply using the global term "defendants" alongside vague allegations of meetings is insufficient to allege involvement by specific defendants in an alleged conspiracy. *In re Travel Agent Com'n Antitrust Litig.,* 583 F.3d 896, 905 (6th Cir. 2009) (rejecting plaintiffs' "attempt to implicate" certain defendants who were not "mentioned in the body of the Amended Complaint," and with respect to whom plaintiffs failed to "specify how [they] are involved in the alleged conspiracy," by "relying on several vague allegations contained in the Amended Complaint that refer to 'defendants' or 'defendants' executives'"). If Plaintiffs wish to assert allegations against EOG, particularly in a case such as

10

this involving "complex claims against multiple defendants," then "they must make clear exactly who is alleged to have done what . . . ." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Oklahoma*, 519 F. 3d at 1249-50).

### C. Plaintiffs' Allegations Against EOG, Even When Considered Collectively, Are Insufficient to Support a Plausible Claim of Conspiracy Against EOG.

As to EOG, Plaintiffs' Complaint does nothing more than cobble together allegations of innocuous conduct in furtherance of its business operations and fiduciary duties. Nothing else is plead with specificity as to EOG, and that which is not plead with specificity cannot be credited under *Twombly*. Taken as a whole and considering all creditable allegations in the light most favorable to plaintiffs, Plaintiffs still fail to plausibly allege that EOG participated in any unlawful agreement. Public statements, technical interactions among companies operating on the same terrain, and reduced expansion of output, even taken together, are insufficient evidence of conspiracy to survive a motion to dismiss, *even where other factors are present*. *See In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42 (9th Cir. 2022) (rejecting conspiracy allegations and finding that public statements, information exchanges, and supply cuts, taken together, are insufficient evidence of conspiracy to survive a motion to dismiss, even where other plus factors are present).

### IV. Conclusion

For the foregoing reasons, EOG respectfully requests that this Court dismiss Plaintiffs' claim against EOG in the Consolidated Class Action Complaint in its entirety with prejudice.

DATED this 24th day of February 2025.

JENNINGS HAUG KELEHER MCLEOD
WATERFALL, LLP

By: */s/ Benjamin F. Feuchter*
Benjamin F. Feuchter
Thomas C. Bird
201 Third Street NW, Suite 1200
Albuquerque, New Mexico 87102
bf@jkwlawyers.com
tcb@jkwlawyers.com

John M. Taladay (admitted *pro hac vice*)
Christopher Wilson (admitted *pro hac vice*)
Kelsey Paine (admitted *pro hac vice*)
Megan Tankel (admitted *pro hac vice*)
Fran Jennings (admitted *pro hac vice*)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001-5692
Telephone: (202) 639-7909
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com
megan.tankel@bakerbotts.com
fran.jennings@bakerbotts.com

*Attorneys for Defendant*
*EOG RESOURCES, INC.*

## CERTIFICATE OF SERVICE

I, Benjamin F. Feuchter, hereby certify that on February 24, 2025, I caused the foregoing **Defendant EOG Resources, Inc.'s Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint** to be filed electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.


By: */s/ Benjamin F. Feuchter*
Benjamin F. Feuchter