**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | Case No. 1:24-md-03119-MLG-LF<br><br>MDL No. 3119<br><br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT PERMIAN RESOURCES CORPORATION'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

MOTION TO DISMISS ........................................................................................................... 1

MEMORANDUM IN SUPPORT........................................................................................... 1

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 4

       A.      Plaintiffs Affirmatively Allege That PR *Did Not* Engage In Parallel Conduct. ...... 4

              1.      Plaintiffs Allege That PR *Substantially Increased* Its Oil Production During The Class Period, and Admit To Excluding PR's Complete Production Figures. ...................................................................................... 4

              2.      PR's Complete Public Production Figures, On Which Plaintiffs Selectively Rely, Show That PR More Than Doubled Its Production from 2021 to 2023. ................................................................................................ 5

       B.      Even if Plaintiffs Could Allege Parallel Conduct, They Also Fail To Allege Any Meaningful "Plus Factors" As To PR. .................................................................... 8

       C.      Plaintiffs' Claims Against PR Should Be Dismissed With Prejudice. ................. 10

III. CONCLUSION................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brereton v. Bountiful City Corp.*,
 434 F.3d 1213 (10th Cir. 2006) ...................................................................................10

*Burtch v. Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011)........................................................................................2, 4

*Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.*,
 996 F.2d 537 (2d Cir. 1993).........................................................................................10

*In re Citric Acid Litig.*,
 191 F.3d 1090 (9th Cir. 1999) .......................................................................................9

*In re Crop Inputs Antitrust Litig.*,
 2024 WL 4188654 (E.D. Mo. Sept. 13, 2024)...............................................................1

*D'Augusta v. Am. Petroleum Inst.*,
 117 F.4th 1094 (9th Cir. 2024) ......................................................................................5

*Hampton v. root9B Techs., Inc.*,
 897 F.3d 1291, 1297 (10th Cir. 2018) ...........................................................................6

*In re Domestic Airline Travel Antitrust Litig.*,
 691 F. Supp. 3d 175 (D.D.C. 2023)...............................................................................5

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
 130 F.3d 1381 (10th Cir. 1997) .....................................................................................6

*In re Ins. Brokerage Antitrust Litig.*,
 618 F.3d 300 (3d Cir. 2010).........................................................................................10

*Jicarilla Apache Tribe v. Supron Energy Corp.*,
 728 F.2d 1555 (10th Cir. 1984) ...................................................................................10

*Knight v. Mooring Cap. Fund, LLC*,
 749 F.3d 1180 (10th Cir. 2014) ..............................................................................10, 11

*LaFlamme v. Société Air France*,
 702 F. Supp. 2d 136 (E.D.N.Y. 2010) ...........................................................................4

*Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*,
   2024 WL 371657 (W.D.N.Y. Feb. 1, 2024) .......................................................................4, 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ..............................................................................................9

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ................................................................................................3

*In re Pork Antitrust Litig.*,
   2019 WL 3752497 (D. Minn. Aug. 8, 2019) ....................................................................2, 5

*In re Travel Agent Comm'n Antitrust Litig.*,
   2007 WL 3171675 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir.
   2009) ..................................................................................................................................3, 4

*Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
   328 F. Supp. 3d 824 (N.D. Ill. 2018) ....................................................................................4

*Young v. Tesla, Inc.*,
   No. 1:21-CV-00917-JB-SCY, 2022 WL 3355832 (D.N.M. Aug. 15, 2022) .......................6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................... *passim*

**MOTION TO DISMISS**

Defendant Permian Resources Corporation ("PR")[1] joins the concurrently-filed Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint, filed on behalf of all Defendants (the "Joint Motion"), and brings this individual Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to present additional grounds for dismissal that apply specifically to PR.  PR relies upon and incorporates the arguments and legal authorities set forth in the Memoranda in Support of this Motion and the Joint Motion.

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

The *sine qua non* of a defendant's participation in a conspiracy to curtail shale oil production are allegations that a defendant has so reduced its shale oil production.  But as to PR, Plaintiffs have alleged—and public data confirms—just the opposite, that PR substantially increased its shale oil production during the alleged conspiracy period.

Because Plaintiffs do not allege any direct evidence of a conspiracy, to survive PR's motion to dismiss, Plaintiffs must plausibly allege circumstantial evidence that (1) PR engaged in "parallel conduct" (2) accompanied by sufficient "plus factors" indicating PR was party to a conspiracy.  *In re Crop Inputs Antitrust Litig.*, 2024 WL 4188654, at *12 (E.D. Mo. Sept. 13, 2024) (to survive a motion to dismiss, an antitrust plaintiff's allegations "have to support a plausible inference that each *individual* Defendant participated in the alleged conspiracy") (emphasis in original).

---

[1] Permian Resources Corporation is the successor to Centennial Resource Development, Inc., and was formed as a merger between Centennial and Colgate Energy Partners III, LLC in a transaction completed on September 1, 2022.  Plaintiffs interchangeably reference "Centennial," "Permian", "Centennial/Permian" and "Permian/Centennial" throughout the Complaint.  Except where otherwise indicated, we refer to the defendant entity here as "PR."

1

Here, Plaintiffs affirmatively allege that PR *did not* engage in parallel conduct. In the context of an alleged conspiracy to reduce production, parallel conduct means *reducing production*. Instead, Plaintiffs allege that PR *substantially increased* its production (they say by 56%) during the alleged class period, just as it did during the pre-class period. Complaint, ¶160, Table 1. That is not parallel conduct; that is conduct *contradicting* the alleged conspiracy. This alone requires dismissal of Plaintiffs' claims against PR. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228-29 (3d Cir. 2011) (plaintiff failed to allege parallel conduct in support of conspiracy to reduce credit amounts where allegations showed that different defendants "were choosing to decline, decrease, *and even increase credit*" during relevant period) (emphasis added).

Moreover, Plaintiffs acknowledge in their Complaint that, despite having access to PR's complete public production figures, they have elected to use *incomplete* figures covering less than half of the alleged class period, and no figures following the September 2022 Centennial/Colgate merger. Plaintiffs cannot plausibly allege that PR joined a conspiracy to reduce production when they *intentionally omit* PR's actual production. *See In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8 (D. Minn. Aug. 8, 2019) ("Without specific information regarding each Defendant, the Court has no basis to analyze which, how many, or when any of the individual Defendants may have affirmatively acted to reduce the supply of pork. And that type of information is vital to pleading parallel conduct.").

Further, Plaintiffs' excuse for using incomplete PR production figures makes no sense. Plaintiffs say they could not use PR's full production figures for 2021-2023 because they were unable to exclude increased production from oil wells acquired through the Colgate merger in September 2022. Complaint, ¶160, Table 1, n.149. As an initial matter, Plaintiffs do not explain

2

why it would make sense to exclude such production in the first place—and indeed, they *include* production from acquired wells in their pre-class period figure for PR.  In any event, the public production information that Plaintiffs omit from their Complaint *clearly distinguishes* between PR's increased production from existing wells, and PR's increased production from wells acquired through mergers and acquisitions—exactly the distinction Plaintiffs say they are unable to make.

While the Court does not need to consider PR's complete public production figures to grant this motion, it is entitled to do so because Plaintiffs selectively alleged some of those figures and omitted others.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiffs may not "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").  PR's complete production figures make it obvious why Plaintiffs omitted them: even using the reduced figures most favorable to Plaintiffs, PR **more than doubled** its shale oil production over the class period, **increasing production by 150%**, which is even higher than PR's production increase during the pre-class period.  Plaintiffs attempt to plead around this fact because they know it blows a fatal hole in the notion that PR conspired to reduce production.

Finally, even if Plaintiffs could allege that PR engaged in parallel conduct, they fail to allege a single "plus factor" specifically suggesting PR joined a conspiracy.  The Complaint's *only* specific substantive allegations about PR are that (1) a former CEO of PR's predecessor company, who retired before the alleged relevant period, attended two dinners at an energy trade conference that also were attended by other oil producers and OPEC representatives; (2) PR sometimes asks other operators to modify their drilling schedules to avoid conflicts with PR's own operations; and (3) PR has certain shareholders in common with other Defendants.  These mundane allegations are insufficient to plausibly allege that PR joined an antitrust conspiracy.  *See In re Travel Agent*

*Comm'n Antitrust Litig.*, 2007 WL 3171675, at *4 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir. 2009) (dismissing claims against defendant where there was no allegation that defendant engaged in parallel conduct by decreasing prices, and only substantive allegations were that defendant "was represented at three trade association meetings.").

For all these reasons, Plaintiffs' claims against PR should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs Affirmatively Allege That PR *Did Not* Engage In Parallel Conduct.

#### 1. Plaintiffs Allege That PR *Substantially Increased* Its Oil Production During The Class Period, and Admit To Excluding PR's Complete Production Figures.

Plaintiffs' only attempt to allege that PR reduced its oil production in parallel with the other Defendants is a chart that purports to compare each Defendant's "U.S. oil production growth rate" for the "pre-class period" of 2017-2019 and part of the alleged class period they describe as the "post-class period" of 2021-2023. Complaint, ¶ 160, Table 1. According to Plaintiffs' chart, PR increased its U.S. oil production by 123% during the pre-class period, and increased it by 56% during this post-class period. These affirmative allegations that PR increased production during the alleged relevant period make it impossible for Plaintiffs to plausibly allege that PR joined a conspiracy to reduce oil production. *See, e.g., Burtch*, 662 F.3d at 212; *Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824 (N.D. Ill. 2018) (plaintiff failed to allege defendant's participation in a supply-restriction conspiracy because there were no allegations that defendant cut supply in parallel with other defendants); *LaFlamme v. Société Air France*, 702 F. Supp. 2d 136 (E.D.N.Y. 2010) (antitrust plaintiff failed to allege parallel conduct in support of conspiracy to inflate prices where allegations showed that some defendants did not engage in price increases); *see also Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*, 2024 WL 371657, at *7

4

(W.D.N.Y. Feb. 1, 2024) (no parallel conduct where one defendant decreased its supply by 60% while other defendants decreased their supply by 90%).

Moreover, Plaintiffs concede that the 56% increase in PR's production they alleged for their "post-class period" is based on incomplete production figures, covering only PR's production growth from 2021 through August 2022, and *not* from September 2022 through 2023.  Complaint, ¶160, Table 1, n.149.  The result is a comparison in which all other Defendants are ascribed production figures covering the entire 2021-2023 "post-class" period, while PR's figures cover roughly half that period.  Plaintiffs' failure to allege PR's actual production during the claimed relevant period is an additional and independent reason that Plaintiffs' claims against PR must be dismissed.  *See, e.g., In re Pork Antitrust Litig.*, 2019 WL 3752497, at *8; *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (no plausible allegation of parallel conduct where plaintiff failed to "allege the amount of production cut" by alleged conspirators); *In re Domestic Airline Travel Antitrust Litig.*, 691 F. Supp. 3d 175, 197 n.17 (D.D.C. 2023) (in case alleging conspiracy to reduce industry capacity, pleading individual defendant's actual capacity changes is "vital to pleading parallel conduct.").

    2.    <u>PR's Complete Public Production Figures, On Which Plaintiffs Selectively Rely, Show That PR More Than Doubled Its Production from 2021 to 2023.</u>

The Court does not need to consider PR's complete public production figures to grant PR's Motion because, as explained above, Plaintiffs' allegations already expressly confirm that (1) PR substantially increased its production during the relevant period, and (2) Plaintiffs have intentionally avoided alleging PR's complete public production figures during that period.

Nonetheless, the Court is entitled to consider PR's complete public figures under Rule 12(b)(6) because Plaintiffs refer to and selectively rely upon those figures as the support for the

central allegation that PR joined the other Defendants in reducing oil production. Complaint, ¶160, Table 1, n.149 (citing and characterizing PR's "public…production figures"); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (when a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.") (internal citations omitted).[2]

Plaintiffs claim they had no choice but to use incomplete production information for PR because PR's "public figures" regarding its production following the Centennial/Colgate merger in September 2022 do not distinguish between oil wells previously owned by Centennial, and oil wells previously owned by Colgate. Complaint, ¶160, Table 1, n.149 (claiming that "public figures do not permit Plaintiffs to back-out production figures from Colgate's rigs post-acquisition.").

As an initial matter, Plaintiffs do not explain why it should make any difference whether PR increased production by building new wells or by acquiring wells through a merger. In both cases, PR increased its production, contradicting Plaintiffs' conspiracy theory that PR agreed to reduce production to inflate prices. Indeed, Plaintiffs' production figures for PR during the "pre-class period" of 2017-2019 *also* include production increases due to mergers and acquisitions, which Plaintiffs made no attempt to exclude.

---

[2] Considering such public production figures does not convert this motion into a motion for summary judgment. *See Young v. Tesla, Inc.*, No. 1:21-CV-00917-JB-SCY, 2022 WL 3355832, at *10 n.6 (D.N.M. Aug. 15, 2022) ("[A] court may consider documents referred to in the complaint without converting a motion to dismiss into a motion for summary judgment 'if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'") (citing *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1297 (10th Cir. 2018)).

In any event, Plaintiffs *easily* could have alleged accurate production figures for PR during the full "post-class period" through public SEC filings, including figures excluding production from oil wells acquired through mergers and acquisitions; they simply chose not to. PR's 2023 Form 10-K states that PR's U.S. net production of oil increased from 11,701 MBbls in 2021, to 18,235 MBbls in 2022, to 35,560 MBbls in 2023. *See* Declaration of Michael W. Scarborough, Ex. A (PR's 2023 SEC Form 10-K) at 867, 927; Request for Judicial Notice of Publicly Available SEC Filing ("RJN"). Regarding the production increase from 2022 to 2023 (*i.e.*, the figure that Plaintiffs intentionally omit from their Complaint), the Form 10-K explains:

> [This increase] resulted from placing 183 wells on production since December 31, 2022 as compared to 95 wells brought online during the year ended December 31, 2022. Oil production also benefited from wells acquired in the mergers with Colgate and Earthstone, which collectively added 9,852 MBbls of net oil production to the year ended December 31, 2023 compared to 3,517 MBbls of net oil production added from the Colgate Merger to the year ended December 31, 2022.

*Id.* at 929.

Any way you slice these numbers, they show that PR's production increase during Plaintiffs' 2021-2023 post-class period was ***even higher*** than the 56% increase (based on partial data) alleged in the Complaint. Indeed, if all production increases are included, then PR's net U.S. oil production increased from 11,701 MBbls in 2021 to 35,560 MBbls in 2023, for a ***total increase of 203%*** over Plaintiffs' post-class period. Ex. A, at 867. If the Court instead accepts Plaintiffs' assertion that production increases from acquired oil wells must be excluded from PR's 2023 production (despite being *included* in Plaintiffs' pre-class period figure) then PR's net U.S. oil production still increased from 11,701 MBbls in 2021 to 29,225 MBbls[3] in 2023, for a ***total***

---

[3] As set forth above, the public production figures state that PR increased production on acquired oil wells from 3,517 MBbls in 2022 to 9,852 MBbls in 2023, for an increase of 6,335 MBbls.

7

*increase of 150%* over Plaintiffs' post-class period.

Thus, if Plaintiffs had simply used PR's public production figures, and excluded production from PR's acquired wells (as they contend is appropriate), the relevant portion of the production table in their Complaint[4] would have looked like this:

**Table 1: Defendant's U.S. Oil Production Growth Rate in Pre- and Post-Class Period**

| Defendant | 2017-2019 U.S. Oil Production Growth Rate | 2021-2023 U.S. Oil Production Growth Rate |
|---|---|---|
| Centennial/Permian | 123% | 150% |

This makes it obvious why Plaintiffs have attempted to obfuscate PR's actual production. Not only did PR *more than double* its production during the alleged "post-class period"—when it was supposedly participating in a conspiracy to reduce production—it increased production at *an even greater rate* than it did during the pre-class period. Plaintiffs should not be allowed to play games with Rule 12(b)(6) and subject PR to expensive and burdensome antitrust discovery when the documents on which they rely confirm that their claims against PR have no substance.

**B.    Even if Plaintiffs Could Allege Parallel Conduct, They Also Fail To Allege Any Meaningful "Plus Factors" As To PR.**

In addition, Plaintiffs' claims against PR should be dismissed because Plaintiffs do not allege a single "plus factor" suggesting that PR joined the alleged conspiracy. Indeed, there are only *three* substantive allegations regarding PR in the entire Complaint, and none of them supports

---

Deducting that increase from PR's total 2023 production of 35,560 MBbls yields a remaining 2023 production of 29,225 MBbls.

[4] *Compare with* Complaint at ¶160, Table 1.

Plaintiffs' conspiracy theory.

*First*, Plaintiffs allege that Mark Papa—former CEO of PR's predecessor company Centennial, who retired in March 2020, *before* Plaintiffs' alleged class period—attended a *March 2018* speech by the Secretary General of OPEC at the annual CERAWeek energy conference, and described the speech to a reporter as "a statement that everyone will work together to make sure the oil market is well-supplied and everyone is happy to be working together." Complaint, ¶ 120. Similarly, Plaintiffs allege that Mr. Papa attended a dinner in *March 2019*, again at the CERAWeek conference, that the Secretary General of OPEC described as a "friendly conversation on current industry issues and the immediate prospects and challenges for all." *Id.*, ¶ 134.

These allegations do not amount to a "plus factor" supporting PR's participation in an antitrust conspiracy. "[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("Gathering information about pricing and competition in the industry is standard fare for trade associations."). Moreover, Mr. Papa's on-the-record statement to Reuters reporters, describing *someone else's* speech about the importance of a "*well-supplied*" oil market, *years before the alleged conspiracy period*, does not remotely support the inference that PR joined a conspiracy to restrict supply during the class period.

*Second*, Plaintiffs allege that an unnamed "fracking consultant" witnessed "instances where Centennial asked EOG Resources to modify its fracking schedule to accommodate Centennial's production plans." Complaint, ¶ 195a. Plaintiffs do not allege why these supposed schedule modifications were requested, and thus fail to exclude "obvious alternative explanations"

9

for one oil producer avoiding conflicts with another's operations, such as the need to avoid unsafe conditions when two operators are actively drilling in close proximity. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010) (complaint that fails to exclude "obvious alternative explanations" for alleged conduct must be dismissed). Moreover, nowhere do Plaintiffs allege that these schedule modifications had the effect of reducing any oil production.

*Finally*, Plaintiffs allege that PR has certain shareholders in common with other Defendants. Complaint, ¶¶ 197-198. Plaintiffs do not allege that any of these shareholders have the ability to control or influence any aspect of PR's business, much less any facts suggesting that the shareholders actively facilitated an antitrust conspiracy to reduce production. Indeed, courts have held that even *interlocking directorates*—which Plaintiffs do not and cannot allege here— may at best "indicate an opportunity to conspire," which is insufficient to plausibly allege an antitrust conspiracy. *Jicarilla Apache Tribe v. Supron Energy Corp.*, 728 F.2d 1555, 1561 (10th Cir. 1984) (interlocking directorate "does not by itself necessarily imply conspiracy to restrain trade."); *see also Capital Imaging Assocs. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993) ("The mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred.")

## C. Plaintiffs' Claims Against PR Should Be Dismissed With Prejudice.

A district court may "dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). "If such a dismissal operates on the merits of the complaint, it will also ordinarily be entered with prejudice." *Id. at* 1219; *see also Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) ("[D]ismissal with prejudice is appropriate where a

complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.") (citing *Brereton*, 434 F.3d at 1219). Plaintiffs' claims against PR wholly depend on the allegation that PR limited its production during the class period. That conclusory allegation is not supported by the figures Plaintiffs allege, and worse yet, Plaintiffs' incomplete figures are cherry-picked to obscure an even more dramatic record of increased production obvious from PR's public SEC filings. This is not a fixable defect. Because any amendment would be futile, Plaintiffs' claims against PR should dismissed with prejudice.

### III. CONCLUSION

For these reasons, and those set forth in the Joint Motion and supporting Memorandum, PR respectfully requests that the Court dismiss Plaintiffs' claims against PR with prejudice.

Dated: February 24, 2025

Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/ Michael W. Scarborough*
Michael W. Scarborough
Dylan Ballard
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald
Stephen M. Medlock
2200 Pennsylvania Avenue, Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6500
cseebald@velaw.com
smedlock@velaw.com

*Attorneys for Defendant
Permian Resources Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2025, a copy of the foregoing document was electronically filed through the Court's CM/ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ *Michael W. Scarborough*
Michael W. Scarborough