# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION | Case No. 1:24-md-03119-MLG-LF |
| *This documents relates to all actions.* | ORAL ARGUMENT REQUESTED |

**DEFENDANTS HESS CORPORATION'S AND JOHN HESS'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## MOTION TO DISMISS

Defendants Hess Corporation and John Hess join the concurrently filed Defendants' Joint Motion to Dismiss (ECF No. 129), filed on behalf of all Defendants, and submit this Motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to present additional grounds for dismissal, detailed below, that apply specifically to Hess Corporation and John Hess.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

    I.   Plaintiffs fail to state a claim against the Hess Defendants. .............................................3

        A.  Plaintiffs' parallel-conduct pleadings fail. ..................................................................4

        B.  Even assuming parallel conduct, Plaintiffs have not pleaded a viable claim. ...............6

    II.  This Court lacks personal jurisdiction over the Hess Defendants. ..................................10

CONCLUSION.............................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AER Advisors* v. *Fid. Brokerage Servs., LLC*,
  921 F.3d 282 (1st Cir. 2019) ........................................................................................12

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007) .......................................................................................................4

*Brereton* v. *Bountiful City Corp.*,
  434 F.3d 1213 (10th Cir. 2006) .....................................................................................4

*Burger King Corp.* v. *Rudzewicz*,
  471 U.S. 462 (1985) .....................................................................................................10

*CollegeSource* v. *AcademyOne*,
  653 F.3d 1066 (9th Cir. 2011) .....................................................................................10

*Daniel* v. *Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) ........................................................................................12

*GTE New Media Servs., Inc.* v. *BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) ..................................................................................12

*Hastey* v. *Welch*,
  449 F. Supp. 3d 1053 (D. Kan. 2020) ...........................................................................5

*Housey* v. *Procter & Gamble Co.*,
  2022 WL 874731 (S.D.N.Y. Mar. 24, 2022) ................................................................7

*In re Aluminum Warehousing Antitrust Litigation*,
  2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ..............................................................8

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ..........................................................................................9

*In re Credit Default Swaps Auctions Litigation*,
  710 F. Supp. 3d 895, 938 (D.N.M. 2023) ...................................................................12

*In re DRAM Indirect Purchaser Litig.*,
  2020 WL 8459279 (N.D. Cal. Nov. 24, 2020) .............................................................7

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
  44 F.4th 959 (10th Cir. 2022) .....................................................................................12

*In re Korean Air Lines Disaster*,
  829 F.2d 1171 (D.C. Cir. 1987) ............................................................................................4

*In re Musical Instrs. & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) .....................................................................................6, 7, 8

*In the Matter of Chevron Corp. & Hess Corp.*,
  File No. 241-0008 (Sep. 30, 2024) .......................................................................................9

*KM Enters.* v. *Glob. Traffic Techs.*,
  725 F.3d 718 (7th Cir. 2013) ..............................................................................................12

*Llacua* v. *W. Range Ass'n*,
  930 F.3d 1161 (10th Cir. 2019) ............................................................................................4

*Mayor & City Council of Balt.* v. *Citigroup, Inc.*,
  709 F.3d 129 (2d Cir. 2013) .................................................................................................4

*McManemy* v. *Roman Cath. Church*,
  2 F. Supp. 3d 1188 (D.N.M. 2013) ....................................................................................11

*Melea, Ltd.* v. *Jawer SA*,
  511 F.3d 1060 (10th Cir. 2007) ..........................................................................................11

*Multistate Legal Stud.* v. *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*,
  63 F.3d 1540 (10th Cir. 1995) ..............................................................................................6

*Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*,
  911 F.3d 505 (8th Cir. 2018) ................................................................................................6

*Pfister* v. *Selling Source*,
  931 F. Supp. 2d 1109 (D. Nev. 2013) .................................................................................10

*Robbins* v. *Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ............................................................................................7

*Shrader* v. *Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ..........................................................................................10

*Smallen* v. *W. Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) .......................................................................................2, 5

*TV Commc'ns Network* v. *Turner Network Television*,
  964 F.2d 1022 (10th Cir. 1992) ............................................................................................3

*Whiting* v. *Hogan*,
  855 F. Supp. 2d 1266 (D.N.M. 2012) .................................................................................10

**Statutes and Rules**

15 U.S.C. § 1 ......................................................................................................................... 3, 8

15 U.S.C. § 22 ................................................................................................................. 10, 11, 12

Fed. R. Civ. P. 12(b)(2) .............................................................................................................. 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 4

N.M. Stat. Ann. § 38-1-16(C) .................................................................................................... 10

**PRELIMINARY STATEMENT**

Plaintiffs allege that Hess Corporation and its CEO, John Hess, participated in a global oil-price-fixing conspiracy among U.S. shale oil producers and OPEC. These claims should be dismissed as to all Defendants, as set out in Defendants' Joint Motion, but the claims against Hess and Mr. Hess (the "Hess Defendants") are also due to be dismissed for two independent reasons.

*First,* the keystone of the Complaint — that the Hess Defendants "had the ability to increase production" but "chose not to" in lockstep with the other Defendants — is shattered by the judicially noticeable fact that Hess's oil production markedly *increased* in the period at issue. Indeed, the growth rate in oil production — the single metric alleged to have declined for each Defendant, purportedly indicating "parallel conduct" — also dramatically *increased* for Hess. Plaintiffs seek to wave away this reality by ignoring Hess's substantial international oil production. But cherry-picking domestic production is flatly at odds with the Complaint's alleged relevant market for *global* crude oil.  In short, Hess's judicially noticeable crude oil production increases doom Plaintiffs' parallel-conduct claim.  On this ground alone, the Complaint against the Hess Defendants should be dismissed.  And even assuming parallel conduct, Plaintiffs' non-conclusory allegations provide no "plus factor" basis to infer the Hess Defendants' entry into a conspiracy.

*Second*, this Court cannot exercise personal jurisdiction over the Hess Defendants.  Hess Corporation has no contacts with the underlying forums, precluding personal jurisdiction whether by long-arm statute, conspiracy jurisdiction, or under the Clayton Act.  And as set forth below, this Court lacks personal jurisdiction over Mr. Hess as well.

For each of these reasons, the Complaint is due to be dismissed as to the Hess Defendants.

1

## BACKGROUND

The allegations underlying Plaintiffs' claims are set out in detail in the Joint Motion.  For the present motion, it is necessary to highlight only the following.

Defendants are U.S. shale oil producers who participate in the "global oil market." (ECF No. 86 ("Compl.") ¶ 8.)  Defendant Hess Corporation ("Hess") is a publicly traded Delaware corporation headquartered in New York.  (*Id.* ¶ 75.)  Its CEO, John Hess, resides in New York and has led the company since 1995.  (*Id.* ¶ 79.)  Hess extracts crude oil around the world, including shale crude oil in North Dakota.  (*Id.* ¶ 75; Ex. 1, Hess 2023 10-K, at 8.)[1]  It has no operations in California, Nevada, or New Mexico.  (Ex. 3, Wiley Decl. ¶ 5.)  Like the other Defendants and most of the S&P 500, Hess's stockholder base includes major institutional investors such as BlackRock, State Street, and Vanguard.  (Compl. ¶ 197.)

From 2017 to 2019 and in 2022 and 2023, U.S. shale oil executives and OPEC officials met for dinner in Houston while attending CERAWeek, the world's premier annual energy conference.  (*Id.* ¶¶ 113, 119, 132, 152.)  Additional dinners attended by these industry leaders took place in New York and Austria in 2018.  (*Id.* ¶¶ 124, 126.)  Mr. Hess was present at certain of those dinners.  Mr. Hess also sat on a panel with OPEC's Secretary General at the Davos World Economic Forum in 2019.  (*Id.* ¶ 129.)

Beginning in 2021, Plaintiffs allege that Defendants and OPEC entered into a conspiracy to "fix, raise, and stabilize the price for crude oil and crude oil derivative fuel products" by "restraining their respective production volumes."  (*Id.* ¶ 261.)  Defendants were allegedly

---

[1] This Court can take judicial notice of SEC filings. *See, e.g.*, *Smallen* v. *W. Union Co.*, 950 F.3d 1297, 1310 n.9 (10th Cir. 2020).

necessary for this arrangement because "fracking"— a method for extracting shale oil — "changed the global oil market." (*Id.* ¶ 97). U.S. shale's "arrival on the global oil scene" in the early-to-mid-2010s had been "a nightmare for OPEC." (*Id.* ¶ 100.) The additional "global supply" affected OPEC's power over "global oil prices." (*Id.* ¶¶ 102-03.) And what followed were years of "global competition" between OPEC and U.S. shale oil producers. (*Id.* ¶ 105.) But Plaintiffs allege that after "multiple shocks through the world oil markets" from the COVID-19 pandemic, Defendants purportedly determined to "exploit[] their position as global marginal producers by agreeing to curtail their respective crude oil production" as part of an agreement with OPEC. (*Id.* ¶¶ 82, 138.)

In October 2023, Hess entered into a merger agreement with Chevron. In connection with the pending merger, the Federal Trade Commission filed an administrative complaint which was resolved by the FTC entering into a consent decree with Hess and Chevron that included a term prohibiting Mr. Hess from serving on Chevron's board. (*Id.* ¶ 183-85.)

## ARGUMENT

Plaintiffs bring one claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, and dozens of tag-along state antitrust and consumer protection claims. The state claims fall with the Section 1 claim. (*See* Joint Motion at 32.) The claims should be dismissed for failure to state a claim and because this Court lacks personal jurisdiction.

### I.     **Plaintiffs fail to state a claim against the Hess Defendants.**

To state a claim under Section 1 of the Sherman Act, Plaintiffs must allege facts sufficient to establish the Hess Defendants entered into a contract, combination, or conspiracy that unreasonably restrained trade in the relevant market. *TV Commc'ns Network* v. *Turner Network*

3

*Television*, 964 F.2d 1022, 1027 (10th Cir. 1992).[2] To state a valid claim, the conspiracy must be more than just "conceivable"; it must be "plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). Plausibility can be established by either direct or circumstantial evidence. *Llacua* v. *W. Range Ass'n*, 930 F.3d 1161, 1174 (10th Cir. 2019). Direct evidence is "explicit and requires no inferences." *Id.* at 1177. It is akin to a "smoking gun." *Mayor & City Council of Balt.* v. *Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). Plaintiffs plead no such evidence (*see* Joint Motion at 19-20); they instead claim circumstantial evidence, which requires (1) allegations of "parallel conduct" among Defendants *and* (2) "some additional type of contextual evidence" that "nudge[s] an antitrust conspiracy allegation beyond the line from possible to plausible." *Llacua*, 930 F.3d at 1178 (citing *Twombly*, 550 U.S. at 556-57).

The Complaint fails this test on its pleadings. Hess did not act in parallel with the other Defendants according to the single metric alleged to reveal parallel conduct. And even if that were not the case, Plaintiffs fail to allege the "type of contextual evidence" — so-called "plus factors" — that suffice to turn parallel into plausibly anticompetitive conduct. As the Complaint does not state a claim upon which relief may be granted against the Hess Defendants, it must be dismissed with prejudice as a matter of law. Fed. R. Civ. P. 12(b)(6).[3]

### A.    Plaintiffs' parallel-conduct pleadings fail.

In an attempt to plead "parallel conduct," Plaintiffs allege a collective refusal by Defendants to increase their oil production. (Compl. ¶¶ 9, 149.) As to the Hess Defendants, they

---

[2]    A court adjudicating federal claims in a multidistrict litigation applies the law of its own Circuit. *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

[3]    "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton* v. *Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

rely solely on the unsupported allegation that Hess's "U.S. Oil Production Growth Rate" decreased from 25% in the 2017-19 period to negative 6% in the 2021-23 period. (*Id.* ¶ 160.) Touting similar alleged decreases in the other Defendants' respective growth rates, Plaintiffs assert that "Defendants had the ability to increase production and gain market share, they just chose not to." (*Id.*) This lynchpin of Plaintiffs' conspiracy claims against the Hess Defendants fails at the pleading stage.

As Hess's annual SEC filings show, its oil production *increased* during the period at issue, *as did the growth rate* in Hess's oil production compared to the preceding three-year period that Plaintiffs reference. Well-established law in this Circuit permits courts to take judicial notice of documents publicly filed with the SEC. *See, e.g.*, *Smallen* v. *W. Union Co.*, 950 F.3d 1297, 1310 n.9 (10th Cir. 2020) (taking judicial notice of SEC filings); *Hastey* v. *Welch*, 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020) (same). Hess's SEC filings demonstrate that its total production of crude oil surged — growing by nearly 40% — from 2021 to 2023, while in the 2017-19 period that Plaintiffs use for comparison its total crude oil production had actually decreased by around 5%. Ex. 1, Hess 2023 10-K, at 8; Ex. 2, Hess 2019 10-K, at 7. Hess thus did not move in parallel with the other Defendants according to the only metric that Plaintiffs invoke. This alone dooms Plaintiffs' attempt to establish through circumstantial evidence that the Hess Defendants' engaged in "parallel conduct" as part of the alleged conspiracy to fix the global price of oil.

In a bid to bolster its parallel-conduct allegations, Plaintiffs baselessly limit Hess's oil production figures to its U.S. operations. Even that alleged data is incorrect.[4] In any event, where

---

[4] Hess's U.S. crude oil production fell by about 3% from 2021-23, not 6% as alleged. Ex. 1, Hess 2023 10-K, at 8. And its production from shale operations grew slightly, by approximately 4%. *Id.*

5

the Complaint asserts a global conspiracy to constrain global crude oil prices, there can be no reasonable inference drawn from an allegation about Hess's domestic production to the exclusion of its significant international operations. Hess produced over half of its crude oil in offshore South America and Asia in 2023, for instance. Ex. 1, Hess 2023 10-K, at 8. All that production is sold into the global crude oil market, just like Hess's domestic crude oil production, as the Complaint itself makes plain. (*See, e.g.*, Compl. ¶¶ 8, 13, 82, 93-94, 96-97, 100, 102-03.)

Courts have long warned that "ambiguous conduct that is as consistent with permissible competition as with illegal conspiracy does not by itself support an inference of antitrust conspiracy under Sherman Act section 1." *Multistate Legal Stud.* v. *Harcourt Brace Jovanovich Legal & Prof'l Publ'ns*, 63 F.3d 1540, 1556 (10th Cir. 1995). The Hess Defendants' conduct was not even ambiguous parallel conduct — it was conduct directly contrary to what Plaintiffs claim caused oil prices to rise; and it was not parallel to, but rather the opposite of, the conduct that Plaintiffs assert as to the other Defendants. Thus failing to plead that the Hess Defendants acted in tandem with the other Defendants, Plaintiffs cannot establish circumstantial evidence of the Hess Defendants' entry into the alleged conspiracy.[5] The Complaint must therefore be dismissed.

**B.     Even assuming parallel conduct, Plaintiffs have not pleaded a viable claim.**

Even if the Complaint had adequately pleaded that the Hess Defendants acted in parallel with the other Defendants, the remaining allegations do not suffice as the "plus factors" necessary to state a viable claim that the parallel conduct resulted from a conspiracy. Plus factors are "economic actions and outcomes that are largely inconsistent with unilateral conduct." *In re*

---

[5]     Any discussion of "plus factors" that can elevate parallel conduct to plausibly anticompetitive conduct is moot. *See, e.g.*, *Park Irmat Drug Corp.* v. *Express Scripts Holding Co.*, 911 F.3d 505, 516-17 (8th Cir. 2018) ("Because [plaintiff] fails to plausibly plead parallel conduct, no discussion of any 'plus factors' is necessary.").

6

*Musical Instrs. & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015). The Hess-specific anecdotes Plaintiffs marshal — Mr. Hess's attendance at industry events and dinners, Hess's stockholder base, the consent decree — do not clear the plus-factors hurdle recognized by courts.

First, attendance by Mr. Hess and representatives of other shale companies and OPEC at industry events and dinners together is perfectly consistent with the Hess Defendants' rational, independent decision-making concerning oil production. The law is clear that "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement." *Musical Instruments*, 798 F.3d at 1196. And while Plaintiffs attempt to create the illusion of a mass of such meetings by including several events from years before the conspiracy is even asserted to have started, they allege *no* such meetings in either the year of or prior to the alleged conspiracy's inception. *See In re DRAM Indirect Purchaser Litig.*, 2020 WL 8459279, at *10 (N.D. Cal. Nov. 24, 2020) (rejecting "information exchange" plus factor where plaintiffs "fail[ed] to allege who, did what, to whom (or with whom), where, and when").[6] Further, scrutiny of the sources cited in the Complaint reveals that Plaintiffs repeatedly mischaracterized these second-hand accounts, yielding allegations that warrant no credit from the Court. *See Housey* v. *Procter & Gamble Co.*, 2022 WL 874731, at *6 (S.D.N.Y. Mar. 24, 2022) (rejecting plaintiff's plea to rely on "merely her characterizations of the evidence as alleged" rather than the articles she cited).[7]

---

[6] Plaintiffs also allege that Hess had the opportunity to collude with the other Defendants because their executives purportedly met with one another to "discuss certain best practices" and "construction and operation methods." (Compl. ¶ 195(b)-(c).) These bare allegations similarly cannot support any inference of a conspiracy. *See Robbins* v. *Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008) (criticizing "complaints that mention[] no specific time, place, or person involved in the alleged conspiracies").

[7] Plaintiffs allege, for instance, that "according to Defendant Hess's CEO, John Hess," a 2017 meeting "served as a channel for OPEC's Secretary General to 'garner views and opinions from other senior oil industry executives' in 'bi-lateral' meetings with shale executives." (Compl. ¶ 114.) But Plaintiffs ascribe to Mr. Hess words never spoken

7

Second, as for Hess sharing several stockholders with the other Defendants, the Court should give no weight to the conclusory assertion that such common ownership by some of the world's foremost institutional investors "creates an additional factor enabling and facilitating Defendants' agreed output restrictions." (Compl. ¶ 198.) Courts have rejected such specious allegations. *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4277510, at *31 (S.D.N.Y. Aug. 29, 2014), *aff'd*, 833 F.3d 151 (2d Cir. 2016), (finding common ownership irrelevant absent allegations the common owners conspired with each other or the defendants). And Plaintiffs offer no basis to infer that Hess's institutional stockholders — who own a significant percentage of the entire public market — would benefit from raising the price of oil, a major cost of input to many of the other companies in which they hold stock.

Finally, the FTC's complaint and the consent decree furnish no plus factors. In *Musical Instruments*, the Ninth Circuit refused to credit as a plus factor a prior FTC complaint against and consent decree with a defendant in an alleged conspiracy to fix prices. 798 F.3d at 1196. As the court explained, "neither the FTC complaint nor the consent decree alleged that any company or group actually conspired or agreed to adopt [minimum-price] policies, nor . . . suggest[ed] such an agreement was made." *Id.* (noting also that Section 5 of the FTC Act — under which the FTC also filed its administrative complaint against Hess — "does not require allegation and proof of a contract, combination, and conspiracy," unlike Section 1 of the Sherman Act).

Unlike the *Musical Instruments* defendant, the Hess Defendants have never been

---

by him *and* nowhere attributed to him in the cited source. (*See id.* & n.39.) Similarly, Plaintiffs allege that the Secretary General had at one point a "general understanding" — "from a meeting with executives of Defendants Hess and Continental" — that an oil price war was "not in the interest of anybody." (*Id.* ¶ 118.) But the Secretary General did not mention any meetings. The cited article simply quotes his "general understanding" and then notes that he had met with Hess and Continental executives earlier in the year. (*Id.* & nn.46-47).

8

investigated for price fixing by the FTC — the consent decree at issue emerged from the standard regulatory review that accompanied Hess's entry into a merger agreement with Chevron. And though Plaintiffs claim that Mr. Hess was prevented from joining Chevron's board "based on FTC's evidence of Hess's years-long efforts to fix the price of crude oil" (Compl. ¶ 79), the FTC complaint *nowhere* makes such an allegation. (*See id.* ¶ 183 & n.174.) In fact, as one Commissioner noted in dissent from the decision to file an administrative complaint, there was "*no reason* to believe the law has been violated" and "[n]othing in the complaint alleges that Mr. Hess has ever attempt to, or coordinated with, a rival." Dissenting Statement of Comm'r Holyoak, *In the Matter of Chevron Corp. & Hess Corp.*, File No. 241-0008, at 1-2 (Sep. 30, 2024) (emphasis in original); *see also* Dissenting Statement of Comm'r Ferguson at 5-6 ("The Commission leveraged its [regulatory] authority . . . even though the lack of a plausible [antitrust] theory had long been obvious."). The FTC complaint states that Mr. Hess communicated with OPEC representatives about its global output and encouraged them to stabilize oil markets. There is a considerable gap between allegedly inquiring about OPEC's positions and agreeing to fix one's own production levels. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("[C]ommunications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise.").[8] The FTC complaint and consent decree allegations do not plead a valid plus factor.

Given the absence of any plus-factor basis to infer the Hess Defendants entered a conspiracy, the Complaint does not state a valid claim even if one assumes parallel conduct.

---

[8] Plaintiffs' conclusory allegation that Mr. Hess's communications with OPEC were also a plus factor because they were against Hess's "self-interest" is unavailing for the same reason. (Compl. ¶¶ 205-06; *see also* Joint Motion at 29). Further, the paragraphs Plaintiffs cite for support do not even reference Mr. Hess. (Compl. ¶ 205 & n.85).

9

## II. This Court lacks personal jurisdiction over the Hess Defendants.

"The plaintiff bears the burden of establishing personal jurisdiction." *Shrader* v. *Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). Plaintiffs proffer a single paragraph to meet this burden for all Defendants, asserting that this Court has personal jurisdiction as each Defendant transacts business, has substantial contacts with, and engaged in an antitrust conspiracy directed at the United States, including this District. (Compl. ¶ 89.)[9] The allegations appear designed to implicate three potential sources of personal jurisdiction: long-arm jurisdiction; conspiracy jurisdiction, and Section 12 of the Clayton Act, 15 U.S.C. § 22. None of these three sources grants this Court personal jurisdiction over the Hess Defendants on the record before the Court.

First, with respect to the long-arm statutes of the forums in which the cases in this MDL were filed, New Mexico, California, and Nevada all extend the jurisdictional reach of their courts as far as constitutionally permissible, *see Whiting* v. *Hogan*, 855 F. Supp. 2d 1266, 1279 (D.N.M. 2012), *CollegeSource* v. *AcademyOne*, 653 F.3d 1066, 1073 (9th Cir. 2011), *Pfister* v. *Selling Source*, 931 F. Supp. 2d 1109, 1115 (D. Nev. 2013),[10] and "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474 (1985) (quotation omitted); *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (explaining that specific jurisdiction requires plaintiff's claims to "arise out of or relate to the defendant's contacts' with the forum"). The

---

[9] Plaintiffs also allege that personal jurisdiction exists because "each Defendant . . . has manufactured, sold, shipped, and/or delivered substantial quantities of shale oil throughout the United States, including this District." (Compl. ¶ 89.) That is not true for Hess as to any of the underlying districts (Ex. 3, Wiley Decl. ¶ 5), and nationwide contacts are irrelevant as to the present jurisdictional analysis. *See infra* n.11 and accompanying text.

[10] In New Mexico, however, the text of the long-arm statute states that it extends only to causes of action "arising from" in-state conduct. *See* N.M. Stat. Ann. § 38-1-16(C).

10

Complaint cannot clear this threshold.  Hess Corporation, which is domiciled in Delaware and headquartered in New York (Compl. ¶ 75.), has *no contacts* with the relevant forums — Hess does not transact *any* business in New Mexico, California, or Nevada (nor did it during the period at issue).  (Ex. 3, Wiley Decl. ¶ 5.)  The Court therefore lacks personal jurisdiction over Hess, and no derivative personal jurisdiction is conferred upon it via California or Nevada.  *See In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495-96 (J.P.M.L. 1968).  Mr. Hess, who resides in New York, transacts no business in and has no relevant contacts with Nevada and New Mexico.  (Ex. 3, Wiley Decl. ¶ 8).  And even if his minimum contacts with California sufficed for that transferor court to purportedly furnish derivative personal jurisdiction, it would violate due process for this Court to exercise jurisdiction over the Hess Defendants for the reasons stated in Defendant Pioneer Natural Resources Company's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 130, Part D).  Plaintiffs therefore have not met their burden to establish specific jurisdiction over the Hess Defendants.

Second, Plaintiffs cannot meet their burden through "conspiracy jurisdiction," a theory which imputes each co-conspirator's contacts with a forum to the others.  In the Tenth Circuit, conspiracy jurisdiction requires that "the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy."  *Melea, Ltd.* v. *Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007).  As detailed in Section I above, Plaintiffs have not made such a showing as to the Hess Defendants.  Moreover, "the assertion of any conspiracy claim to establish jurisdiction may not do away with the minimum contacts requirement."  *McManemy* v. *Roman Cath. Church*, 2 F. Supp. 3d 1188, 1197 (D.N.M. 2013) (citation omitted).  Conspiracy jurisdiction is plainly inapplicable here.

Finally, though the Third and Ninth Circuits have interpreted the Clayton Act to confer nationwide jurisdiction over corporations, that is not so in this Circuit. The Tenth Circuit has never endorsed this expansive standard, an erroneous one which the Courts of Appeals for the Second, Seventh, and D.C. Circuits have all rejected because Section 12 grants personal jurisdiction over a corporation *only* where venue is proper in the district.[11] *See KM Enters.* v. *Glob. Traffic Techs.*, 725 F.3d 718, 728-30 (7th Cir. 2013); *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 424-27 (2d Cir. 2005); *GTE New Media Servs., Inc.* v. *BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000).[12] Venue is proper under Section 12 only "in any district wherein [a corporation] may be found or transacts business." As noted above, Hess does not transact *any* business in any of the relevant Districts. Section 12 thus does not grant this Court personal jurisdiction over Hess.

As Plaintiffs have failed to carry their burden, the Complaint should be dismissed as to the Hess Defendants for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

## CONCLUSION

For these reasons, and those set out in the Joint Motion, the claims against the Hess Defendants should be dismissed with prejudice.

---

[11] That the Ninth Circuit (a transferor forum) interprets the Clayton Act differently is irrelevant. The Tenth Circuit has held that when a case is transferred in the MDL context, "the norm is that the transferee court applies its own Circuit's cases on the meaning of [substantive] federal law." *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 44 F.4th 959, 980 (10th Cir. 2022) (quoting *AER Advisors* v. *Fid. Brokerage Servs., LLC*, 921 F.3d 282, 288 & n.5 (1st Cir. 2019) (collecting authorities)). Though no case in this Circuit has considered the issue directly as to personal jurisdiction, where a finding of personal jurisdiction depends on an interpretation of federal law such as the Clayton Act the same choice of law rule should apply.

[12] In *Credit Default Swaps Auctions Litigation*, a court in this District applied the Ninth Circuit's interpretation — without explanation — to a foreign entity. 710 F. Supp. 3d 895, 938 (D.N.M. 2023). That decision bears no controlling weight here.

Dated: February 24, 2025        WACHTELL, LIPTON, ROSEN & KATZ

/s/ Kevin S. Schwartz
Kevin S. Schwartz (*pro hac vice*)
David A. Papirnik (*pro hac vice*)
51 West 52nd Street
New York, New York  10019
(212) 403-1000
KSchwartz@wlrk.com
DAPapirnik@wlrk.com

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Benjamin E. Thomas
201 3rd Street NW, Suite 2200
Albuquerque, New Mexico 87102
(505) 765-5900
bthomas@rodey.com

*Attorneys for Defendants Hess Corporation and John B. Hess*

## CERTIFICATE OF SERVICE

I, Kevin S. Schwartz, hereby certify that, on February 24, 2025, I caused the foregoing to be filed electronically through the CM/ECF system, which cause all parties or counsel of record to be served by electronic means.

/s/ Kevin S. Schwartz
Kevin S. Schwartz