## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: Shale Oil Antitrust Litigation<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 1:24-md-03119-MLG-LF<br>Judge Matthew L. Garcia<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM IN SUPPORT OF DEFENDANT EXPAND ENERGY CORPORATION'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

RELIEF REQUESTED.................................................................................................1

INTRODUCTION ........................................................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD...................................................................................................4

ARGUMENT ...............................................................................................................5

I.      THE COMPLAINT DOES NOT ALLEGE FACTS THAT PLAUSIBLY
        SUGGEST THAT EXPAND PARTICIPATED IN THE ALLEGED
        CONSPIRACY ..................................................................................................5

A.      The Court Cannot Infer Conspiracy from Expand's Alleged Reduction in Shale Oil
        Production ..........................................................................................................6

B.      None of Plaintiffs' Other Allegations Against Expand Plausibly Suggest That It
        Participated In The Alleged Conspiracy .............................................................8

II.     PLAINTIFFS' SHERMAN ACT CLAIM FAILS FOR THE ALTERNATIVE
        REASON THAT PLAINTIFFS CANNOT STATE A CLAIM FOR INJUNCTIVE
        RELIEF AGAINST EXPAND ........................................................................11

CONCLUSION...........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alvarado v. KOB–TV, L.L.C.*,
    493 F.3d 1210 (10th Cir. 2007) ............................................................10

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*,
    127 F.4th 178 (10th Cir. 2025) ...........................................................7

*Baar v. Jaguar Land Rover N. Am., LLC*,
    295 F. Supp. 3d 460 (D.N.J. 2018) .....................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................7

*Bristow Endeavor Healthcare, LLC* v. *Blue Cross & Blue Shield Ass'n*,
    691 F. App'x 515 (10th Cir. 2017) ......................................................4

*Cayman Expl. Corp. v. United Gas Pipe Line Co.*,
    873 F.2d 1357 (10th Cir. 1989) .......................................................6, 7

*Clark v. Dashner*,
    No. CV 14-00965 KG-KK, 2016 WL 3621274 (D.N.M. June 30, 2016) ..............................10

*Compliance Mktg., Inc. v. Drugtest, Inc.*,
    2010 WL 1416823 (D. Colo. Apr. 7, 2010)..........................................10

*CVB, Inc. v. Corsicana Mattress Co.*,
    2024 WL 4505044 (D. Utah Oct. 16, 2024) .........................................5

*D'Augusta v. Am. Petroleum Inst.*,
    117 F.4th 1094 (9th Cir. 2024) ...........................................................7

*Davis v. AT&T Wireless Servs. Inc.*,
    2012 WL 692413 (C.D. Cal. Mar. 1, 2012), *aff'd*, 570 F. App'x 652 (9th Cir. 2014) ..............................................................................................10

*Harjo v. City of Albuquerque*,
    307 F. Supp. 3d 1163 (D.N.M. 2018) .................................................4

*Hogan v. Pilgrim's Pride Corp.*,
    2018 WL 1316979 (D. Colo. Mar. 14, 2018) ......................................6

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014)................................10

ii

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 24951 (N.D. Jan. 28, Cal. 2016) ........................................................5

*In re German Auto. Mfgs. Antitrust Litig.*,
  392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...................................................................10

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  2020 WL 6270948 (N.D. Cal. Oct. 23, 2020)..................................................................11

*In re Mexican Gov't Bonds Antitrust Litig.*,
  412 F. Supp. 3d 380 (S.D.N.Y. 2019)...................................................................4

*In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*,
  997 F. Supp. 2d 526 (N.D. Tex. 2014) ...................................................................7

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ...................................................................9

*Kan. Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ...................................................................4

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................4

*Llacua v. W. Range Ass'n*,
  930 F.3d 1161 (10th Cir. 2019) ...................................................................5, 7, 8

*Mitchael v. Intracorp, Inc.*,
  179 F.3d 847 (10th Cir. 1999) ...................................................................8

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)...................................................................4

*Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*,
  714 F.Supp.3d 209 (W.D.N.Y. 2024) ...................................................................6

*New York v. Facebook, Inc.*,
  549 F. Supp. 3d 6 (D.D.C. 2021), *aff'd sub nom. New York v. Meta Platforms,
  Inc.*, 66 F.4th 288 (D.C. Cir. 2023)...................................................................11

*S.E.C. v. Goldstone*,
  952 F. Supp. 2d 1060 (D.N.M. 2013) ...................................................................4

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ...................................................................4, 5

*Smallen* v. *Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ...................................................................4

*United Food and Commercial Workers Union v. Chesapeake Energy Corp.*,
    2013 WL 4494384 (W.D. Okla. Mar. 29, 2013)........................................................4

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969)..................................................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 12

## RELIEF REQUESTED

Expand Energy Corporation ("Expand"), formerly known as Chesapeake Energy Corporation, moves under Fed. R. Civ. P. 12(b)(6) to dismiss the claims alleged against it in the Consolidated Class Action Complaint (MDL Dkt. 86) ("Complaint" or "Compl.") filed by Plaintiffs Abraham Drucker, et al. ("Plaintiffs").

## INTRODUCTION

The naming of Expand as a defendant highlights the infirmity of Plaintiffs' conspiracy claims.  While Plaintiffs generally make no effort to allege, with any particularity, the nature of Expand's participation in any alleged conspiracy, Plaintiffs do acknowledge that from 2021 to 2023, Expand took a markedly different strategy from the other defendants in that it significantly decreased its oil production.  That fact on its own, under relevant caselaw, establishes the implausibility of Plaintiffs' allegations with respect to Expand.  But more telling is the fact that Plaintiffs ignore the rationale behind Expand's unilaterally distinct behavior.  Far from participating in an alleged conspiracy to achieve windfalls by reducing supply in order to raise oil prices, Expand reduced its oil production *because it was exiting the oil production business*—a fact that was widely known and repeatedly acknowledged in public SEC filings and news articles that the Court can take judicial notice of.  In addition, Expand's SEC filings in 2022 and 2023 list and describe the transactions in which Expand sold its oil holdings.  It is not plausible, let alone logical, for Expand to cut production drastically and stop producing oil if it was engaged in a conspiracy to profit from selling oil at artificially inflated prices.  Those same SEC filings also make plain that Expand had hedging requirements for 2021 and 2022, imposed by its credit facility as part of its exit from Chapter 11 bankruptcy in February 2021, that locked in the overwhelming majority of its oil volume at under $45/bbl.  That means that Expand would not have even benefited

1

from rising oil prices during most of this lawsuit's relevant time period—a strategy it likewise would not logically have employed if it was part of a conspiracy.

Expand joins in all the arguments presented in defendants' Joint Motion to Dismiss Plaintiffs' Complaint (the "Joint Motion"), but respectfully submits that the above-referenced realities render the claims against Expand particularly implausible under *Twombly* and its progeny. Additionally, because Plaintiffs acknowledge that Expand no longer produces oil, Plaintiffs cannot legally seek to enjoin Expand from participating in an alleged conspiracy to limit oil production. For that independent reason, Plaintiffs' Sherman Act claim against Expand, which only seeks injunctive relief, should be dismissed.

## BACKGROUND

Expand is headquartered in Oklahoma City, Oklahoma. Compl. ¶ 71. Plaintiffs allege that Expand was part of the alleged conspiracy based on its CEO's attendance at three CERAWeek dinners over a seven year period (*Id*. ¶¶ 113, 150d, 152a, 152b); a couple of observations about market dynamics made by the company's former CEO in 2021 and 2022 (*Id*. ¶ 143b, ¶ 152a); a *question* posed by an *attendee* during an earnings call that had nothing to do with oil production (*Id*. ¶ 144c); the fact that Expand reduced its production of oil by 63% from 2021-2023, at a time when almost all other defendants increased their production (*Id*. ¶ 160); an increase in the company's revenue after COVID decimated its business in 2020 forcing it into bankruptcy (*Id*. ¶ 161); and the fact that as a public company, Expand has common shareholders with some other defendants (*Id*. ¶ 197).

As sparse as these allegations are, they are even more notable for what they leave out. Plaintiffs conveniently ignore the fact that throughout the alleged conspiracy period, Expand made clear in public SEC filings that it was exiting the oil business altogether, selling its crude oil assets, and shifting its business entirely to natural gas.

2

For example, in February 2022, Expand's Form 10-K explained that after emerging from bankruptcy in early 2021, Expand acquired two natural gas companies operating in Haynesville and Marcellus and entered into an agreement to sell its oil producing assets in the Powder River Basin to Continental Resources.  Declaration of Marguerite M. Sullivan ("Sullivan Decl.") Ex. A, Chesapeake Energy Corp., Form 10-K (2/24/2022), at 11.  Six months later, Expand's Form 8-K stated that its only remaining crude oil assets, located at Eagle Ford, were "non-core to [its] future capital allocation strategy" and that it would be focusing its capital on the Marcellus and Haynesville natural gas assets, consistent with its goal to be "the leader in answering the call for delivering affordable, reliable, lower carbon energy the world needs."  Sullivan Decl. Ex. B, Chesapeake Energy Corp., Form 8-K, Ex. 99.1 (8/2/2022), at 1.  In August 2023, Expand's Form 8-K confirmed that it had "successfully completed the exit of [its] Eagle Ford asset, allowing [it] to focus [its] capital and team on the . . . Marcellus and Haynesville [natural gas] positions[.]" Sullivan Decl. Ex. C, Chesapeake Energy Corp., Form 8-K, Ex. 99.1 (8/14/2023), at 1.

In addition, while Expand was exiting the oil business in 2021 and 2022, it publicly reported that it had hedged the majority of its forecasted remaining oil production at $42.69/bbl and $44.30/bbl, respectively.  Sullivan Decl. Ex. D, Chesapeake Energy Corp., Form 10-K (3/1/2021), at 11; Sullivan Decl. Ex. A, Chesapeake Energy Corp., Form 10-K (2/24/2022), at 12. Such a strategy is flatly inconsistent with the notion of a conspiracy and renders Plaintiffs' allegations with respect to Expand implausible.

Plaintiffs' Complaint implicitly acknowledges that Expand no longer produces oil by describing its oil production activities in the past tense while describing oil production activities of all other defendants in the present tense. (Compl. ¶¶ 70–77).  Plaintiffs otherwise ignore this publicly available information about Expand, all of which is subject to judicial notice for purposes

of Expand's motion to dismiss.[1]  In short, Plaintiffs joined a natural gas company to a lawsuit concerning alleged crude oil price fixing.

## LEGAL STANDARD

To survive dismissal, Plaintiffs must plead facts that plausibly suggest that each and every defendant had "a conscious commitment to a common scheme designed to achieve an unlawful objective," and thus joined in the alleged conspiracy.  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 753 (1984).  Specifically, Plaintiffs must plead as to each defendant, "exactly who is alleged to have done what to whom…as distinguished from collective allegations."  *Bristow Endeavor Healthcare, LLC* v. *Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (citing *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) (complaint must answer "basic questions: who, did what, to whom (or with whom), where, and when?"); *SD3, LLC v. Black & Decker (U.S.) Inc*., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (holding plaintiffs must plead as to each defendant "how it is alleged to have conspired, with whom and for what purpose").  This "painstaking, defendant-by-defendant analysis" is required because "[p]ost-*Twombly* authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the specific defendants named in the complaint fails to state a claim."  *In re Mexican*

---

[1] The Court can take judicial notice of statements made in Expand's SEC filings in assessing the plausibility of Plaintiffs' claims.  *See S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1192 (D.N.M. 2013) (finding that Rule 201 of the Federal Rules of Evidence allows courts to take judicial notice of facts "generally known within the territorial jurisdiction of the trial court" or facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Smallen* v. *Western Union Co.*, 950 F.3d 1297, 1310 & n.9 (10th Cir. 2020) (taking judicial notice of SEC filings); *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, 2013 WL 4494384, at *3 (W.D. Okla. Mar. 29, 2013) (taking judicial notice of Chesapeake Energy Corporation's SEC filings); *Harjo v. City of Albuquerque*, 307 F. Supp. 3d 1163, 1185 (D.N.M. 2018) (taking judicial notice of SEC filings and news publications).

*Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388-89 (S.D.N.Y. 2019).  Thus, "[a] plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group."  *SD3*, 801 F.3d at 422; *see also CVB, Inc. v. Corsicana Mattress Co.*, 2024 WL 4505044, at *4 (D. Utah Oct. 16, 2024) (holding that "repetitive generic reference to 'Defendants'" is "conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption…") (citation omitted).

Additionally, a plaintiff seeking injunctive relief under the Sherman Act must "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur."  *Zenith Radio Corp. v. Hazeltine Rsch., Inc*., 395 U.S. 100, 130 (1969).  "The unlikelihood of future violations makes an injunction basically worthless, and probably impossible to obtain."  *In re Cathode Ray Tube (CRT) Antitrust Litig*., 2016 U.S. Dist. LEXIS 24951, at *238 (N.D. Jan. 28, Cal. 2016).

## ARGUMENT

### I.  THE COMPLAINT DOES NOT ALLEGE FACTS THAT PLAUSIBLY SUGGEST THAT EXPAND PARTICIPATED IN THE ALLEGED CONSPIRACY

Plaintiffs offer no direct evidence that Expand participated in any alleged conspiracy. *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019) (defining direct evidence as "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted[,]" such as "reports, memoranda, or tapes of meetings[.]") (citation omitted).  They rely entirely on a handful of allegations from which they ask this Court to *infer* Expand's participation.  But none of these allegations even come close to stating a conspiracy claim against Expand.  Thus, all of Plaintiffs' claims against Expand should be dismissed.

**A.      The Court Cannot Infer Conspiracy from Expand's Alleged Reduction in Shale Oil Production**

The Complaint does not allege facts that suggest that Expand engaged in parallel conduct with the other defendants – a requirement of any conspiracy claim that relies on circumstantial evidence.  *See Cayman Expl. Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1361 (10th Cir. 1989).  While Expand was allegedly reducing its oil production by 63% from 2021 through 2023, all other defendants except Hess, *increased* their oil production.  Compl. ¶ 160.  And Hess allegedly cut back its oil production by only 6%, nowhere close to Expand's 63% reduction as it was exiting the oil business.  *Id.*  Changes in production plans that vary so significantly are not parallel as a matter of law.  *Hogan v. Pilgrim's Pride Corp.*, 2018 WL 1316979, at *8 (D. Colo. Mar. 14, 2018) (finding that "it is facially implausible to assert an antitrust claim based on an allegation that a producer agreed to give up 10% of its sales, while its rivals gave up only 1%") (citation omitted); *Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*, 714 F.Supp.3d 209, 221-2 (W.D.N.Y. 2024) (failure to plausibly allege parallel conduct where one defendant saw volume decreases of 60% while the other three saw volume decreases of 90%).

Moreover, Expand's oil production cuts were not plausibly undertaken as part of a conspiracy, but rather, as public documents make plain, part of an announced company exit of the shale oil business.  Sullivan Decl. Ex. A, Chesapeake Energy Corp., Form 10-K (2/24/2022), at 11 (announcing acquisitions of two natural gas companies in Haynesville and Marcellus and an agreement to sell its oil producing assets in the Powder River Basin); Chesapeake Energy Corp., Sullivan Decl. Ex. B, Form 8-K, Ex. 99.1 (8/2/2022), at 1 (explaining that its remaining shale oil assets at Eagle Ford were "non-core to [its] future capital allocation strategy" and that it would be focusing its capital on its new natural gas assets); Sullivan Decl. Ex. C, Chesapeake Energy Corp., Form 8-K, Ex. 99.1 (8/14/2023), at 1 (announcing the sale of the Eagle Ford assets).  ***Plaintiffs***

6

***themselves acknowledge that Expand no longer produces oil.*** Compl. ¶ 71 (alleging that Expand

***produced*** shale oil) (emphasis added). Thus, there is no basis to infer Expand's involvement in

the alleged conspiracy based on oil production cuts in the face of the plausible alternative

explanation that it was simply exiting the shale oil business altogether. *See Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 567 (2007) (stating that conduct is "not suggestive of conspiracy" if "we

have an obvious alternative explanation"); *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical

Tech. & Surgical Assisting*, 127 F.4th 178, 191 (10th Cir. 2025) ("Allegations of conspiracy based

on circumstantial evidence are 'not plausible if in light of common economic experience the

alleged conduct is equally likely to result from independent action.'") (quoting *Llacua*, 930 F.3d

at 1175; *Cayman*, 873 F.2d at 1361 ("[T]he conspiracy allegation will fail if there is an independent

business justification which explains the alleged conspirators' conduct.").

At a minimum, the fact that Expand was publicly stating its intention to exit the oil business

is inconsistent with Plaintiffs' claim that it was actively conspiring to curtail its production of oil

for the purpose of increasing oil prices. *See D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094,

1104 (9th Cir. 2024) (affirming dismissal of antitrust conspiracy to reduce oil production after

taking judicial notice of the "obvious explanation" of the "outbreak of the global COVID-19

pandemic"); *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526,

538 (N.D. Tex. 2014) (dismissing antitrust claims because common economic experience offered

a natural alternative explanation for the alleged parallel business behavior). Indeed, Expand

announced in its SEC filings in 2021 and 2022 that it was hedging the majority of its forecasted

remaining oil production at less than $45/bbl, meaning that it would not even benefit from the

skyrocketing prices Plaintiffs claim defendants conspired to achieve (to the contrary, for every

barrel hedged, Expand would lose money if oil prices dramatically increased). Sullivan Decl. Ex.

D, Chesapeake Energy Corp., Form 10-K (3/1/2021), at 11; Sullivan Decl. Ex. A, Chesapeake

Energy Corp., Form 10-K (2/24/2022), at 12.  Plaintiffs admit that defendants' hedging strategy is

relevant to establishing plausibility of Plaintiffs' alleged conspiracy, alleging that two of the

defendants pulled back their hedge positions on oil to support Plaintiffs' claims.  *See* Compl. ¶¶

156–58.  No similar allegations are made against Expand.

### B.    None of Plaintiffs' Other Allegations Against Expand Plausibly Suggest That It Participated In The Alleged Conspiracy

The Complaint's remaining allegations against Expand are incredibly sparse, and none

suggest participation in the alleged conspiracy.  To the contrary, what they show is the extent to

which Plaintiffs had to stretch to even attempt to articulate a claim against Expand.

First, the Complaint alleges that Expand executives attended a handful of annual

CERAWeek conferences and associated dinners.  Attendance at these trade association conference

dinners, with "two dozen" U.S. shale executives, Compl. ¶¶ 113, 150d, 152b, does not suggest that

Expand participated in a conspiracy.  *Llacua*, 930 F.3d at 1179 (finding allegations that defendants'

participation in trade association activities regarding wages did not plausibly lead to the conclusion

that they entered into an agreement to keep wages low).  Indeed, one dinner Expand's former CEO

attended was in 2017, years before the alleged conspiracy allegedly began.  *See* Compl. ¶ 115

(alleging that following that meeting, "shale producers signaled they weren't ready to give up on

the growth they see ahead[.]").  The other two dinners allegedly occurred in 2022 and 2023, while

Expand was publicly in the process of divesting its shale oil assets.  In any event, nothing in the

Complaint suggests these dinners facilitated an agreement to violate antitrust laws.  *See Mitchael*

*v. Intracorp, Inc*., 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even

regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement

to engage in unlawful conduct resulted from, or was a part of, the information exchange.").

Second, the Complaint quotes an interview by Expand's former CEO in February 2021, in which he stated that U.S. shale producers were entering a "new era" of shale production that "require[d] a different mindset" or "more discipline and responsibility."  Compl. ¶ 143b.  That statement reflects nothing other than the fact that February 2021 was a time of great instability following the COVID-19 pandemic.  As Plaintiffs themselves acknowledge, at that time, "the U.S. shale oil industry consolidated and suffered as production fell and smaller U.S. Shale Producers went bankrupt."  *Id*. ¶ 138.  Similarly, the observation by Expand's current CEO in 2022 that if output goes up, prices will go down, and shareholders will lose value, is entirely consistent with unilateral business conduct.  *See Jones v. Micron Tech. Inc*., 400 F. Supp. 3d 897, 919–20 (N.D. Cal. 2019).  In *Jones v. Micron Tech. Inc.,* the court found that statements made during earning calls or at industry conferences regarding predictions about competitors' "rational decisions" and "lower supply growth" and their own business strategy to "focus on profitability rather than market share" were "insufficient to support an inference of conspiracy" because they were not "largely inconsistent with unilateral, lawful conduct."  *Id*. at 919 (citation omitted).  The court emphasized that the context of these statements, which "address[ed] topics about which investors would be concerned" or were "in speeches or presentations to industry groups" weighed against their illegality.  *Id*. at 920.  Similarly, the quoted statements from Expand's CEOs merely demonstrate ordinary course observations about market conditions directed to investors.

Third, perhaps most telling is Plaintiffs' allegation that a *question* by a Bank of America *attendee* at an Expand earnings call somehow proves Expand's involvement in the alleged conspiracy.  Compl. ¶ 144c.  Not only was the attendee not affiliated with Expand, but the topic

being discussed had nothing to do with Expand's oil production plans, as Plaintiffs allege. The discussion was about the distribution of dividends. *Id*. ¶ 144c.[2]

Finally, the Complaint alleges that Expand increased its revenues between 2020 and 2022 and that some of its shareholders are also shareholders of some other defendants. Compl. ¶¶ 161, 197. For reasons explained in the Joint Motion, these are unexceptional facts common to almost any business in (or previously in) the oil industry. The Court cannot infer participation in an alleged conspiracy from either. *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) (rejecting the argument that the court can assume conspiracy based on common ownership).

Because Plaintiffs have not alleged facts sufficient to state a conspiracy claim against Expand, all of their federal and state law claims should be dismissed. *See, e.g.*, *In re German Auto. Mfgs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1073 (N.D. Cal. 2019) (dismissing state antitrust and consumer protection claims because Sherman Act claims were deficient); *Compliance Mktg., Inc. v. Drugtest, Inc.*, 2010 WL 1416823, at *17 (D. Colo. Apr. 7, 2010) (similar); *Davis v. AT&T Wireless Servs. Inc.*, 2012 WL 692413, at *2 (C.D. Cal. Mar. 1, 2012) (similar), *aff'd*, 570 F. App'x

---

[2] Though the Complaint selectively quotes the earnings transcript, the transcript reflects the following: "Okay. So 5 years from now, you've got 5 years of inventory. And 5 years from now, you're talking about having paid out $5 billion in dividends. It's the easiest way to destroy value, Nick. Why are you doing that?" Sullivan Decl. Ex. E, Chesapeake Energy Corp., Q4 2021 Results Earnings Call Transcript (2/24/2022), at 7–8. This transcript is incorporated by reference in the Complaint. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *Clark v. Dashner*, No. CV 14-00965 KG-KK, 2016 WL 3621274, at *2 (D.N.M. June 30, 2016) ("In evaluating a Rule 12(b)(6) motion, courts may also consider any attached exhibits, documents incorporated by reference, and documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. . . . And, factual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true.") (quotations and citations omitted).

652 (9th Cir. 2014); *Baar v. Jaguar Land Rover N. Am., LLC*, 295 F. Supp. 3d 460, 462 (D.N.J.

2018) (similar).

## II. PLAINTIFFS' SHERMAN ACT CLAIM FAILS FOR THE ALTERNATIVE REASON THAT PLAINTIFFS CANNOT STATE A CLAIM FOR INJUNCTIVE RELIEF AGAINST EXPAND

Plaintiffs' Sherman Act claim should be dismissed on the alternative ground that Plaintiffs

cannot state a claim for injunctive relief against Expand, because Expand is no longer in the oil

business. Compl. ¶ 265. Plaintiffs ask the Court to enjoin alleged efforts to restrain oil production

volumes to artificially raise oil prices. But Plaintiffs also acknowledge that Expand is no longer

producing oil. Compl. ¶ 71 ("During the Class Period, Chesapeake Energy ***produced*** shale oil . .

. .") (emphasis added). Courts routinely dismiss claims for injunctive relief when the defendants

are no longer engaged in the conduct the plaintiffs seek to restrain. *See New York v. Facebook,*

*Inc.*, 549 F. Supp. 3d 6, 30 (D.D.C. 2021), aff'd sub nom. *New York v. Meta Platforms, Inc.*, 66

F.4th 288 (D.C. Cir. 2023); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2020

WL 6270948, at *4 (N.D. Cal. Oct. 23, 2020).

In *New York v. Facebook, Inc.*, the court declined to grant injunctive relief for plaintiff

States that sought to enjoin Facebook from revoking rivals' API access after taking judicial notice

of the fact that Facebook had discontinued the challenged policy two years earlier. 549 F. Supp.

3d at 30. Similarly, in *Hard Disk Drive Suspension Assemblies*, the court dismissed the plaintiffs'

claim for injunctive relief for a conspiracy to fix prices of hard disk drive ("HDD") suspension

assemblies because the plaintiffs did not allege that any defendant was still selling HDD

suspension assemblies at fixed prices. 2020 WL 6270948 at *4. The same reasoning requires

dismissal of Plaintiffs' Sherman Act claim here. Plaintiffs only allege past conduct against Expand

and thus, they are not entitled to injunctive relief.

## CONCLUSION

All claims against Expand should be dismissed for failure to state a claim under Rule 12(b)(6).

Dated: February 24, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ *Marguerite M. Sullivan*
Marguerite M. Sullivan (*pro hac vice*)
Seung Wan Paik (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
marguerite.sullivan@lw.com
andrew.paik@lw.com

Lawrence E. Buterman
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
lawrence.buterman@lw.com

*Attorneys for Defendant*
*Expand Energy Corporation*
*(f/k/a Chesapeake Energy Corporation)*

12