APPENDIX 2

**A. PLAINTIFFS WHO MADE PURCHASES FOR BUSINESS OR COMMERCIAL PURPOSES ARE PROPER PLAINTIFFS UNDER THE CONSUMER PROTECTION STATUTES OF THE DISTRICT OF COLUMBIA, MINNESOTA, MISSOURI, MONTANA, NEVADA, AND OREGON (PLAINTIFFS' JOINT RESPONSE §III.D.1.a.)**

|  | State Law | Plaintiffs' Authority | Corresponding Plaintiffs and Purchases |
|---|---|---|---|
| 1. | D.C. (Count 12) | If "the purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will usually fall within the Act. *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989) (finding antique purchaser who did not resell proper plaintiff); *Modern Management Co. v. Wilson,* 997 A.2d 37, 62 (D.C. 2010) (the D.C. Consumer Protection Procedures Act (D.C. CPPA) is to be "read broadly"). | Plaintiff Kevin Allen purchases gasoline in D.C. as a photography business owner. He is not a reseller. ¶¶48, 294-95. |
| 2. | Minnesota (Count 26) | The Minnesota consumer protection statute does not exclude claimants based on their commercial nature. *See* Minn. Stat. §645.44 subd. 7 ("[the definition of] '[p]erson' may extend and be applied to bodies politic and corporate, and to partnerships and other unincorporated associations."); *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 196 (Minn. Ct. App. 2007) (the MUDTPA "imposes broad duties not to deceive consumers"); *see also Advanced Training Systems, Inc. v. Caswell Equipment Co., Inc.*, 352 N.W.2d 1 (Minn. 1984) (granting a | Plaintiffs Hayday Farms LLP and Samantha Barsky purchased gasoline for commercial use in Minnesota. ¶¶42, 60, 324-25. |

1

| | | | |
|---|---|---|---|
| | | firearms manufacturer an injunction under the MUDTPA). | |
| 3. | Missouri (Count 28) | The terms of the Missouri Merchandising Practices Act are "unrestricted, all-encompassing and exceedingly broad." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc. 2001); *HEMCO Corp. v. ADP, Inc.*, 2012 WL 13027553 at *3-4 (W.D. Mo. Sept. 25, 2012) (MMPA can apply to corporations who made purchases for "personal" use but not when the products purchased are for the benefit of its employees or are passed on to its customers). | Plaintiff Best Expedite, Inc. regularly purchased gasoline for its own use as a corporation in Missouri. ¶¶23, 328-29. These purchases were not for the benefit of its employees or for resale. |
| 4. | Montana (Count 29) | The Montana consumer protection statute is to be construed broadly and its application "is not limited to those who engage directly in consumer transactions." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 193 (D. Me. 2004). | Plaintiff Samantha Barsky purchased gasoline in Montana, Plaintiff Best Expedite, Inc., purchased diesel in Montana, and Plaintiffs Waypoint Residential, LLC and Garvin Promotion Group, LLC purchased jet fuel in Montana. ¶¶331-32. Plaintiff Deneige Kapor is a Montana resident and purchased gasoline for personal use in Montana. ¶34. |
| 5. | Nevada (Count 33) | The Nevada consumer protection statute does not exclude claimants based on their commercial nature. *See* Nev. Rev. Stat § 41.600(1) (permits "any person who is a victim of consumer fraud" to bring a claim under Nevada's Deceptive Trade Practices Act); *see also R.J. Reynolds Tobacco Company v. Eighth Judicial District Court in and for County of Clark*, 514 P.3d 425, 430-31 (Nev. 2022) (noting Nevada case law supports liberally construing the Deceptive Trade Practices Act as to who may bring a claim). | Plaintiffs Western Cab Company and Robert Jones purchased gasoline in Nevada, and Garvin Promotion Group LLC, TBC Services, LLC and Waypoint Residential purchased jet fuel in Nevada. ¶¶339-40. Plaintiff Daniel Rosenbaum resides in Nevada and purchased gasoline in Nevada for personal use. ¶32. |

| 6. | Oregon (Count 43) | *Ave. Lofts Condominiums Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1068 (D. Or. 2014)* ("If goods are customarily bought by a substantial number of purchasers for personal, family or household uses and were, in fact, bought by the plaintiff for his or someone else's use and not for resale, the [statute] applies."). | Plaintiff Samantha Barsky purchased gasoline; and Plaintiff Garvin Promotion Group, LLC purchased jet fuel for commercial purposes in Oregon.  ¶360-61.  None of these purchases were made for resale.  Plaintiff Russell Deman, an Oregon resident, regularly purchased marine fuel, diesel fuel, and gasoline for his commercial and personal use in Oregon during the Class Period.  ¶59. |

## B.  PLAINTIFFS' RESPONSE TO DEFENDANTS' AUTHORITY REGARDING PLAINTIFFS' IN-STATE CONDUCT IN ALABAMA, MISSISSIPPI, AND WEST VIRGINIA

| | State | Defendants' Authority (*See* Jnt. Mtn. §II.C.2.c.) | Defendants' Authority Distinguished (*See* Jnt. Resp. §III.D.2.c.) |
|---|---|---|---|
| 1. | Alabama (Count 3) | *Abbott Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 550 (N.D. Ill. 2019). | *Blue Cross and Blue Shield of Vermont v. Teva Pharmaceutical Industries, Ltd.* (sufficient intrastate conduct or effects where "'the antitrust impact… was felt within each state.' . . .  This appears to be the 'majority view'"), 712 F. Supp. 3d 499, 548 (D. Vt. 2024) (quoting *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 375 (D.R.I. 2019) (denying motion to dismiss.  Plaintiffs allege anticompetitive prices were paid for oil derivative fuel products in Alabama. ¶¶276-77. |
| 2. | Mississippi (Count 27) | *State ex rel. Fitch v. Yazaki N. Am. Inc.*, 294 So. 3d 1178, 1189 (Miss. 2020); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 266 (S.D.N.Y. 2019). | *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1189 (Miss. 2020) (the Mississippi Antitrust Act ("MAA") requires at least some "'transactions lying wholly within the state'"); (quoting *Standard Oil Co. of Kentucky v. State*, 107 Miss. 377, 65 So. 468, 471 (1914), *overruled by Mladinich v. Kohn*, 250 Miss. 138, 164 So. 2d 785 (1964) (*overruled on other grounds*)); *Standard Oil Co. of Kentucky*, 107 Miss. 377, 65 So. 468 at 471 (plaintiffs sufficiently alleged some wholly intra-state transactions when "petroleum products had |

| | | | |
|---|---|---|---|
| | | | been received . . . in this state and had become incorporated into the general mass of property therein"); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 779 (D. Minn. 2020) (the wholly intrastate transactions requirement of the MAA is satisfied when "a product is distributed to, and then sold within, the Magnolia State under anticompetitive circumstances").  Plaintiffs allege anticompetitive prices were paid for oil derivative fuel products in Mississippi. ¶¶326-27. |
| 3. | West Virginia (Count 53) | *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *25 (E.D. Tenn. June 24, 2015). | *In re Cast Iron Soil Pipe & Fittings*, 2015 WL 5166014, at *25 (E.D. Tenn. June 24, 2015) (under the intrastate transactions requirements of the West Virginia Antitrust Act ("WVAA"), "a plaintiff must show that the wrongful conduct occurred in West Virginia or was felt in West Virginia to assert a violation of the West Virginia Antitrust Act"); *see also*, *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 763 (W.D. Tenn. 2022) (finding that for Mississippi and West Virginia "the 'intrastate effects' requirement is met at the pleading stage by plaintiff's allegations, like those in the instant case, claiming that the anticompetitive conduct caused supracompetitive price effects in the relevant jurisdictions"); *In re New Motor Vehicles Canadian Exp.*, 350 F. Supp. 2d at 175 (the WVAA "'prohibits a conspiracy that restrains West Virginia trade or commerce, regardless of the locus of the conspiracy'"). Plaintiffs allege anticompetitive prices were paid for oil derivative fuel products in West Virginia. ¶¶381-82. |

## C. INDIRECT PURCHASER ACTIONS ARE NOT BARRED UNDER THE CONSUMER PROTECTION LAWS OF ARKANSAS, MISSOURI, AND SOUTH CAROLINA

|  | State | Defendants' Authority (*See* Jnt. Mtn. §II.C.2.e.) | Defendants' Authority Distinguished (*See* Jnt. Resp. §III.D.2.e.) |
|---|---|---|---|
| 1. | Arkansas (Count 2) | *Indep. Cnty. v. Pfizer, Inc.,* 534 F. Supp. 2d 882, 888-89 (E.D. Ark. 2008), *aff'd sub nom. Ashley Cnty., Ark. v. Pfizer, Inc,* 552 F.3d 569 (8th Cir. 2009). | Plaintiffs in *Indep. Cnty.* were not indirect purchasers – they were government entities alleging harm from methamphetamine production that used Defendants' products. *Compare to In re Lithium Ion Batteries Antitrust Litig.,* 2014 WL 4955377, at *22-23 (N.D. Cal. Oct. 2, 2014) (reading two Arkansas Supreme Court cases to allow indirect purchaser plaintiff class to maintain an anti-trust price fixing conspiracy claim under the Arkansas Deceptive Trade Practices Act.) (citing *State ex rel. Bryant v. R & A Inv. Co., Inc.*, 336 Ark. 289, 295-96 (1999) and *Baptist Health v. Murphy*, 365 Ark. 115, 128 n.6 (2006)); *accord In re Flash Memory Antitrust Litig.,* 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009) (citing *State ex rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289 (1999)); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) (also citing *State ex rel. Bryant*). |
| 2. | Missouri (Count 28) | *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,* 64 F. Supp. 3d 665, 701-02 (E.D. Pa. 2014). | *In re Suboxone* is a minority view. Numerous courts have relied on the Missouri Supreme Court's holding in *Gibbons v. J. Nuckolls,* 216 S.W.3d 667, 669 (Mo. 2007), that the Missouri Merchandising Practices Act ("MMPA") permits indirect purchasers to bring an antitrust claim under the statute. *In re Lithium Batteries* 2014 WL 4955377, at *19 ("[t]he post-*Gibbons* cases cited to the Court have been uniform in reaching the same conclusion that indirect-purchaser status alone does not bar Missouri consumers from bringing claims under the MMPA"); *see also Pitlyk v. Ethicon, Inc.*, 2020 WL 8214073, at *4 (E.D. Mo. Sept. 2, 2020) (relying on *Gibbons* to conclude that the MMPA does not require a direct contractual relationship); *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline,* |

| | | | |
|---|---|---|---|
| | | | *PLC*, 737 F. Supp. 2d 380, 415 (E.D. Pa. 2010) ("'Relevant precedent consistently reinforces the plain language and spirit of the statute to further the ultimate objective of consumer protection, regardless of whether the suit is filed by the state or by an individual.' In light of *Gibbons*, I must reject GSK's indirect purchaser argument."); *In re Amitiza Antitrust Litig.*, 2024 WL 4250224, at *31 (D. Mass. Aug. 21, 2024), *report and recommendation adopted as modified*, 2024 WL 4344887 (D. Mass. Sept. 30, 2024) ("[T]he majority of courts have held that indirect purchaser claims can proceed under Missouri's consumer protection statute, in light of the Missouri Supreme Court's decision in *Gibbons*."); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 821 (N.D. Ill. 2017) (relying on *Gibbons* to allow an indirect purchaser claim under the MMPA). |
| 3. | South Carolina (Count 47) | *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016). | *Aggrenox* is a minority view. The majority of courts permit an indirect purchaser claim to proceed under the South Carolina Unfair Trade Practices Act ("SCUTPA") despite the absence of an *Illinois Brick* repealer statute. *See Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477, at * 11 (N.D. Ill. Oct. 26, 2020) (permitting a putative class of indirect purchaser plaintiffs alleging a price-fixing scheme for turkey products to proceed under SCUTPA); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 840-41 (E.D. Pa. 2019) (permitting end payer plaintiffs (indirect purchasers) to pursue claims for monopolization under SCUTPA); *In re Cast Iron Soil Pipe and Fittings*, 2015 WL 5166014, at *32  (permitting indirect purchasers to proceed under SCUTPA). |

**D.  PLAINTIFFS HAVE ADEQUATELY ALLEGED PRICE-FIXING BASED CLAIMS UNDER THE CONSUMER PROTECTION STATUES OF THE DISTRICT OF COLUMBIA, ARKANSAS, ILLINOIS, MICHIGAN, NEW MEXICO, OREGON, PENNSYLVANIA, RHODE ISLAND, SOUTH CAROLINA, AND SOUTH DAKOTA**

|    | State | Defendants' Authority (*See* **Jnt. Mtn. §II.C.2.f.**) | Defendants' Authority Distinguished (*See* **Jnt. Resp. §III.D.2.f.**) |
|----|-------|-------------------------------------------------------|----------------------------------------------------------------------|
| 1. | Arkansas (Count 2) | Defendants claim that Arkansas' consumer protection claims fail because price fixing is not in the scope of the statute - Ark. Code Ann. § 4-88-107(a), (a)(10) (prohibiting "[d]eceptive and unconscionable trade practices" including any "unconscionable, false, or deceptive act or practice in business, commerce, or trade"); *In re Graphics Processing*, 527 F. Supp. 2d 1011,  1029-30 (N.D. Cal. 2007). | Many courts disagree with the court *In re Graphics Processing. See, e.g., In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *9 (N.D. Ill. Nov. 5, 2009) (denying motion to dismiss price-fixing claims under the ADTPA); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1157 (N.D. Cal. 2009) (noting that "several district courts interpreting the ADTPA have found that the term 'unconscionable trade practices' is sufficiently broad to encompass price fixing"); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) ("claims of price fixing are cognizable under the Act"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1109 (N.D. Cal. 2007) (permitting indirect purchaser claims to proceed under the ADTPA in a Sherman Act case); *California v. Infineon Tech. AG*, 531 F. Supp. 2d 1124, 1143-44 (N.D. Cal. 2007) (same); *In re New Motor Vehicles Canadian Export*, 350 F. Supp. 2d at 178-79 (same); *In re Auto. Parts Antitrust Litig.*, 50 F. Supp. 3d 836, 859 (E.D. Mich. 2014) (same). |
| 2. | D.C. (Count 12) | Defendants claim that District of Columbia's consumer protection claims fail because price fixing is not in the scope of the statute - D.C. Code § 28-3904 (prohibiting "unfair or deceptive trade practice[s]"); § 28-3904(r) (prohibiting a variety of "unconscionable" sale terms)*; In re Graphics Processing*, 527 F. Supp. 2d at 1029-30. | *In re Graphics Processing* is out of step with a number of recent decisions on this issue. *In re Amitiza*, 2024 WL 4250224, at *18 (where the court held "under the District of Columbia's consumer protection statute, end payors may bring a claim for price-fixing and are not required to plead an affirmative unconscionable act"); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *25 (E.D. Mich. Jun. 6, 2013) (the District of Columbia's consumer protection statute recognizes price-fixing as violative of the statutory scheme); |

| | | | |
|---|---|---|---|
| | | | *accord In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1125-26 (N.D. Cal. 2008); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 160, 182-83 (E.D. Pa. 2012); *In re New Motor Vehicles Canadian Export*, 350 F. Supp. 2d at 182-83; *In re Packaged Seafood Prods.*, 242 F. Supp. 3d 1033, 1073 (S.D. Cal. 2017). |
| 3. | Illinois (Count 16) | *Gaebler v. New Mex. Potash Corp.*, 285 Ill. App. 3d 542, 544 (Ill. App. Ct. 1996). | Unlike *Gaebler*, several district courts have found that claims premised on price-fixing conduct are actionable under Illinois' consumer protection statute. *See, e.g., In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 1397228, at *28 (E.D. Va., Feb. 6, 2019) (upholding an Illinois consumer protection claim on the basis of price-fixing), report and rec. adopted by *In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418 (E.D. Va. 2019); *In re Crop Prot. Prods. Loyalty Program Antitrust Litig.*, 2025 WL 315835 (M.D.N.C. Jan. 28, 2025) (upholding Illinois consumer protection claim premised on an antitrust violation); *In re Pork*, 495 F. Supp. 3d at 785 (denying dismissal of Illinois Consumer Fraud Act (ILCFA) claim and reasoning that "Illinois courts have not specifically ruled on the question of whether an ILCFA claim based on antitrust violations is permissible when the complaint would also be sufficient under the Illinois Antitrust Act."). |
| 4. | Michigan (Count 24) | *In re Cast Iron Soil Pipe*, 2015 WL 5166014, at *29. | *In re Generic Pharmaceuticals Antitrust Litigation*, 368 F. Supp. 3d 814, 845-847 (E.D. Pa. 2019) (court upheld the end payer plaintiff's Michigan consumer protection statute claim premised on price-fixing); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *17 (D. Mass. Sept. 16, 2015) (holding Michigan's consumer protection law covered the end-payor plaintiff's antitrust claims); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 378 (D.R.I. 2019) ("Michigan's consumer protection statute prohibits '[u]nfair, unconscionable, or deceptive methods, acts or practices,' which includes '[c]harging the |

| | | | consumer a price that is grossly in excess of the price at which similar property or services are sold.") (quoting Mich. Comp. Laws Ann. § 445.903(1)(z)). |
|---|---|---|---|
| 5. | New Mexico (Count 38) | Defendants claim that New Mexico's consumer protection claims fail because price fixing is not in the scope of the statute - N.M. Stat. Ann. § 57-12-3 (prohibiting "[u]nfair or deceptive trade practices and unconscionable trade practices").  *In re Graphics Processing*, 527 F. Supp. 2d at 1029-30. | Many courts disagree with the holding in *In re Graphics Processing*. *Chocolate*, 602 F. Supp. 2d at 586 (determining antitrust allegations that plaintiffs "paid 'artificially inflated prices'" were adequate to plead a claim under the New Mexico Unfair Practices Act (NMUPA)); *Aftermarket Filters*, 2009 WL 3754041, at *9 (in antitrust case "plaintiffs plead that they paid 'supra-competitive' prices for the filters they received. This allegation is sufficient to allege gross disparity [for purposes of pleading a New Mexico Unfair Practices Act claim]."); *see also In re Cast Iron Soil Pipe and Fittings*, 2015 WL 5166014, at *29 ("Courts generally permit plaintiffs to bring price-fixing claims under the NMUPA so long as the 'plaintiff alleges a "gross disparity" between the price paid for a product and the value received.'"); *In re TFT-LCD (Flat Panel)*, 586 F. Supp. 2d at 1127 (upholding plaintiff's price-fixing claims under the NMUPA); *See* ¶¶9, 149 (alleging that due to Defendants' conduct, in January 2021, the U.S. saw an unprecedented increase in crude oil prices, culminating in record high prices the following year, and continuing with consistently high prices in 2023). |
| 6. | Oregon (Count 43) | *In re Graphics Processing*, 527 F. Supp. 2d at 1030*; In re DRAM*, 516 F. Supp. 2d at 1115-16. | *In re Packaged Seafood Prods.*, 242 F. Supp. 3d at 1084 (court upheld price-fixing claim under the Oregon Unfair Trade Practices Act, noting that the Oregon Unfair Trade Practices Act "is to be liberally construed to protect consumers"). |
| 7. | Pennsylvania (Count 44) | *In re K-Dur Antitrust Litig.*, 2008 WL 2660778, at *3 (D.N.J. Feb. 25, 2008). | *Connecticut v. Sandoz, Inc.*, 2024 WL 4753308, at *22-23 (D. Conn. Nov. 12, 2024) (denying motion to dismiss price-fixing claims under the consumer protection statute and finding while Pennsylvania courts have held "that price fixing and |

| | | | market allocation agreements do not intrinsically violate [Pennsylvania law]," they do allow antitrust actions to go forward if they are accompanied by factual allegations "that suggest deception and false representations"). |
|---|---|---|---|
| 8. | Rhode Island (Count 46) | *In re DRAM*, 516 F. Supp. 2d at 1115-16. | *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008) (court upheld a price-fixing claim under Rhode Island's Unfair Trade Practices and Consumer Protection Act, referring to language in Rhode Island Supreme Court precedent). |
| 9. | South Carolina (Count 47) | *In re Aggrenox*, 2016 WL 4204478, at *9. | *In re Pork Antitrust Litigation,* 2025 WL 964545, at *86 (D. Minn. Mar. 31, 2025) (refusing to grant summary judgement for plaintiffs SCUTPA claims when "there is evidence that [d]efendants conspired to artificially inflate prices"); *see also* S.C. Code Ann. § 39-5-20(a). |
| 10. | South Dakota (Count 49) | *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *19 (N.D. Cal. Sept. 22, 2021). | *In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012) (claim upheld under South Dakota's consumer protection law by indirect purchasers who alleged defendants charged them supra-competitive prices for pharmaceuticals). |

**E.  PLAINTIFFS' RESPONSE TO DEFENDANTS' AUTHORITY REGARDING PLAINTIFFS' FAILURE TO ALLEGE IN-STATE CONDUCT ILLINIOIS AND NEW HAMPSHIRE**

|  | State | Defendants' Authority (*See* Jnt. Mtn. §II.C.5.g.) | Defendants' Authority Distinguished (*See* Jnt. Resp. §III.D.2.g.) |
|---|---|---|---|
| 1. | Illinois (Count 16) | *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853-54 (Ill. 2005). | *Avery*, 835 N.E.2d at 853 ("courts have often directed their focus to the site of injury or deception" in determining whether a transaction takes place in Illinois); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017) (courts consider "the residency of the plaintiff, the location of harm, communications between parties (where sent and where received), and where a company policy is carried out"). Plaintiff Eric Wilim is an Illinois resident, and he, along with at least three other Plaintiffs, purchased crude oil derivative products in Illinois at supracompetitive prices due to Defendants' conduct. ¶¶36, 301-04. |
| 2. | New Hampshire (Count 35) | *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F. Supp. 491, 504 (D.N.H. 1996); *In re Lithium Ion Batteries*, 2014 WL 4955377, at *22. | *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 235 (M.D. Pa. 2010) (the NHCPA is "broad in sweep" and "a pleading sufficiently states a claim if the 'allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of [New Hampshire]'") (quoting *LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 931 (2007)); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735 (E.D. Pa. 2014) (plaintiffs' sufficiently pled conduct within New Hampshire by alleging that the consumers purchased the product and incurred overcharges in the state).  Plaintiff Josselyn's Getaway Log Cabins LLC resides in New Hampshire and purchased home heating oil in the New Hampshire market at supracompetitive prices due to Defendants' conduct.  ¶¶46, 341-44. |

### F. PLAINTIFFS' RESPONSE TO DEFENDANTS' AUTHORITY REGARDING THE PLEADING STANDARD FOR CLAIMS BROUGHT UNDER THE CONSUMER PROTECTION STATUTES OF FLORIDA, MICHIGAN, AND PENNSYLVANIA

| | State | Defendants' Authority (*See* Jnt. Mtn. §II.C.5.h.) | Defendants' Authority Distinguished (*See* Jnt. Resp. §III.D.2.h.) |
|---|---|---|---|
| 1. | Florida (Count 13) | *WrestlemaniaReunion, LLC v. Live Nation Television Holdings, Inc.*, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011). | *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours and Co.*, 2015 WL 4755335, at *24 (N.D. Cal. Aug. 11, 2015) (quoting Fla. Stat. §501.204) (the FDUTPA's language related to '"unconscionable . . . , unfair or deceptive acts"' in an indirect purchaser class action and found that "[a]nticompetitive conduct alone may give rise to a claim under this statute; allegations of fraud are not required," meaning 9(b)'s pleading requirements are not required where Plaintiffs plead claims of unfairness and/or unconscionability); *State of Fla., Off. of Atty. Gen., Dep't of Legal Affs. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (refusing to apply heightened 9(b) pleading standard because when the "FDUPTA claim is not premised on allegations of fraud. . . . 'the plaintiff need not prove the elements of fraud'") (quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000)).<br><br>Even if 9(b) pleading applies, the Tenth Circuit recognizes a relaxed 9(b) standard in consumer fraud cases. *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1341-42 (D. Kan. 2018) (relaxing the 9(b) standard applied to the FDUPTA in antitrust case); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1267-1281 (S.D. Fla. 2024) (before denying dismissal of the MCPA, FDUPTA , and UTPCPL, the court found that "a court should 'hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) |

| | | | that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts'"). |
|---|---|---|---|
| 2. | Michigan (Count 24) | *In re Packaged Seafood Prods.*, 242 F. Supp. 3d at 1076. | *In re Solodyn*, 2015 WL 5458570, at *17 (in analyzing 9(b) in the context of the Michigan Consumer Protection Act, the court refused to dismiss because the MCPA prohibits '"unfair, unconscionable, or deceptive methods, acts or practices,' including 'charging the consumer a price that is grossly in excess of the price at which similar property or services are sold'") (quoting Mich. Comp. Laws Ann. §445.903(1)); *see also*, *In re Pork*, 495 F. Supp. 3d at 782 (refusing to dismiss plaintiffs' claim under the MCPA that "centered on anticompetitive business practices," not in fraud); *In re Vascepa Antitrust Litig. Indirect Purchaser Plaintiffs*, 2023 WL 2182046, at *9 (D.N.J. Feb. 23, 2023) (9(b) did not apply where plaintiffs alleged defendants "deceived the public, its investors, and consumers by both misrepresentation and/or by withholding material information"). |
| | | | Even if 9(b) pleading applies, the Tenth Circuit recognizes a relaxed 9(b) standard in consumer fraud cases. *See In re: EpiPen*, 336 F. Supp. 3d at 1341-42 (relaxing the 9(b) standard in antitrust applied to the MCPA); *In re Fortra File Transfer Software*, 749 F. Supp. 3d at 1267-1281 (before denying dismissal of the MCPA, FDUPTA , and UTPCPL, the court found that "a court should 'hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts'"). |

| 3. | Pennsylvania (Count 44) | *In re New Motor Vehicles*, 350 F. Supp. 2d at 200. | *Clark v. Allstate Ins. Co.*, 2013 WL 1905147, at *4-6 (E.D. Pa. May 7, 2013) (interpreting the UTPCPL the court applied "Rule 8" pleading standard because the UTPCPL bars "'fraudulent or deceptive conduct'" and "forbids . . . 'unfair methods of competition and unfair or deceptive acts'" and "deceptive conduct need not be fraudulent" (quoting 73 Pa. Cons.Stat. §201–2(4)(xxi)); *In re Fragrance Direct Purchaser Antitrust Litig.*, 2025 WL 579639, at *21 (D.N.J. Feb. 21, 2025) (9(b) did not apply to UTPCPL claims where plaintiffs alleged "[d]efendants misrepresented the true cause of price increases for the products they produced"); *In re Fortra File Transfer Software*, 749 F. Supp. 3d at 1267-1281 (before denying dismissal of the MCPA, FDUPTA , and UTPCPL, the court found that "a court should 'hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts'"). |

### G. PLAINTIFFS' AUTHORITY DEMOSNTRATING THAT RELIANCE IS NOT REQUIRED UNDER THE CONSUMER PROTECTION STATUTES OF ARKANSAS AND PENNSYLVANIA

| | State | Defendants' Authority (*See* Jnt. Mtn. §II.C.2.i.) | Defendants' Authority Distinguished (*See* Jnt. Resp. §III.D.2.i.) |
|---|---|---|---|
| 1. | Arkansas (Count 2) | Ark. Code Ann. §4-88-113(f)(1)(A) ("A person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by this chapter may bring an action to recover his or her actual financial loss."). | *Philip Morris Companies, Inc. v. Miner*, 2015 Ark. 73, 9, 462 S.W.3d 313, 319 (2015) ("reliance is not a requirement for proceeding with any private cause of action under the ADTPA"); *Arkansas ex rel. Griffin v. Syngenta Crop Prot. AG*, No. 4:22-CV-01287-BSM, 2025 WL 551660, at *13 (E.D. Ark. Feb. 19, 2025) (finding "the State plausibly alleges that defendants engaged in conduct that is unconscionable or deceptive. For example, the State alleges that defendants' agreements and conspiracies with their distributors and retailers harmed consumers because defendants were able to maintain artificially high prices on their products."); *In re Fragrance*, 2025 WL 579639, at *21 (denying motion to dismiss); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 583 ("courts have concluded that claims of price fixing are cognizable under the [ADTPA]"); *In re Crop Prot. Prods. Loyalty Program* 2025 WL 315835, at *24 (denying defendants' motion to dismiss Arkansas consumer protection claims predicated on allegations of price fixing).<br><br>Alternatively, Plaintiffs have pleaded reliance under Ark. Code Ann. §4-88-113(f)(1)(A) because Plaintiffs suffered financial loss proximately caused by their reliance on the artificially inflated and deceptive price of gasoline, which was caused by the unlawful practice of price-fixing. ¶¶ 109-247; *See In re Pork*, 495 F. Supp. 3d at 781 (refusing to dismiss price fixing claims brought under ADPTA because "plaintiffs did not have to rely on anything to suffer damages; they only had to pay inflated prices for pork"). |

| 2. | Pennsylvania (Count 44) | *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007). | Defendants' case, *Toy v. Metro. Life Ins. Co.*, requires reliance under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because it sounds in fraud. 928 A.2d 186, 195 (analyzing "bad faith" under the UTPCPL). By contrast, Plaintiffs allege price fixing, which the court in *In re Fragrance Direct Purchaser Antitrust Litig.*, recognized as violating the UTPCPL because price fixing does not require proof of "reliance" and it inherently constitutes "disingenuous and misleading behavior." 2025 WL 579639, at *22 (denying motion to dismiss)(quoting *Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 61 (Pa. Commw. Ct. 2019), *aff'd in part, rev'd in part and remanded sub nom. Commonwealth v. Chesapeake Energy Corp.*, 665 Pa. 2, 247 A.3d 934 (2021)); *See In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 663 (D. Kan. 2013) ("[t]he concept of reliance . . . has no application' in suits involving many types of unfair business practices"). |
|----|----|----|----|