UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| *In re: Shale Oil Antitrust Litigation* <br><br> This Document Relates to: <br><br> ALL ACTIONS | No. 1:24-md-03119-MLG-LF |

**PLAINTIFFS' RESPONSE TO DEFENDANTS HESS INC.'S AND JOHN B. HESS'S JOINT MOTION TO DISMISS (DKT. 132)**

## I. INTRODUCTION

Defendants Hess Corporation and John Hess (collectively, "Hess") were central players in Defendants' illegal conspiracy to constrain supply. In connection with its Hess / Chevron merger review, the Federal Trade Commission ("FTC") filed an administrative complaint referencing documents from Mr. Hess's files that demonstrate he "communicated publicly and privately with OPEC and oil ministers of OPEC member states about global output and other dimensions of crude oil market competition." ¶185[1] (quoting FTC Complaint at ¶¶4-5). These documents identified: Mr. Hess's primary OPEC contacts (Secretaries General Barkindo and Ghais), extensive communications with Saudi Aramco oil executives, and that the content of Mr. Hess's private communications with OPEC and Saudi Aramco informed his public statements about shale oil production. ¶187. Notably, in a bid to prevent further horizontal collusion in the domestic oil industry, Mr. Hess was *forbidden* from serving on the board of directors of the merged entity.

Despite this damning evidence of anticompetitive conduct—particularly at the pleading stage[2]—Hess asserts that Plaintiffs' claims should be dismissed with prejudice for failure to state a claim because Plaintiffs did not adequately plead parallel conduct or plus factors. Hess's arguments rely on distorting the conspiracy alleged, ignoring or mischaracterizing relevant facts,

---

[1] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint ("CCAC"), Dkt. 86, and all terms and acronyms are defined and used as in the CCAC. "OPEC" refers to the "Organization of Petroleum Exporting Countries," and references to "OPEC" from December 2016 onward include OPEC+. *See* ¶95.

[2] Antitrust conspiracies are secretive by nature and typically "leave little publicly available evidence of [their] existence." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 804 (N.D. Ill. 2017) ("*Broilers*"). As such, "the pleading standard must take into account the fact that a complaint will ordinarily be limited to allegations pieced together from publicly available information." *Id.*

improperly introducing facts outside the complaint, and contravention of the applicable legal standards.[3]

Moreover, Hess's claim that this Court cannot exert personal jurisdiction fails because it is premised on misstatements of law, convenient omissions, and the assertion that Plaintiffs have not offered more than "bare allegations" of a conspiracy. Defendants' motion should be denied.

## II. ARGUMENT

### A. Plaintiffs Adequately Plead Antitrust Claims Against Hess.

"Once a conspiracy is established, only slight evidence is required to connect a co-conspirator," *United States v. Troutman*, 814 F.2d 1428, 1446 (10th Cir. 1987), and at the pleadings stage "courts have held that antitrust conspiracy allegations need not be detailed on a defendant-by-defendant basis." *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011) (collecting cases); *Othart Dairy Farms LLC v. Dairy Farmers of Am., Inc.*, 720 F. Supp. 3d 1087, 1108 (D.N.M. 2024) ("Not all defendants need to participate in all aspects of the allegations so long as each defendant has some role in the conspiracy.").[4]

In weighing an individual defendant's motion to dismiss in Section 1 Sherman Act cases, Tenth Circuit courts ask whether the plaintiffs have alleged specific facts from which one could plausibly infer that the defendant was involved in the broader conspiracy. *See In re Urethane*

---

[3] Hess's argument in its Motion, Dkt. 132 ("Hess Mtn.") that Plaintiffs' claims should be dismissed with prejudice (Hess Mtn. at 4, 12) is at odds with the Tenth Circuit's directive that "leave to amend shall be freely given." *Perez v. City & Cnty. of Denver*, 2023 WL 7486461, at *3 (10th Cir. Nov. 13, 2023); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

[4] Unless otherwise noted, all internal citations and quotations are omitted, all emphasis is added, and all quotations are cleaned up.

*Antitrust Litig.*, 683 F. Supp. 2d 1214, 1234 (D. Kan. 2010); *Brown v. JBS USA Food Co.*, 2023 WL 6292717, at *12-*16 (D. Colo. Sept. 27, 2023) ("*Brown*") (there is no requirement that plaintiffs demonstrate that an individual defendant's conduct, "on its own, affect[ed] the entire industry").

Here, the CCAC is filled with allegations pertaining specifically to both Hess Corporation and John B. Hess and therefore clearly meets this low standard. Although not required, Plaintiffs have also adequately shown that the Hess Defendants participated in parallel conduct alongside the other Defendants, along with numerous plus factors that bolster the plausibility of the conspiracy.

        **1.**        **Plaintiffs Adequately Plead that Hess Engaged in Parallel Conduct.**

When viewed as a whole, with Plaintiffs' allegations accepted as true as required at the pleadings stage,[5] Plaintiffs adequately plead that Hess engaged in parallel conduct.

Plaintiffs plead that Hess engaged in parallel conduct during the Class Period by: (1) declining to invest capital in shale oil production despite high market prices, contrary to its independent self-interest; (2) developing a relationship with OPEC—alongside fellow U.S. shale producers—that facilitated the formation of the domestic cartel; and (3) participating in meetings with U.S. shale producers (and OPEC) to discuss production discipline.

Plaintiffs allege a "conspiracy to coordinate, and ultimately constrain, domestic shale oil production." ¶1. Plaintiffs allege that Hess facilitated the domestic cartel's formation, including:

---

[5] Plaintiffs' allegations must be viewed as a whole. *See Othart*, 720 F. Supp. 3d at 1108 (the court would not "consider and discard each allegation of parallel conduct or supporting factor in isolation"). At the pleadings stage, the Court is bound to accept the truth of Plaintiffs' allegations and draw all reasonable inferences in Plaintiffs' favor. *See id.* at 1096-97.

- In March 2017, Mr. Hess, Scott Sheffield of Pioneer, and Robert Lawler of Chesapeake dined with then-OPEC Secretary General Barkindo in Houston. ¶113. Following the meeting, Mr. Hess told Bloomberg, "It was a very good exchange of information and views about oil . . . I really commend the OPEC Secretary General for outreach. It was a good talk." ¶114.

- In June 2018, Mr. Hess and Mr. Sheffield attended the OPEC International Seminar in Vienna, Austria as Secretary General Barkindo's guests. ¶126.

- In January 2019, Mr. Hess sat on a panel with Occidental CEO Vicki Hollub and OPEC Secretary General Barkindo at the World Economic Forum in Davos. ¶129. Mr. Hess told reporters that "the Secretary General of OPEC, as well as OPEC Members, play a very important role in stabilizing markets for oil, so those efforts are to be recognized." ¶131.

- Mr. Hess attended another dinner with Secretary General Barkindo along with the CEOs of Occidental, Centennial, and Diamondback. ¶134.

- In March 2022, Hess executives and other U.S. shale executives, including the CEO of Chesapeake, participated in a private dinner with OPEC Secretary General Barkindo. ¶152(a).

- In March 2023, Mr. Hess had dinner with OPEC Secretary General Ghais at a steakhouse in Houston alongside the CEOs of Pioneer, Chesapeake, Diamondback, and Occidental. ¶150(d).

- The FTC confirmed that Defendants Hess Corporation, Mr. Hess, Pioneer, and Mr. Sheffield were acting in parallel to coordinate Defendants' production levels, both amongst themselves, and with OPEC. ¶188.

Hess effectuated the conspiracy by curtailing production growth—from +25% before the conspiracy to -6% during the conspiracy. ¶160, Table 1. Hess does not dispute that it reduced U.S. shale oil production growth during the Class Period. *See* Hess Mtn. at 5, n.4.

Instead, Hess attempts to refute these well-pled allegations by recasting Plaintiffs' alleged conspiracy to restrain "domestic shale oil production" as a "conspiracy to fix the global price of oil" and asserting that "Plaintiffs baselessly limit Hess's oil production figures to its U.S. operations," claiming that doing so is "cherry-picking." *Compare* ¶1, *with* Hess Mtn. at 1, 5.

4

Courts reject purposeful mischaracterization of the conspiracy by antitrust defendants at pleadings stage. *See Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 161 (W.D.N.Y. 2020) (antitrust plaintiffs adequately pled parallel conduct and "Defendants mischaracterize Plaintiffs' allegations"); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 56 (D.D.C. 2016) (rejecting defendants' "mischaracterization of Plaintiffs' claims" in an antitrust case).

Hess next contends that Plaintiffs have not adequately pled parallel conduct because Hess increased all crude oil production globally. Hess improperly relies on SEC filings that are not cited in the CCAC to do so. *See J.D. Heiskell Holdings, LLC v. Willard Dairy, LLC*, 2024 WL 4286356, at *2 (D.N.M. Sept. 24, 2024) ("[w]hen reviewing a motion to dismiss under Rule 12(b)(6), the court generally may not look beyond the four corners of the complaint"). The Tenth Circuit has identified three exceptions to the four corners of the complaint rule: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint that are central to plaintiffs' claim and the parties do not dispute the documents' authenticity; and (3) matters where a court may take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). None of these exceptions apply here, so the Court should not consider Hess's supplemental SEC filings.[6] But even if the Court were to do so, Hess's SEC filings could only be used for the limited purpose to show the fact of these statements' existence, not the truth of the matters asserted therein. *See United Water and Sanitation District v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052 (D. Colo. 2020) ("[w]hen a court takes judicial notice of documents, it may do so only to show their contents, not

---

[6] Hess's reliance on *Smallen v. W. Union Co.*, 950 F.3d 1297, 1310, n.9 (10th Cir. 2020), is misplaced. Hess Mot. at 2, n.1, 5. *Smallen* stands for the unremarkable proposition that "it is not unusual [for a court] to consider public documents filed with the SEC *in a securities case*." 950 F.3d at 1310, n.9 (emphasis added).

5

to prove the truth of the matters asserted therein"). And even if the Court did credit the SEC statements for the truth that Hess in fact increased global production, Hess *still* does not explain how its global production figures are relevant to a *domestic* production cartel case.

### 2. Plaintiffs Adequately Plead Plus Factors Applicable to Hess.

Plaintiffs plead numerous plus factors that apply to Hess, including opportunities to collude and inter-firm communications, actions against self-interest, market conditions, and common ownership. ¶¶189-213. These plus factor allegations must too be read together. *See Broilers*, 290 F. Supp. 3d at 797 (rejecting defendants' isolation of plus factors).

***Classic conspiracy allegations: opportunities to collude and inter-firm communications.***
Plaintiffs allege that Defendants, including Hess, met at trade association gatherings such as the annual CERAWeek Conference in Houston, Texas, and often held private meetings during these events. ¶¶112-35, 152(a-b), 194. Plaintiffs further allege that during these private gatherings, Defendants discussed their cooperation with one another and their collective cooperation with OPEC to maintain excess domestic drilling capacity. ¶¶152(a-b), 194. These allegations create "a plausible inference that the trade association meetings allowed Defendants to coordinate." *Miami Prods.*, 449 F. Supp. 3d at 164; *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1113, 1148 (N.D. Cal. 2009) ("[T]rade association affiliations and attendance at industry events may be alleged to show that putative conspirators had the opportunity and means to develop and/or further their alleged collusive scheme.").[7]

---

[7] The allegations here—that trade association events helped facilitate the conspiracy—are distinct from the trade association allegations in the cases cited by Hess. In *In re Musical Instruments & Equipment Antitrust Litigation*, "mere participation in trade organization meetings" was

6

Plaintiffs also allege a high-level of inter-firm coordination outside of trade associations and industry events, including that Hess and other Defendants participated in roundtable meetings to discuss operational processes. ¶195(c). These types of opportunities to collude "bolster the plausibility of a conspiracy" when viewed in the context of the allegations as a whole. *In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1017 (E.D. Mich. 2010).

***Actions against self-interest.*** Hess acted contrary to its independent self-interest by meeting with Defendants and OPEC and discussing confidential business plans, including forward-looking production. *See, e.g.*, *In re RealPage, Inc. Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 510 (M.D. Tenn. 2023) (finding that it would be contrary to a company's independent self-interest to share "proprietary commercial data" with horizontal competitors).[8]

Hess also acted against its independent self-interest by failing to invest capital to expand U.S. shale oil production despite excess capacity and favorable market conditions. ¶¶204-13. This type of conduct has been held to demonstrate action against self-interest absent a conspiracy. *See,*

---

insufficient to create a plausible inference of conspiracy, *standing alone*. 798 F.3d 1186, 1196-97 (9th Cir. 2015); *see also Miami Prods.*, 449 F. Supp. 3d at 164 (distinguishing allegations that "tie the trade association meetings into the conspiracy as a whole" from those that "merely allege that Defendants were part of a conspiracy because they were members of trade associations"). *In re DRAM Indirect Purchaser Litigation*, is also distinguishable. In *DRAM*, plaintiffs "fail[ed] to describe particular interactions or any specifics of the meetings." 2020 WL 8459279, at *10 (N.D. Cal. Nov. 24, 2020). Here, for each meeting, Plaintiffs have identified the timing, location, and participants and public statements characterizing their anticompetitive nature. ¶¶112-35, 152(a-b), 194.

[8] Hess's reliance on *In re Baby Food Antitrust Litigation*, 166 F.3d 112, 126 (3d Cir. 1999), cited in Hess Mot. at 9, is misplaced. *Baby Food* involved a motion for summary judgment decided after discovery. Further, the inter-defendant communications in *Baby Food* were comprised of "[e]vidence of sporadic exchanges of shop talk among field sales representatives who lack pricing authority." 166 F.3d at 125. Here, Plaintiffs make detailed allegations of communications involving the highest-level executives at Defendant companies and OPEC, including John Hess.

*e.g.*, *Persian Gulf Inc. v. BP West Coast Prods. LLC*, 324 F. Supp. 3d 1142, 1154 (S.D. Cal. 2018) (decisions to decrease output and sales "during a time of rising prices" is an "example of extreme action against self-interest" because "Defendants exposed themselves to the risk of losing market share to their competitors"); *Standard Iron Works v. ArcelorMittal*, 639 F. Supp. 2d 877, 896-97 (N.D. Ill. 2009) ("[i]t is certainly plausible that absent coordination and agreement by each producer to give its 'pint of blood,' no Defendant would have sacrifice profitable production").

*Market conditions.* Plaintiffs allege that the crude oil market is susceptible to collusion because it is a commodity product with high inelastic demand, due to the lack of available substitutes. ¶¶190-91. Further, the industry is concentrated at the top of the market but fragmented with many small producers at the bottom of the market. This market concentration at the top of the market gave major producers visibility into one another's market conduct. ¶192. Defendants also had excess drilling capacity, which allowed them to restrain production growth. ¶193. These market conditions are broadly applicable to all Defendants, including Hess. *See Domestic Airline Travel*, 221 F. Supp. 3d at 61 (holding that "general allegations regarding the nature of the airline industry . . . are all factors that the Court considers at this stage of the proceeding in reaching its determination as to whether Plaintiffs sufficiently pled a plausible antitrust conspiracy").

*Common ownership.* Several companies held an ownership interest in Hess and other Defendants—including BlackRock, Fidelity, State Street, T. Rowe Price, and Vanguard. ¶197. Defendants' common ownership helped enable and facilitate Defendants' output restrictions because: (1) shareholders facilitated inter-Defendant communications; (2) shareholders helped enforce the conspiracy by publicly voicing concerns about output and capital discipline; and (3) common owners created an incentive for Defendants to refrain from competing. ¶¶198-203.

### B.     This Court Has Personal Jurisdiction Over Hess.

"The plaintiff need only make a prima facie showing that jurisdiction exists . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits . . . [and] all factual disputes must be resolved in the plaintiff's favor." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Personal jurisdiction over both Hess Corporation and Mr. Hess exists for three reasons: (1) co-conspirators' contacts with New Mexico can be imputed to them under the Tenth Circuit's application of conspiracy jurisdiction; (2) the Clayton Act, 15 U.S.C. §22, authorizes jurisdiction; and (3) this Court has derivative personal jurisdiction under the Multidistrict Litigation ("MDL") statute, 28 U.S.C. §1407.

First, the in-forum contacts of both Hess Corporation's and Mr. Hess's Co-Defendants may be imputed to them under Tenth Circuit law because while "there still must be minimum contacts as to each defendant, [] they can be based on the co-conspirator's presence in the forum state, if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum."  *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 789 (10th Cir. 2013); *see also Unitednet, Ltd. v. Tata Commc'ns Am., Inc.*, 2023 WL 2665578, at *10 (D.N.M. Mar. 28, 2023) (a co-conspirator's minimum contacts provide "jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, an injury occurs in the forum, *or* substantial steps in furtherance of the conspiracy are taken in the forum"), *aff'd*, 112 F.4th 1259 (10th Cir. 2024).[9]

Plaintiffs detail how both Hess Corporation and Mr. Hess conspired to harm New Mexico consumers through illegally constraining the domestic shale oil production. ¶¶109-247.

---

[9] *See* Plaintiffs' Response to Pioneer's Motion to Dismiss, §III.A.2.

9

Defendants enacted their conspiracy by, *inter alia*, reducing the number of oil rigs in the Permian basin, which sits beneath New Mexico. ¶¶168-69.  Defendants' conspiracy was directed at, caused injury in, and substantial steps were taken in this District.  ¶89.  Hess Corporation and Mr. Hess admitted as much in prior filings, including that their Co-Defendants have substantial shale oil operations in New Mexico.[10]  Co-conspirators' contacts are imputed to both Hess Defendants.

Second, this Court has personal jurisdiction pursuant to §12 of the Clayton Act, 15 U.S.C. §22, which provides that "personal jurisdiction may be established in any district, given the existence of sufficient national contacts." *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 (3d Cir. 2004).  Courts within the Tenth Circuit have adopted the Ninth and Third Circuit's interpretation of Section 12, holding that the relevant inquiry under the Clayton Act is whether the Defendant had sufficient minimum contacts *with the United States*. *See, e.g.*, *In re Credit Default Swaps Auctions Litig.*, 710 F. Supp. 3d 895, 938 (D.N.M. 2023) (finding "§ 12 of the Clayton Act, 15 U.S.C. § 22, authorizes the exercise of personal jurisdiction over any foreign corporation in any judicial district, so long as that corporation has sufficient minimum contacts with the United States writ large").[11]  Hess Corporation undeniably has minimum contacts with the United States. Therefore, the Clayton Act authorizes this Court to exercise jurisdiction over Hess Corporation.

---

[10] *See* Defendants' Response to Plaintiff Foos, et al.'s Motion to Transfer Related Actions For Consolidated or Coordinated Pretrial Proceedings, MDL No. 3119, Dkt. 53, filed June 3, 2024, at 2-3, 5-6, 10 (acknowledging this case involves "allegations about shale oil production;" the Permian Basin is one of the "top three shale oil 'plays'—geographic areas where shale formations contain significant amounts of oil—in the U.S.;" that "shale oil resting in the Permian Basin . . . reaches into two New Mexico counties;" and that Defendants Permian, EOG, and Occidental all have shale oil operations, totaling hundreds of employees, in New Mexico).

[11] *See* Plaintiffs' Response to Pioneer's Motion to Dismiss, §III.B.

Third, this Court has jurisdiction pursuant to the MDL statute because 28 U.S.C. §1407 grants this Court derivative personal jurisdiction through the Hess Corporation's and Mr. Hess's contacts with the states in which transferor courts sit. *See, e.g.*, *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020) ("[t]he transferee court can exercise personal jurisdiction to the same extent that the transferor court could"). Both Hess Corporation (headquarters) and Mr. Hess (resident) have undeniable contacts with New York, where a transferor court sits.[12] Therefore, this Court has derivative personal jurisdiction over the Hess Corporation and Mr. Hess under 28 U.S.C. §1407, based on Hess's contacts with New York.

Finally, Hess incorporates by reference Defendant Pioneer's argument that any exercise of personal jurisdiction over the Hess Corporation and Mr. Hess would violate due process. *See* Hess Mot., at 11. Hess's arguments fail for the same reasons as Pioneer's: Hess has not argued constitutionally significant inconvenience as required in the Tenth Circuit. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) ("[t]o establish that jurisdiction does not comport with Fifth Amendment due process principles a defendant must first demonstrate . . . that the exercise of jurisdiction in the chosen forum will make litigation [] gravely difficult and inconvenient"). Hess has not attempted this showing, so Hess's due process arguments fail.[13]

## III. CONCLUSION

For the foregoing reasons, the Hess Motion to Dismiss should be denied.[14]

---

[12] *See* Dkt. 59-1 (listing *Short v. Permian Resources Corp., et al.*, No. 1:24-cv-04506 (S.D.N.Y.) among related cases).

[13] *See* Plaintiffs' Response to Pioneer's Motion to Dismiss,§III.D.

[14] In the event the Court finds Plaintiffs' allegations as to Hess deficient for any reason, Plaintiffs respectfully request the Court grant Plaintiffs' leave to amend their CCAC.

11

Dated: April 10, 2025

*/s/Christopher A. Dodd*
Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

*Interim Liaison Counsel for Plaintiffs and Putative Class*

Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
Isabella De Lisi (*pro hac vice*)
Mollie E. Chadwick (*pro hac vice* forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com
idelisi@scott-scott.com
mchadwick@scott-scott.com

Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Karin E. Garvey (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

Michael Dell'Angelo (*pro hac vice*)
Candice Enders (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
cenders@bm.net

Richard D. Schwartz (*pro hac vice*)
BERGER MONTAGUE PC
1720 W. Division
Chicago IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser (*pro hac vice*)
Vara G. Lyons (*pro hac vice*)
Ellen Wen (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com
ewen@cpmlegal.com
jalhadeff@cpmlegal.com

Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
Vasti S. Montiel (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
vmoniel@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2025, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

                                               */s/Christopher A. Dodd*
                                               Christopher A. Dodd