**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| *In re: Shale Oil Antitrust Litigation* | |
| This Document Relates to: | No. 1:24-md-03119-MLG-LF |
| ALL ACTIONS | |

**PLAINTIFFS' RESPONSE TO
<u>DEFENDANT OCCIDENTAL PETROLEUM'S MOTION TO DISMISS (DKT. 126)</u>**

## I.    INTRODUCTION

Plaintiffs' CCAC alleges that Defendant Occidental Petroleum Corporation ("Occidental or "Oxy") participated in a conspiracy to suppress domestic shale oil production, resulting in higher prices for Plaintiffs.[1]  Occidental's Motion (Dkt.126, "Oxy Mot.") improperly applies the standards for a motion to dismiss and argues purportedly disputed factual issues in its favor. However, at this stage, the allegations must be read in their entirety in the light most favorable to Plaintiffs, and the Court should decline the misguided invitation to engage in factual inquiry.  To survive a motion to dismiss, Plaintiffs need only present allegations that plausibly suggest the existence of an unlawful conspiracy among Defendants, as well as Occidental's participation in it. Plaintiffs' allegations meet this standard.

## II.    ARGUMENT

Plaintiffs plausibly allege that Oxy participated in a collusive scheme to suppress the amount of shale oil that otherwise would have been extracted in a competitive market, that Oxy had a role in the conspiracy, and that Oxy individually engaged in parallel conduct alongside the other Defendants to constrain oil production.

Plaintiffs allege that the anticompetitive scheme was achieved through regular meetings and communications among the Defendants and with members of OPEC, starting as early as 2017. ¶11.  The CCAC also describes a price war in the lead up to Defendants' cartel activity, ¶¶103-35, parallel output restrictions in a manner contrary to Defendants' economic self-interest and

---

[1] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint ("CCAC"), Dkt. 86, and all terms and acronyms are defined and used as in the CCAC. "OPEC" refers to the "Organization of Petroleum Exporting Countries," and references to "OPEC" from December 2016 onward include OPEC+.  *See* ¶95.

historical behavior, ¶¶160-73, concurrent sky-high oil and gasoline prices that would otherwise incentivize Defendants to expand production, ¶224, and the relevant "plus factors" showing how the structure of the oil industry is susceptible to collusion. ¶¶190-213. Occidental, through its CEO, Vicki Hollub, played a central role in this conspiracy by attending inter-Defendant meetings where the agreement was discussed and publicly confirming its commitment to the conspiracy. ¶¶129-34, 143(d), 149(e), 150(d).

On a Rule 12(b)(6) motion, this is more than "enough factual matter (taken as true) to suggest that an agreement was made" and certainly "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also In re Urethane Antitrust Litig.*, 683 F. Supp. 2d 1214, 1233 (D. Kan. 2010) (plaintiffs alleged plausible antitrust conspiracy, where plaintiffs included allegations of "various meetings and communications . . . involving specific participants . . . and occurring in specific locations").[2] Discovery has not yet commenced. At this stage, "the proof is largely in the hands of the alleged conspirators." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009); *see also Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) ("The requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset."); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010) ("Discovery may reveal the smoking gun or bring to light additional circumstantial evidence that further tilts

---

[2] Unless otherwise noted, all internal citations and quotations are omitted, all emphasis is added, and all quotations are cleaned up.

the balance in favor of liability."). Plaintiffs nonetheless offer detailed factual allegations of specific meetings and statements, that plausibly suggest the existence of the conspiracy.

### A.    Legal Standard.

"Once a conspiracy is established, only slight evidence is required to connect a co-conspirator," *United States v. Troutman*, 814 F.2d 1428, 1446 (10th Cir. 1987), and at the pleadings stage "courts have held that antitrust conspiracy allegations need not be detailed on a defendant-by-defendant basis." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011) (collecting cases); *Othart Dairy Farms LLC v. Dairy Farmers of Am., Inc.*, 720 F. Supp. 3d 1087, 1108 (D.N.M. 2024) ("Not all defendants need to participate in all aspects of the allegations so long as each defendant has some role in the conspiracy.").

In weighing an individual defendant's motion to dismiss in Section 1 Sherman Act cases, Tenth Circuit courts ask whether the plaintiffs have alleged specific facts from which one could plausibly infer that the defendant was involved in the broader conspiracy. *See Urethane*, 683 F. Supp. 2d at 1234; *Brown v. JBS USA Food Co.*, 2023 WL 6292717, at *12 (D. Colo. Sept. 27, 2023) (there is no requirement that plaintiffs demonstrate that an individual defendant's conduct, "on its own, affect[ed] the entire [ ] industry"). This analysis is performed "without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).

### B.    Judicial Notice of Incomplete Materials Outside of the CCAC Is Improper.

As a threshold matter, Occidental improperly seeks judicial notice of eight exhibits purporting to support Occidental's counter-factual argument that it did not join the conspiracy. *See, e.g.*, *Sanchez v. Jacob*, 2024 WL 3391113, at *2 (E.D. Okla. June 20, 2024) ("A court

3

generally may not consider evidence extraneous to the complaint when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgment."); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 69 (D.D.C. 2016) (rejecting attempts "to undercut the Plaintiffs' factual allegations by providing as exhibits to their Motion to Dismiss, documents cited by Plaintiffs in their Complaint and other documents not cited by Plaintiffs"). None of these exhibits—which include excerpts of SEC filings, earnings conference call slides, and earnings conference call transcripts—appear anywhere in the CCAC.

Moreover, the exhibits provided by Occidental are only partial excerpts of the full documents, forcing the Court and Plaintiffs to attempt to evaluate them without proper context. These incomplete exhibits should not be considered. *See Domestic Airline Travel*, 221 F. Supp. 3d at 72 ("Defendants do not set forth how each document at issue satisfies the requirements of Federal Rule of Evidence 201(b)."). Consideration of these extraneous materials for the truth of the matters asserted therein is not appropriate at the pleadings stage. *See United Water and Sanitation District v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1057 (D. Colo. 2020) ("When a court takes judicial notice of documents, it may do so only to show their contents, not to prove the truth of the matters asserted therein."); *Hampton v. Root9b Techs., Inc.*, 2016 WL 7868823, at *6 (D. Colo. Aug. 3, 2016) (striking defendants' exhibits to 12(b)(6) briefing because only judicially noticeable for fact of existence yet was offered only for truth, including where defendant cited the exhibit to show that referenced conduct actually happened). Thus, even if the Court takes judicial notice of these incomplete exhibits, notice of these documents should be limited to the fact that Occidental made these statements to the SEC and to its shareholders, not that these statements are true and accurate descriptions of Occidental's strategic decisions or production levels.

**C.      Plaintiffs Plausibly Allege that Occidental Joined the Conspiracy.**

Occidental asks the Court to impose a heightened pleading requirement: that allegations attributed to Occidental—viewed in isolation—must provide sufficient direct or circumstantial evidence to plausibly suggest an agreement was made.  Oxy Mot. at 6 ("The Complaint lacks any allegation of direct evidence that Occidental participated in a conspiracy."); at 7 ("Here, Plaintiffs fail [ ] to plead that Occidental acted in parallel with the other Defendants, and they fail to plead facts that plausibly show that Occidental's conduct is more consistent with conspiracy[.]").

No such pleading standard exists. Having plausibly established the existence of the conspiracy, the only remaining question is whether the CCAC suggests that Occidental "had some role in the conspiracy."  *Othart*, 720 F. Supp. 3d at 1108.  The specific dimensions of Occidental's participation in the conspiracy—including the exact dates and contents of conspiratorial communications—will be determined through discovery.[3]

*Twombly*'s mandate that a well-pled §1 claim "requires a *complaint* with enough factual matter (taken as true) to suggest that an agreement was made" is clearly applicable to the entire complaint taken together, not for allegations specific to each individual defendant.  *Twombly*, 550 U.S. at 556; *see also Othart*, 720 F. Supp. 3d at 1106 ("[T]he Court must consider the conduct in context, as a whole, such that conduct on its own may be permissible and at the same time be considered in a larger context to infer an impermissible antitrust conspiracy.").  Nor are Plaintiffs

---

[3] *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 5108131, at *4 (S.D.N.Y. Sept. 20, 2016) ("Questions as to each Defendant's participation in the conspiracy and the conspiracy's scope may be raised later in litigation, but do not merit dismissal at this phase."); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *33 (N.D. Cal. Oct. 2, 2014) ("Once a defendant's participation in the conspiracy is adequately alleged, questions about the scope of their participation are better decided on a complete factual record.").

required to plead "parallel conduct" and "plus factors"—the typical method of establishing a §1 conspiracy through circumstantial evidence—in regard to any one Defendant viewed in isolation. Here, Plaintiffs allege more than enough to plausibly tie Occidental to the conspiracy.[4]

- In January 2019, Occidental's CEO, Vicki Hollub, attended the Davos World Economic Forum with Defendant Hess's CEO, individual Defendant John B. Hess, and Defendant Pioneer's CEO, individual Defendant Scott D. Sheffield. ¶129. According to *Reuters*, Hess and Hollub discussed U.S. shale oil output production growth while on a panel together. ¶130. After meeting with the three CEOs, OPEC Secretary General Barkindo said that he thought his "colleagues in the US are on the same page with us and we will work together to exchange views." ¶131.

- In March 2019, Ms. Hollub met with leadership from other U.S. shale producers, including Defendants Hess, Permian Resources, and Diamondback, at a private dinner in Houston to discuss oil production and pricing strategies. ¶¶132-34.

- Occidental sharply reduced its production growth rate during the Class Period in parallel with the other Defendants. ¶160, Table 1.

---

[4] *See, e.g.*, *Brown v. JBS USA Food Co.*, No. 1:22-cv-02946 (D. Colo. Sept. 27, 2023), Dkt. 220, at 32-33; 36 (rejecting two defendants' arguments that plaintiffs failed to plead enough facts to tie them to the conspiracy, given only one or two specific meetings and survey responses were alleged for both defendants, because plaintiffs alleged "more than an opportunity to join the conspiracy"); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 803 (N.D. Ill. 2017) ("*Broilers*") (rejecting same argument by several defendants, because "[p]laintiffs have alleged that each defendant that has raised this argument either cut production or took action to restrain production at some point during the relevant time period"); *Lithium Ion Batteries*, 2014 WL 4955377, at *31 (denying all seven individualized motions to dismiss, including those arguing that insufficient facts were alleged to tie specific defendants).

- Parroting the language of Defendants' CEOs and sticking to the conspiracy's "mantra of capital discipline," in March 2021, Ms. Hollub said that despite a "healthier supply and demand environment" and "a V-shaped" post-pandemic recovery, U.S. oil production would not return to pre-pandemic heights, because Occidental and other large U.S. shale oil producers were "committed to value growth, rather than production growth." ¶143(c, d).

- In March 2022, Ms. Hollub said that Occidental had a "huge inventory of high-quality investments" in U.S. shale but was not acting on those opportunities to expand production and was focusing on maintaining high profits instead. ¶¶149(e); 144, n.105 (Occidental had a ~$40 breakeven price in 2022).

- In March 2023, Ms. Hollub again met with U.S. shale oil executives, including those from Defendants Pioneer, Expand, Diamondback, and Hess, at a private dinner in Houston to reaffirm their agreement to restrict production. ¶150(d).

Taken together and viewed in the light most favorable to Plaintiffs, these allegations suggest Occidental participated in the formation and execution of the conspiracy.

     **D.**    **Plaintiffs Plausibly Allege Parallel Conduct and Plus Factors as to Occidental.**

Although Plaintiffs need only offer "slight" evidence connecting Occidental to the conspiracy, Plaintiffs have also plead sufficient facts that suggest parallel conduct taken by Occidental specifically, as well as several plus factors applicable to Occidental individually.

     **1.**    **Plaintiffs Plausibly Allege Occidental Engaged in Parallel Conduct.**

Plaintiffs allege facts specifically establishing that Occidental engaged in parallel conduct alongside its co-conspirators, including (i) participating in meetings with other Defendants during

the pre-cartel period that included exchanges of forward-looking competitive information; (ii) continuing to meet with other Defendants throughout the alleged conspiracy; and (iii) curtailing production growth to take advantage of market conditions during the conspiracy.

***Establishing conspiratorial relationships.*** Plaintiffs' allegations make clear that the conspiracy arose at some point before January 2021, ¶¶136-38, in part resulting from several private meetings and public statements made by Defendants as early as 2017. ¶¶109-12. Plaintiffs specifically allege that Occidental attended *at least* one such meeting with Defendants and OPEC during this foundational period. ¶¶132-35 (Mar. 2019 CERAWeek Houston dinner).

***Continued statements to reinforce conspiracy.*** Plaintiffs allege that Occidental and its CEO continued to make statements and appearances in parallel with Defendants continuing into the cartel period. ¶143(c) (March 2021 statements by Hollub, predicting that shale oil production will not return to pre-pandemic height in part because the industry was now "committed to value growth, rather than production growth"); ¶149(e) (March 2022 CERAWeek statements by Hollub that Occidental was not acting on opportunities for growth); ¶152(b) (March 2022 private dinner with several Defendant CEOs including Hollub to discuss output and pricing strategy). These allegations plausibly suggest that Occidental was not only involved in the early formation of the conspiracy but that it continuously worked to build, reinforce and preserve the alleged cartel after it formed.

***Curtailed production growth during conspiracy.*** Plaintiffs allege that Occidental suppressed production growth throughout the Class Period. ¶160 & Table 1 (showing Occidental maintaining a single-digit growth rate from 2021 to 2023); ¶161 & Figs. 3, 10 (showing Occidental's increased revenue during Class Period yet decreased reinvestment rate). Plaintiffs

allege that this failure to expand production was against each individual Defendant's economic self-interest, because market prices were steadily rising well in excess of Defendants' breakevens, and as Defendants had excess capacity.  ¶¶149(e), 204-13.

### 2.    Occidental's Fact-Bound Arguments that It Did Not Engage in Parallel Conduct Each Fall Flat.

In response, Occidental makes several fact-bound arguments, each of which falls flat.

*First*, Occidental improperly asks the Court to weigh the merits of competing inferences from Occidental's alleged conduct.  At the pleadings stage, the Court draws all reasonable inferences in Plaintiffs' favor.  *See Othart*, 720 F. Supp. 3d at 1096-97.  Occidental argues Plaintiffs are wrong: it did not conspire with other Defendants to restrict production and inflate prices.  By arguing that Plaintiffs' allegations linking Occidental to the conspiracy are factually wrong, Occidental has implicitly acknowledged that the CCAC does in fact contain allegations linking Occidental to the conspiracy.  *See, e.g.*, *Broilers*, 290 F. Supp. 3d at 804 ("[M]ost of Defendants' arguments boil down to the contention that Plaintiffs' allegations are wrong: they did not agree; they did not cut production; they actually increased market share.  But all of these are arguments that should be tested by discovery; and they are not arguments that Plaintiffs have failed to *allege* participation.").

*Second*, Occidental argues its statements and conduct prior to January 2021 pre-date the beginning of the conspiracy and, therefore, cannot reflect parallel conduct in furtherance of the conspiracy.  But this misstates the allegations and impermissibly seeks to draw conclusions on the merits before discovery.  Plaintiffs do not allege a conspiracy beginning precisely in January 2021—Plaintiffs allege that the conspiracy was operational by, approximately, January 2021. ¶¶136-43.  The CCAC makes clear that the period between the end of the price war and the

beginning of the conspiracy is a key transitional period, so the exact start date will be uncovered by discovery.  ¶¶109-35.  Regardless of when the conspiracy precisely began, Occidental admits it "had been preaching—and practicing—supply discipline for years before the alleged conspiracy even began," Oxy Mot. at 2-3, 7-8, 12, consistent with Plaintiffs' allegations.  Moreover, courts routinely look to pre-class period conduct for both context for, and evidence of, the alleged conspiracy.[5]

   *Third*, Occidental argues that Plaintiffs failed to account for its 2019 acquisition of oil producer Anadarko when calculating Occidental's growth rates.  Oxy Mot. at 3-4, 8-9.  Occidental specifically takes issue with growth numbers presented in the CCAC at Table 1. ¶160.  But Occidental does not even suggest how its growth rate should be calculated, other than alleging a five-to-eight percent growth rate from 2019 to present.  Oxy Mot. at 3-4, 8-9, 12.  By arguing that Plaintiffs' allegations are wrong as a factual matter, Occidental again implicitly admits that allegations linking it to the conspiracy exist, and asks the Court to view the allegations in a light more favorable to Occidental based on its say so.  That is improper and the Court need not engage in a fact-finding exercise.  Whatever number is utilized,[6] Plaintiffs allege that Occidental's

---

[5] *See* Jnt. Resp. at 20, n.9.

[6] Even if the Court were to delve into this factual dispute about allegations in the CCAC, Occidental is wrong.  Assuming the data in its exhibits are accurate (which the Court should not), Occidental apparently acquired 264 MBOE/d in production from Anadarko.  Dkt. 126, Ex. 3, at 35.  This same chart shows that Occidental's post-acquisition U.S. production in 2019 was 714 MBOE/d; its 2018 production was 372 MBOE/d; and its 2017 production was 296 MBOE/d.  *Id.* This means that Occidental's U.S. shale oil production during 2019 not attributable to the acquisition was 450 MBOE/d [714 − 264 = 450].  Comparing this non-acquired 450 MBOE/d 2019 rate against Occidental's historic production reflects a 21% year-over-year increase in 2018 [450 / 372 = 1.21] and a 26% year-over-year increase from 2017 [372 / 296 = 1.26%].  Occidental's own numbers demonstrate Occidental's clear decline in production growth during the Class Period.

growth rate was suppressed during the Class Period and that it continuously declined to expand production against its own rational economic self-interest throughout the relevant period.  ¶¶82, 143(c), 149(e), 160, 204-13.  This is sufficient at this stage of the case.

*Fourth*, Occidental argues it could not have acted in parallel with other Defendants because the production growth rates among Defendants "span the spectrum."  Oxy Mot. at 9.  But pleading parallel conduct does not require pleading uniform conduct to suppress supply.  *See, e.g.*, *Domestic Airline Travel*, 221 F. Supp. 3d at 69 ("Plaintiffs do not need to demonstrate that Defendants cut or limited capacity in exactly the same way in order to adequately allege parallel conduct."); *In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 723 (N.D. Ill. 2022) ("Plaintiffs do not need to allege that Defendants restricted supply in an identical manner.").  *See also* Jnt. Resp. at 23-24.

### 3.    Plaintiffs Plausibly Allege Plus Factors Applicable to Occidental.

Plaintiffs allege numerous "plus factors" which support an inference of conspiracy, including market conditions that make the industry susceptible to collusion,[7] opportunities to collude, inter-firm communications, and actions against self-interest.  ¶¶190-96, 204-13.  These plus factor allegations—like all of Plaintiffs' allegations—must be viewed as a whole, despite Occidental's persistent efforts to view each in isolation.[8]

---

[7] Occidental argues that market concentration is a "neutral factor," Oxy Mot. at 11, citing *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42, 52 (9th Cir. 2022).  The Ninth Circuit in *DRAM* specifically emphasized that "Plaintiffs must allege some factual support in addition to the DRAM market's structure to plausibly suggest conspiracy." 28 F.4th at 52. Plaintiffs here have done so. Occidental also cites *In re Text Messaging Antitrust Litigation*, 782 F.3d 867, 875 (7th Cir. 2015), but this decision was at the *summary judgment* stage, after discovery had been taken.

[8] For a complete discussion on Plaintiffs' plus factors, *see* Jnt. Resp., at §II.B.1.b.ii, at 26-29.

First, Plaintiffs allege Defendants, including Occidental, met at industry gatherings, including intimate dinners during these events. ¶¶112-35, 152(a-b), 194. *See Turkey*, 642 F. Supp. 3d at 727 ("when one considers [trade associations] in the broader context, evidence of these opportunities 'plausibly help[s] to fill-out the picture' of an alleged conspiracy"). Second, Plaintiffs plausibly allege that Occidental shares three large common shareholders with other Defendants. ¶197 (BlackRock; State Street; Vanguard). Occidental's merit-based arguments regarding common ownership, Oxy Mot. at 4, 12, are inappropriate at the pleading stage. Third, Plaintiffs allege that Occidental acted against its self-interest by suppressing its rate of production growth, despite market conditions conducive to increased production. ¶¶204-13. Occidental argues it acted in its self-interest by maintaining its pre-conspiracy production growth rate because it wanted to pay off acquisition debts. Oxy Mot. at 12. This argument incorrectly presumes Plaintiffs allege a conspiracy beginning precisely in January 2021. Fourth, Plaintiffs allege there is a high volume of communications and coordination between Occidental and the other Defendants. ¶192. Separately, Occidental argues a lack of FTC action as to Occidental proves Occidental was not involved in the conspiracy. Oxy Mot. at 10. But lack of action by an antitrust regulator does not mean no nefarious conduct took place.[9]

## III.    CONCLUSION

Plaintiffs respectfully request that the Court deny Occidental's Motion to Dismiss.

---

[9] *See, e.g.*, *Altria Grp., Inc. v. Good*, 555 U.S. 70, 89-90 (2008) ("agency nonenforcement of a federal statute is not the same as a policy of approval"); FTC Br. as Amicus Curiae, *In re Effexor XR Antitrust Litig.*, 2012 WL 3289191, at §IV (D.N.J. Aug. 10, 2012) ("agency non-action on a matter, which may reflect resource constraints, the exercise of prosecutorial discretion, or other considerations, is not tantamount to approval of the underlying conduct").

Dated: April 10, 2025

*/s/Christopher A. Dodd*
Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

*Interim Liaison Counsel for Plaintiffs and Putative Class*

Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
Isabella De Lisi (*pro hac vice*)
Mollie E. Chadwick (*pro hac vice* forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com
idelisi@scott-scott.com
mchadwick@scott-scott.com

Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Karin E. Garvey (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

Michael Dell'Angelo (*pro hac vice*)
Candice Enders (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
cenders@bm.net

Richard D. Schwartz (*pro hac vice*)
BERGER MONTAGUE PC
1720 W. Division
Chicago IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser (*pro hac vice*)
Vara G. Lyons (*pro hac vice*)
Ellen Wen (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com
ewen@cpmlegal.com
jalhadeff@cpmlegal.com

Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
Vasti S. Montiel (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
vmoniel@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2025, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

*/s/Christopher A. Dodd*
Christopher A. Dodd
