**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| |
|---|
| *In re: Shale Oil Antitrust Litigation* |
| This Document Relates to: |
| ALL ACTIONS |

No. 1:24-md-03119-MLG-LF

**PLAINTIFFS' RESPONSE TO DEFENDANT PIONEER'S MOTION TO DISMISS FOR**
**LACK OF PERSONAL JURISDICTION (DKT. 130)**

## I.    INTRODUCTION

Defendant argues that this Court cannot exercise personal jurisdiction over it because (1) Pioneer has insufficient minimum contacts with New Mexico, (2) neither the Clayton Act nor the Multi-District Litigation ("MDL") statute provide this Court with jurisdiction, (3) this Court lacks derivative jurisdiction as a transferee under the MDL statute, and (4) constitutional due process concerns bar this Court from exerting personal jurisdiction over Pioneer for any reason. *See generally* Dkt. 130 ("Pion. Mot.").

Defendant's motion fails for four reasons: *First*, Pioneer has sufficient minimum contacts with New Mexico to establish jurisdiction under New Mexico's long-arm statute, and the contacts of Pioneer's Co-Defendants are imputed to Pioneer under the Tenth Circuit's application of conspiracy jurisdiction. *Second*, 15 U.S.C. §22 of the Clayton Act grants this Court jurisdictional authority over Pioneer. *Third*, Pioneer's contacts with California, a transferee state, confers personal jurisdiction to this Court, both independently and under the Clayton Act. *Fourth*, exercising personal jurisdiction over Pioneer does not violate due process as Defendant has not argued any constitutionally significant inconvenience.

## II.    BACKGROUND

Plaintiffs allege Pioneer and its Co-Defendants conspired to curtail domestic production of shale oil, injuring gasoline and other crude derivative fuel purchasers throughout the United States, including New Mexico. *See* ¶¶109-247.[1]  Plaintiffs describe with particularity private meetings

---

[1] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint ("CCAC"), filed January 10, 2025, Dkt. 86, and all terms and acronyms are defined and used as in the CCAC. "OPEC" refers to the "Organization of Petroleum Exporting Countries," and references to "OPEC" from December 2016 onward include OPEC+.  *See* ¶95.

among Defendants, public communications demonstrating intent to collectively curtail production or production growth, parallel production restraint that would otherwise be against the self-interest of Defendants including Pioneer, and a stark decline in oil rigs within the Permian Basin, which sits beneath New Mexico.[2]  *Id.*

Specific to Pioneer's role in the conspiracy, Plaintiffs allege that Pioneer's CEO during the Class Period, Individual Defendant Scott Sheffield, was a key participant in the domestic cartel. Sheffield is quoted *thirteen* times in the CCAC, including the following, where Sheffield purported to speak on behalf of all Defendants:

- **June 2021, Reuters interview**: Sheffield said that he was "confident the producers will not respond" to the high crude oil prices by increasing production, because they were focused on "shareholder returns."  ¶143(e).

- **October 2021, Financial Times interview**: Sheffield said U.S. producers were not willing to increase supply to curb soaring crude oil prices that were "under OPEC control," . . . Sheffield reaffirmed Pioneer's commitment to the agreement, promising to cap any Pioneer output increase at 5% per year no matter the price of crude oil, explaining that "everybody's going to be disciplined, regardless whether it's $75 Brent, $80 Brent, or $100 Brent . . . ."  ¶143(g).

- **October 2021, Financial Times interview**: "All the shareholders that I've talked to said that if anybody goes back to growth, they will punish those companies." ¶200, n.179.

- **February 2022 Oilprice.com article quotes Sheffield**: "In regard to the industry, it's been interesting watching some of the announcements so far, the public[ly listed] [I]ndependents are staying in line," and "I'm confident they will continue to stay in line." Sheffield emphasized, "Whether it's $150 oil, $200 oil, or $100 oil, we're not going to change our growth plans[.]"  ¶149(a).

---

[2] *See* ¶89 ("[A] substantial portion of the conduct alleged in this Complaint occurred in, or directly affected shale oil production in, the Permian Basin, which spans Southeastern New Mexico and West Texas.").

- **January 2023, Bloomberg article quotes Sheffield**: Sheffield confirmed that the "aggressive growth era of US shale is over" and that Pioneer and the other Defendants were "no longer a swing producer." ¶149(g).

This shows that Pioneer was intimately involved in a sufficiently pled conspiracy to restrain domestic shale oil production.[3]

Pursuant to a Judicial Panel on Multidistrict Litigation ("JPML") order, cases originally filed in, *inter alia*, Nevada and California were transferred to this Court and consolidated for pretrial proceedings with cases originally filed in this district. *See* Dkt. 1, 4. Several other facts are salient for jurisdictional purposes. First, Pioneer admits that several Co-Defendants operate in and have minimum contacts with New Mexico.[4] Second, Pioneer admits that it owned interests in 87 oil wells in New Mexico during the Class Period, and continues to hold interests in some or all of those wells currently. *See* Pion. Mot. at 6. Fourth, Pioneer admits to transacting approximately $3,000,000 worth of natural gas within New Mexico during the Class Period. *Id.* Third, Pioneer admits to transacting nearly $10,000,000 worth of natural gas in California, an MDL transferor state. *Id.* at 10.

These facts establish that this Court may exercise personal jurisdiction over Pioneer.

---

[3] *See* Jnt. Resp., §II.

[4] *See* Defendants' Response to Plaintiff Foos, et al.'s Motion to Transfer Related Actions For Consolidated or Coordinated Pretrial Proceedings, MDL No. 3119, Dkt. 53, filed June 3, 2024, at 2-3, 5-6, 10 (acknowledging this case involves "allegations about shale oil production;" the Permian Basin is one of the "top three shale oil 'plays'—geographic areas where shale formations contain significant amounts of oil—in the U.S.;" that "shale oil resting in the Permian Basin . . . reaches into two New Mexico counties;" and that Defendants Permian, EOG, and Occidental all have shale oil operations, totaling hundreds of employees, in New Mexico).

### III.    ARGUMENT

At this initial stage, "the plaintiff need only make a prima facie showing that jurisdiction exists . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits . . . [and] all factual disputes must be resolved in the plaintiff's favor." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).[5]  In addition to materials cited in the CCAC, this Court may properly consider any "affidavit or other written materials, [or] facts, that, if true, would support the exercise of personal jurisdiction over defendant." *Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F. Supp. 3d 1200, 1208 (D.N.M. 2016) (Browning, J.).

Plaintiffs have made a prima facie showing that personal jurisdiction exists for Pioneer. Specific personal jurisdiction is proper because Pioneer has admitted this case involves shale oil, the largest shale formation in the United States straddles the Texas / New Mexico border, and Pioneer owns interests in shale oil wells in New Mexico.  This is dispositive.  Notwithstanding that, jurisdiction is *also* proper under the Tenth Circuit's application of conspiracy jurisdiction, *and* under the Clayton Act, *and* under the MDL statute.

### A.    New Mexico's Long-Arm Statute Authorizes Personal Jurisdiction Over Pioneer.

New Mexico's long-arm statute, N.M. Stat. Ann. §38-1-16, authorizes personal jurisdiction in cases arising from, relating to, and affiliated with Defendant's actions, and extends "as far as

---

[5] Unless otherwise noted, all internal citations and quotations are omitted, all emphasis is added, and all quotations are cleaned up.

constitutionally permissible." *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (N.M. 1994).

### 1. Pioneer Has Substantial Contacts With New Mexico Related to This Action.

For the Court to exercise specific personal jurisdiction, "the suit must 'aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quotations omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (specific jurisdiction requires "affiliatio[n] between the forum and the underlying controversy"). That the in-forum conduct is related to the suit is sufficient; it need not be at-issue. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) ("none of our precedents ha[ve] suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do").

Defendant incorrectly argues that ownership of oil producing wells in New Mexico are insufficient contacts for specific personal jurisdiction. *See* Pion. Mot. at 4-6. But in prior filings, Pioneer has admitted that this case involves "allegations about shale oil production," that the Permian Basin is one of the "top three shale oil 'plays'—geographic areas where shale formations contain significant amounts of oil—in the U.S.," and that "shale oil resting in the Permian Basin . . . reaches into two New Mexico counties."[6] In relation to the allegations of this case, ownership interests in shale wells in New Mexico certainly qualifies as suit-related.

---

[6] Defendants' Response to Plaintiff Foos, et al.'s Motion to Transfer Related Actions For Consolidated or Coordinated Pretrial Proceedings, MDL No. 3119, Dkt. 53, filed June 3, 2024 ("MDL Response"), at 2-3, 10.

Pioneer does not seriously contest that owning shale wells is unrelated to a suit about shale oil production, and instead minimizes its New Mexico contacts by claiming that that its New Mexico oil wells are only a minor portion of its revenue. *See* Pion. Mot. at 5-6. However, minimum contacts are *minimum* contacts, and 87 wells are *87 wells.* That is an objectively substantial number, and this number may be *growing*.[7] The minimum contacts analysis relies on whether the "business transacted locally by [Pioneer] is substantial *by itself*, and not necessarily whether the [New Mexico] share comprises a substantial or impressive percentage of the company's total business." *Harco v. Ithaca Gun Co.*, 309 F. Supp. 585, 589 (D. Utah 1969).

Minimum contacts have been found in New Mexico for far less substantial contacts than ownership of 87 wells. For example, in *Sproul v. Rob & Charlies, Inc.*, specific personal jurisdiction was found over a defendant manufacturer that sold a quick release mechanism for a bicycle to a Florida distributor, the Florida distributor then resold the single component in New Mexico, and the defendant manufacturer provided customer service "throughout the United States, including New Mexico." 304 P.3d 18, 28 (N.M. Ct. App. 2012); *see also Thistlethwaite v. Elements Behav. Health, Inc.*, 2014 WL 11514671, at *6 (D.N.M. July 2, 2014) (finding minimum contacts where defendant owned "a facility located in New Mexico"). Pioneer's 87 relevant production facilities in New Mexico far exceeds the minimum contacts in *Sproul* or *Thistlethwaite*.

Pioneer's continuous and substantial contacts with the forum are clearly suit-related, and are sufficient for this Court to properly exercise jurisdiction.

---

[7] Compare Declaration of Matthew Mathis, MDL No. 3119, Dkt. 53-3, filed June 3, 2024, at ¶7 ("Pioneer holds non-operating interests in less than 50 wells in New Mexico" as of June 3, 2024); with Declaration of Matthew Mathis, Dkt. 130-1, filed February 2, 2025 (stating that Pioneer had interests in 87 New Mexico wells during the Class Period).

### 2. Pioneer's Co-Defendants' Contacts With New Mexico Are Imputed to Pioneer for the Minimum Contacts Analysis.

Under conspiracy-based personal jurisdiction, while "there still must be minimum contacts as to each defendant, [] they can be based on the co-conspirator's presence in the forum state, if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 789 (10th Cir. 2013); *but see Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007) (finding no jurisdiction where the defendant received and sent invoices to alleged co-conspirator because there was no evidence of "meeting of the minds… [and the] common plan could not be said to have resulted in wrongful conduct causing injury or damages") (quotations omitted). Taking *Weldon* and *Melea* together, "a co-conspirator's activities in a forum can provide minimum contacts for jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, an injury occurs in the forum, **or** substantial steps in furtherance of the conspiracy are taken in the forum." *Unitednet, Ltd. v. Tata Commc'ns Am., Inc.*, 2023 WL 2665578, at *10 (D.N.M. Mar. 28, 2023) (finding conspiracy jurisdiction), *aff'd*, 112 F.4th 1259 (10th Cir. 2024).[8]

Here, unlike *Melea*, Plaintiffs have shown a meeting of the minds, injury in New Mexico (among other states), a conspiracy directed at New Mexico (among other states), and that implementing the conspiracy included curtailing production at U.S. shale wells (including in New Mexico). As described above, there can be no question Pioneer was involved in the alleged

---

[8] Defendants incorrectly characterize Tenth Circuit conspiracy jurisdiction, suggesting that acts in furtherance of the conspiracy must have occurred in New Mexico to apply. *See* Dkt. 130 at 6. This is not required.

conspiracy.  And Pioneer admits that its Co-Defendants have shale operations in New Mexico.[9]

Under *Weldon*, those minimum contacts can be imputed to Pioneer, and are clearly sufficient to

confer suit-related jurisdiction.

### B.  The Clayton Act Allows This Court to Exercise Personal Jurisdiction Under 15 U.S.C §22.

The Clayton Act's nationwide service of process provides that "personal jurisdiction may

be established in any district, given the existence of sufficient national contacts." *Go-Video, Inc.*

*v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989); *see also In re Auto. Refinishing Paint*

*Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) ("[w]e hold that personal jurisdiction in federal

antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the United

States as a whole").

Pioneer incorrectly argues that Section 12 of the Clayton Act does not provide for

nationwide personal jurisdiction.  *See* Pion. Mot. at 6-7.  While there is a Circuit split on this

issue,[10] and the Tenth Circuit has not addressed it directly, courts in the District of New Mexico

have adopted the Third and Ninth Circuits interpretation that the relevant inquiry is whether the

Defendant had sufficient minimum contacts with the United States.  *See In re Credit Default Swaps*

*Auctions Litig.*, 710 F. Supp. 3d 895, 938 (D.N.M. 2023) ("*CDS Auctions*") (finding "[i]n antitrust

cases, § 12 of the Clayton Act, 15 U.S.C. § 22, authorizes the exercise of personal jurisdiction over

---

[9] *See* MDL Response at 5-6 (Defendants Permian, EOG, and Occidental all have shale oil operations, totaling hundreds of employees, in New Mexico).

[10] The precise issue animating the split is whether Section 12's venue and service provisos may be read separately (wider interpretation, allowing for nationwide jurisdiction), or must be read in tandem (narrower interpretation, allowing for jurisdiction only in districts where defendant "may be found or transacts business").  15 U.S.C. §22.

any foreign corporation in any judicial district, so long as that corporation has sufficient minimum contacts with the United States writ large"). Other Tenth Circuit District Courts are also in accord. *See Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n*, 1990 WL 269872, at *4 (D. Kan. Oct. 18, 1990) (finding "that the more liberal reading adopted by the Ninth Circuit Court of Appeals in Go-Video, Inc. is in accordance with the Tenth Circuit . . . the court finds that plaintiff may obtain service of process over defendant pursuant to the extraterritorial service of process clause of Section 12"), *order set aside by* 1990 WL 256326 (D. Kan. Dec. 6, 1990) (set aside because plaintiffs cured service); *see also Van Ornum v. Am. Med. Ass'n*, 2017 WL 9481018, at *9 (D. Utah Mar. 14, 2017), *report and recommendation adopted*, 2017 WL 4339653 (D. Utah Sept. 29, 2017) (finding "the Clayton Act provides for nationwide service of process against defendant corporations in private civil antitrust suits").

Even under Defendant's narrow interpretation of Section 12, Pioneer is still subject to this Court's jurisdiction because "it may be found or [it] transacts business" in New Mexico. 15 U.S.C. §22. In contrast to all of Defendant's cited cases,[11] Pioneer admits to substantial New Mexico contacts: interests in 87 oil wells in New Mexico, and ongoing natural gas transactions worth approximately $3,000,000. This level of economic activity easily clears the "transacts business"

---

[11] *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (the only evidence of contact was an affidavit stating that revenue from the forum was "de minimis"); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 731-32 (7th Cir. 2013) (finding against personal jurisdiction where defendant made six sales to the forum "for a grand total of $2,327.25"); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) (finding insufficient contacts where a "resident accesses the defendants' Yellow Pages website [in the forum]"); *Pub. Serv. Co. of N.M. v. Fed. Pac. Elec. Co.*, 210 F. Supp. 1, 4 (D.N.M. 1962) (insufficient contacts where the Defendant engaged in just four transactions over the course of eight years totaling just over $50,000.00).

bar. *See United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (transacts business under Clayton Act means "practical, everyday business or commercial concept of doing or carrying on business of any substantial character"); *Budicak, Inc. v. Lansing Trade Grp., LLC*, 2020 WL 758801, at *4 (D. Kan. Feb. 14, 2020) (Clayton Act jurisdiction recognized because "eighty-two annual subscribers have billing addresses in Kansas" over defendant's argument that "these subscribers are but a small percentage of its total subscribers, making its business in Kansas *de minimis*").

### C.   This Court Has Personal Jurisdiction Through 28 U.S.C. §1407 and Defendant's California Contacts.

The MDL statute ensures that "'the transferee court can exercise personal jurisdiction to the same extent that the transferor court could.'" *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020).  As discussed above, courts in the Ninth Circuit follow *Go-Video*, and regularly exercise personal jurisdiction in antitrust cases based on nationwide service of process.  *Go-Video, Inc.*, 885 F.2d at 1415.  Counsel for Defendants admitted that Clayton Act jurisdiction over all Defendants was proper in the District of Nevada under *Go-Video*.  *See* Pion. Mot. at 8.  So, it likewise would be proper in district courts in California.

But like above, even if the Court determines that a California district court would apply Defendants' narrower Section 12 position, jurisdiction in California would still be properly found. Defendant transacted approximately $10,000,000.00 in natural gas in California between 2021 and 2024.  This too easily clears the "transacts business" bar.  *Budicak*, 2020 WL 758801, at *4.

Because personal jurisdiction over Pioneer was proper in the actions commenced in California, this Court has derivative personal jurisdiction under 28 U.S.C. §1407.

**D.**     **Due Process Does Not Prevent This Court From Exercising Personal Jurisdiction Over Pioneer.**

Defendant seeks to avoid the above with a general appeal to minimum contacts and due process, which Pioneer acknowledges is contra to existing personal jurisdiction law. *See* Pion. Mot. at 11. Pioneer's arguments are meritless. Myriad federal statutes grant nationwide service of process and personal jurisdiction. *See CDS Auctions*, 710 F. Supp. 3d at 938 (nationwide service of process under Clayton Act); *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 448 F. Supp. 3d 1263, 1268 (D.N.M. 2020) (nationwide service of process under COPPA); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 817 F. Supp. 899, 902 (D. Kan. 1993) (under RICO); *Briesch v. Auto. Club of S. Cal.*, 40 F. Supp. 2d 1318, 1321-22 (D. Utah 1999) (under ERISA). Defendant's generalized concerns are insufficient to overcome the presumption in this Circuit that nationwide service of process, when authorized by Federal statute, comports with Due Process.

The Tenth Circuit allows an exception to nationwide personal jurisdiction in cases where litigating in the forum would result in "[c]onstitutionally significant inconvenience." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000). Pioneer is correct that due process for nationwide jurisdiction requires the "forum to be fair and reasonable to the defendant." *Id*. However, "[t]o establish that jurisdiction does not comport with Fifth Amendment due process principles a defendant must first demonstrate . . . that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

Pioneer cannot meet this burden, and does not even attempt to do so. The Tenth Circuit has "emphasize[d] that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern [because] in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay*, 205 F.3d at 1212-13 (quotations omitted).  Given that Pioneer has admitted the bulk of its shale operations reside in Texas, Pioneer has not and cannot demonstrate that being forced to litigate in an adjacent state is a constitutionally significant inconvenience.  Thus, Defendant's due process arguments fail.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Pioneer's Motion to Dismiss for lack of personal jurisdiction.[12]

---

[12] In the event the Court disagrees, Plaintiffs respectfully request the Court grant Plaintiffs' leave to amend their CCAC.

Dated: April 10, 2025

*/s/Christopher A. Dodd*
Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

*Interim Liaison Counsel for Plaintiffs and
Putative Class*

Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
Isabella De Lisi (*pro hac vice*)
Mollie E. Chadwick (*pro hac vice* forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com
idelisi@scott-scott.com
mchadwick@scott-scott.com

Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Karin E. Garvey (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

Michael Dell'Angelo (*pro hac vice*)
Candice Enders (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
cenders@bm.net

Richard D. Schwartz (*pro hac vice*)
BERGER MONTAGUE PC
1720 W. Division
Chicago IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser (*pro hac vice*)
Vara G. Lyons (*pro hac vice*)
Ellen Wen (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com
ewen@cpmlegal.com
jalhadeff@cpmlegal.com

Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
Vasti S. Montiel (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
vmoniel@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs and the
Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 10, 2025, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.


<u>    */s/Christopher A. Dodd*        </u>
Christopher A. Dodd