# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| *In re: Shale Oil Antitrust Litigation* | |
| This Document Relates to: | No. 1:24-md-03119-MLG-LF |
| ALL ACTIONS | |

## PLAINTIFFS' RESPONSE TO KANSAS'S MOTION FOR LIMITED INTERVENTION

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................... 1

II.  BACKGROUND ...................................................................................................... 3

III.  LEGAL STANDARD.............................................................................................. 5

IV.  ARGUMENT ........................................................................................................... 6

   A.  Kansas Lacks Standing to Intervene. ................................................................. 7

   B.  Intervention of Right Under Rule 24(a)(2) is Not Appropriate. ...................... 10

      1.  Kansas Lacks a Protectable Property or Economic Interest in this Litigation.............. 10

      2.  Kansas Will Not Be Impacted By This Litigation. ........................................ 12

         a.  Under *Snapp*, Plaintiffs' Claims Cannot Impair Any *Parens Patriae* Authority Kansas Purports to Have. ................................................................. 12

         b.  Kansas's Motion is Premature and Undermines Rule 23. ........................ 17

   C.  Kansas Should Not Be Permitted to Intervene Under Rule 24(b). ................... 19

V.  CONCLUSION......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**................................................................................................................ **Page(s)**

*Alaska Elec. Pension Fund v. Bank of America*,
    2018 WL 8581152, at *1-2 (S.D.N.Y. Nov. 13, 2018)..........................................15

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982)....................................................................8, 12, 13, 15

*Am. Ass'n of People With Disabilities v. Herrera*,
    257 F.R.D. 236 (D.N.M. 2008)......................................................................5, 20

*Anderson Living Tr. v. WPX Energy Prod., LLC*,
    No. CIV 12-0040 JB/KBM, 2016 WL 5376325, at *11 (D.N.M. Aug. 27,
    2016) .........................................................................................................18

*Arney v. Finney*,
    967 F.2d 418 (10th Cir. 1992)......................................................................20

*In re Axon VieVu Antitrust Litig.*,
    No. CV 23-7182, 2025 WL 366751 (D.N.J. Jan. 31, 2025) ...........................18

*Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*,
    331 U.S. 519 (1947)......................................................................................9

*Ctr. for Biological Diversity v. Haaland*,
    341 F.R.D. 236 (D. Minn. 2022) ...................................................................7

*DeJulius v. New Eng. Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) .....................................................................20

*Deus v. Allstate Ins. Co.*,
    15 F.3d 506 (5th Cir. 1994)...........................................................................6

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297, 343-344 (N.D. Ga. 1993) ...................................................11

*In re Effexor Antitrust Litig.*,
    357 F. Supp. 3d 363 (D.N.J. 2018) ...............................................................17

*Elna Sefcovic, LLC v. Tep Rocky Mountain LLC*,
    2019 WL 13195473 (D. Colo. Jan. 31, 2019).................................................2

*Faulhaber v. Petzl Am., Inc.*,
   656 F. Supp. 3d 1257 (D. Colo. 2023) ...................................................................18

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   No. 12-CV-02432-WYD-KMT, 2013 WL 5448078 (D. Colo. Sept. 27, 2013) .....................18

*In re GSE Bonds Antitrust Litig.*,
   396 F. Supp. 3d 354, 358 n.3 (S.D.N.Y. 2019) ...................................................15

*Harrison v. Jefferson Par. Sch. Bd.*,
   No. CV 20-2916, 2022 WL 539277 (E.D. La. Feb. 23, 2022) ....................................8

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ........................................................................13

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   811 F. Supp. 2d 910 (S.D.N.Y. 2011) (No. 1996) ...............................................17

*In re HIV Antitrust Litigation*,
   2022 WL 22609107, at *7 (N.D. Cal. Sept. 27, 2022) ..........................................16

*Iowa Public Employees' Retirement Sys. v. Bank of America Corp*,
   2022 WL 2829880, at *1, n.1, *21, *30 (S.D.N.Y. June 30, 2022) ..........................15, 16

*Howard v. McLucas*,
   782 F.2d 956 (11th Cir. 1986) ...............................................................6

*Kane Cnty., Utah v. United States*,
   597 F.3d 1129 (10th Cir. 2010) ..........................................................10, 19

*Kane Cnty., Utah v. United States*,
   928 F.3d 877 (10th Cir. 2019) ............................................................6, 7

*Kane Cnty., Utah v. United States*,
   94 F.4th 1017 (10th Cir. 2024) .............................................................10

*Kansas v. Biden*,
   736 F. Supp. 3d 1020 (D. Kan. 2024) .........................................................8

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
   348 F.R.D. 397 (D.D.C. 2025) .............................................................9, 21

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........................................................16

*Linde v. Envision Healthcare Corp.*,
No. 220CV02661HLTTJJ, 2021 WL 3089214 (D. Kan. July 22, 2021)................................18

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
2017 WL 3131977, at *2 (D.N.J. July 20, 2017 ....................................................................16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................................7, 9

*Peters v. D.C.*,
873 F. Supp. 2d 158 (D.D.C. 2012) ....................................................................................20

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
384 F. Supp. 3d 982 (W.D. Wis.), *aff'd*, 942 F.3d 793 (7th Cir. 2019) ..................................9

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
942 F.3d 793 (7th Cir. 2019) ..............................................................................................17

*Puget Soundkeeper All. v. United States Env't Prot. Agency*,
314 F.R.D. 516 (W.D. Wash. 2016) ....................................................................................20

*Rio Grande Silvery Minnow v. Keys*,
46 F. App'x 929 (10th Cir. 2002) ......................................................................................7, 9

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)................................................................................................18

*Romero v. Bd. of Cnty. Commissioners for the Cnty. of Curry*,
313 F.R.D. 133 (D.N.M. 2016)............................................................................................19

*In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*,
2022 WL 2438934, at *1, n.3, *6 (D. Del. July 5, 2022) ......................................................16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)............................................................................................................19

*Stubbs v. McDonald's Corp.*,
224 F.R.D. 668 (D. Kan. 2004)............................................................................................17

*T.H. v. Martinez*,
2025 WL 639172 (D.N.M. Feb. 27, 2025) .............................................................................6

*Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*,
787 F.3d at 1068, 1075 (10th Cir. 2015)..............................................................................20

*United States v. I.C.C.*,
   337 U.S. 426 (1949) ...................................................................................................2

*United States v. N. Colorado Water Conservancy Dist.*,
   251 F.R.D. 590 (D. Colo. 2008) ........................................................................5, 20

*Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*,
   232 F.R.D. 392 (D. Utah 2005) ...............................................................................19

*Ute Distribution Corp. v. Norton*,
   43 F. App'x 272 (10th Cir. 2002) ..............................................................................6

*WildEarth Guardians v. U.S. Forest Serv.*,
   573 F.3d 992 (10th Cir. 2009) ...................................................................................6

*Wyoming v. U.S. Dep't of Interior*,
   674 F.3d 1220 (10th Cir. 2012) ...........................................................................8, 11

**Statutes**

Cal. Bus. & Prof. Code §§ 16720, *et seq.*, and §§ 17200, *et seq.* ...............................14

15 U.S.C. § 15 .................................................................................................................13

Kan. Stat. Ann. §§ 50-101, *et seq.* ................................................................................14

Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.* ..........................11

MD. Code Ann., Com. Law §§ 13-101, *et seq.* ..............................................................14

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................................................ *passim*

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Senate Bill 242 (Mar 3, 2025)
   https://kslegislature.gov/li/b2025_26/committees/ctte_s_jud_1/documents/testimony/20250303_01.pdf (last visited Apr. 22, 2025) ...............................................4

## I.    INTRODUCTION

Kansas Attorney General Kris Kobach ("Kobach" or "Kansas" or the "Kansas AG") recently introduced Kansas legislation that would have required Kansas cities or counties to receive permission from the Kansas AG before hiring outside counsel to sue on a contingency basis.[1] Opponents of the bill claimed that the Kansas AG's purpose was to grant itself the right to an "ideological veto" on all litigation by Kansas political subdivisions, and on April 9, 2025, Kansas Governor Laura Kelly vetoed the bill.[2] On April 8, Kansas filed the Motion for Limited Intervention ("Motion") that is the subject of this Response. ("Mot." or "Motion") ECF No. 153. The timing, substance, and context of the Motion suggests that Kansas seeks to establish a different procedural mechanism through which Kansas could veto *any* county litigation that conflicts with the Kansas AG's political views, in *any* case. The Court need not wade into this legislative and political battle, and may deny the Motion by applying Fed. R. Civ. P. 24.

In its Motion, Kansas bizarrely seeks to intervene *as a defendant*, in order to protect its future *parens patriae* interest in bringing claims based on *the same conduct for which Plaintiffs have already brought claims* against its would-be Co-Defendants. Kansas also seeks to litigate a matter—whether political subdivisions can bring class claims *in any circumstances*—that is wholly collateral to the merits of this case, and well beyond its authority to assert any *parens patraie* rights Kansas may have in this case. Indeed, Kansas has filed a nearly identical motion in another class case involving the same Plaintiff, Ford County,[3] demonstrating that nothing about Kansas's Motion is specific to this case, and Kansas has no right to intervene here as a defendant.

---

[1] Sherman Smith, *Kansas Governor Vetoes Flat Tax, Restriction on Local Lawsuits, and Anti-Abortion Videos in Schools*, Kansas Reflector (Apr. 9, 2025), https://kansasreflector.com/2025/04/09/kansas-governor-vetoes-flat-tax-restriction-on-local-lawsuits-anti-abortion-videos-in-schools/ (Last accessed Apr. 16, 2025).
[2] *Id.*
[3] *Rodriguez v. Exxon Mobil Corp.*, No. 4:24-cv-00803-SRB (W.D. Mo. 2024) ECF No. 81-1.

Kansas's request to intervene *as a defendant* makes no sense as is immediately apparent when considering what happens if the Court were to grant the remedies Kansas seeks. If Kansas is allowed to intervene, and the class claims of non-state governmental entities are struck pursuant to Kansas's proposed Motion to Dismiss governmental class allegations, the Court and all parties would face a procedural quagmire. Because this case also involves non-governmental Kansas-resident Plaintiffs and Kansas's Motion to Dismiss would not be dispositive, would Kansas be jointly and severally liable for treble damages?

Presumably, because Kansas moved to intervene on a "limited" basis, it intends for the Court to administratively dismiss it from this case after deciding the non-state governmental entities issue. This is standard operating procedure for nonparty interventions and declaratory judgment actions. *See Elna Sefcovic, LLC v. Tep Rocky Mountain LLC*, 2019 WL 13195473, at *1 (D. Colo. Jan. 31, 2019) (listing cases). But despite an exhaustive search, Plaintiffs found no Tenth Circuit authority supporting the administrative dismissal of an intervenor-*defendant* in a *damages* case.

Plaintiffs unsuccessfully attempted to clarify this uncertainty with Kansas before the Motion was filed.[4] If the Court intends to consider Kansas's Motion strictly as a motion to intervene as a *defendant*, it should be summarily denied because it is indisputable that Plaintiffs' claims and requested remedies in no way implicate the Kansas AG or the citizens of Kansas as defendants. Plaintiffs *include* the citizens of Kansas (or at least the overwhelming majority of Kansas households that have purchased gasoline at least once since 2021), *see* Consolidated Class Action Complaint ("CCAC") ¶¶307-08; it would be nonsensical to add that same constituency as defendants, even for a limited purpose. *See United States v. I.C.C.*, 337 U.S. 426, 431 (1949) (it is an "established principle that a person cannot create a justiciable controversy against himself").

---

[4] *See* Swope Decl, Ex. 1, K. Swope email to N. Smith, dated April 28, 2025.

Kansas's Motion fails for the additional reason that its bald assertion of a *parens patriae* interest is not implicated in this case. *See* Mot. at 1, 10-12, ECF No. 153. Plaintiffs' class claims are brought as violations of statutory rights, rather than the quasi-sovereign interests required of a *parens patriae* claim. So, if Kansas has *parens patriae* rights related to this case, Plaintiffs are not usurping them.

Whether Kansas even has a separate and distinct *parens patriae* interest in this case is not obvious—Kansas simply assumes so and does not argue the merits of applying the doctrine. Kansas then attempts to manufacture interest and injury sufficient to justify intervention by conjuring the specter of a future, hypothetical Kansas suit asserting *parens patriae* rights. But *parens patriae* is itself a legal construction conferring standing; Kansas is arguing that interference with this unused standing theory constitutes itself an injury sufficient for standing. Kansas's circular bootstrapping cannot satisfy Federal Rule of Civil Procedure 24 ("Rule 24") or Article III's injury-in-fact requirement, which demands an actual or imminent, concrete and particularized harm.

This Court should respectfully reject the Kansas AG's request to use this case as a vehicle to obtain the right to an "ideological veto" over city or county lawsuits, which the Kansas AG failed to secure through the legislative process. Plaintiffs respectfully request Kansas's Motion be denied.

## II.    BACKGROUND

On October 3, 2024, the County of San Mateo and the City of San Jose filed suit against Defendants, seeking to represent a class of "non-federal and non-state governmental entities." Complaint ¶¶119-22, *Cnty. of San Mateo v. Hess Corp., et al.*, No. 1:24-cv-01000 (D.N.M. Oct. 3, 2024), ECF No. 1. On October 15, 2024, Ford County filed suit against Defendants seeking to represent a class of "counties and cities in the state of Kansas." Complaint ¶¶121-23, *Ford Cnty.,*

*Kan. v. Permian Resources Corp., et al.*, No. 1:24-cv-01042 (D.N.M. Oct. 15, 2024), ECF No. 1. On January 10, 2025, Plaintiffs filed the CCAC seeking to represent a class of "all persons, governmental and non-governmental entit[ies]." ECF No. 86, ¶¶248-49.

Defendants filed one Joint Motion to Dismiss and eight individual Motions to Dismiss on February 24, 2025. ECF No. 123-33. On April 8, 2025, Kansas moved to Intervene. ECF No. 153. Plaintiffs responded to Defendants' nine Motions to Dismiss on April 10, 2025. ECF No. 156-165. Plaintiffs have since unsuccessfully attempted to settle this matter with Kansas, explicitly clarifying that Plaintiffs will not represent a class that includes states or federal government entities.[5]

Kansas's Motion comes on the heels of a similar motion against Ford County in *Rodriguez v. Exxon Mobil Corp*.[6] On November 27, 2024, Ford County filed a class action complaint against oil and plastic producers alleging a campaign of fraud and deception related to plastics recycling.[7] The Kansas AG made public comments critical of Ford County for bringing that case,[8] and then similarly moved to intervene in *Rodriguez*. In support of that motion, the Kansas AG made analogous arguments to those it advances in this case, claiming that "Kansas's intervention as a party-defendant is imperative to defend its State sovereignty and *parens patriae* interests."[9] There again Kansas sought to "dismiss[] Ford County's class allegations *without prejudice*."[10] *Rodriguez* has since been transferred to the District of Kansas for further proceedings.[11]

---

[5] *See* Swope Decl. Ex. 3, Kansas letter to M. Dell'Angelo, dated May 6, 2025.
[6] *See* Motion to Intervene, *Rodriguez v. Exxon Mobil Corp.*, No. 4:24-cv-00803-SRB (W.D. Mo. Feb. 24, 2025), Dkt 80.
[7] *See* Complaint, *Rodriguez v. Exxon Mobil Corp.*, No. 4:24-cv-00803-SRB (W.D. Mo. Dec. 16, 2024), ECF No. 1.
[8] *Left-wing environmentalists attempt to use Ford County to push radical agenda*, (Feb. 2, 2025), https://www.ag.ks.gov/Home/Components/News/News/150/1292 (last visited Apr. 16, 2025).
[9] *See Rodriguez v. Exxon Mobil Corp.*, No. 4:24-cv-00803-SRB (W.D. Mo. 2024) ECF No. 81-1 at 2; *cf*. Mot. at 5, ECF No. 153.
[10] *Id*. at 9.
[11] *See Rodriguez v. Exxon Mobil Corp.*, No. 4:24-cv-00803-SRB (W.D. Mo. 2024) ECF No. 163.

In February 2025, the Kansas AG introduced a bill[12] requiring counties to "obtain approval… by the attorney general… before [signing] a contingency fee contract for legal services."[13] This bill would have granted the Kansas AG exactly the remedy they seek here: absent the Kansas AG's retroactive consent to Ford County's suit,[14] the Kansas AG would have the statutory right to "appear in [this] proceeding and request that the proceeding be dismissed."[15] Kansas Governor Kelly vetoed the bill, stating, *inter alia*, "the retroactivity language should be removed to eliminate the perception that this bill is targeted at a specific action [i.e., at Ford County]."[16] After failing through legislation, the Kansas AG now seeks, through its Motion in this case, another path to veto the right of Kansas political subdivisions to pursue their substantive claims under Kansas law.

## III.    LEGAL STANDARD

Rule 24(a)(2) permits intervention as of right if the proposed intervenor demonstrates "(1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties." *United States v. N. Colorado Water Conservancy Dist.*, 251 F.R.D. 590, 595 (D. Colo. 2008) (quoting *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir.2005)).[17]

---

[12] *Senate Committee on Judiciary*, Testimony in Support of Senate Bill 242, (Mar 3, 2025) https://kslegislature.gov/li/b2025_26/committees/ctte_s_jud_1/documents/testimony/20250303_01.pdf (last visited Apr. 22, 2025) ("We appreciate Attorney General Kobach for bringing this bill forward for consideration, as just a few months ago, Ford County Kansas joined a case out of Missouri against Exxon regarding alleged fraudulent recycling practices").

[13] H.B. 2228, 2025 Leg., Regular Sess. (Kan. 2025).

[14] S.B. 242, 2025 Leg., Regular Sess. (Kan. 2025), at §1(d) (retroactivity).

[15] S.B. 242, 2025 Leg., Regular Sess. (Kan. 2025), at §1(c) (right to intervene).

[16] Governor Kelly Vetoes Seven Bills, Allows Three to Become Law Without Signature, Kansas Office of the Governor (Apr. 9, 2025), https://www.governor.ks.gov/Home/Components/News/News/616/56 (Last accessed Apr. 16, 2025).

[17] Plaintiffs do not challenge that Kansas's motion was timely, as that term is used in the Rule 24 context, because Kansas's Motion is in fact premature.

The proposed intervenor's interest must be "direct, substantial, and legally protectable." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008). Intervention of right is properly denied where the proposed intervenor advances generalized grievances, or interests that fall outside of the issues raised in the lawsuit. *See Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986) (generalized grievances); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) ("The intervention rule . . . is not intended to allow the creation of whole new lawsuits by the intervenors.").

While the burden on an intervenor to show potential impairment "is minimal," *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009), it is not non-existent. *See T.H. v. Martinez*, 2025 WL 639172, at *2 (D.N.M. Feb. 27, 2025) (threat of impairment must be "more than speculative or remote"). An intervenor's interest is impaired in circumstances where the impact from "the resolution of the legal questions in the case effectively foreclose the rights of the proposed intervenor in later proceedings," *Ute Distribution Corp. v. Norton*, 43 F. App'x 272, 279 (10th Cir. 2002), or where the proposed intervenor faces "[t]he threat of economic injury from the outcome of litigation." *WildEarth*, 573 F.3d at 996.

The intervening party must first establish Article III standing "if the intervenor wishes to pursue relief not requested' by an existing party." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 886 (10th Cir. 2019) ("*Kane I*") (quoting *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017)).

## IV.    ARGUMENT

Kansas's Motion should be denied because its claim for relief, to bar political subdivisions from bringing class claims *in any circumstances*, is wholly collateral to the merits of this case in contradiction to Rule 24. Kansas's Motion fails for three principal reasons. <u>First</u>, Kansas has failed to demonstrate Article III standing because its claimed injuries are insufficiently particularized or concrete. <u>Second</u>, Kansas fails under Rule 24(a)(2) intervention <u>as of right</u> because (a) Kansas

does not have any interest in this litigation that is currently impaired or under immediate threat of impairment, and (b) Kansas's Motion is premature because any impairment hinges on class definitions, which are not determined until class certification. <u>Third</u>, Kansas should not be <u>permitted</u> to intervene because (a) as a defendant Kansas has no claims or defenses that share common questions of law or fact with issues already in this litigation, and (b) parties will suffer prejudice through delay and duplicative, unnecessary litigation.

### A.    Kansas Lacks Standing to Intervene.

Where, as here,[18] the proposed "'intervenor wishes to pursue relief not requested' by an existing party," that intervenor must independently "'meet the requirements of Article III.'" *Kane I*, 928 F.3d at 886, (*quoting Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017)); *see also id*. ("Before considering the merits . . . we must consider Kane County's argument that SUWA lacks Article III standing."). Even though Kansas is seeking to intervene *as a defendant*, it must still establish standing. *See Ctr. for Biological Diversity v. Haaland*, 341 F.R.D. 236, 239-41 (D. Minn. 2022) (applying Article III standing requirements to a defendant-intervenor).

Article III standing requires the proposed intervenor to "demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the challenged conduct, and that the injury will likely be redressed by a favorable decision." *Kane I*, 928 F.3d at 886. Dispositive here, Kansas must show "an injury in fact to their interests . . . which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Rio Grande Silvery Minnow v. Keys*, 46 F. App'x 929, 933 (10th Cir. 2002); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (same).

Kansas's three stated interests or impairments under Rule 24—civil penalties, *parens patriae*, and tax base impacts—do not satisfy Article III injury-in-fact. Regarding civil penalties, Plaintiff individuals and non-state governmental entities cannot and do not sue for civil penalties

---

[18] *See* Mot. at 15, ECF No. 153 (where Defendants sought dismissal with prejudice, Kansas seeks dismissal "without prejudice").

under the Kansas Restraint of Trade Act ("KRTA"),[19] so unless Kansas intervenes *as a plaintiff* these penalties are not at issue, and any purported usurpation or injury is impossible.[20]

Kansas fares no better with its conclusory allegations that Plaintiffs' suit usurps its *parens patriae* rights. "*Parens patriae*, literally parent of the country, refers traditionally to role of state as sovereign and guardian of persons under legal disability." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) ("*Snapp*"). Plaintiffs are adequately enforcing their own interests, while Kansas's intervention seeks to disable Kansans' abilities to advocate for their rights, a complete inversion of the doctrine. Kansas's argument is also incorrect as applied here, as quasi sovereign interests are not at issue in this case, *see* §B.2.a below, and without showing that *parens patriae* applies, Kansas's "mere invocation of... [*parens patriae*] is too vague to survive the standing requirements of Article III." *Harrison v. Jefferson Par. Sch. Bd.*, No. CV 20-2916, 2022 WL 539277, at *11 (E.D. La. Feb. 23, 2022) (standing denied where intervenor "State does not attempt to articulate a direct injury to the State that is sufficient to establish Article III standing. Instead, it relie[d] on the doctrine of *parens patriae* to give it standing to maintain this lawsuit.") (subsequent history omitted).

Finally, the impact of any litigation, including this one, on tax revenue is so general and non-particularized an injury that a State could intervene in virtually any lawsuit, so the "impairment of state tax revenues should not, in general, be recognized as sufficient injury-in-fact to support state standing." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012); *see also*, *Kansas v. Biden*, 736 F. Supp. 3d 1020, 1044 (D. Kan. 2024) ("reject[ing] plaintiffs'

---

[19] Kan. Stat. Ann. § 50-160 ("The commission of any act or practice declared to be a violation of the Kansas restraint of trade act shall render the violator liable *to the state* for the payment of a civil penalty in a sum set by the court of not less than $100 nor more than $5,000 for each day such violation shall have occurred.") (emphasis added).

[20] Kan. Stat. Ann. § 50-147 ("[T]he rights and remedies given by the act shall be construed as cumulative... and shall not affect, change or repeal any other remedies... for the enforcement... of fines, penalties and forfeitures.").

standing theory based on reduced income tax") (appeal pending); *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (state denied intervention because "Texas had no injury-in-fact based on indirect, downstream monetary costs").[21]

Further, Kansas's claimed injuries to these supposed interests are speculative and prospective, while Kansas must show its interests are currently impaired, or that impairment is "'*certainly* impending.'" *Rio Grande Silvery Minnow*, 46 F. App'x at 933 (*quoting Lujan*, 504 U.S. at 564 n.2) (emphasis in *Lujan*). To determine whether Kansas's injury is actual or imminent, the Court should "focus [] on past and present injury;" because absent extraordinary circumstances not present here, "possible future injury is insufficient to create standing." *Id*. (*citing Keyes v. School Dist. No. 1*, 119 F.3d 1437, 1445 (10th Cir.1997)).

It is undisputed that Kansas could file a Complaint asserting whatever *parens patriae* interests it may have right now, or at any time. However, Kansas is self-avowedly *not* intervening to assert its *parens patriae* interests *now*, demonstrating that those interests are not currently impaired. *See* Mot. at 6, ECF No. 153 ("Kansas seeks intervention to protect its ability to make similar factual allegations and claims against the Shale Oil Defendants, if or when Kansas determines any such claims exist.").

Even if the Court accepts Kansas's mere invocation of *parens patriae* as sufficient injury to pass Article III muster (which it is not), any *parens patriae* interests Kansas have are unencumbered by this litigation. *See* §B.2.a, below. Any injury to these interests would only occur in a hypothetical future where Kansas sleeps on its *parens patriae* rights through class certification

---

[21] Kansas further argues Rule 24 impairment through the res judicata or stare decisis impact of this litigation. ECF No. 153 at 13. However, that argument is illusory. *See Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 524 (1947) ("[I]f intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case. He is at liberty to assert and protect his interests in some more appropriate proceeding."); *see also Planned Parenthood of Wisconsin, Inc. v. Kaul*, 384 F. Supp. 3d 982, 988 (W.D. Wis.) (denying intervention as stare decisis impact was insufficient impairment since "the decision of a district court has no authority as precedent"), *aff'd*, 942 F.3d 793 (7th Cir. 2019).

in this case, *see* §B.2.b below, which will be *more than two years* from now.[22] Particularly considering statutes of limitation, if Kansas cannot decide whether to bring claims against Defendants within two years, any future impairment of its *parens patriae* rights brought about by a class certification decision in this case will be of Kansas's own making. Therefore, Kansas lacks standing to intervene to protect its *parens patriae* rights (whatever they may be), until at least such a time as they might be impaired. *See Kane Cnty., Utah v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010), ("*Kane II*") (affirming rejection of SUWA's motion to intervene where specific issue SUWA sought to litigate—scope of easements—was not yet ripe "at this stage of the litigation"); *cf. Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1031-35 (10th Cir. 2024) ("*Kane III*") (allowing SUWA to intervene as to scope of easements, but not title of land).

### B.    Intervention of Right Under Rule 24(a)(2) is Not Appropriate.

Kansas identifies several "legally protectable interests" across the gamut of sovereign, quasi-sovereign, and non-sovereign categories of state interests that it claims will be infringed without the immediate dismissal of the political subdivisions' role as class representatives in this case. First, Kansas argues that Plaintiffs usurp its sovereign *parens patriae* authority as Plaintiffs have no right to sue for antitrust enforcement, and second, that Kansas faces financial consequences from this litigation including taxation and civil penalties. ECF No. 153 at 11-12. Taxation and civil penalties are not protectable interests in this litigation, and any *parens patriae* interests Kansas may have are not yet, and will never be, impaired.

### 1.    Kansas Lacks a Protectable Property or Economic Interest in this Litigation.

Kansas claims that it has two property and economic interests: (1) the imposition and collection of Kansas taxes on "all motor-vehicle fuels or special fuels which are used, sold or delivered in this state for any purpose whatsoever," and (2) a "property and economic interest in

---

[22] *See* ECF No. 82 at 3 (setting deadline for close of briefing on class certification as "790 days after Court rules on MTD")

the civil penalties that may result from this litigation." ECF No. 153 at 12. However, Kansas spends no more than a sentence describing the State's interest in either. Kansas does not explain how it would "see an impact on its state highway fund" if Plaintiffs prevail in this case. The Kansas fuel tax is a set flat tax per gallon (K.S.A. § 79-3408(a)), meaning the tax on fuel is not tied to the price the State, its political subdivisions, or anyone else paid for the fuel. Therefore, the price of fuel does not directly impact the gas tax revenue Kansas collects. More importantly, if tax revenue is insufficient to demonstrate Article III standing, the floor upon which *parens patriae* standing sits, then tax revenue is similarly insufficient as an interest or impairment under Rule 24. *See Wyoming*, 674 F.3d at 1234 ("impairment of state tax revenues should not, in general, be recognized as sufficient injury-in-fact to support state standing").

        As to Kansas's claim that its "ability to recover civil penalties" against Defendants would likewise be affected by a successful recovery by the class members in this case, Kansas misstates applicable Kansas law. As the KRTA makes plain, "[t]he rights and remedies given by [the] act shall be construed as cumulative of all other laws in force in this state, and shall not affect, change or repeal any other remedies or rights now existing in this state for the enforcement, payment or collection of fines, penalties and forfeitures." Kan. Stat. Ann. § 50-147. The Attorney General's exclusive authority to recover civil penalties under the KRTA is enumerated in Kan. Stat. Ann. § 50-160, wholly apart from the individual remedy for direct damages to a "person" (including a political subdivision) in Kan. Stat. Ann. § 50-161. *Contrast* Kan. Stat. Ann. § 50-636 (civil penalties for violations of the Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*, are "recoverable in an individual action" brought by "the aggrieved consumer, the state or a county"). No private party or non-state governmental entity currently in this lawsuit could pursue civil penalties against the Defendants under the KRTA. Further, as a non-party to this litigation, Kansas has no reason to rely on these proceedings and will not be bound by any final judgment or release in this litigation. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 343-344

11

(N.D. Ga. 1993) (rejecting objections brought by government entities to a settlement class in their *parens patriae* capacity because the "the government entities are not within the definition of the class and are not appearing on behalf of class members" and thus lack standing, the complaint and settlement class excluded governments, governmental entities had no reason to rely on the proceedings, and "nothing precluded governmental entities from bringing their own antitrust actions … and nothing precludes them from doing so now"). Kansas's right to pursue its own remedies against Defendants, including civil penalties exclusively available to the State under the KRTA, has no role as an intervenor in this litigation.

### 2.    Kansas Will Not Be Impacted By This Litigation.

Kansas's Motion is premised on the idea that Plaintiffs cannot represent Kansas's individual state interests in this litigation and/or that Plaintiffs' claims usurp *parens patriae*. ECF No. 153-1 (Proposed Mot. to Dismiss). Since Plaintiffs neither represent Kansas's individual state interests[23] nor assert claims that implicate the quasi-sovereign interests protected by *parens patriae*, Kansas's interests, if any, are not threatened.

### a.    Under *Snapp*, Plaintiffs' Claims Cannot Impair Any *Parens Patriae* Authority Kansas Purports to Have.

Under American common law, states, ordinarily through their Attorney General, may assert *parens patriae* authority to vindicate the state's own "quasi-sovereign interest in the health and well-being—both physical and economic—*of its residents in general*." *Snapp*, 458 U.S. at 607

---

[23] Although Plaintiffs admit the CCAC pled a class of all governmental entities, this was due to scrivener's error. Plaintiffs will exclude all state and federal entities from any proposed class when seeking Rule 23 class certification, as is convention. Plaintiffs have represented the same to Kansas during the pendency of this briefing. *See* Swope Decl, Ex. 2, filed herewith. Plaintiffs also note that the underlying complaints of Ford County, City of Baltimore, and City of San Jose and County of San Mateo limited their class definitions to persons and *non-state governmental entities*, such as cities and counties. *See* Complaint ¶¶121-23, *Ford Cnty., Kan. v. Permian Resources Corp., et al.*, No. 1:24-cv-01042 (D.N.M. Oct. 15, 2024), ECF No. 1.; Complaint ¶¶102-04, *Mayor of Balt. v. Permian Resources Corp., et al.*, No. 1:24-cv-00842 (D.N.M Aug. 24, 2024), ECF No. 1; Complaint ¶¶119-22, *Cnty. of San Mateo v. Hess Corp., et al.*, No. 1:24-cv-01000 (D.N.M. Oct. 3, 2024), ECF No. 1. Thus, neither Kansas nor any other State are putative class members here.

(emphasis added). "In order to maintain such an action, the State must articulate an interest *apart from the interests of particular private parties*, i.e., *the State must be more than a nominal party*." *Id.* (emphasis added).

Quasi-sovereign *parens patriae* authority is distinguishable from authority to vindicate other categories of interests a state may have, including (1) a state's *fully* sovereign power to create and enforce a legal code, both civil and criminal, through its state constitutional process, *id.* at 601; (2) a state's non-sovereign proprietary interests equivalent to other associations and private parties, *id.*; and (3) a state's interest by which "for various reasons," a state might be permitted to "pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest." *Id.* at 602. Crucially, as to the third interest, the "[i]nterests of private parties are obviously not themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Id.*

When the question is whether a state may maintain a lawsuit under a particular statute, such as an antitrust statute, the state's claims "cannot be resolved simply by reference to any general principles governing *parens patriae* actions," but instead depends on whether the statute *itself* "authorizes damages for an injury to the general economy of a State." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 259 (1972) (considering whether Hawaii had quasi-sovereign authority to sue under § 4 of the Clayton Act, 15 U.S.C. § 15). Kansas does not perform this analysis in its Motion. Instead, the Kansas AG identifies interests purportedly at risk such as (1) its "exclusive" right to bring first-party statutory antitrust claims on behalf of the State of Kansas to recover damages suffered by the State; (2) its purported "exclusive" statutory authority to bring first-party statutory antitrust claims on behalf of Kansas municipalities and other political subdivisions; and (3) its "exclusive" authority to enforce state consumer protection law "throughout the state." ECF No. 153 at 17-18.

These interests are not legally cognizable interests.[24] The first interest is a direct claim for Kansas's losses on its own purchases, so there is no connection to *parens patriae* at all. Further, this concern is not present here; Plaintiffs do not seek to represent states.[25] As to the other two, the apparent inability of Kansas political subdivisions to bring claims independent of the Kansas AG is belied by the plain language of the preceding section of the KRTA, Kan. Stat. Ann. § 50-161, which gives non-state governmental entities authority to sue on their own behalf. That section specifically defines the term "person" to "include the state of Kansas and any of its political subdivisions" and states that an "action *may be brought by any person* who is injured those injured" by a conspiracy or combination. *Id.*

Here, the non-state governmental entities targeted by Kansas's Motion and proposed Motion to Dismiss aim to vindicate their own private rights for their alleged economic losses arising from *their own* individual purchases of gasoline and other derivative products, such that the quasi-sovereign interests necessary for *parens patriae* do not apply. CCAC ¶28 (City of San Diego); ¶29 (City of San Jose); ¶30 (County of San Mateo); ¶37 (Ford County, Kansas); and ¶53 (Mayor and City Council of Baltimore). That is, the non-state governmental entities claims are for their own losses arising from Defendants' breach of applicable state antitrust laws, and to the extent those entities are seeking to represent a wider class, it is under the normal auspices of Federal Rule of Civil Procedure 23 ("Rule 23"), and not any *parens patriae* authority. CCAC ¶¶282-85 (claims of City of San Diego, City of San Jose, and County of San Mateo brought under Cal. Bus. & Prof. Code §§ 16720, *et seq.*, and §§ 17200, *et seq.*); ¶¶307-08 (claims of Ford County, Kansas brought under Kan. Stat. Ann. §§ 50-101, *et seq.*); ¶¶311-14 (claims of Mayor and City Council of Baltimore brought under MD. Code Ann., Com. Law §§ 13-101, *et seq.*).

---

[24]    Plaintiffs take no position on whether Kansas could ever present proper *parens patriae* interests in this litigation.

[25]    *See* Swope Decl, Ex. 2, filed herewith.

The vindication of specific statutory rights is precisely the type of non-sovereign interest "equivalent to other associations and private parties," described by the Supreme Court. *Snapp*, 458 U.S. at 601. As such, any claim that Kansas *could bring* in a *parens patriae* capacity against Defendants must articulate an interest that is distinct and separate from the claims that have been or could be brought by individual Kansans for the private economic loss they suffered, and by Kansas non-state governmental entities for their own direct economic losses. Recovery by particular Kansans or Kansas non-state governmental entities to remedy their own economic losses *cannot* diminish or infringe on Kansas's quasi-sovereign authority to protect the "health and well-being" of the state generally because that quasi-sovereign interest exists independently and "apart from the interests of particular private parties." *Id*. at 607. Until and unless a state like Kansas brings claims *as a plaintiff*, *parens patriae* considerations are simply not at issue in this litigation.

Accordingly, non-state governmental entities, including municipalities, are routinely combined with private entities in the same class under Rule 23 in antitrust class actions where those non-state governmental entities seek to recover their own losses. Examples of antitrust classes including political subdivisions alongside private parties are too many to name.[26] The court

___

[26] In *In re GSE Bonds Antitrust Litig.*, the named plaintiffs were a combination of public and private entities seeking to represent a class of all persons and entities that transacted in unsecured GSE bonds with defendants. 396 F. Supp. 3d 354, 358 n.3 (S.D.N.Y. 2019) (representative plaintiffs Treasurer of Pennsylvania, City of Birmingham Retirement and Relief System, and Electrical Workers Pension Fund Local 103). The district court certified a settlement class, finding "plaintiffs' interests are aligned with other class members' interests because they suffered the same injuries—monetary losses resulting from GSE bond transactions with settling defendants." 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). In *Alaska Elec. Pension Fund v. Bank of America*, the district court certified a settlement class comprised of "[a]ll persons or entities who entered into, received or made payments on, settled, terminated, transacted in, or held an ISDAfix instrument" and appointed a mixture of public and private entities as settlement class representatives including the Pennsylvania Turnpike Commission, City of New Britain, Connecticut and Portigon AG (a European financial services company). 2018 WL 8581152, at *1-2 (S.D.N.Y. Nov. 13, 2018). In *Iowa Public Employees' Retirement Sys. v. Bank of America Corp,* the district court certified antitrust claims regarding stock loan transactions for class treatment and appointed a private company (Torus Capital, LLC) and governmental pension funds (Iowa Public Employees' Retirement System, Los Angeles County Employees Retirement Association, Orange County

in *In re HIV Antitrust Litigation* analyzed this issue extensively and made clear that "there do not appear to be any Eleventh Amendment/sovereign immunity concerns with respect to including local government entities in the classes." 2022 WL 22609107, at *7 (N.D. Cal. Sept. 27, 2022) (citing *Pittman v. Oregon, Emp. Dep't.*, 509 F.3d 1065, 1071 (9th Cir. 2007)). The court found no issue with "private actors . . . representing local government entities," holding, "[t]here does not appear to be anything to suggest that the proposed class representatives' interests would not align with those of the local government entities." *Id.* Further, the court collected cases in which "several district courts have certified classes that include local government entities" and observed that "inclusion of the local government entities did not raise any red flags." *Id.* (citing *In re Namenda Indirect Purchaser Antitrust Litig.,* 338 F.R.D. 527, 577 (S.D.N.Y. 2021); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 299, 309 (D. Mass. 2021); *In re Zetia Ezetimibe Antitrust Litig.*, 2020 WL 5778756, at *3 (E.D. Va. Aug. 13, 2020)). These principles apply at all stages of litigation, including for settlement purposes. *See* Order Preliminarily Approving Class

_____

Employees Retirement System, and Sonoma County Employees' Retirement Association) as class representatives. 2022 WL 2829880, at *1, n.1, *21, *30 (S.D.N.Y. June 30, 2022). In *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, the district court largely denied defendants' motion to dismiss end-payors' antitrust class claims brought by a combination of public entities, including Baltimore, and private entities, including several labor union health and welfare funds, on behalf of "persons and entities" who "indirectly purchased or reimbursed the purchase of brand or generic Seroquel XR." 2022 WL 2438934, at *1, n.3, *6 (D. Del. July 5, 2022). In *In re Liquid Aluminum Sulfate Antitrust Litig.*, several cities and municipalities as well as two corporate entities brought antitrust claims on behalf of direct purchasers of liquid aluminum sulfate, a commodity chemical primarily used in municipal water treatment and paper manufacturing. 2017 WL 3131977, at *2 (D.N.J. July 20, 2017) (denying defendants' motions to dismiss). *See also Liquid Aluminum Sulfate*, 2018 WL 7108059, at *2 (D.N.J. Dec. 3, 2018) (providing service awards to municipal and corporate class representatives). In *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 581, 590, 606 (S.D.N.Y. 2018), the court certified antitrust claims brought on behalf of purchasers of LIBOR-based instruments from a panel bank for class treatment and found that the proposed class representatives—a mixture of public entities, including Baltimore, and private entities like Yale University—were adequate class representatives. *See also LIBOR-Based Financial Instruments*, 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) (providing incentive awards to the class representatives including the cities of Baltimore and New Britain, Connecticut and three private entities).

Action Settlement at 2-3, *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 811 F. Supp. 2d 910 (S.D.N.Y. 2011) (No. 1996) (certifying a class including "municipal government entities" and "private entities."); *In re Effexor Antitrust Litig.,* 357 F. Supp. 3d 363, 374 (D.N.J. 2018) ("funds, municipalities, and individual").

Further, accepting Kansas's argument that the mere invocation of *parens patriae* is sufficient to demonstrate an interest under Rule 24 threatens to unduly interject political considerations into legal proceedings. If a state attorney general can intervene in a case through *parens patriae* standing, without arguing the merits of *parens patriae*, then attorneys general will functionally have license to intervene in any dispute, granting an ideological veto. *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793 (7th Cir. 2019) (upholding the district court's denial of intervention when the district court expressed concern that it "would likely infuse additional politics into an already political-divisive area of law and needlessly complicate this case") (internal quotations omitted). The proper forum to litigate the political merit of the Kansas AG's desire for an ideological veto over county lawsuits was through the Kansas legislature, and the Kansas AG lost.

### b.    Kansas's Motion is Premature and Undermines Rule 23.

To the extent Kansas has any valid *parens patriae* interest in this litigation (which it has not yet identified), arguments that those interests are impaired are premature. Kansas claims that "Courts in the Tenth Circuit routinely strike class allegations at the pleading stage when they are facially deficient." ECF No. 153-1 at 23.

Setting aside Kansas's failure to demonstrate that Plaintiffs' class allegations "are facially deficient," the District of Kansas case relied upon by Kansas involved an obviously unsuitable class that is materially distinct from the class alleged here. *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (striking class allegations for myriad reasons including failure to administratively exhaust claims and seeking recovery for claims the court had already dismissed).

In fact, courts in this circuit have regularly "refused to require plaintiffs to strip their pleadings of class allegations when the court has yet to determine whether the claims can proceed as a class action." *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0040 JB/KBM, 2016 WL 5376325, at *11 (D.N.M. Aug. 27, 2016) (striking class allegations prior to certification is only appropriate "if the allegations are facially inadequate on the basis of incontrovertible facts… where it is facially apparent from the pleadings that there is no ascertainable class;" a high bar that Kansas's Motion has not met) (quotations omitted); *see also Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. 2023) ("[A] court may grant a motion to strike class allegations [prior to certification] where the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination."). So too here, "the Defendants' arguments are premature." *Anderson Living*, 2016 WL 5376325, at *11. Kansas's arguments are "an issue for a class-certification motion." *Linde v. Envision Healthcare Corp.,* No. 220CV02661HLTTJJ, 2021 WL 3089214, at *5 (D. Kan. July 22, 2021); *see also, Friedman v. Dollar Thrifty Auto. Grp., Inc*., No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *2 (D. Colo. Sept. 27, 2013) (challenges to class definition not ripe "at the pleading stage").

Contrary to Kansas's assertion, it is *not* "appropriate for the Court to evaluate the Political subdivisions' class allegations at this stage." ECF No. 153-1 at 23. It has long been recognized that a "court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). A class certification motion is appropriate time for the court to decide "whether to certify the action as a class action." Rule 23(c)(1)(A); *see also*, *In re Axon VieVu Antitrust Litig*., No. CV 23-7182, 2025 WL 366751, at *18 (D.N.J. Jan. 31, 2025) ("[T]he Court will reserve decision on potential issues related to the representation of local government entities and whether they implicate Rule 23's class action prerequisites until the class certification stage.")

Permitting intervention to dismiss class claims brought by non-state governmental entities prior to certification undermines their federally guaranteed right to sue under Rule 23. Kansas law does not disallow counties from suing as class representatives, and if it did, it would be preempted by Rule 23 which "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action… Congress, unlike [Kansas], has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit—either by directly amending the rule or by enacting a separate statute overriding it in certain instances… the validity of a Federal Rule depends entirely upon whether it regulates procedure." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).

As Kansas is not a member of the proposed class, and no class has yet been certified, Kansas's Motion is premature.

### C.    Kansas Should Not Be Permitted to Intervene Under Rule 24(b).

Permissive intervention under Rule 24(b) is allowed if "'(i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.'" *Romero v. Bd. of Cnty. Commissioners for the Cnty. of Curry*, 313 F.R.D. 133, 142 (D.N.M. 2016) (quoting *Forest Guardians v. U.S. Dep't of Interior*, 2004 WL 3426413, at *10 (D.N.M. Jan. 12, 2004)).[27] Once this threshold is met, permissive intervention lies within the discretion of the district court. *Kane II*, 597 F.3d at 1136.

As discussed above, Kansas does not have any common defenses to the claims Plaintiffs assert here, because none of the conduct alleged or relief sought by Plaintiffs implicates the Kansas AG or the State of Kansas as defendants. Because Kansas's Motion is collateral to the merits of this litigation, it can be denied on that basis. *Utah ex rel. Utah State Dep't of Health v. Kennecott*

---

[27] As with intervention of right, Plaintiffs do not contest timeliness as understood by Rule 24(b), because Kansas's motion is premature. *See* §B.2.b, above.

*Corp.*, 232 F.R.D. 392, 398 (D. Utah 2005) (denying intervention where proposed intervenor "fail[ed] to present a [cognizable] question of law or fact upon which the Court can make a determination for permissive intervention"); *see also*, *Peters v. D.C.*, 873 F. Supp. 2d 158, 219 (D.D.C. 2012) (denying intervention where "Movants' claims make clear that they do not sufficiently share common questions of law or fact").

While this litigation involves questions of oil production, price-fixing, and conspiracy, Kansas's Motion simply references the CCAC's common questions, invokes *parens patriae*, and questions whether non-state governmental entities can bring this (or any) class litigation. ECF No. 153 at 16. Kansas does not once discuss what is at the heart of this case: anticompetitive conduct in shale oil production. As a purported defendant, Kansas's alleged defenses share no common questions of law or fact with this litigation.

Further, all parties will suffer prejudice through delay and duplicative litigation if Kansas is permitted to intervene. In deciding permissive intervention, a court *must* consider whether permissive intervention will cause undue delay or prejudice to the existing parties. Fed. R. Civ. P. 24(b)(3); *see also*, *DeJulius v. New Eng. Health Care Employees Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005) (denying intervention where intervention "would cause undue delay"); *Herrera*, 257 F.R.D. at 259 ("While the proposed intervenors might be able to help develop the factual and legal issues in this case, the Court does not believe that such assistance will outweigh the detriment of increased delay."). In addition, a court may consider such factors as: whether the would-be intervenor's input adds value to the existing litigation and the availability of an adequate remedy in another action. *N. Colorado Water*, 251 F.R.D. at 599. Denial is proper if an applicant's intervention "clutter[s] the action" without aiding the current parties or issues. *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir. 1992); *see also, Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d at 1068, 1075 (10th Cir. 2015) ("We think the district court was entitled to consider the potential for burdensome or duplicative discovery in its

20

analysis."); *see also*, *Puget Soundkeeper All. v. United States Env't Prot. Agency*, 314 F.R.D. 516, 521 (W.D. Wash. 2016) (denying intervention that "would prejudice Plaintiffs by unduly delaying and complicating this case").

Finally, permitting intervention opens "floodgates concern" of extensive future interventions by states, which "cautions against granting permissive intervention to States in cases like this." *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 403 (D.D.C. 2025) (denying permissive intervention where basis for intervention was so general as to apply to "all fifty states").

As discussed above, Kansas seeks to litigate an issue collateral to this case, which is already being litigated in another class case. There is no need to litigate that collateral issue in parallel here, especially given the Kansas AG's failure to secure their requested remedy through the legislative process. To the extent Kansas's concerns need to be addressed in this litigation, the time to address them is at class certification. In sum, Kansas's intervention adds nothing to these proceedings while threatening to unduly complicate, clutter, and delay this case.

## V.    CONCLUSION

Kansas lacks standing to intervene. Its Motion exceeds the scope of a State's *parens patriae* authority. Moreover, Kansas has not met the requirements of Rule 24 intervention, either as of right, or permissively. For the reasons stated above, Kansas's Motion should respectively be denied in its entirety.

Dated: May 5, 2025

Karin B. Swope (*pro hac vice*)
Thomas E. Loeser (*pro hac vice*)
Vara G. Lyons (*pro hac vice*)
Ellen J. Wen (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
1809 7th Avenue, Suite 1610

*/s/ Christopher A. Dodd*
Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, NM 87102
Tel: (505) 475-2932
chris@doddnm.com

*Interim Liaison Counsel for Plaintiffs and the*

Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
tloeser@cpmlegal.com
vlyons@cpmlegal.com
ewen@cpmlegal.com
jalhadeff@cpmlegal.com

Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
Vasti S. Montiel (*pro hac vice*)
COTCHETT, PITRE, & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com
vmoniel@cpmlegal.com

Michael Dell'Angelo (*pro hac vice*)
Candice Enders (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
cenders@bm.net

Richard D. Schwartz
BERGER MONTAGUE PC
1720 Division
Chicago, IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

*Putative Class*

Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
Isabella De Lisi (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com
idelisi@scott-scott.com

Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

Karin E. Garvey (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*