**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>*This Document Relates To:*<br><br>*All Actions* | Case No. 1:24-md-03119-MLG-LF<br><br>Honorable Matthew L. Garcia<br>Magistrate Judge Laura Fashing |

**CONTINENTAL RESOURCES, INC.'S REPLY IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**ARGUMENT**

I. **Plaintiffs Have Not Alleged Parallel Conduct by Continental.**

Plaintiffs allege that Continental conspired with other shale producers to restrict production. Opp. 1-2, 9; *see also id.* at 6 ("limit production"). But their own allegations demonstrate the implausibility of their claim. Waiting well into their opposition to address "[t]he crux of Continental's motion," Plaintiffs do not dispute their allegation that Continental "essentially maintained its pre-conspiracy rate of production growth during the Class Period." *Id.* at 6; *see also* CCAC ¶ 160 & Table 1 (43% before, and 42% during). Accepting that allegation as true, as is required at this stage, there is no plausible claim that Continental restricted or limited supply in parallel with the other Defendants.

As Plaintiffs concede, parallel conduct requires pleading "facts indicating that the defendants acted similarly." Joint Opp., ECF No. 156 at 21. Plaintiffs argue that Continental acted similarly to other shale producers because "[n]o Defendant—including Continental—*increased* its rate of production growth during the conspiracy," Opp. 7 (emphasis added), "in an independently economically rational manner," CCAC ¶ 149; *see also id.* ¶¶ 14, 149, 160, 163.[1] But, as Plaintiffs concede, what matters is the similarity of conduct between the alleged co-conspirators. Plaintiffs' allegations disprove the notion that Continental restricted its production *similarly* to any of its alleged co-conspirators. Plaintiffs allege that Continental's growth rate remained "essentially" the same during the conspiracy period. Opp. 6; CCAC ¶ 160 & Table 1. Yet, they claim that every other Defendant made double or triple-digit reductions to their growth rates—from 30% (for one

---

[1] This theory of parallel conduct is "implausible" because "[f]aulting a company for expanding too slowly" would "subject countless strategic business decisions to second-guessing by courts." *In re Citric Acid Litig.*, 191 F.3d 1090, 1101 (9th Cir. 1999); *see also United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1262 (S.D. Fla. 2021) ("prudence" in "second-guess[ing] well-intentioned business judgments" is required at the motion-to-dismiss stage).

defendant, from 36% to 6%) to 201% (for another defendant, from 220% to 19%)—or cut production.  Plaintiffs cannot make those numbers similar by saying so.  *See, e.g.*, *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1146-47 (N.D. Cal. 2017) (dismissing claim where "the conduct alleged [was] hardly parallel" and rejecting plaintiff's attempt to "gloss over the differences in conduct among [D]efendants" based on "counterfeit logic"); *Bitmain*, 530 F. Supp. 3d at 1259 (rejecting broadly defined notion of parallel conduct that made it "meaningless"); *Jien v. Perdue Farms, Inc.*, 2020 WL 5544183, at *8-9 (D. Md. Sept. 16, 2020) (same).

The cases cited by Plaintiffs only underscore the Complaint's deficiency as to Continental. Each case stands for the unremarkable proposition that alleged co-conspirators' conduct need not be identical to be parallel.  *See* Opp. 9.  But the defendants in those cases had allegedly all similarly reduced production or capacity during the alleged conspiracy.  *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 792, 794 (N.D. Ill. 2017) (while the defendants' conduct was not entirely uniform, the plaintiffs "alleged that all of the defendants engaged in production cuts at the same time," thus achieving the end result of cutting the relevant industry's production below its "historic annual 3% production increase");[2] *In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 723-26 (N.D. Ill. 2022) (parallel conduct sufficiently alleged for defendants that reduced production). Here, however, Plaintiffs allege that Continental expanded its production and maintained its pre-conspiracy production growth rate.  CCAC ¶ 160 & Table 1.  The Opposition does not credibly explain how Continental's maintenance of a 42% growth rate could be parallel to the conduct of co-Defendants who are alleged either to have drastically reduced their growth rates, or actually cut production.  *See id.* (Continental is the only defendant to maintain an almost identical growth rate).

---

[2] The *Broilers* court recognized that "at some point the difference in production cut or market share reductions would be so great that agreement becomes implausible."  *Id.* at 795.  As discussed below, that is the case here.

The allegation that Continental joined a conspiracy where it was permitted to grow at the same pace while the other Defendants had to slow growth immensely or reduce production also renders Continental's membership in the alleged conspiracy economically implausible. *See Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1181 (10th Cir. 2019) (dismissing claim because Supreme Court precedent requires "courts [to] look carefully at antitrust cases where the defendants 'had no rational economic motive to conspire'"). Plaintiffs do not—and cannot—contest that their theory requires implausibly inferring that Continental's alleged co-conspirators (and competitors) permitted Continental to maintain its pre-conspiracy growth rate while they made significant reductions to growth rates and lost market share. *See* Mot. 6. That makes little sense under any set of facts, but it makes even less sense where, as here, Plaintiffs allege that the price of shale oil was reaching historic heights. *See, e.g.*, CCAC ¶ 9. Courts have consistently resolved cases in defendants' favor when they had comparable weaknesses. *See* Mot. 6.[3]

## II. The Opposition Confirms that Plaintiffs' Alleged Plus Factors are Insufficient to State a Claim Against Continental.

Plaintiffs' failure to allege that Continental acted in parallel with its alleged co-conspirators is fatal and renders any plus factor analysis unnecessary. Regardless, Plaintiffs have not sufficiently pleaded plus factors as to Continental. *Llacua*, 930 F.3d at 1177-79 (parallel conduct and plus factors must be pled).

First, Plaintiffs point to their conclusory allegation that it was against Continental's self-interest to merely maintain its double-digit growth rate during the alleged conspiracy. *See* Opp. 7, 10. Plaintiffs concede that Continental's growth rate continued a historic pattern, which is

---

[3] The single statement made by Continental's then-CEO on an earnings call, which projected Continental's future growth, likewise does not establish parallel conduct. *Contra* Opp. 5. Courts have rejected the argument that such vague statements can serve as evidence of parallel conduct. *See, e.g.*, *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *9 (D. Minn. Aug. 8, 2019).

3

insufficient to raise the inference of conspiracy. *See* Mot. 8 (collecting authority); *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 509 (M.D. Tenn. 2023) (reviewing graphs in Plaintiffs' complaint and dismissing claim where Court could "discern no difference between the 2013 to 2016 pre-conspiracy period and the 2016 to 2023 period after the alleged conspiracy began"). Plaintiffs contend that Continental's plausible explanation for its unchanged behavior cannot be considered on a motion to dismiss. *See* Opp. 10. Nonsense.

The Tenth Circuit has expressly recognized that dismissal is appropriate where a plausible alternative non-conspiratorial explanation for a defendant's conduct is evident from a complaint's allegations or from common economic experience. *See Llacua*, 930 F.3d at 1179-80. As Continental's Motion explains, Plaintiffs themselves plead the alternative plausible explanation for Continental's decision to maintain a consistent 42-43% growth rate: unprecedented declines in demand for gasoline precipitated by COVID-19. Mot. 8 (quoting CCAC ¶¶ 12-13); CCAC ¶ 138. That obvious explanation led the Ninth Circuit to affirm the dismissal of substantially similar claims. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024).[4]

Second, Plaintiffs try to rely on communications concededly predating the alleged conspiracy by years, claiming in their opposition that those communications "establish the foundation on which the conspiracy was built." Opp. 3-4. Notably, Plaintiffs fail to cite any case supporting their argument that pre-conspiracy plus factors are enough to maintain a claim. That is because the courts that have addressed the issue have rejected Plaintiffs' argument. Mot. 11

---

[4] Plaintiffs recognize they have no basis to distinguish *D'Augusta* so they unpersuasively argue that it should be rejected because the Ninth Circuit only addressed the relevant issue after independently finding plaintiffs' claim to be barred by the political question and state action doctrines. *See* Opp. 11 n.11. No authority supports that a later portion of an opinion is less well reasoned or persuasive than an earlier portion. To the contrary, a reasoned ruling constitutes the law of the Ninth Circuit, "regardless of whether [the ruling] is necessary in some strict logical sense." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004).

(collecting cases). Relying on allegations of conduct predating the alleged conspiracy is particularly problematic here because Plaintiffs have disavowed that any conspiracy existed before January 2021. *See, e.g.*, CCAC ¶ 136 & Fig. 2; *cf.* Opp. 12.

For conduct during the alleged conspiracy, Plaintiffs rely on a single statement made by Continental's then-CEO (Mr. Berry) on a Q4 2021 public earnings call. *See* Opp. 4-5. The public statement does not raise the inference of conspiracy for the many reasons stated in the Motion, and Plaintiffs' only argument concerning the statement is based on a mischaracterization of what Mr. Berry said. Mr. Berry announced a projection of a range of possibilities for Continental's future production, not a "static growth number on a 5-year-time horizon" as Plaintiffs suggest, *see* Opp. 6.[5] Such statements on public earnings calls do not raise the inference of conspiracy. *In re DRAM Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 50 (9th Cir. 2022) (public companies would make such statements "[i]f no conspiracy existed," and therefore they are not indicative of conspiracy).

### III. The Opposition's Attempt to Impute Allegations of Other Defendants' Conduct to Continental is Contrary to Law.

Recognizing that their Complaint neither alleges parallel conduct nor plus factors as to Continental, Plaintiffs shift the focus to allegations made as to other Defendants and try to save their claim against Continental with impermissible group pleading. *See* Opp. 2, 9-10. Plaintiffs' arguments only underscore the absence of allegations as to Continental and should be rejected.

Although Plaintiffs are superficially correct that conspiracy allegations can be considered "as a whole" and conduct should be considered in context, Plaintiffs must still allege facts that

---

[5] This statement is also consistent with production projections Continental disclosed in public SEC filings years before the alleged conspiracy, and therefore is not indicative of conspiracy. Mot. 10-11; Mot. Ex. B. Plaintiffs are wrong that the statements in Exhibit B cannot be considered at this stage. *See* Opp. 11-12. Continental merely asks for notice to be taken that the prior statements were made, not that they were true. *See SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1193 (D.N.M. 2013).

Continental participated in that larger picture. They may not cure their pleading deficiency by relying on allegations about other Defendants. *See, e.g.*, *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 407 (2d Cir. 2024) (complaint alleging a violation of the Sherman Act must separately identify how each defendant participated in alleged conspiracy). Courts routinely find that a complaint plausibly pleads a conspiracy claim as to some (but not all) defendants. *See, e.g.*, *Turkey*, 642 F. Supp. 3d at 725 (dismissing individual defendant); *Jien*, 2020 WL 5544183, at *5 (same).

Relatedly, Plaintiffs argue that because "the Tenth Circuit never has adopted a blanket prohibition against collective allegations," it is sufficient for them to allege that "Defendants" or "shale executives" took certain actions. Opp. 9. This argument only reinforces the flaw underlying Plaintiffs' claim against Continental. Group pleading is not fatal to a claim so long as the complaint also includes allegations concerning each individual defendant's alleged conduct. *See, e.g.*, *Bledsoe v. Carreno*, 53 F.4th 589, 608 (10th Cir. 2022). No authority supports Plaintiffs' argument that group pleading alone can keep an individual defendant in a case. To the contrary, in complex litigation, "it is 'particularly important' to 'make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.'" *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017).

At bottom, Plaintiffs' only specific allegations as to Continental during the alleged conspiracy period are that the company maintained a consistent growth rate during an alleged conspiracy to restrict shale oil production and that the Company's then-CEO made a single statement on a public earnings call projecting Continental's future production growth rate. Viewing those allegations collectively, Plaintiffs fail to plausibly plead either parallel conduct or plus factors with respect to Continental.

6

Dated: May 12, 2025                                              Respectfully submitted,

|  |  |
|---|---|
| Michael Burrage<br>WHITTEN BURRAGE<br>512 North Broadway Avenue, Ste 300<br>Oklahoma City, OK 73102<br>Telephone: (888) 783-0351<br>mburrage@whittenburragelaw.com<br><br>H. Brook Laskey<br>McCOY LEAVITT LASKEY LLC<br>317 Commercial St. NE, Suite 200<br>Albuquerque, NM 87102<br>Telephone: (505) 246-0455<br>blaskey@MLLlaw.com | By: /s/ *Christopher E. Ondeck*<br>Christopher E. Ondeck<br>Stephen R. Chuk<br>PROSKAUER ROSE LLP<br>1001 Pennsylvania Ave., NW<br>Suite 600 South<br>Washington, DC 20004<br>Telephone: (202) 416-6800<br>Facsimile: (202) 416-6899<br>condeck@proskauer.com<br>schuk@proskauer.com<br><br>Kyle A. Casazza<br>PROSKAUER ROSE LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA 90067-3010<br>Telephone: (310) 284-5677<br>kcasazza@proskauer.com<br><br>Jared DuBosar<br>PROSKAUER ROSE LLP<br>2255 Glades Road, Suite 421 Atrium<br>Boca Raton, FL 33431<br>Telephone: (561) 995-4702<br>jdubosar@proskauer.com<br><br>Hannah Silverman<br>Henrique Carneiro<br>PROSKAUER ROSE LLP<br>Eleven Times Square<br>New York, NY 10036<br>Telephone: (212) 969-3193<br>Facsimile: (212) 969-2900<br>hsilverman@proskauer.com<br>hcarneiro@proskauer.com<br><br>*Attorneys for Continental Resources, Inc.* |

## CERTIFICATE OF SERVICE

    I hereby certify that on May 12, 2025, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

*/s/ Christopher E. Ondeck*
Christopher E. Ondeck
