# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>*This Document Relates To All Actions* | Case No. 1:24-md-03119-MLG-LF<br><br>MDL No. 3119<br><br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT PERMIAN RESOURCES CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 3

    A.    Plaintiffs Cannot Allege PR Engaged In Parallel Conduct ..................................... 3

    B.    Plaintiffs Fail to Allege Any Meaningful "Plus Factors" As to PR ........................ 5

III. CONCLUSION .................................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. Lund*,
 845 F.2d 193 (9th Cir. 1988) ...................................................................................................6

*Brereton v. Bountiful City Corp.*,
 434 F.3d 1213 (10th Cir. 2006) ...............................................................................................6

*Bryant v. Avado Brands, Inc.*,
 187 F.3d 1271 (11th Cir. 1999) ...............................................................................................2

*In re Domestic Airline Travel Antitrust Litig.*,
 221 F. Supp. 3d 46 (D.D.C. 2016) ...........................................................................................4

*Kramer v. Time Warner Inc.*,
 937 F.2d 767 (2d Cir. 1991) ....................................................................................................5

*Oklahoma Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*,
 2024 WL 4202680 (S.D.N.Y. Sept. 13, 2024) .....................................................................5, 6

*Omene v. Accenture Fed. Servs.*,
 2020 WL 1189298 (D.D.C. March 12, 2020) ......................................................................3, 4

*Parrino v. FHP, Inc.*,
 146 F.3d 699 (9th Cir. 1998) ...............................................................................................2, 5

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
 998 F.2d 1192 (3d Cir. 1993) ..............................................................................................2, 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................2

# I.  INTRODUCTION

The linchpin of Plaintiffs' conspiracy claim against Permian Resources Corporation ("PR") is that PR engaged in parallel conduct with its co-defendants by cutting its shale oil production starting in 2021.  But Plaintiffs effectively concede just the opposite is true—that PR's production increased by *at least* 150% during this period, surpassing its prior growth rate of 127%.  This is a fatal and incurable defect warranting dismissal of Plaintiffs' claims against PR with prejudice.

*First*, as explained in PR's opening brief, even though Plaintiffs have intentionally alleged incomplete and low-balled PR production growth figures, the Complaint nonetheless still alleges that PR *substantially increased* its production during the relevant period, to the tune of 56%, far more than any other defendant.  Plaintiffs cite no authority holding that a defendant which substantially increased its production plausibly participated in a conspiracy to *cut* production.

*Second*, Plaintiffs do not dispute that they fail to allege PR's complete production figures.  For every other Defendant, Plaintiffs allege reductions in production growth during the relevant period.  But for PR, they allege a reduction in production growth from a gerrymandered subset of PR's wells.  Because Plaintiffs do not allege PR's *complete production figures*, they cannot plausibly allege that PR engaged in parallel conduct by *cutting* its production growth rate.  This is not, as Plaintiffs contend, a mere "factual dispute" that is inappropriate for resolution on a motion to dismiss: Plaintiffs *affirmatively allege* that their production figures for PR are incomplete and incorrect.  Complaint, ¶ 160, Table 1, n.149.  Thus, no extrinsic evidence is needed to establish the insufficiency of these critical allegations, and this is a defect warranting dismissal.

*Third*, Plaintiffs do not dispute that they relied on the production figures in PR's 2023 SEC Form 10-K and selectively alleged partial figures from that document in their Complaint.  Nor do

1

Plaintiffs claim that PR's SEC filing is in any way inaccurate or unreliable. As a result, PR's SEC filing is within the scope of the Complaint and may be considered under Rule 12(b)(6) for the truth of the matters asserted, without the need for judicial notice.[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n.16 (11th Cir. 1999) (distinguishing incorporated documents from judicially noticed documents, and explaining that the former are "considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment."). Plaintiffs are wrong that a document must be cited by name or physically attached to the complaint to be incorporated by reference. Plaintiffs' Opposition ("Opp.") (ECF No. 163) at 9, n.9; *see, e.g., Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a plaintiff with a legally deficient claim [may not] survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiffs may not "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

*Fourth*, Plaintiffs do not dispute that PR's 2023 Form 10-K expressly states that, from 2021 to 2023, PR's oil production from existing wells ***increased by 150%*** (not 56% as alleged in the Complaint). Thus, when the full scope of the data on which Plaintiffs undisputedly relied is considered, Plaintiffs ***do not*** "allege that PR's production growth rate slowed significantly during the conspiracy" (Opp. at 4); they allege that PR's production growth rate ***continued to increase***, from 123% prior to the alleged conspiracy, to 150% during the alleged conspiracy period. The

---

[1] PR separately responds to Plaintiffs' arguments about judicial notice in its concurrently-filed Reply in support of its Request for Judicial Notice. While PR moved for judicial notice of its 2023 Form 10-K out of an abundance of caution, Plaintiffs' concession that they relied on that document as the basis for their allegations against PR renders judicial notice unnecessary, and permits the Court to fully consider PR's Form 10-K as part of the pleadings.

2

notion that Plaintiffs may nonetheless hold PR liable for a production-*cutting* conspiracy is absurd.

*Finally*, Plaintiffs point to no other well-pleaded facts from which the Court could plausibly infer that PR participated in a production-cutting conspiracy.  The allegations Plaintiffs cite are either (a) irrelevant (¶¶ 120 & 134 – discussing dinners attended by Centennial's former CEO *in 2018 and 2019*); (b) hopelessly vague (¶ 195a – discussing an unnamed "fracking consultant" citing unspecified instances where Centennial asked EOG to modify its fracking schedule to accommodate its production plans); (c) so conclusory as to be meaningless (¶¶ 197-198 – citing certain common shareholders of defendants, without specifying share interests or exercises of common control); or (d) misrepresented in its Opposition ("Plaintiffs also allege that PR individually possessed excess production capacity at its disposal, yet restricted shale oil production," Opp. at 1, citing ¶160, which makes no such individual allegation as to PR).

## II.  ARGUMENT

### A.  Plaintiffs Cannot Allege PR Engaged In Parallel Conduct.

Plaintiffs explicitly concede that the purported PR production figures in their Complaint do not represent PR's production during the relevant period.  Indeed, Plaintiffs' *admitted failure* to allege PR's actual production makes it particularly galling that Plaintiffs pepper their opposition brief with rote assertions that "PR's production growth rate slowed significantly during the conspiracy" and "PR had the ability to ramp up production and gain market share…but instead joined other Defendant co-conspirators in exercising 'restraint.'"  Opp. at 4.  To be clear:  it is undisputed that Plaintiffs ***fail even to allege PR's relevant "production growth rate,"*** much less that the rate "slowed" during the relevant period.  Plaintiffs cannot sidestep PR's motion to dismiss by making baseless assertions in their opposition that directly contradict their Complaint.  *See*

3

*Omene v. Accenture Fed. Servs.*, 2020 WL 1189298, at *5 (D.D.C. March 12, 2020).

Talking past this point, Plaintiffs cite to inapposite authorities in which, unlike Plaintiffs here, the plaintiff alleged that each defendant *actually reduced* its production pursuant to a conspiracy. Plaintiffs rely on *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 69 (D.D.C. 2016), for the proposition that "Plaintiffs do not need to demonstrate that Defendants cut or limited capacity *in exactly the same way* in order to adequately allege parallel conduct." (emphasis added). But the flaw in Plaintiffs' allegations is more fundamental: they do not merely fail to allege that PR cut its production **in exactly the same way** as other defendants; they fail to allege that PR cut its production **at all**. Accordingly, *In re Broiler Chicken Antitrust Litig.* does not aid Plaintiffs either, because in that case the plaintiffs did what Plaintiffs here cannot: "alleged that each defendant…either cut production or took action to restrain production at some point during the relevant time period." 290 F. Supp. 3d 772, 803-04 (N.D. Ill. 2017). Likewise, in *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, the court denied a motion to dismiss specifically because the plaintiffs had alleged that each defendant "made decisions to cut back production and reduce capacity" that "would be impossible to reverse quickly." 764 F. Supp. 2d 991, 1001 (N.D. Ill. 2011). These are the allegations Plaintiffs concede *they do not make* as to PR.

Plaintiffs next misdirect by claiming "[i]t is no matter" that they admittedly fail to allege PR's complete and correct production figures during the claimed conspiracy period (*which would be a staggering 203% production increase*), because "the relevant inquiry is production growth by drilling new wells, not by acquisition." Opp. at 9. That is a non-sequitur, but it also does not solve Plaintiffs' problem. As explained above and in PR's opening brief, the 2023 Form 10-K on which Plaintiffs base their allegations **clearly identifies PR's production growth by drilling new wells**—

4

the exact metric Plaintiffs say is relevant. Scarborough Decl., Ex. A (ECF No. 127-2), at 929. And that SEC filing shows that PR's production *increased by 150%* during the alleged conspiracy period—an even higher rate than during the alleged pre-conspiracy period. Plaintiffs did not omit PR's complete production figures because they were unavailable or impossible to calculate; Plaintiffs did so because they realized these figures directly refute their claims against PR.

Plaintiffs' only other argument is that the Court should just ignore PR's 2023 Form 10-K altogether—even though it is undisputedly the basis for Plaintiffs' parallel conduct allegations against PR, and even though it undisputedly contradicts those allegations—because Plaintiffs did not expressly name that document in their Complaint or attach it as an exhibit. That is not the law. Plaintiffs ignore authorities holding that, where a plaintiff relies on a document for an essential allegation, the document is properly considered on a motion to dismiss—without converting the motion to one for summary judgment—regardless of whether the plaintiff identifies the document in the Complaint. *See, e.g., Parrino*, 146 F.3d at 706; *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. This rule exists because, "[w]ere courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). That is what Plaintiffs attempt here.

**B.     Plaintiffs Fail to Allege Any Meaningful "Plus Factors" As to PR.**

Plaintiffs also contend that they are not required to plausibly allege plus factors "as to PR individually," and may instead rely on a laundry list of vague assertions about the alleged market in general. Opp. at 10. Plaintiffs are wrong:

> General plus factors indicate only that the market as a whole may be susceptible to collusion, and thus are not enough. The complaint must plead plus factors for each

5

defendant. Such specific plus factors must support the plausible inference that each named defendant entered the alleged conspiracy.

*Oklahoma Firefighters Pension & Ret. Sys. v. Deutsche Bank Aktiengesellschaft*, 2024 WL 4202680, at *9 (S.D.N.Y. Sept. 13, 2024) (internal citations omitted). While Plaintiffs argue their plus factor allegations against PR must be "viewed as a whole," that is not hard, as there are only three such allegations, none of which plausibly suggest PR participated in a production conspiracy.

Plaintiffs insist that PR's former CEO's attendance at annual trade association dinners in 2018 and 2019, when "combined with [PR's] objective manifestation of the cartel's intent—coordinated curtailed production" are "enough to infer PR joined the conspiracy." Opp. at 6. But that is completely circular given Plaintiffs demonstrable failure to allege PR actually cut production. Nor do Plaintiffs explain how their vague, stand-alone allegation sourced from an unnamed "fracking consultant" that PR requested EOG "to modify its fracking schedule" in certain "instances" plausibly implies that PR participated in a production-cutting conspiracy. Finally, Plaintiffs' allegations that there are some common shareholders of defendants—without any specific allegations regarding the extent of these shareholders' interests, or any purported exercises of common control—do not plausibly suggest the existence of a production-cutting conspiracy.

### III. CONCLUSION

Plaintiffs have offered no specifics as to how they would fix their pleading deficiencies. Accordingly, PR respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (leave to amend properly denied where plaintiff could not identify any "other facts consistent with the challenged pleading" to cure the legal deficiency).

Dated: May 12, 2025                                   Respectfully submitted,

                                                                     **VINSON & ELKINS LLP**

                                                                     */s/ Michael W. Scarborough*
                                                                     Michael W. Scarborough
                                                                     Dylan Ballard
                                                                     555 Mission Street, Suite 2000
                                                                     San Francisco, CA 94105
                                                                     Tel: (415) 979-6900
                                                                     mscarborough@velaw.com
                                                                     dballard@velaw.com

                                                                     Craig P. Seebald
                                                                     Stephen M. Medlock
                                                                     2200 Pennsylvania Avenue, Suite 500 West
                                                                     Washington, DC 20037
                                                                     Telephone: (202) 639-6500
                                                                     cseebald@velaw.com
                                                                     smedlock@velaw.com

                                                                     *Attorneys for Defendant*
                                                                     *Permian Resources Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2025, a copy of the foregoing document was electronically filed through the Court's CM/ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

/s/ *Michael W. Scarborough*
Michael W. Scarborough

8