IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION<br><br>This Document Relates to:<br>ALL CASES | Case No. 1:24-md-03119-MLG-LF<br>Judge Matthew L. Garcia |

**DEFENDANT EOG RESOURCES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**I.   Introduction**

Plaintiffs' opposition tries to divert the Court's attention away from their paltry allegations as to EOG Resources, Inc. ("EOG"). They claim that they have pleaded sufficient facts to plausibly allege that *some* conspiracy existed and argue that they need only "slight evidence" to tie EOG to the asserted conspiracy. But this argument is an improper distortion of *Twombly*'s pleading requirements: Plaintiffs must plausibly allege *EOG*'s participation in the claimed conspiracy, but their Complaint abjectly fails to do so.

Plaintiffs mock EOG's focus on only seven paragraphs of the Complaint but they do not and cannot contest that those are the *only* seven paragraphs that make *any* substantive allegations against EOG specifically. They instead focus extensively on the paragraphs that make *no* allegations as to EOG. Thus, even taken as a whole and drawing all inferences in Plaintiffs' favor, the Complaint fails to state a claim as to EOG.

The crux of Plaintiffs' allegations—according to their opposition (ECF No. 159) ("Opp.")–is that "the anticompetitive scheme was achieved through regular meetings and communications among the Defendants, starting as early as 2017." Opp. at 2. They outline these meetings in their

"Factual Allegations" comprising nearly two hundred paragraphs of the Complaint. But they ignore that *not once* in this expansive section is EOG alleged to have attended a *single* meeting, or even had a *single* communication, with another Defendant. Nor do they allege a *single* communication between EOG and OPEC.

Plaintiffs insist that the seven paragraphs relating to EOG must be considered in the context of the overall Complaint, and so does EOG. In context, the only references to EOG in Plaintiffs' "Factual Allegations" are four vague remarks about market conditions made in public by two EOG executives that Plaintiffs try to paint as "confirm[ing] Defendants' willingness, *as a group,* to follow OPEC's lead on pricing."[1] But Plaintiffs are not entitled to this extraordinary inference without any allegation that EOG had ever even communicated with OPEC or any other Defendant on this topic. Plaintiffs' characterization—in context—is fanciful speculation, not plausible factual allegation. Yet, that is the core of their case against EOG.

Indeed, the only interactions that Plaintiffs identify between EOG and any other Defendant falls in the Complaint's section on "Plus Factors." But, as noted in EOG's Motion, this section affirmatively alleges that these interactions involve "construction manager[s]" (¶195(c)) or "fracking consultant[s]" (¶195(a)) discussing "best practices" (¶195(b)), "extraction processes"(¶(195(c)) and "operation methods." (¶195(c)). In context of Plaintiffs' own allegations, it is implausible—and not even alleged—that these Carhartt- and work glove-clad employees were interacting to coordinate a global oil conspiracy.

---

[1] Compl. ¶ 140 (emphasis added). Two of the EOG executives' statements were made during investor calls and two were made to reporters. *Id.* ¶¶ 143(f), 149(f).

In sum, Plaintiffs' allegations against EOG fall painfully short of *Twombly*'s requirements that a Complaint must contain specific facts that plausibly suggest the defendant in question entered into a conspiracy.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

**II.     Argument**

  **A.  The Pleading Requirements of *Twombly* Control; Plaintiffs Fail to Meet Them.**

Plaintiffs assure the Court, wrongly, that stating a claim against EOG is a "small burden" because "only slight evidence is required to connect a co-conspirator." Opp. at 2.  But that standard applies in the criminal context, not to civil cases. *In re Citric Acid Litig.*, 996 F.Supp. 951, 955 (N.D. Cal. 1998) (explaining that the "slight evidence" rule is inapplicable in a civil antitrust case). In a civil case, *Twombly* controls, and to survive a motion to dismiss, Plaintiffs must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The *Twombly* standard applies with equal force to *each* defendant in an alleged conspiracy: *i.e.*, for each defendant "the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy...." *TV Comms. Net., Inc. v. Turner Net. Television, Inc.*, 964 F.2d 1022 (10th Cir. 1992); *see also Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (affirming dismissal of price-fixing complaint when it failed to allege the "nature and extent" of defendant's participation); *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (plaintiffs must plead "exactly who is alleged to have done what to whom…as distinguished from collective allegations").

Plaintiffs make no attempt to plead any direct evidence of conspiracy as to EOG.  A plaintiff may satisfy the *Twombly* standard by pleading circumstantial evidence, but that evidence

must plausibly suggest that the defendants engaged in parallel conduct that resulted from a preceding agreement. *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177, 1179 (10th Cir. 2019). These parallel conduct allegations must be accompanied by additional circumstances, or "plus factors," that show "a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 553, 557; *see also Llacua*, 930 F.3d at 1179.

The Court should not even reach Plaintiffs' alleged "plus factors" because they fail to plausibly allege parallel conduct in the first instance: they allege output changes in the conspiracy period ranging from *negative* 63% to *positive* 56%.[2] These are the antithesis of "parallel." *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) (dismissing claim where defendants' alleged conduct was not similar); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195-96 (9th Cir. 2015) (holding there was no parallel conduct where similar policies were adopted at different times). Attempting to connect those random dots into a global conspiracy involving EOG is a stretch too far.

Plaintiffs' allegations of conspiracy as to EOG are wholly implausible. They ask the Court to make a giant leap of logic by taking EOG's former CEO Bill Thomas's public statement to a news outlet ("We don't want to put OPEC in a situation where they feel threatened, like ***we're*** taking market share while they're propping up oil prices.") as speaking for *all* Defendants. Compl. ¶ 140 (emphasis added). Never has a pronoun (*i.e.*, "we") been so badly abused: the law permits one to assume only that a CEO speaks on behalf of his *own* company when speaking publicly.[3]

---

[2] Compl. Table 1 at ¶ 160.
[3] *See Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. 135 (2011) (holding that in the securities context, statements are attributed to "the maker of a statement" or "the person or entity with ultimate authority over the statement, including its content and whether and how to

4

Plaintiffs' sought-after conclusion is even less plausible now that Plaintiffs have disavowed OPEC's role as an "unnamed co-conspirator." *See* Compl. ¶ 85; Opp. to Omnibus at 6.[4]

### B. In Assessing Plausibility, the Court Must Consider Whether the Alleged Conduct Is Equally Likely to Result From Independent Action.

Plaintiffs argue that EOG provides "alternative explanations" for its conduct that are inappropriate at the pleading stage. This is not true. Tenth Circuit law is clear that, where (as here) plaintiffs rely on circumstantial evidence, "the conspiracy is not plausible if in light of common economic experience the alleged conduct is equally likely to result from independent action." *Llacua*, 930 F.3d at 1175. EOG does not dispute that the Court must assume the truth of factual allegations, *if plausible*, at the motion-to-dismiss stage. *Twombly,* 550 U.S. at 572. However, the Court must also consider whether the allegations are plausible in the larger context of rational economic and business strategy. *See Llacua*, 930 F.3d at 1180-81 (affirming dismissal where complaint failed to "plausibly suggest individual [defendants] entered into any agreement" and where "the alleged conspiracy does not make economic sense.").

Here, for instance, the Court must consider whether small ownership stakes by huge investors in multiple U.S. shale oil companies represent typical investment forces at work rather than a nefarious scheme to control global oil output. *See* Compl. ¶ 197. The Court must further consider that public statements by a company regarding market conditions during a time of economic instability are "the type of information companies legitimately convey to their shareholders." *In re Delta/AirTran Baggage Fee Antitrust Litig*., 245 F. Supp. 3d 1343, 1373

---

communicate it."); *In re Tesla, Inc. Securities Litig*., 477 F.Supp.3d 903 (N.D. Cal. 2020) (attributing statements made by a company's CEO to the company).

[4] "[L]egally irrelevant is whether Defendants' cartel 'coordinated' with OPEC on production levels."

(N.D. Ga. 2017). And of course the Court should consider whether anonymous third-party statements about interactions between unidentified field-level employees drilling in the same areas, which *the Plaintiffs' say* relate to "best practices" on "construction and operation methods," constitute normal, rational behavior rather than a global conspiracy. Plaintiffs are simply incorrect in their contention that the Court is obligated to accept implausible allegations and ignore this "larger context" as part of its assessment of whether the Complaint states a "plausible antitrust agreement" involving EOG. *See Llacua*, 930 F.3d at 1180-81.

Considering the allegations holistically, the Court should still dismiss the claims against EOG. Indeed, the Ninth Circuit has recently twice upheld dismissals when faced with similar—and in one case, nearly identical—allegations. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42 (9th Cir. 2022); *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094 (9th Cir. 2024) (nearly identical facts), *cert. denied*, 604 U.S. __ (Mar. 31, 2025).

### III. Conclusion

Plaintiffs have only bare legal conclusions and implausible factual allegations to support their claim against EOG. These allegations are insufficient, and EOG respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

DATED this 12th day of May 2025.

JENNINGS HAUG KELEHER MCLEOD
WATERFALL, LLP

By: */s/ Benjamin F. Feuchter*
Benjamin F. Feuchter
Thomas C. Bird
201 Third Street NW, Suite 1200
Albuquerque, New Mexico 87102
bf@jkwlawyers.com
tcb@jkwlawyers.com

John M. Taladay (admitted *pro hac vice*)
Christopher Wilson (admitted *pro hac vice*)
Kelsey Paine (admitted *pro hac vice*)
Megan Tankel (admitted *pro hac vice*)
Fran Jennings (admitted *pro hac vice*)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001-5692
Telephone: (202) 639-7909
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com
megan.tankel@bakerbotts.com
fran.jennings@bakerbotts.com

*Attorneys for Defendant*
*EOG RESOURCES, INC.*