UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

In re: Shale Oil Antitrust Litigation

This Document Relates to:

ALL ACTIONS

Case No. 1:24-md-03119-MLG-LF
Judge Matthew L. Garcia

**ORAL ARGUMENT REQUESTED**

**DEFENDANT EXPAND ENERGY CORPORATION'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................1

I.  PLAINTIFFS' ATTEMPT TO LOWER THEIR PLEADING BURDEN JUST REINFORCES THEIR FAILURE TO SATISFY *TWOMBLY* AS TO EXPAND .............1

II. PLAINTIFFS DO NOT IDENTIFY ALLEGATIONS THAT PLAUSIBLY SUGGEST EXPAND'S PARTICIPATION IN A CONSPIRACY ...................................2

III. THE COURT CAN AND SHOULD CONSIDER OBVIOUS ALTERNATIVE EXPLANATIONS FOR EXPAND'S DECLINING PRODUCTION OF OIL ..................5

CONCLUSION.....................................................................................................................6

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................1

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................1

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
  691 F. App'x 515 (10th Cir. 2017) .................................................................................1, 4

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d. Cir. 2011)..............................................................................................3

*In re Broiler Chicken Antitrust Litigation*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) .................................................................................3

*In re Delta/AirTran Baggage Fee Antitrust Litigation*,
  733 F. Supp. 2d 1348 (N.D. Ga. 2010)..........................................................................4, 5

*In re Domestic Airline Travel Antitrust Litigation*,
  221 F. Supp. 3d 46 (D.D.C. 2016)......................................................................................5

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)...............................................................................................5

*In re Mexican Gov't Bonds Antitrust Litig.*,
  412 F. Supp. 3d 380 (S.D.N.Y. 2019)................................................................................2

*In re Processed Egg Prod. Antitrust Litig.*
  821 F. Supp. 2d 709 (E.D. Pa. 2011) .................................................................................2

*Llacua v. W. Range Ass'n*,
  930 F.3d 1161 (10th Cir. 2019) .........................................................................................4

*Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*,
  714 F.Supp.3d 209 (W.D.N.Y. 2024).................................................................................3

*Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ...........................................................................................4

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
  911 F. 3d 505 (8th Cir. 2018) ............................................................................................3

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) .............................................................................................1

*United States v. Troutman*,
    814 F.2d 1428 (10th Cir. 1987) ..............................................................................................2

**RULES**

Rule 12(b)(6)......................................................................................................................6

**INTRODUCTION**

Plaintiffs' Response to Expand Energy Corporation's Motion to Dismiss ("Response") does not address any of the fundamental flaws that permeate their claims against Expand Energy Corporation ("Expand"). Chief among them, Plaintiffs allege that Expand cut oil production drastically more than the other Defendants, all but one of which actually increased their production during the alleged conspiracy period. That alone makes Expand's participation in the alleged conspiracy implausible. But Plaintiffs have no answer to this. They do not cite a single case in which a court found that a conspiracy was sufficiently pled against a defendant that acted as an outlier to such an extent. Instead, Plaintiffs ask the Court to lower the pleading standard and allow them to proceed to discovery against Expand despite their failure to plead facts that plausibly support Expand's participation in the alleged conspiracy. That is directly contrary to the Supreme Court's clear instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiffs "have not nudged their claims across the line from conceivable to plausible," so their claims against Expand must be dismissed. *Twombly*, 550 U.S. at 570.

**ARGUMENT**

**I.     PLAINTIFFS' ATTEMPT TO LOWER THEIR PLEADING BURDEN JUST REINFORCES THEIR FAILURE TO SATISFY *TWOMBLY* AS TO EXPAND**

Plaintiffs argue that they need only allege "slight evidence" to connect Expand to the alleged conspiracy. That is wrong. To maintain an antitrust conspiracy claim against a defendant, a plaintiff must plead "exactly who is alleged to have done what to whom…as distinguished from collective allegations[,]" *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (plaintiffs must plead as to each defendant "particular facts against a particular defendant…without relying on

'indeterminate assertion' against all 'defendants'") (citation omitted). Indeed, "[p]ost-Twombly authorities overwhelmingly hold that a complaint that provides no basis to infer the culpability of the specific defendants named in the complaint fails to state a claim." *In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 388-89 (S.D.N.Y. 2019).

Plaintiffs' reliance on *United States v. Troutman*, 814 F.2d 1428 (10th Cir. 1987) gets them nowhere. *Troutman* did not articulate a pleading standard. It was an appeal from a conviction for conspiracy to commit extortion, and the quote Plaintiffs cite in their opposition addressed the evidentiary standard required to prosecute co-conspirators together in a single trial. *Id.* at 1446. *Troutman* is completely irrelevant. Nor did the district court's decision in *In re Processed Egg Prod. Antitrust Litig.* 821 F. Supp. 2d 709 (E.D. Pa. 2011), lower the *Twombly* standard, as Plaintiffs suggest. Resp. at 2. That court did not require the plaintiffs' allegations to be "detailed on a defendant-by-defendant basis," but it still required factual allegations that "plausibly suggest that [each] individual defendant actually joined and participated in the conspiracy," consistent with *Twombly*. *Id.* at 719. Indeed, the court emphasized that a complaint must "delineate[] to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy" and that "[c]onclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases." *Id.* at 720. Plaintiffs have not met that standard.

## II. PLAINTIFFS DO NOT IDENTIFY ALLEGATIONS THAT PLAUSIBLY SUGGEST EXPAND'S PARTICIPATION IN A CONSPIRACY

Plaintiffs concede that to state a conspiracy claim based on circumstantial evidence, they must plead parallel conduct. Resp. at 1-2. They try to defend their conduct allegations on the ground that they need not be "uniform." *Id.* at 10-11. That is beside the point. To qualify as

parallel, conduct must be "substantially similar,"[1] and the Complaint does not allege such conduct as to Expand.  Rather, it alleges that Expand reduced its oil production during the alleged conspiracy period by 63% (a -63% growth rate), in contrast to most other defendants' production increases, which ranged from +3% (Pioneer) to +56% (Centennial/Permian). Compl. ¶ 160.  Only one other defendant allegedly reduced its production, and by only 6%. *Id*.  That is not parallel conduct as a matter of law.  *See*, *e.g.*, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228-29 (3d. Cir. 2011) (holding that the plaintiff failed to allege parallel conduct to support a conspiracy to reduce credit amounts where different defendants chose "to decline, decrease, and even increase credit"); *Mosaic Health*, 714 F. Supp. 3d at 219 ("[W]here the alleged conspirators engaged in divergent conduct at significantly different times, a plaintiff's 'allegations fall far short of demonstrating parallel behavior.'").  Indeed, *In re Broiler Chicken Antitrust Litigation*, which Plaintiffs cite, confirms that conclusion.  There, the court recognized that "at some point the difference in production cut or market share reductions [can] be so great that agreement becomes implausible", such as a "conspiracy claim[] involving two defendants whose market shares increased 20% and 50% respectively, while two other defendants' market shares declined 25% and 19% respectively." 290 F. Supp. 3d 772, 795 (N.D. Ill. 2017).  Similarly, it is not plausible that Expand engaged in a conspiracy that required it to cede market share drastically by cutting more than half of its production while other alleged co-conspirators increased their production.

      Absent allegations that suggest that Expand engaged in parallel conduct, which do not exist, Plaintiffs' conspiracy claim against Expand fails.  First, as explained in Defendants' joint reply brief, without parallel conduct, plus factors are irrelevant. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F. 3d 505, 517 (8th Cir. 2018) (affirming dismissal of claim that

---

[1] *See Mosaic Health Inc. v. Sanofi-Aventis U.S., LLC*, 714 F.Supp.3d 209, 219 (W.D.N.Y. 2024).

3

the defendant engaged in a conspiracy because the plaintiffs failed to "plausibly plead parallel conduct," so "no discussion of any 'plus factors' [was] necessary"). Second, none of the supposed plus factors alleged as to Expand make Expand's participation in the alleged conspiracy any more plausible. *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1175 (10th Cir. 2019). Plaintiffs complain that Expand "fragments the allegation into bits[.]" Resp. at 9. Not so. Expand identified and addressed <u>all</u> of Plaintiffs' allegations about Expand in its motion, just as the Court must do to determine whether Plaintiffs have stated a claim against each individual defendant. *See Bristow Endeavor Healthcare*, 691 F. App'x at 519. That review reveals how thin Plaintiffs' claims against Expand really are. *See* Mot. at 8-11.

With respect to CERAWeek Conference dinners, even the "holistic" view that Plaintiffs urge the Court to undertake, does not advance Plaintiffs' cause. The Complaint itself makes clear that more than two dozen shale executives attended these annual dinners, at which industry-wide trends were discussed. Compl. ¶¶ 113, 150, 152. The subject, context, and setting are all consistent with lawful discussions among industry participants at trade association meetings. *See Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1196 (9th Cir. 2015) ("[M]ere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement.").

Plaintiffs' attempt to analogize public statements made by Expand's CEOs to statements alleged in airline cases is also misplaced for two reasons. Those cases alleged collective efforts to coordinate competitive decisions through public statements over a long period of time, followed by parallel conduct. In *In re Delta/AirTran Baggage Fee Antitrust Litigation*, the plaintiffs alleged that "Delta and AirTran communicated with each other in public regarding how both airlines could 'get average prices up'; 'push fare increases and fee increases'; work 'in conjunction' to increase

4

prices; and impose a first-bag fee during a recession even though it was counter to either Defendant's self-interest to do so alone." 733 F. Supp. 2d 1348, 1361 (N.D. Ga. 2010). The allegations involved a "roughly six-month dialogue" that included setting "expectations as to what the other needed to do to increase prices." *Id*. Similarly, in *In re Domestic Airline Travel Antitrust Litigation*, the defendants' executives publicly advocated for other airlines to participate in "capacity discipline," and one CEO was quoted as saying there were "hopeful signs that *the industry* has learned its lesson about keeping capacity growth in line with demand . . . ." 221 F. Supp. 3d 46, 62 (D.D.C. 2016) (emphasis added). Here, by contrast, Expand's CEOs' alleged statements were standard communications to investors about Expand's unilateral strategy in the face of uncertainties brought on by the COVID-19 pandemic. Mot. at 9.[2]

### III. THE COURT CAN AND SHOULD CONSIDER OBVIOUS ALTERNATIVE EXPLANATIONS FOR EXPAND'S DECLINING PRODUCTION OF OIL

Plaintiffs argue first that the Court should ignore Expand's public SEC filings that provide a non-conspiratorial, and much more plausible, explanation for Expand's production cuts. They assert that the Court should disregard the statements entirely because it cannot consider them for their truth. Resp. at 7. But the Court need not accept the statements as true to consider them in assessing the plausibility of Plaintiffs' claims. In deciding Expand's motion, the Court must decide whether Expand's oil production cuts suggest that it participated in the alleged conspiracy, or whether there are "obvious alternative explanations for the facts alleged." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010) (internal quotation and citation omitted). There is a clear, undisputed, and publicly available obvious alternative explanation for Expand's

---

[2] Plaintiffs also continue to rely on a misrepresentation of a statement by a Bank of America attendee during an earnings call. That comment was a reference *by a third party* to Expand's *dividend distribution plan*. Mot. at 9-10. Plaintiffs offer no good faith basis to continue to cite that statement as evidence that Expand participated in the alleged conspiracy. Resp. at 5.

5

reduction of its oil production: Expand was exiting the oil business. Mot. at 1. And at a minimum, it was publicly announcing that it was doing so. Inferring that Expand was actually conspiring with other independent oil producers, in the face of that contrary evidence, would be unreasonable.

Alternatively, Plaintiffs argue that even if Expand were, in fact, exiting the oil business, it still would have been motivated to increase oil prices because higher prices would trigger bonus payments when Expand sold its oil assets. Resp. at 9. But that is not in the Complaint. The Complaint alleges that the purpose of the conspiracy was to achieve "massive revenue increases[.]" Compl. ¶ 161. It makes no economic sense that Expand would participate in a conspiracy and then walk away from the fruits of that conspiracy almost immediately after it began. Mot. at 3 (showing divestitures of oil assets beginning in 2021). Nor are the divestitures consistent with the mechanics of the alleged conspiracy. Plaintiffs allege a conspiracy to manipulate prices through oil production cuts. But that requires control over the oil producing assets, which Expand ceded once it began to sell its assets to third parties in 2021. Thus, Expand's divestitures undermined, not furthered, the alleged conspiracy.

Additionally, Plaintiffs have no response to the evidence that Expand publicly announced that it was hedging the majority of its oil production in 2021 and 2022 at $42.69/bbl and $44.30/bbl, respectively. Dkts. 133-5 at 11, 133-2 at 12. It is simply not plausible that Expand would conspire to dramatically increase oil prices, only to lose money on every barrel.

## CONCLUSION

All claims against Expand should be dismissed for failure to state a claim under Rule 12(b)(6).

Dated: May 12, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ *Marguerite M. Sullivan*
Marguerite M. Sullivan (*pro hac vice*)
Seung Wan Paik (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
marguerite.sullivan@lw.com
andrew.paik@lw.com

Lawrence E. Buterman
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
lawrence.buterman@lw.com

*Attorneys for Defendant*
*Expand Energy Corporation*
*(f/k/a Chesapeake Energy Corporation)*

7

## CERTIFICATE OF SERVICE

      I, Marguerite M. Sullivan, hereby certify that, on May 12, 2025, I caused the foregoing to be filed electronically through the CM/ECF system, which cause all parties or counsel of record to be served by electronic means.

                                                            */s/ Marguerite M. Sullivan*
                                                            Marguerite M. Sullivan