```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW MEXICO
                       ALBUQUERQUE DIVISION



                                    )  CASE NO: 1:24-md-03119-MLG-LF
IN RE                               )
                                    )    MULTI-DISTRICT LITIGATION
                                    )
SHALE OIL ANTITRUST LITIGATION )       Albuquerque, New Mexico
                                    )
                                    )    Tuesday, July 15, 2025
                                    )  ( 9:32 a.m. to 10:32 a.m.)
_____)  (10:44 a.m. to 11:45 a.m.)




                           MOTION HEARING

              BEFORE THE HONORABLE MATTHEW L. GARCIA,
                 UNITED STATES DISTRICT JUDGE




APPEARANCES:              SEE PAGES 2,3,4


Court Reporter:           Recorded; LCR Cimarron


Clerk:                    E. Romero


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988
```

**Proceedings recorded by electronic sound recording;**
**transcript produced by transcription service.**

2

<u>**APPEARANCES**</u>:

For Plaintiffs:          MATTHEW M. BECK, ESQ.
                        Peifer Hanson Mullins & Baker
                        P.O. Box 25245
                        Albuquerque, NM 87125
                        505-247-4800

                        ANTHONY F. FATA, ESQ.
                        Kirby McInerney
                        211 West Wacker Drive
                        Suite 550
                        Chicago, IL 60606
                        312-767-5180

                        SARAH FLOHR, ESQ.
                        THOMAS L. POPEJOY, ESQ.
                        Kirby McInerney
                        250 Park Avenue
                        Suite 820
                        New York, NY 10177
                        212-371-6600
                        212-699-1148

                        CHRISTOPHER M. BURKE, ESQ.
                        Burke LLP
                        402 West Broadway
                        Suite 1890
                        San Diego, CA 92101
                        619-369-8244

                        VINCENT J. WARD, ESQ.
                        320 Gold Ave. SW
                        Suite 777
                        Albuquerque, NM 87102
                        505-944-9454

For Defendants:          STEPHEN M. MEDLOCK, ESQ.
                        Vinson & Elkins
                        2200 Pennsylvania Ave. NW
                        Suite 500 West
                        Washington, DC 20037
                        202-639-6578

                        BILLY TRABAUDO, ESQ.
                        Bardacke Allison Miller
                        141 E. Palace Ave.
                        Santa Fe, NM 87501
                        505-995-8000

**APPEARANCES:**                    (CONTINUED)

For Defendants:                THOMAS B. WALSH, IV, ESQ.
                               Winston & Strawn
                               2121 N. Pearl St.
                               Suite 900
                               Dallas, TX 75201
                               214-453-6500

                               FRANCES JENNINGS, ESQ.
                               Baker Botts
                               700 K Street NW
                               Washington, DC 20001
                               202-639-1100

                               BORIS BERSHTEYN, ESQ.
                               Skadden Arps Slate Meagher & Flom
                               One Manhattan West
                               New York, NY 10001
                               212-735-3834

                               DANIEL T. HIGGINS, II, ESQ.
                               Brownstein Hyatt Farber Schreck
                               201 Third St NW
                               Suite 1700
                               Albuquerque, NM 87102
                               505-244-0770

                               SEUNG WAN (ANDREW) PAIK, ESQ.
                               Latham & Watkins
                               555 Eleventh Street NW
                               Suite 1000
                               Washington, DC 20004
                               202-637-2201

                               STEPHEN R. CHUK, ESQ.
                               Proskauer Rose
                               1001 Pennsylvania Ave, NW
                               Suite 600 South
                               Washington, DC 20004
                               202-416-6800

                               JEFFREY J. ZEIGER, ESQ.
                               Kirkland & Ellis
                               300 North LaSalle
                               Chicago, IL 60654
                               312-862-3237

<u>APPEARANCES</u>:                    (CONTINUED)

For Defendants:          BENJAMIN F. FEUCHTER, ESQ.
                         Jennings Haug Keleher McLeod Waterfall
                         201 Third Street NW
                         Suite 1200
                         Albuquerque, NM 87102
                         505-346-4646

                         DAVID A. PAPIRNIK, ESQ.
                         Watchell Lipton Rosen & Katz
                         51 West 52nd St.
                         New York, NY 10019
                         212-403-1097

                         EARL E. DEBRINE, JR., ESQ.
                         Modrall Sperling Roehl Harris & Sisk
                         P.O. Box 2168
                         Albuquerque, NM 87103
                         505-848-1800

                         KURT A. SOMMER, ESQ.
                         Sommer Udall Sutin Hardwick & Hyatt
                         P.O. Box 1984
                         Santa Fe, NM 87504

                         NICHOLAS SMITH, ESQ.
                         MELANIE S. JACK, ESQ.
                         Assistant Attorney General
                         State of Kansas

                         ADAM STEINHILBER, ESQ.
                         Assistant Solicitor
                         State of Kansas

1       __Albuquerque, New Mexico; Tuesday, July 15, 2025; 9:32 a.m.__

2                          **(Call to Order)**

3           **THE COURT:**  All right.  Good morning, everyone.  The

4    Court will call Case Number 24-MD-3119.  Counsel will enter

5    their appearances, please.

6           **MR. BECK:**  Good morning, Your Honor, Matt Beck,

7    Peifer, Hanson, Mullins & Baker.

8           **THE COURT:**  Good morning.

9           **MR. BECK:**  Along with me is Sarah Flohr, Anthony Fata

10   and T.L. Popejoy from the Kirby McInerney firm for Plaintiffs

11   3Red Partners LLC.

12          **THE COURT:**  All right, good morning.

13          **MR. BURKE:**  Good morning, Your Honor.  My name is

14   Christopher Burke from Burke LLP and I expected to have with me

15   Raymond Girnys from Lowey Dannenberg but Ray got rained in to

16   New York in a thunderstorm and he extends his apologies.

17          **THE COURT:**  Okay, thank you.

18          **MR. WARD:**  Good morning, Your Honor, Vince Ward,

19   Co-counsel with Mr. Burke.

20          **THE COURT:**  Okay, good morning to you.  All right.

21          **MR. BERSHTEYN:**  Good morning, Your Honor, Boris

22   Bershteyn from Skadden Arps on behalf of Pioneer.

23          **THE COURT:**  Good morning.

24          **MR. MEDLOCK:**  Good morning, Your Honor, Stephen

25   Medlock from Vinson & Elkins on behalf of Permian Resources

1    Corporation.

2            **MS. JENNINGS:**  Good morning, Fran Jennings on behalf

3    of EOG.  I'm from Baker Botts.

4            **THE COURT:**  Okay.

5            **MR. HIGGINS:**  And Daniel Higgins on behalf of

6    Pioneer.

7            **MR. TRABAUDO:**  Good morning, Your Honor, Billy

8    Trabaudo, Bardacke Allison Miller on behalf of Diamondback and

9    joined by Tom Walsh of Winston Strawn.

10            **THE COURT:**  All right.

11            **MR. PAIK:**  Good morning, Your Honor, Andrew Paik from

12    Latham & Watkins on behalf of Expand Energy Corporation.

13            **THE COURT:**  Good morning.

14            **MR. SMITH:**  Good morning, Your Honor, Nicholas Smith,

15    Assistant Attorney General for the Movant Intervenor, the State

16    of Kansas.  With me today I have First Assistant Attorney

17    General Melanie Jack and Assistant Solicitor General Adam

18    Steinhilber.

19            **THE COURT:**  All right.  Good morning to all of you.

20            **MR. CHUK:**  Good morning, Your Honor, Stephen Chuk

21    from Proskauer for Defendant Continental Resources.

22            **MR. DEBRINE:**  Good morning, Your Honor, Earl DeBrine

23    with Modrall Sperling for Occidental Petroleum.

24            **MR. ZEIGER:**  Good morning, Your Honor, Jeffrey

25    Zeiger, Kirkland & Ellis, on behalf of Occidental Petroleum.

1              **MR. FEUCHTER:**  Your Honor, Ben Feuchter from Jennings

2    Haug Keleher McLeod Waterfall on behalf of Defendant EOG

3    Resources, Inc.

4              **MR. PAPIRNIK:**  Good morning, Your Honor, David

5    Papirnik, Watchell Lipton, for Hess Corporation and Mr. John

6    Hess.

7              **MR. SOMMER:**  Good morning, Your Honor, Kurt Sommer on

8    behalf of Scott Sheffield.

9              **THE COURT:**  All right, thank you.

10             All right.  Is that everyone?  Okay.

11             I wanted to start with the putative derivatives class

12   today.  It doesn't seem like there's really a dispute about the

13   motion itself.  I guess I just have a more fundamental question

14   which is, why are you all here?  The transfer order talks about

15   price fixing.  And I'm looking at the order and it talks about

16   Plaintiffs bringing claims, the putative class of indirect

17   purchasers of various petroleum-based products.  That was the

18   case I agreed to take on.

19             And I feel like you all have added another different

20   case and so I guess I'm just wondering why you're here and if

21   you should be.

22             **MR. FATA:**  Thank you, Your Honor.

23             **THE COURT:**  If you could come to the podium.  We're

24   recording.  So if everyone could speak loudly and clearly into

25   the closest microphone, that would be great.

8

1          And I guess my concern is I feel like you all have

2    put in a case that is different than I agreed to accept when

3    the Panel called me to take this case and it's going to --

4    although I suppose it arises from a common factual predicate,

5    the issues, the discovery, the experts are going to be

6    substantially different than the case that started with me.

7    And so I'm just wondering about that and how I decide whether

8    you should be here.

9          **MR. FATA:**  Thank you, Your Honor.  Yes, we -- when we

10   refiled our complaint here and when our colleagues filed their

11   complaint here, we designated the case as related to the MDL,

12   Your Honor.  And the reason we did so -- and Your Honor's

13   question is that there is a -- is certainly a fair point.  The

14   reason we did so is because the core underlying facts that are

15   alleged in both complaints are the same in terms of the alleged

16   conspiracy, the alleged communications.

17         Our case then does diverge because we deal with

18   direct Sherman Act claims arising from the futures and

19   derivatives markets and then Commodity Exchange Act claims

20   which are not alleged in the MDL case, Your Honor.  We feel

21   that the overlap -- the initial overlap in the cases is

22   sufficient to warrant treatment by the same Court.

23         We understand the burdens it places on Your Honor in

24   chambers but we're confident that we will be able to coordinate

25   with the MDL counsel with whom we've spoken and minimize any

1    disruption to their case and overall conserve judicial

2    resources.

3         **THE COURT:**  Well, it certainly won't be conserving my

4    judicial resources but I guess -- I understand the conspiracy

5    that you allege and that you claim damages for.  It sort of,

6    again, arises from this -- a common factual predicate but it

7    worries me when I think about class certification -- assuming

8    we get there -- class certification, expert issues, the kinds

9    of discovery issues that might arise because you're going to be

10   looking for -- there will be overlap, I suspect, in the

11   discovery that you're seeking with the -- what I'll call the

12   "original Plaintiffs."

13        But there will certainly be differences and you'll be

14   asking for things that the original group of Plaintiffs did not

15   ask for.  And I guess I just have some concern and I don't

16   know, frankly, just -- in all candor, I don't know what the

17   legal standard is that I am supposed to utilize in assessing

18   whether you should actually be part of this case.

19        **MR. FATA:**  Well, Your Honor --

20        **THE COURT:**  Because you just direct-filed into it.

21   So theoretically anybody could direct-file into it and say it's

22   related.

23        **MR. FATA:**  I don't know that we direct-filed into the

24   MDL.  We do view it as a separate case, albeit one that is

25   related to the MDL.

1          **THE COURT:**  Okay.

2          **MR. FATA:**  And so --

3          **THE COURT:**  So you did not direct-file into the MDL?

4          **MR. FATA:**  No, we did not.  We -- my understanding is

5    we filed a complaint and then we marked our complaint in our

6    case as related to the MDL.

7          **THE COURT:**  That was not my understanding but maybe I

8    have it wrong.

9          **MR. FATA:**  It may -- it's more likely I have it

10   wrong.

11         **THE COURT:**  Okay.

12         **MR. FATA:**  On the civil cover sheet, I believe, you

13   can mark a case as related to an existing case but it was not

14   our intent to come into the MDL, Your Honor.

15         **THE COURT:**  Okay.

16         **MR. FATA:**  It was our intent to file the case and,

17   yes, be in front of Your Honor and coordinate with the MDL to

18   achieve efficiencies that could be achieved albeit in your

19   courtroom.

20         **THE COURT:**  All right.  Anything -- I mean, I guess,

21   is that it, just that you filed here and it's related and so

22   you're here with us?

23         **MR. FATA:**  Correct, Your Honor.

24         **THE COURT:**  All right.

25         **MR. FATA:**  That's all I have.

1      **THE COURT:**  Defendants have anything they want to add

2  to the discussion?  Anybody?  You don't have to.  It's not

3  obligatory but if you want to, I'm happy to hear it.

4      **MR. BERSHTEYN:**  Your Honor, Boris Bershteyn for

5  Pioneer.

6      **THE COURT:**  Good morning again, welcome back.

7      **MR. BERSHTEYN:**  Thank you.  I don't know how helpful

8  the two things I'm about to say will be but the two

9  observations I'll make is when this case was initially filed in

10  the Northern District of Illinois, we had -- the Defendants

11  have conferred and it was our view that we're duty-bound to tag

12  it into the MDL because of the -- because of this factual

13  overlap.  So I think the standard actually leaves us very

14  little option in that regard.

15      Of course, what the JPML would have done with the

16  case, whether it would have referred it to the MDL or not, we

17  have no way of knowing and I think -- I presume for purposes of

18  efficiency when we let Mr. Fata know that, he filed in this

19  district.  That's just for Your Honor's awareness of what's

20  transpired.

21      The second thing I'd note is that, of course, if Your

22  Honor does not think that this case is related to the MDL

23  proceedings under the standards of this court, this Court could

24  reject the relatedness and it would presumably go to another

25  judge in this district.

1          **THE COURT:**  Well, that probably would not make me

2    many friends.  I just feel like the case is very different than

3    what was given to me through the transfer order but that is

4    what it is and so I'm happy, I suppose, to take it on.  It just

5    struck me as being unusual.

6          Good morning.

7          **MR. COUGHLIN:**  Good morning, Your Honor.  On behalf

8    of what you termed the "Original Plaintiffs" --

9          **THE COURT:**  Yes.

10          **MR. COUGHLIN:**  -- this group reached out to us and

11    said they were going to file and in part, of course, it's

12    flattering that they copied our factual predicate, so to speak,

13    a year and a half after had it filed and been on file.

14          And so we -- I don't have any comment about the

15    burden on Your Honor or -- certainly the core facts are the

16    same.  They're right out of what we alleged originally.

17          One procedural question that I had as I was looking

18    at the papers and thinking about it this morning is that -- and

19    this is nothing personal because I don't know who was going to

20    be their liaison and didn't find out until, like, last night.

21    So -- but I think we already have a liaison counsel.  If

22    they're really going to be coordinated, I think we should just

23    have one liaison with the Court so we can really coordinate.

24          If they really intend to coordinate with us as this

25    case moves forward, then I think we should have one liaison

1   counsel and we have that with Chris Dodd.  And so it's -- I

2   think it is up to Your Honor whether the cases are related

3   enough to undertake it and you're right.  You're not going to

4   make a single friend around here if you don't take it.  We will

5   coordinate with them on discovery, the factual discovery and

6   things like that.  So we're committed to do that if Your Honor

7   does undertake it.

8           THE COURT:  All right, thank you.  I appreciate that,

9   Mr. Coughlin.

10          Anything else that you all want to say?  Anybody have

11  any input or anything else they want to say?

12          MR. SPEAKER:  No, thank you, Your Honor.

13          THE COURT:  Okay.  All right.  I'm not trying to kick

14  the cases, I guess.  It just felt strange to me to get what I

15  think is a pretty different case notwithstanding, as we

16  discussed, the factual overlap but -- all right.

17          Well, given there doesn't seem to be any strong

18  opposition to me continuing to deal with it, then I'll do that.

19  It seems like we have consensus on the motion to appoint

20  counsel for this group of this putative class.  So I'll enter

21  that order and we'll move forward.

22          All right.  Thank you, appreciate it.  You all are

23  free to --

24          MR. BECK:  Your Honor, the only thing I was going to

25  add is I looked at my emails and we did file this case and it

14

1  was a separate case and then we were directed by CM/ECF to

2  start filing into the MDL two or three days after we filed it.

3  So it was a separate case.  I think it still is.  It has its

4  own case number but we were directed to start filing

5  immediately into the MDL.

6          **THE COURT:**  So I should get mad at the clerks is what

7  you're saying, right?

8          **MR. BECK:**  I'm not throwing anyone under the bus.

9          **THE COURT:**  That's okay.  All right, fair enough.

10         **MR. SPEAKER:**  Your Honor, I looked at civil

11  coversheet, same on our end.

12         **THE COURT:**  All right.

13         **MR. SPEAKER:**  And, Your Honor, I wanted to also

14  introduce -- Your Honor, we have our law clerk Darren Malinik

15  (phonetic) in the back who is observing today and he's --

16         **THE COURT:**  Good morning.

17         **MR. SPEAKER:**  -- with us for the summer and upcoming

18  term at UNM.

19         **THE COURT:**  All right, welcome.

20         All right.  Well, you all are free to hang out or go

21  do whatever else it is you might do with your day today.  Thank

22  you for coming.  I appreciate it.

23         **MR. SPEAKER:**  Thank you, Your Honor.

24         **MR. SPEAKER:**  Thank you, Your Honor.

25     **(Pause)**

1          **MR. COUGHLIN:**  Your Honor, we didn't get a chance to

2   introduce ourselves the first go-around.

3          **THE COURT:**  Yeah, I know.  I was going to ask you all

4   to -- you don't have to do it again but I was going to ask you

5   all to enter your appearance.  So --

6          **MR. COUGHLIN:**  Thank you, Your Honor, Patrick

7   Coughlin and Carmen Medici from Scott & Scott on behalf of the

8   Plaintiffs.

9          **THE COURT:**  Good morning.

10          **MS. SWOPE:**  Good morning, Your Honor, Karin Swope

11   from Cotchett, Pitre & McCarthy on behalf of Class Plaintiffs.

12          **THE COURT:**  Good morning.

13          **MR. MOORE:**  Good morning, Your Honor, Brian Moore

14   from the Nachawati law group on behalf of the Plaintiffs.

15          **THE COURT:**  Good morning.

16          **MS. ENDERS:**  Good morning, Candice Enders, Berger

17   Montague, on behalf of Plaintiffs.

18          **THE COURT:**  Good morning.

19          **MR. DODD:**  And Christopher Dodd, Plaintiffs' liaison.

20          **THE COURT:**  All right.  Well, welcome back to all of

21   you.  So we're here on Kansas' limited motion to intervene.

22   And so if you all are ready, you may proceed.

23          **MR. SMITH:**  Good morning, Your Honor.

24          **THE COURT:**  Good morning.

25          **MR. SMITH:**  The proposed intervenor State of Kansas,

1    Nicholas Smith, Assistant Attorney General on behalf of the

2    State of Kansas.  May it please the Court?  I'd also like to

3    reserve some time for rebuttal if the Court is available.

4            **THE COURT:**  Sure.  You all are on the only thing on

5    my docket today.  So we have as much time as you want.

6            **MR. SMITH:**  Sounds great to us.  We're here all day.

7            Before this Court is Kansas' motion for limited

8    intervention and at the heart of this motion is the question of

9    what party may duly represent the statewide interests of a

10   sovereign state in this litigation.  The State of Kansas is

11   seeking limited intervention to specifically answer this

12   question by adhering to the Tenth Circuit general rule that the

13   State's Attorney General as Chief Law Officer of that state by

14   virtue of the constitutional statutory and common law authority

15   provided to the State Attorneys General is the only and

16   exclusive legal representative of the State in all litigation

17   regarding matters of the statewide public interest.

18           And this is a matter that, more or less, my friends

19   on the other side have already conceded by conceding the point

20   under Rule 24(b)(2)(A) for permissive intervention which

21   permits the intervention of a State government officer who

22   administers the statute at issue, specifically here being The

23   Restraint of -- Kansas Restraint of Trade Act under K.S.A. 50

24   -- oh, I'm sorry -- K.S.A. 60-152 which permits the Attorney

25   General to represent the State and all political subdivisions

17

1    regarding matters such as this.

2          And on this basis alone, since it is conceded, the

3    Court can go ahead and grant Kansas' intervention which is

4    literally construed for the public interest of the officer's

5    ability to administer that statute.

6          But more to the point of intervention as a right,

7    absent Kansas' intervention, Kansas' sovereign and

8    constitutionally protected prerogative to select which agents

9    may defend its laws and protect its interest in this litigation

10   will be impeded or impaired.

11         On the motion, there are three primary disputes and

12   each of these support Kansas' intervention.  First is standing.

13   Second is whether or not Kansas has an interest in the

14   litigation.  And third is whether that interest is impeded or

15   impaired.  As to timeliness and adequate representation for

16   Rule 24(a), we rely on our briefing and as to permissive

17   intervention, otherwise Kansas also relies on its briefing.

18         First to standing, Kansas has standing as an

19   objecting class member under *Devlin* --

20         **THE COURT:**  Well, but we don't have a class yet.

21         **MR. SMITH:**  We don't.  You are correct.  And in

22   *Devlin*, we -- the petitioner was raising the issue of whether

23   or not there was a fair settlement for the purposes of appeal.

24   At the time, he was not a party but the Supreme Court

25   recognized that the absent class member has an ease of being

18

1   able to intervene under the interests that they have under Rule

2   23.

3            As the pleadings are pled by my friends on the other

4   side, it already includes State governmental entities but even

5   the non-State governmental entities that have been proposed by

6   the response from the political subdivisions would implicate

7   potentially all of the states -- arms of the states under the

8   Tenth Circuit's Arm-of-the-State Doctrine which is another

9   reason why we are concerned about the attempt to represent the

10  statewide interest.

11           **THE COURT:**  So but --

12           **MR. SMITH:**  Yes.

13           **THE COURT:**  -- let me just -- so we don't have a

14  class yet.

15           **MR. SMITH:**  Yes.

16           **THE COURT:**  If we had a class, you could object.  You

17  could opt out.  There are a number of remedies the State could

18  pursue to protect the interest you're talking about.  And I

19  guess I'm just trying to figure out now -- it's -- what I -- at

20  least I understand -- my understanding is that the State of

21  Kansas wants to intervene not to actually take action but

22  actually to take no action and maybe potentially decide at some

23  unspecified future date whether it will do something or not.

24           **MR. SMITH:**  That is correct.  The State of Kansas is

25  wanting to protect its legal claims.

1          **THE COURT:**  How does that go to the harm that you're

2    supposed to prove under standing analysis and particularly in

3    the wake of *Spokeo* and more recent decisions by the Supreme

4    Court?

5          **MR. SMITH:**  So under *Devlin*, what we're trying to

6    propose is more or less the legal principles that were applied

7    by the Court in *Devlin*.  In there, they -- the Supreme Court

8    said that when the interests of the proposed class -- or at

9    that time, it was the class --

10          **THE COURT:**  They didn't say "proposed class."  It was

11    a class.

12          **THE COURT:**  Yes, that is correct.  At the point to

13    which the interests diverge between the parties, that is where

14    the standing for the non-named class member was created that

15    became the controversy between the non-named class member and

16    the representative class members.

17          So effectively, what we're asking the Court to do is

18    to apply the legal analysis or the principle of -- the legal

19    principles underlying that -- to standing -- the standing

20    analysis here.

21          But notwithstanding that, Kansas also has --

22          **THE COURT:**  Does that principle hold where we don't

23    have a class and we have somebody -- we have a party who's

24    saying, we want to intervene essentially to do nothing and to

25    make sure that nobody does anything and -- I guess I just am

20

1   having trouble -- this principle you -- what is the principle

2   you believe that you're taking from *Devlin* that should be

3   applied here?

4           MR. SMITH:  Well, specifically, Kansas is trying to

5   represent its own interest as a part of the proposed class as

6   an absent member.  Our interest is implicated by the pleadings

7   that the political subdivisions have proposed to the Court and

8   there's no pending motion to amend those pleadings.  There's

9   nothing -- yes, the political subdivisions have represented to

10  the Court that they do not intend to invoke the authority of

11  the State but they did and as such, if this continues forward,

12  Kansas' sovereign interest would be technically implicated as

13  this case continues to move forward.

14          THE COURT:  But is there any statutory bar that

15  prohibits an individual or a political subdivision from Kansas

16  from pursuing the claims that have been stated in the operative

17  complaint?

18          MR. SMITH:  So --

19          THE COURT:  It's a "Yes" or "No" question.

20          MR. SMITH:  -- as to individual, no.  There's nothing

21  that bars an individual from bringing that claim.  If this was

22  a class purely of individual people or persons that were

23  bringing a <u>Kansas Restraint of Trade Act</u> claim or a <u>Sherman Act</u>

24  claim, they could do so.

25          But, unfortunately, this also implicates political

1  subdivisions with -- four of which are not even in the state of

2  Kansas that are trying to represent every single political

3  subdivision and city -- or every county and city in our state

4  without the legal authority to do so.

5         THE COURT:  Well, we'll come to that later.  I have a

6  -- I am likely not going to be moved by the idea that you can

7  come in here on behalf of Maryland and snuff out the City of

8  Baltimore's claims.

9         MR. SMITH:  It is not that we're trying to, if you

10  will, snuff out the City of Baltimore's claims.  We're trying

11  to snuff out their claims insofar as they apply to the four

12  borders of Kansas.  And in effect, what we are arguing is that

13  the City of Baltimore has no business representing any of the

14  counties in our state or any of the cities in our state in this

15  class action.  They have no authority under K.S.A. -- under The

16  Kansas Restraint of Trade Act or under Rule 23 to essentially

17  usurp the Attorney General's role in that matter -- in this

18  litigation.

19         THE COURT:  But does the -- does Kansas law preclude

20  for a county from bringing a claim on behalf of itself or other

21  political subdivisions?

22         MR. SMITH:  We think it does and the reason why is

23  because this is a matter that quite literally implicates every

24  single political subdivision in our state, every single person

25  in our state and to use it by way of comparison, I think the

22

1   only other generalized grievance that would be more impactful

2   to the State of Kansas is that the political subdivisions we're

3   trying to represent a class against Big Water, so to speak.

4        This is a class that is not going to touch anyone in

5   Kansas and because of that, it is specifically going to the

6   authority as resting in the State's Attorney General under

7   K.S.A. 51-62.

8        **THE COURT:**  But why then doesn't the statute reflect

9   your position?  I mean, the statute seemingly allows for all

10  sorts of persons --

11       **MR. SMITH:**  Yes.

12       **THE COURT:**  -- defined broadly to enforce the

13  statute.  What you are saying doesn't -- isn't consistent with

14  the statutory language.

15       **MR. SMITH:**  So if this were an ordinary, if you will,

16  claim that is being brought that didn't have the generalized

17  harm that was non-localized -- I am sorry -- that was

18  localized, we would think that Ford County, if it wanted to,

19  could bring this class action on behalf of a group of counties

20  and cities that were impacted.

21       But if you were to, just as an -- by way of example,

22  take a mirror image of Kansas and every single political

23  subdivision that is implicated by the Plaintiffs' complaint and

24  match that with what the Attorney General would bring under The

25  Sherman Act and The Kansas Restraint of Trade Act and it

1    mirrors over each other.  It is the exact same image.

2         At that point, it is usurping the role of the

3    Attorney General to be the sole representative of all political

4    subdivisions in the state when it comes to a matter of this

5    type of generalized grievance at a statewide matter.

6         **THE COURT:**  But if -- assuming that's true, aren't

7    you taking it up with the wrong branch of government?  I mean,

8    that should be for your legislature and the governor to

9    address, not for me here as the lowly judicial branch.

10        **MR. SMITH:**  Well, the political subdivisions are

11   trying to use Rule 23 to usurp that rule and because it's

12   happening right here right now, it is a more proper venue or

13   forum for us to address this issue and because we think that it

14   does go to the heart of Kansas' sovereignty under the Tenth

15   Amendment and Eleventh Amendment to be able to select the

16   agents that it chooses to represent its statewide interests.

17        **THE COURT:**  I mean, the inclusion of governmental

18   entities broadly defines cities political subdivisions is not

19   an uncommon group of folks for a class action, whether that be

20   an antitrust class action or all sorts of other class actions.

21   I guess I'm having trouble seeing why this is any different.

22        Again, you could opt out.  You could object.  So

23   could any other political subdivision within the state of

24   Kansas; couldn't they?

25        **MR. SMITH:**  So there's two issues --

1          **THE COURT:**  Assuming we get to a class -- assuming a

2    class ever gets certified.

3          **MR. SMITH:**  Right.  And so you covered a couple of

4    things that I want to hit on all of them as much as I can.  So

5    first --

6          **THE COURT:**  I'm sorry.  I'll stop talking and let you

7    talk.  I know I keep interrupting you.

8          **MR. SMITH:**  No, you are perfectly fine.  I'm here for

9    you.

10          So the first issue you said that local subdivisions

11    is or governmental entities are often included with class

12    actions, that's blatantly true.  I mean, we can't contest that

13    fact and nor would we want to.  The issue here is that the

14    interests that are being implicated and trying to be

15    represented is a generalized grievance that is commonly

16    reserved for the states to bring.

17          It is not one that is localized unique.  It is not

18    individualized to the political subdivisions that are seeking

19    to represent this interest.  Ordinarily, you would see this

20    brought in a usually multistate litigation between the States'

21    Attorneys General.  So, effectively, what the political

22    subdivisions are seeking to do in our view is create a fake

23    multistate litigation in -- by trying to represent the price-

24    fixing allegations here.

25          I can't remember the second part of the question.

1          **THE COURT:**  Well, I guess I'm just asking if --

2     couldn't you at some point if the class is certified here and

3     if we get to finality, I mean, you -- the State of Kansas -- I

4     keep saying "you" but I mean the State of -- I mean as a proxy

5     for the State of Kansas --

6          **MR. SMITH:**  Yes.

7          **THE COURT:**  -- could opt out, could object.  I mean,

8     there's all sort of things that the State could do at that

9     point in time.  I mean, what is unusual to me -- and I -- we

10    have scoured the case law and I cannot find another case that

11    has addressed this issue and certainly not a case that has

12    adopted the principle -- and I want to push on that a little

13    bit later but the principle that you're asking me to adopt

14    here.

15          But until we get to that point, it feels -- I guess I

16    still don't understand what the injury is because ultimately

17    you're telling me you want to intervene to come in to have

18    nothing done so that maybe at some future point, you may or may

19    not decide to do anything.

20          **MR. SMITH:**  I mean, that is true.  The State of

21    Kansas has the sovereign prerogative to be able to choose how

22    it sees -- how it prosecutes and represents its legal claims.

23    And to --

24          **THE COURT:**  But the political subdivisions and Kansas

25    consumers all have a right under Kansas statute to bring these

1    claims.

2         **MR. SMITH:**  So Kansas political subdivisions do have

3    a right to.  The issue that we see is a conflict between K.S.A.

4    50-162 and then the represent -- the ability to represent

5    itself on an individual capacity and at the point to which they

6    have the -- "they," being the political subdivisions, have

7    brought it as a Rule 23 class, that is usurping the role of the

8    State's Attorney General under both Kansas' statutory authority

9    and also under the Kansas constitutional authority as a sole --

10    the representative of the state.

11         **THE COURT:**  All right.  So can you point to me both

12    the specific statues and the Kansas State constitutional

13    provision that you're referring to?

14         **MR. SMITH:**  So first I'll give you the statute.  We

15    have two, K.S.A. 75-702(a) and then K.S.A. 50-162 which was in

16    our briefing.  As to the constitutional authority, I believe

17    that might be in our proposed motion to dismiss.

18         **THE COURT:**  I mean, you mentioned in your brief --

19    and while you're looking for the constitutional provision --

20    the Kansas statutory authority provides that the Attorney

21    General has exclusive authority to recover civil penalties

22    under the KRTA but it seems like we all agree and that, again,

23    just not -- obviously, I'm not an expert in Kansas law like you

24    but I guess when I read the statute, it doesn't -- the

25    statutes, nothing seems to preclude damages claims on behalf of

1    Kansas consumers or the political subdivisions.

2         **MR. SMITH:**  So the issue of the political

3    subdivisions bringing a class and trying to represent

4    individual consumers is that it goes to the heart of what

5    quasi-sovereign interests are.  That would be the set of

6    interests that are well beyond that of a normal party.  It is

7    expressing an interest to try to remedy the general harms to

8    the state as a whole to the general populace.

9         So it's the political subdivisions are seeking to

10   represent a class of consumers on behalf of those consumers

11   under the KRTA.  They are going straight to the heart of what a

12   parens patriae interest is.

13        **THE COURT:**  Well -- so do you have the constitutional

14   provision for me that you're referring to?

15        **MR. SMITH:**  I did not put it in my notes and I think

16   Co-counsel if looking it up for us right now.

17        **THE COURT:**  All right.  We'll put a pin in that.

18   We'll come back.  All right.

19        **MR. SMITH:**  We will.  But back to the point of

20   standing, Kansas also has standing under the Modified Piggyback

21   Standing Rule under *Kane (3)*.  The Tenth Circuit has reasoned

22   that because one party must always have standing in order to

23   bring a claim and the rule here is that an intervenor as a

24   right must have Article III standing if he's pursuing relief

25   that he has not already requested.

1          Here Kansas is seeking the same relief as the Shell

2    Oil Defendants which is dismissal is more narrow than the Shell

3    Oil Defendants but still dismissal.  The political subdivisions

4    are arguing to the Court that any party that is seeking

5    intervention under -- as of *Wright* must establish Article III

6    standing.

7          The *Kane (3)* Court has specifically rejected that

8    based -- rejected it saying that because there is a pending

9    dispute between the Shell Oil defendants who are applying it

10   here -- between the Shell Oil defendants and the political

11   subdivisions and there is the same form of relief being

12   requested that modified piggyback standing under the Tenth

13   Circuit's rule does apply.

14         As to the constitutional provision -- and my

15   apologies for not having that --

16         **THE COURT:**  Is the -- to an extent though is the

17   relief that you're seeking.  I mean, there's a pretty

18   significant difference, right?  The Defendants are seeking a

19   dismissal with prejudice and you're seeking a dismissal without

20   prejudice so that perhaps sometime at an unspecified date, you

21   may or may not decide to pursue future claims on behalf of the

22   State?

23         **MR. SMITH:**  Yes.  So under the Modified Piggyback

24   Standing Rule, it's not required that we seek the identical

25   form of relief, that we just pursue the same form of relief.

1          The differences between the relief that we're

2    seeking, being dismissal without prejudice, relates to our

3    interest -- our sovereign interest to preserve our legal claims

4    under *The Sherman Act*, KRTA and any other claim that we could

5    bring against the Shell Oil Defendants, just as an example,

6    Kansas False Claims Act, Kansas Consumer Protection Act and

7    even unjust enrichment, depending on how far we were to

8    ascertain Kansas' interest.

9          Specifically to your question about Kansas'

10   constitution is that -- I cannot read that.  It is Article 12,

11   Section 5.  It limits the powers --

12          **MR. SPEAKER:**  Political subdivision.

13          **MR. SMITH:**  -- of political subdivisions to be

14   represented to only their jurisdiction, not exceeding their

15   jurisdiction within Kansas.

16          **THE COURT:**  All right.  Well, I'll look at that but I

17   did not see that in your brief.

18          **MR. SMITH:**  It is not in our brief for the motion for

19   intervention but it is in our proposed motion to dismiss --

20   limited space.

21          So if the Court is ready to move on from standing,

22   we'll turn to the issue of our interest in the litigation.

23   Kansas has three broad categories of interest that are

24   implicated in the litigation versus its sovereign interest to

25   be able to exercise its sovereign power over the individuals

1    and entities within this jurisdiction.  That applies both ways

2    to political subdivisions and plaintiffs and making sure that

3    they are following Kansas law to represent only their interests

4    as implicated by the litigation.

5            And conversely, it also applies to our friends on

6    this side of the table, the Shell Oil defendants, seeking to

7    enforce the sovereign authority against them as well.  It's

8    also -- Kansas also has a sovereign interest in demanding its

9    recognition -- its recognition of its sovereignty in this

10   litigation.

11           The political subdivisions are seeking to represent

12   all State governmental entities despite -- and by the plain

13   language of their pleadings and by doing that, it inherently

14   negates or rejects the sovereignty of Kansas as an autonomous

15   independent governmental entity.

16           Kansas also has a quasi-sovereign interest at issue

17   here which is repairing the generalized harms on behalf of the

18   residents and if the political subdivisions are seeking to

19   represent individual consumers, that is one that falls squarely

20   under the Attorney General.

21           And then the --

22           **THE COURT:**  What happens about the -- what about the

23   individual consumers in Kansas?  Are you -- as the Attorney

24   General's office --

25           **MR. SMITH:**  Yes.

1          **THE COURT:**  -- are you allowed to intervene and say

2     they can't pursue the remedy?  I mean, wouldn't the same

3     argument apply to them?

4          **MR. SMITH:**  We think not and the reason why is,

5     first, the individual consumer is exercising their right.

6     Kansas, under multiple statutes, has the ability to exercise

7     the -- what is called, "Private Attorneys General authority"

8     and if an individual consumer or person was to represent that

9     claim, Kansas potentially in theory could intervene but I think

10    we would not.

11         What's materially different is that it's political

12    subdivisions that are seeking to represent the state as a

13    whole.  They're taking governmental entities -- local

14    governmental entities.  They are seeking to represent what is

15    the authority of a State Attorney General duly elected and

16    appointed to make that -- represent the statewide public

17    interest.

18         **THE COURT:**  So if the political subdivisions though

19    are just -- and I realize there's this whole issue about the

20    error in the complaint and I don't want to get into that but

21    just indulge this -- indulge me for a minute here.  The

22    political subdivisions are just wanting to represent political

23    subdivisions.  Does that impact your argument?

24         **MR. SMITH:**  It does to an extent.  Where it does

25    impact is it further narrows our intervention.  It further

1    narrows what the relief is that we would be seeking but where

2    it does not contradict our position is that under K.S.A. 51-62,

3    only the Attorney General is permitted to represent all

4    political subdivisions throughout the state.

5             Ford County, as an example, cannot represent Sedgwick

6    County.  It cannot represent Shawnee County.  It cannot

7    represent Osage County.  It just cannot.  It can represent

8    itself and it fully has the right to.  We encourage it to if it

9    has been injured.  But what it cannot do is exceed that

10   authority that it has, that limited authority that it has, and

11   expand that to the Attorney General's exclusive authority to

12   represent the statewide interests for the state itself but also

13   for political subdivisions all throughout the state.

14            Once it does that, that's when it's usurping the role

15   of the Attorney -- the exclusive role of the Attorney General.

16   So if this were a limited -- if the political subdivisions are

17   not going to be representing or seeking to represent individual

18   consumers, our intervention or our proposed relief would be

19   further narrowed to meet that interest.

20            **THE COURT:**  And, of course, again, the same thing

21   applies to all these other political subdivisions.  They could

22   all object, opt out, et cetera --

23            **MR. SMITH:**  That is --

24            **THE COURT:**  -- assuming the class is certified?

25            **MR. SMITH:**  In theory, they could.  The issue is -- I

1  think we cited a case out of North Carolina where the Federal

2  Court rejected the idea that political subdivisions should have

3  an opt-out class because that would infringe on the sovereignty

4  of the state to design its political subdivisions as it sees

5  it.

6          And then, number two, political subdivisions are very

7  different and unique.  There is a hard ability to have

8  commonality -- to me, all the elements of Rule 23.  So in --

9  it's escaping me, the North Carolina case.  We did cite it.

10  But in that case, the Court rejected an opt-out class under

11  Rule 23.

12          **THE COURT:**  But another county could opt out and

13  pursue their own claims just on their own individual -- I mean,

14  individual suit and try -- and address it that way?

15          **MR. SMITH:**  Yes, they absolutely can and, in fact,

16  that is our preferred venue of seeking relief, is on an

17  individual basis in this -- for this type of generalized harm.

18          If it were just -- using as an example, if Ford

19  County was seeking to represent specific municipal public

20  utilities that only represented the southwestern portion of the

21  state which is where Ford County is located, we really wouldn't

22  have an issue with that because it would be very localized.

23  It'd be individualized to the interests of Ford County and the

24  counties around it.

25          We also would not mind if they used Rule 24 -- I'm

1    sorry -- Rule 23 to exercise that relief on behalf of their --

2    to get that more particularized relief for those that are

3    affected.  The issue is whenever the maps that the political

4    subdivisions are bringing in this litigation match the exact

5    map that the Attorney General would bring in terms of claims

6    for the State of Kansas.

7         Whenever one county or for political subdivisions

8    outside of the State of Kansas are seeking to represent all

9    counties, all cities in Kansas, that goes directly straight to

10   the Attorney General's exclusive authority both under Kansas

11   law and under the Tenth Circuit's general rule.

12        The third interest that might be implicated in the

13   litigation is the proprietary interest of the state just acting

14   as a regular market participant including getting me here to

15   testify or to argue this motion in court but specifically as

16   party defendants because that's how Kansas is seeking to

17   intervene here, is that Kansas' legally protected interest is

18   the sovereignty or its ability to control the underlying,

19   exclusive, legal interest and claims that the political

20   subdivisions are seeking to bring.

21        So in that, Kansas has the sovereign interest to

22   select the agents that defend its laws and protect its interest

23   in this court.  It has a sovereign interest in creating its

24   legal code and enforcing it against the Shell Oil defendants

25   and the political subdivisions insofar as it's seeking to

35

1    represent the statewide interest.  And it also has the

2    sovereign interest in acting eponymously and demanding its

3    sovereign recognition.

4            But in this motion, my friends on the other side,

5    they keep trying to -- speaking out of both sides of their

6    mouth.  They're saying that all political subdivisions, all

7    governmental entities have an interest in the subject matter of

8    this litigation.  On that issue, we agree.  If the Plaintiff

9    political subdivisions are true in their allegations, if it is,

10   indeed, that these guys over here decided to price-fix the

11   crude oil derivatives, then it is true that all governmental

12   entities would have an interest in the subject matter of the

13   litigation.

14           What we disagree on is that the Plaintiffs do not

15   have the ability to represent all governmental entities.  More

16   to the issue on intervention is that they claim that Kansas, as

17   an outlier apparently, but a governmental entity nonetheless,

18   has no interest in the litigation.  But holding these two

19   positions as true does not make sense.

20           Kansas is a governmental entity just based off of the

21   fact of how we're organized and we have an interest in the

22   litigation insofar as if the Plaintiffs' pleadings and the

23   litigation is true, we would have a sovereign interest over the

24   -- those legal claims and the quasi-sovereign interest as well.

25           But if the Court decides to accept the Plaintiffs'

36

1  political subdivisions' position that no political subdivision

2  -- no governmental entity has an interest, which is effectively

3  what they're trying to now represent by arguing that Kansas

4  doesn't have an interest in this matter, then we welcome the

5  Court to go ahead and grant Kansas' proposed motion to dismiss

6  the governmental entities because, according to them, if Kansas

7  doesn't have an interest in the litigation, no governmental

8  entity would.

9          As to the impediment or impairment of our interest,

10  Kansas' interest without intervention would be impaired because

11  we would not be able to select agents to represent our

12  statewide public interest in this litigation.

13          **THE COURT:**  But you don't want to be in the

14  litigation.  You're not even sure that you want litigation to

15  go forward in this matter.

16          **MR. SMITH:**  And that is true and the precise reason

17  why is we don't have the information that my friends on the

18  political subdivision side --

19          **THE COURT:**  That's what discovery is for.  You could

20  get it.  You could intervene as a Plaintiff and request that

21  information through the discovery process just like they

22  probably will.

23          **MR. SMITH:**  And in truth, that is not -- that option

24  isn't off the table.  If through the course of this litigation,

25  it becomes apparent that what the political subdivisions are

1  saying is true, we may seek to intervene or to be substituted

2  as the real parties in interest for Kansas' claims exclusively.

3          On to the impairment --

4      **THE COURT:**  Well, it just seems a lot of -- I mean,

5  you have -- you don't have a definitive plan about how you're

6  going to proceed.  You -- we don't have a class that's

7  certified yet.  You don't know whether you want litigation.

8  And you don't know whether you want to apparently be a

9  defendant or a plaintiff.

10     **MR. SMITH:**  Right now, our interest is most disparate

11 from the Plaintiff political subdivisions because they're

12 representing that they are the real party in interest for the

13 statewide interests of the claims which is why, to us as we

14 analyzed our interest as implicated by the pleadings, we felt

15 it was more appropriate for us to intervene as party defendants

16 rather than plaintiffs.

17         But should that -- should at some point in the

18 litigation, it -- that materially change, we may request leave

19 from the Court to be substituted as the real parties in

20 interest for the statewide interest in Kansas.  As to --

21     **THE COURT:**  Well, when and if we get there, we'll

22 take that up.  I mean, I think what the political subdivisions

23 are asking -- Ford County and City of Baltimore and whoever,

24 they're asking to serve as class representatives for -- again,

25 assuming we get to class certification, that other subdivisions

38

1    could opt out of and raise objections to and all the other

2    processes that protect the individual -- and I mean that in a

3    broad sense -- interests in a group action like this.

4         **MR. SMITH:**  While that is true, we would think that

5    the opt-out provision, as opposed to an opt-in class for

6    governmental entities would be run contrary to how the

7    political subdivision class should ultimately operate.  Ford

8    County should not be able to exercise the authority of Sedgwick

9    County, of Wabaunsee County.  It should not be able to exercise

10   the authority of other counties or even the state with --

11   absent statutory expressed authority.

12        And that statewide interest or the ability to

13   intervene or protect a political subdivision's interest lies

14   squarely with the State's Attorney General.  That's under the

15   KRTA and as also under the general rule under the Tenth

16   Circuit.

17        **THE COURT:**  What do you think the Tenth Circuit

18   general rule is?

19        **MR. SMITH:**  The Tenth Circuit general rule is that --

20   where -- oh, here we go.  This is in *Mountain States Legal*

21   *Foundation v Costle*.  The general rule is that by virtue of the

22   constitutional or statutory provisions of common law power, the

23   State Attorney General, as the Chief Legal Officer of the

24   state, is the exclusive legal representative of the state in

25   all litigation with matters regarding the public interest.  And

 1   he alone has the right to represent the state as to litigation

 2   involving the subject matter of a statewide interest.

 3              Here that's squarely --

 4        **THE COURT:**  Is that principle -- does that principle

 5   hold when you have statutes that give power to sue to others

 6   besides just the Attorney General?

 7        **MR. SMITH:**  We think it does and the reason why is --

 8        **THE COURT:**  Can you cite to me a single case that

 9   says that?

10        **MR. SMITH:**  No, I cannot and the reason why is

11   because the issue that we're bringing is novel but it is based

12   in the constitutional authority of the state to own its own

13   prerogative over these issues.

14        **THE COURT:**  I mean, what's -- one of the things or a

15   few things that are unique about this case but one of them is

16   it's not that you're seeking the right to protect the public

17   interest.  You're seeking the right to not protect it.  You're

18   seeking a right to opt out of a lawsuit that is seeking damages

19   claiming harm and I'm not assessing the veracity of the merits

20   of the claims but that alleges that there was -- that the

21   faults of Kansas and everyone else who are class members --

22   putative class members, that they suffered some sort of harm

23   through any competitive conduct by the Defendants.

24              And what you're saying is, I don't want to pursue

25   that.  I don't want to pursue damages on behalf of the folks of

1    Kansas for that conduct assuming it actually happened.

2         **MR. SMITH:**  And that is a -- an unfortunate way to

3    view it but the way that we --

4         **THE COURT:**  Well, how should I view it?

5         **MR. SMITH:**  I -- the Court should view this as Kansas

6    seeking to protect its claims.  The issue is that in our view,

7    the political subdivisions are usurping the claims of the state

8    itself as represented by the Attorney General.

9         **THE COURT:**  But you don't have any claims.  And you

10   don't know whether you want to bring any.

11        **MR. SMITH:**  It is true that we do not know whether or

12   not we want to bring it yet just because we don't have the

13   factual discovery or information about the political

14   subdivisions purport to have in their allegations but if

15   this --

16        **THE COURT:**  Wouldn't you want to get discovery to

17   flush that out rather than filing a motion to dismiss?

18        **MR. SMITH:**  I'm not sure if we would be opposed to

19   that.

20        **THE COURT:**  Well, but that's what you're requesting

21   here.

22        **MR. SMITH:**  That is true.  Our position right now is

23   to protect Kansas' legal interest or to preserve Kansas' legal

24   claims.  Specifically as a way of an example, we think that

25   this would be better -- this relief, if true, would be better

1    administered through the multistate litigation brought by

2    States' Attorneys General.

3            **THE COURT:**  Okay.

4            **MR. SMITH:**  As to -- yes, there are sovereign

5    interests that would be impaired or impeded by the litigation

6    but also -- and under *Kane (3)*, contingent impairment is also

7    sufficient enough to establish that element.  Here claim

8    conclusion if Kansas would remain an absent class member and

9    assuming it -- the litigation were to continue to move forward,

10   preclusion would apply here not only to the claims that are

11   brought by the political subdivisions but, as I mentioned

12   earlier, the claims that Kansas could theoretically bring

13   against the Shell Oil Defendants if this were to prove out

14   true.

15           Specifically, a False Claims Act, which is

16   exclusively remedied under the State's Attorney General or

17   Consumer Protection Act.  Our friends make those allegations

18   against the Shell Oil Defendants from other states where the

19   governmental or political subdivisions could make those types

20   of allegations.  They do not in Kansas but because issue

21   preclusion would apply at that point, Kansas' ability to bring

22   a consumer protection claim would also be foreclosed.

23           **THE COURT:**  That's only if Kansas -- again, the

24   State's Attorney General doesn't avail itself of filing its own

25   lawsuit, intervening as a plaintiff, objecting, opting out.  If

1    it doesn't do any -- if it just sits on its hands and does

2    nothing, then, yes, I agree with you.  It is possible that

3    claim preclusion might apply.

4          **MR. SMITH:**  Yes, and that near possibility is enough

5    to satisfy the impairment impediment because of the minimal

6    burden that Kansas has to establish the impairment to its

7    interest in the litigation.

8          **THE COURT:**  Even if that theoretical outcome is the

9    result of the inaction on the part of the party who it would be

10   brought against?

11         **MR. SMITH:**  This issue, we think that it would not be

12   a result of inaction as Kansas is seeking an intervention to

13   preserve its claims and potentially bring it in State --

14   potentially bring these similar or exact claims in State court

15   or in a court of its choosing against the Shell Oil Defendants,

16   again, if it chooses to do so.  That is the State's sovereign

17   prerogative to make that decision.  It is not the political

18   subdivisions' prerogative to be able to choose what the State

19   does.

20         So, finally, the purpose of this intervention is to

21   protect Kansas' constitutional sovereignty and uphold the Tenth

22   Circuit's general rule and only the State's Attorney General

23   can represent the State's statewide interests.  Consistent with

24   the Tenth Circuit's liberal approach to granting intervention

25   and especially in light of the relaxed requirements when

43

```
 1   intervention raises significant public interest, Kansas

 2   respectfully requests this Court grant its motion for limited

 3   intervention as a right or alternatively by permission.

 4           THE COURT:  Let me ask you something procedurally.

 5   Let's say I grant your motion, whether that be through as a

 6   matter of right or permissive, then presumably you're going to

 7   come in and file the motion to dismiss that you've attached as

 8   an exhibit to your motion; is that right?  Is that your plan?

 9           MR. SMITH:  That is the plan.  I request a little bit

10   of time for us to make an edit or two.  I did notice a typo

11   that --

12           THE COURT:  Sure.  Okay, but substantively, the

13   request will be that?

14           MR. SMITH:  Yes, that's correct.

15           THE COURT:  Okay.  So then what happens if I grant

16   your request to intervene but deny the motion?

17           MR. SMITH:  So Kansas at that point -- our limited

18   intervention, as mentioned in our initial motion, is seeking to

19   challenge class certification and also to -- it would be

20   seeking to file at the point of summary judgment.

21           THE COURT:  So you -- just to be clear, you'd want to

22   hang around until either through class certification, summary

23   judgment motion?

24           MR. SMITH:  Yes, that is correct.

25           THE COURT:  All right.
```

44

1          **MR. SMITH:**  For the ability to challenge it.

2          **THE COURT:**  In other words, you want to come in and

3 challenge the Plaintiffs' motion for summary judgment and class

4 certification?

5          **MR. SMITH:**  Yes.

6          **THE COURT:**  Okay.

7          **MR. SMITH:**  Or be able to make our own as to a matter

8 of law on the issues we've brought already.

9          **THE COURT:**  All right.  Thank you.  Anything else you

10 want to say?  I didn't mean to cut you off.  You're free to --

11          **MR. SMITH:**  Oh, no, that was the conclusion of my --

12          **THE COURT:**  All right.  Thank you very much.  I

13 appreciate it.

14          **MR. SMITH:**  Thank you.

15          **THE COURT:**  All right.  Ms. Swope.

16          **MS. SWOPE:**  Thank you, Your Honor.  I was just

17 wondering if we could take a five-minute recess.

18          **THE COURT:**  Yeah.

19          **MS. SWOPE:**  We've been going for about an hour and a

20 half.

21          **THE COURT:**  That's a good call.  All right, yeah.

22 Let's take ten minutes.  How about that?

23          So if you all could be back sort of close to 10:45

24 and when you all get up here, we'll pick up again.  All right,

25 thanks.  We'll be in recess.

```
 1              THE CLERK:  All rise.

 2          (A recess is taken from 10:32 a.m. to 10:44 a.m.)

 3              THE COURT:  All right.  Let's go back on the record

 4   -- and I don't know if the Defendants have anything they want

 5   to add to this discussion but after Ms. Swope is done, if you

 6   do, I'll give you the opportunity to chime in.

 7          All right.

 8              MS. SWOPE:  Can you hear me okay?

 9              THE COURT:  I can.  Thank you.

10              MS. SWOPE:  Okay, good morning.

11              THE COURT:  Good morning.

12              MS. SWOPE:  My name is Karin Swope and I'm a partner

13   at the law firm Cotchett, Pitre & McCarthy and I'm one of the

14   co-leads in this case.  You stole a lot of my outline, Your

15   Honor.  So I'm going to be -- cut it shorter and if there's any

16   point specifically you'd like to drill down, just feel free, as

17   you have been, to ask.

18          I'd like to start with emphasizing a critical point

19   that was a little bit glossed over by my colleague across the

20   aisle that I want to be very clear about.  Plaintiffs -- class

21   Plaintiffs are not seeking to represent states in this matter,

22   period.  I'll get to ways that we can work around that but the

23   whole idea that class Plaintiffs or Ford County and the

24   counties and cities that have filed the complaint as

25   representatives of a class are seeking to usurp Kansas'
```

46

1    sovereign interest is simply not the case.

2           Kansas is seeking to intervene as a Defendant, as we

3    mentioned, or should dismiss the case without prejudice so that

4    Kansas can sue as a Plaintiff under Rule 24 as injury to parens

5    -- Kansas' parens patriae rights.  And all this can be resolved

6    by a single action.  Kansas can file -- as you mentioned,

7    Kansas can file its own complaint to represent Kansas State

8    interests.

9           And in that case, Kansas' State complaint can be

10   coordinated with this MDL, not consolidated.  And this happens

11   in many, many cases -- antitrust cases, non-antitrust cases

12   where states file their own complaints and then sometimes many

13   states file complaints and those states are coordinated with

14   the Plaintiff's class and those Plaintiff's class includes city

15   and political subdivisions and as well as individuals.

16          So there is a solution here but Kansas is not

17   interested in stopping the price-fixing scheme that is the

18   subject of this lawsuit.  You heard that as much from my

19   colleague across the aisle.  He said Kansas may file a

20   complaint if it determines it has enough facts to bring a

21   complaint.

22          Well, Your Honor, class Plaintiffs did a factual

23   investigation and ascertained that there were enough facts to

24   file a complaint and filed one.  And Defendants filed ten

25   motions to dismiss and not one of those ten motions to dismiss

1    did the Defendants argue that the complaint lacks sufficient

2    facts to bring a complaint.  They've made many arguments but

3    they didn't make an argument that there was a Rule 11 violation

4    in terms of our investigation.

5             At parens patriae what Kansas is actually interested

6    in doing is stopping a county from filing class action lawsuits

7    at large because it disagrees with what Ford County is doing

8    politically.  It attempted to pass legislation disallowing Ford

9    County from bringing because it decided to bring some lawsuits

10   and as -- our papers indicate that legislation was vetoed by

11   the Kansas governor.

12            And that's why I'm talking about this from a legal

13   framework.  Parens patriae does not allow a state to intervene

14   in a political subdivision's right to bring a class action.

15   And, conversely, a Rule 23 class action lawsuit does not and

16   has never encroached on any state's sovereignty or ability to

17   sue under parens patriae.

18            These are constant fixed circles that do not overlap

19   despite Kansas' efforts.  Kansas is seeking to prevent a county

20   within its state and, as you mentioned, other counties in other

21   states from lawfully suing under a State statue based on Kansas

22   sovereignty.  There's no precedent for this request and Kansas'

23   motion should be denied.

24            Now, before I go into the substance of the

25   opposition, there's a question of how should Kansas' motion be

1    denied because as Your Honor has pointed out -- and I get into

2    this -- this motion is premature.  The class cert has not been

3    decided.  Class definitions have not been made.  Kansas has

4    itself stated that its objection is a class definition that

5    includes government entities that include Kansas.

6             There's a very simply answer which we could do today

7    or tomorrow as to file a price to pay to an amended complaint

8    and it creates an exclusion for State entities.  If you wanted

9    to perfect the pleadings before class cert, that's one solution

10   but they won't to talk about it.  It seems that Kansas is

11   trying to lock up this litigation to stop it, to slow it down.

12            And if Your Honor denies this motion, unfortunately,

13   I believe that they have -- if you deny it with prejudice, they

14   may have a right to appeal it.

15            **THE COURT:**  I think that they do, yeah.

16            **MS. SWOPE:**  And that -- and so there's other options

17   that keep this litigation on track and those options is to

18   reserve this motion until class certification.  The judge has

19   discretion under -- has absolute discretion to control its

20   docket and the pacing of the litigation.  So you could reserve

21   the motion for class certification.

22            Another option would be to deny the motion without

23   prejudice as not a final order for Kansas to bring this motion

24   again at class certification.  That seems to be what they want

25   to do anyway.  So that's another option for Your Honor.

1          **THE COURT:**  All right.  I'm not trying to hide from

2    appeal.  I mean, if they have a right to appeal, I mean, I feel

3    like I should make a decision and give them the right to pursue

4    those -- their argument, whether it's with me or the folks up

5    in Denver or elsewhere.

6          **MS. SWOPE:**  That's true but the difference is whether

7    you want to make the appeal final or non-final and it seems

8    like mostly the issue is premature.

9          **THE COURT:**  Well, let me ask you.  What happened in

10   the Missouri case?

11         **MS. SWOPE:**  Yeah.

12         **THE COURT:**  I mean, that judge -- I mean, it -- we

13   tried to find the basis for the reason but apparently the judge

14   allowed Kansas to intervene?

15         **MS. SWOPE:**  So there's no order.  It was almost a

16   docket entry, if I recall correctly, and what happened is that

17   Kansas intervened and the judge transferred the case -- no,

18   sorry.  The State of Kansas intervened and the Missouri judge

19   transferred the case -- this is *Rodriguez versus Exxon* -- to

20   the District of Kansas.  And right now when we checked the

21   docket as of Friday, there is a scheduling order for a case

22   management conference on August 7th to set a schedule.  That's

23   what we know about that case.

24         **THE COURT:**  And -- yeah, I don't know a ton about the

25   case.  So I guess I'm just wondering if -- would that -- at

1    least as I understand it, the arguments were similar?

2            **MS. SWOPE:**  Yes.

3            **THE COURT:**  And so I don't know whether -- I looked

4    up who the judge was and it's now escaping me but that judge

5    allowed Kansas to intervene, yeah?

6            **MS. SWOPE:**  Yes.

7            **THE COURT:**  So why --

8            **MS. SWOPE:**  And transferred the case to Kansas.

9            **THE COURT:**  Well, setting aside the transfer part, I

10   guess, why should my decision be -- I mean, why is this

11   different?  Why should I do something different than the judge

12   in Missouri --

13           **MS. SWOPE:**  Well, Your Honor, because --

14           **THE COURT:**  -- the Western District of Missouri?

15           **MS. SWOPE:**  Right.  Because Kansas -- if you do a

16   legal analysis, which was not done in that case -- if you do a

17   legal analysis, Kansas has no Article III standing as a

18   defendant because there's no injury in fact.  I'll get -- there

19   -- also, Kansas does not meet the Rule 24 requirements to

20   intervene because it has no interest that is substantially

21   impaired.

22           Also, Kansas' motion contravenes Rule 23 in *Shady*

23   *Grove*, the Supreme Court decision in *Shady Grove* in terms of

24   Ford County's ability to bring a class action.  And finally --

25   or fourth, Kansas' motion is procedurally premature and should

1  be reserved until class certification.  And then, finally,

2  Kansas should not be granted permissive intervention under Rule

3  24(b).

4          So I have five reasons why this motion to intervene

5  should be denied and I can -- I'm happy to go through some of

6  them if you'd like.

7          **THE COURT:**  Yeah, I want to go through them, I guess.

8          **MS. SWOPE:**  Okay.

9          **THE COURT:**  So what you're telling me -- and I don't

10  -- I'm not trying to -- but basically you're just saying the

11  judge in the Western District of Missouri got it wrong and I

12  should do something different?

13         **MS. SWOPE:**  I think that the judge in the District of

14  Missouri provided no reasoning and the absence of reason is

15  considered an abuse of discretion.

16         **THE COURT:**  All right.  Go ahead.

17         **MS. SWOPE:**  So the first point is that Kansas has no

18  standing as a defendant.  So Article III standing requires that

19  the person either must demonstrate that it's suffered an

20  injury, in fact.  And dispositive here, Kansas must show an

21  injury, in fact, "the interest that is concrete and

22  particularized" and that's a quote.  Or actual or even in --

23  not conjectural or hypothetical.  That's the Tenth Circuit case

24  *Rio Grande Silvery Minnow*.

25         If Kansas has force-dated interests or impairments

52

1    under Rule 24, civil penalties, parens patriae, the state's

2    direct losses in purchasing gas and tax-based impacts, none of

3    these satisfy Article III injury, in fact.

4         First for civil penalties, Kansas' concern about

5    civil penalties is invalid because our complaint does not

6    allege relief in the form of civil penalties.  And that goes

7    back to the fact that we do not allege a state governmental

8    class and we do not allege civil penalties in the complaint on

9    behalf of states.

10        We allege injunctive relief damages.  We do not

11   allege civil penalties in our consolidated complaint.  So

12   Kansas' authority for civil penalties here is not being

13   usurped.  And also just as an aside, Kansas is moving to

14   intervene as a defendant.  He's not -- they're not -- it's not

15   moving to intervene as a plaintiff.

16        So it can't have an interest in obtaining a civil

17   penalties argument as a defendant.  There's a real procedural

18   quagmire to it intervening as a defendant in order to file a

19   lawsuit as a plaintiff.  It's -- in our brief, we actually cite

20   a Supreme Court case that said it's impossible for one party to

21   serve as a plaintiff and a defendant at the same time.

22        Second, Kansas' losses are based in the state's

23   purchase of gas.  Kansas already has a direct claim for Kansas

24   losses for its own purchases and its own Eleventh Amendment

25   right to represent itself.  And this concern is not present

1    here because, as I said before, Plaintiffs are not seeking to

2    represent states.

3         Kansas and every other state will be excluded from

4    the class definition.  And I know Kansas quoted the *Wizard of*

5    *Oz* in its brief and that's where this comes into play in

6    response to our statement that we do not intend to represent

7    states.  Kansas refuses to accept Plaintiffs' counsel's

8    representation that it's not going to bring a class to include

9    state entities in any definition.

10        So Kansas is standing on form over substance.  The

11   lack of exclusion was an inadvertent scrivener's error.  I'd

12   like to put that into context.  Plaintiffs consolidated 33

13   complaints in 21 days at the same time as Kobach was appointed

14   and that time period of those 21 days from was December 20th to

15   January 10th.

16        And as Kansas has pointed out and we pointed out, in

17   the city of Mateo -- the county of Mateo and the City of

18   Salina's complaint, it specifically excludes Federal and State

19   governmental entities.  And we would like to add that exclusion

20   to our current complaint.  We do not -- or bring it up at class

21   certification.

22        There is an issue of parens patriae.  Parens patriae

23   interest is to the wellbeing of citizens generally, not the

24   standing of shoes of individuals in suing for damages.  The

25   Supreme Court in *SNAP* recognized two sovereign interests which

54

1   my colleague mentioned briefly.  One is to exercise its

2   sovereign power over individuals whose jurisdiction to create,

3   for example, a legal code.

4          And the second is to demand recognition from other

5   sovereigns, hopefully involving maintaining its borders.

6   Kansas is allowing the political subdivision Plaintiffs to

7   proceed in this class action will infringe on Kansas' quasi-

8   sovereign parens patriae party to bring claims on behalf -- and

9   I quote -- "to bring claims on behalf of all end-payer Kansas

10  consumers for antitrust injuries."  That's from *Kansas Reply* at

11  Page 7 and Kansas' motion at Page 9 to 12.

12         So putting it another way, Kansas argues that parens

13  patriae gives its authority to bring claims on behalf of Kansas

14  generally and that allowing any other person to assert claims

15  on behalf of Kansas through a class action will infringe on

16  that parens patriae.

17         Now, this argument is based on several false

18  premises.  First, parens patriae claims by definition cannot be

19  brought on behalf of all end-payer Kansas consumers for

20  antitrust injuries.  A state's quasi-sovereign parens patriae

21  claims must identify and seek to represent an interest that is

22  separate and distinct from just the individual claims.

23         Also, this lawsuit does not implicate either of those

24  two sovereign rights because Ford County is merely suing under

25  the restraint -- The Kansas Restraint of Trade Act which is the

55

1   exact type of non-sovereign proprietary interest "equivalent to

2   other parties" found outside of parens patriae or sovereign

3   interest by the Supreme Court in the *SNAP* decision.  That's at

4   Page 601 of *SNAP*.

5          Ford County and other citizen counties simply sue to

6   vindicate their specific injuries for purchase of gas as a

7   county and the purchases on behalf of other citizen counties.

8   And as to the class definition hasn't been set and there are

9   many cases where counties and individuals are lumped together

10  in a class and we cite those cases at Page 15, Footnote 26.

11         And I'll get to this in a minute but Ford can bring a

12  Rule 23 class.  It has a right to do so under *Shady Grove* and

13  that Rule 23 right under the Erie Doctrine allows a political

14  subdivision to bring a class.

15         Now, Kansas has the exclusive statutory right to

16  bring antitrust claims on behalf of Kansas' political

17  subdivisions and has an exclusive authority to enforce State

18  consumer protection laws.  But this is wrong and I'd like to

19  bring your attention to the preceding section of The Kansas

20  Restraint of Trade Act which is Kansas State Annotated 50-161

21  which gives non-state governmental entities authority to sue on

22  their own behalf in the definition of person that includes any

23  of its political subdivisions.

24         Kansas -- and excuse me, Your Honor.  Ford County in

25  bringing its own claim, by statute under The Kansas Restraint

1    of Trade Act.  That is not a violation of Kansas' sovereign

2    interest under the statute.

3         The non-state governmental entities' claims are for

4    their own losses and as the Defendants applicable State and

5    Federal antitrust laws and to the extent those entities are

6    seeking to represent another class, it's under -- it has

7    authority under Federal Rule of Civil Procedure 23.

8         Fourth is the tax space impact.  Kansas' allegation

9    in the brief is too general and not particularized enough to

10   show Article III standing.  Also, the Kansas Gas Tax is a set

11   flat tax per gallon.  I can cite the Kansas statute if you'd

12   like but the meaning is that the tax on fuel is not tied to the

13   price of fuel.  So there's no impact on a permanent interest

14   here.

15        So my colleague mentioned piggyback standing under

16   *Kane (3)*.  The piggyback standing requires the intervenor to

17   request the same relief as one of the existing parties in this

18   litigation.  But that is not the case here.  Defendants seek

19   dismissal with prejudice while Kansas seeks dismissal without

20   prejudice.  They are two different forms of relief and Kansas

21   has to demonstrate standing for itself.

22        **THE COURT:**  But do they have to be completely

23   identical or is that close enough?

24        **MS. SWOPE:**  Well, Your Honor, there was a

25   modification of *Kane (3)* and *Kane (4)*.  And *Kane (4)* said the

57

1  pertinent inquiry is not whether the parties are seeking the

2  same relief but rather whether they are pursuing the same

3  interests.  So you want to look at their interests in addition

4  to their relief.  And where, as here, the proposed intervenor

5  has no even recognized interest in the analysis made and they

6  cannot know interests of a -- that's -- that is brought as its

7  interest, as you mentioned, is to stop a lawsuit and prevent

8  a county from bringing a claim.  That's not the same as what

9  Defendants are bringing.

10            Oh, thank you.  I appreciate that.

11            So ultimately, Kansas is not being sued and cannot

12  demonstrate injury, in fact, as a Defendant in this matter.

13            So then I have my second point which is under Rule

14  24.  But I will -- I just want to say one more thing about *Kane*

15  *(3)*.  *Kane (3)* is applicable to our case because *Kane (3)* said

16  that the interest cannot be remote and speculative.  And as you

17  -- as the questions that Your Honor made to my colleague, their

18  interest in maybe bringing a lawsuit is absolutely the kind of

19  remote and speculative interest under *Kane (3)* that would not

20  be allowed.

21            So to answer your question, under the law of

22  standing, Kansas has no standing, no showing of injury of fact,

23  too speculative and too remote to bring -- to intervene at this

24  time.

25            Now, under Rule 24, my second point is that Kansas

58

1  has no impaired interest under Rule 24.  And much of the

2  analysis under Rule 24 for impaired interest is similar to a

3  standing analysis under injuring fact.  And so I'll just

4  briefly touch on these issues.

5          So under Rule 24, the applicants' claims and

6  interests relating to it has to make a claim to interests

7  relating to a property or transaction which is subject of the

8  action and the applicant's interest may -- has to be impaired

9  or impeded.  And that's *United States versus Colorado Water*

10 *Conservancy*.

11         And as I mentioned, for the reasons stated above, the

12 four reasons, the civil penalties, the parens patriae, the tax

13 base and the ability for Kansas to represent itself and has no

14 losses that are not being brought.  Kansas has the same

15 interests as a standing analysis.

16         The third point I'd like to make, Your Honor, is that

17 Rule 23 and *Shady Grove* precludes Kansas' right to intervene.

18 I mentioned this a little bit before but under the Erie

19 Doctrine and Supreme Court case *Shady Grove*, Congress has the

20 power to promulgate rules of procedure and the test for whether

21 the rule applies is whether the rule "regulates Federal

22 procedure."

23         And if it does, it is valid in all jurisdictions with

24 respect to all claims and this is another quote under *Shady*

25 *Grove*.  Regardless of its "incidental effect" upon State-

1    created rights, Kansas law does not disallow counties from

2    suing its class representatives and if it did, it would be

3    granted by Congress' Rule 23 and *Shady Grove.*

4            Permitting Kansas to intervene and dismiss this

5    lawsuit would be contrary to Congress' superiorate to regulate

6    Federal civil procedure.

7            **THE COURT:**  Just to be clear, we're only dealing with

8    the motion to intervene today.  I'm not making any ruling one

9    way or another if I allow Kansas to intervene on the motion to

10   dismiss.  So part of me wonders, why not use my discretion and

11   allow them to intervene under permissive intervention and then

12   deal with the merits.  I mean, my preference is always to deal

13   with the merits of the argument rather than procedural issues.

14           So why not allow them to intervene and deal with the

15   merits?  Because it seems like they are sort of tied in

16   together, right?  I mean, does -- whether they have an interest

17   seems to rise and fall on whether their motion to dismiss is

18   successful or at least their arguments that are baked into that

19   motion.  No?

20           **MS. SWOPE:**  Well, I would respectfully disagree, Your

21   Honor, because I don't think they've made a showing of standing

22   to enter this courthouse under their motion to intervene and

23   under Rule 24, they haven't met the standard to show an

24   impaired interest.  It's -- it is not concrete or

25   particularized.  It is remote and speculative.  So applying the

60

1    Rule 24 standard, I think the only reasonable approach would be

2    to not -- to deny the motion.

3              **THE COURT:**  Okay.

4              **MS. SWOPE:**  So the fourth point, Your Honor, is

5    Kansas' motion is premature and should be reserved for class

6    certification.  And you could reserve this motion for class --

7    it's within your discretion to control your docket and to

8    reserve this motion for class certification.

9              Disputes over the scope of definition of a class are

10   for class certification motion and challenges to the class

11   definition are not ripe at the pleading stage.  Courts in this

12   circuit have regularly refused to require plaintiffs to strip

13   their pleadings of class allegations and the Court has yet to

14   determine whether the claims can proceed as a class action.

15             Your Honor found the same in your order appointing

16   new counsel when the Court wrote, "The class definition in any

17   subclasses may be defined as the class -- the case proceeds."

18   And that's a footnote in Docket 83.  So the very purpose of

19   allowing separate class certification proceedings is to defer

20   addressing potential problems with the proposed class at a

21   later date.  Requiring a perfectly defined class at the

22   pleading stage contravenes Rule 23 and settled law.

23             **THE COURT:**  Doesn't -- if I sat on it until class

24   certification, doesn't that -- I mean, at least as I understand

25   the thrust of Kansas' argument is that getting to that stage

61

1    and including Ford County as a class rep for all political

2    subdivisions -- that's exactly what they're trying to, at least

3    for now, prevent from happening.

4         MS. SWOPE:  But it's not -- Your Honor, respectfully,

5    it's not ripe. I mean, they're essentially filing a motion --

6    essentially they're trying to file a motion to strike class

7    allegations as a nonparty.  And Kansas shouldn't be allowed to

8    essentially strike the political subdivisions class allegations

9    at this stage of the litigation.  We request the Court reserve

10   its motion for class certification.

11        And you are -- you're balancing interests and as you

12   mentioned, Ford County has -- or sorry -- Kansas has stated an

13   interest to stop this lawsuit and has made no representation

14   that it's going to file a lawsuit.  It may file a lawsuit.

15   Where you have 33 complaints, you have 50 states, you have -- I

16   don't know the exact number of Plaintiffs but you have many

17   Plaintiffs who have brought this lawsuit and are seeking relief

18   and you're a year and a half into this case.  And we'd like to

19   go forward, respectfully.

20        THE COURT:  Well, I certainly wouldn't -- I mean, I'd

21   probably signal this.  I mean, I would be loath to throw the

22   entire lawsuit out based on Kansas' motion and I certainly

23   don't think that Kansas can speak for the State of Maryland or

24   -- we've sort of discussed this already.

25        But -- so I guess that I would -- well, I don't think

1    there -- I guess all of that to say is there's a lot of

2    Plaintiffs who Kansas doesn't speak for nor could they speak

3    for.  So I don't view it as Kansas -- their motion -- if I

4    grant it, it wouldn't throw out the entire case is all I'm

5    trying to say.

6          **MS. SWOPE:**  And I appreciate that but as far as I can

7    tell, Kansas can slow us down and they don't have a right to

8    intervene.  And granting that motion to intervene or denying

9    that motion to intervene with prejudice is going to slow the

10   process down when actually the issue that they have is with the

11   class definition.

12          I mean, that's their stated interest is to change the

13   class definition which we're agreeing to.  That's like the

14   *Alice in Wonderland*.  I call it going down -- like going down

15   the rabbit hole.  We're agreeing that we -- I don't plan on

16   suing states and if we could reconcile that right now, Your

17   Honor, we would be happy to do that to resolve this issue.  I

18   mean, I'm representing in court that we do not intend to bring

19   a class on behalf of the state entities based on their Eleventh

20   Amendment right.

21          That Eleventh Amendment right for states does not

22   exist for cities and political subdivisions such as counties.

23   That is why we crafted the case as we did and the fact that we

24   didn't put in those three words in our complaint was a

25   scrivener's mistake and we'd like to correct it at class cert

1   which is the time that we think is the proper time to address

2   it.  But if Your Honor would like us to file a praecipe to

3   correct it now, we'd be more than happy to do so.

4           So the last point, Your Honor, that I have is that

5   Kansas should not be permitted to intervene under the

6   permissive intervention of Rule 24(b).  And a permissive

7   intervention under Rule 24(b) first of all, differs from the

8   24(a) because it's at the sound discretion of the District

9   Court and that's important.  It's not an invention as a matter

10  of right.

11          And a permissive intervention requires that the

12  applicants' claims or defenses in the main action have a

13  question of law or fact that is common and that intervention

14  will not cause undue delay or prejudice to the abdication of

15  the original party's rights.  And I think Kansas fails on both

16  of those counts to make a showing.

17          Kansas does not have any common defenses to the

18  claims that Plaintiffs assert here.  They argue they have the

19  same interests as Plaintiffs because they're seeking the same

20  relief but that is wrong because Kansas can bring its own case

21  so it doesn't have common -- the same common interests as

22  Plaintiffs.

23          And, second, Kansas is weirdly seeking to intervene

24  as a Defendant to dismiss this case and that's certainly not

25  the same common interest as Plaintiffs and it's not the same

64

1    common interest as Defendants, as we've already gone through

2    because of dismissals without prejudice to bring its own

3    lawsuit.

4          THE COURT:  But that's the only distinction, right,

5    is the with prejudice and without prejudice?

6          MS. SWOPE:  At this point standing here today, Your

7    Honor, that's what I believe, yes.

8          THE COURT:  And I guess I'm just wondering, can you

9    direct me to any legal authority that talks about whether

10   that's enough or not enough?

11         MS. SWOPE:  Well, I direct you to *Kane (4)* which

12   modifies *Kane (3)* which says you don't just look at the forms

13   of relief.  You should look at the interests that are at stake

14   and I would say that Kansas does not have the same interests at

15   stake as either Plaintiffs or Defendants.  So they have to find

16   their own standing.  They don't get piggyback standing to bring

17   their case.

18         THE COURT:  Well, that's a point of contention, of

19   course, because they say they do.  So --

20         MS. SWOPE:  Well, you get to decide that.  But also

21   you mentioned that Kansas seeks to litigate an issue collateral

22   to this case and that's already been litigated in the *Rodriguez*

23   *Exxon Mobil* case in Kansas.  And so I would argue and

24   respectfully submit that there's no need to litigate that

25   collateral issue in parallel here, especially since Kansas' AG

65

```
 1   has already failed to secure the requested remedy through the
 2   legislative process in Kansas.
 3          And the Rodriguez case is pending in Kansas.  So I
 4   think it is within this discussion of your -- the District
 5   Court's judge to control its docket to reserve the motion until
 6   -- and let the Rodriguez case proceed.
 7          THE COURT:  But you already told me the judge there
 8   got it wrong in the first instance and now you want me to wait
 9   for him or her to decide the merits issue and then follow that?
10          MS. SWOPE:  I'm making alternative arguments, Your
11   Honor.
12          THE COURT:  All right.  Go ahead.
13          MS. SWOPE:  So, in conclusion, I've already gone
14   through this but Kansas' motion to intervene should be denied
15   because Kanas has not demonstrated an injury in fact satisfy --
16   to satisfy a showing of injury for standing under Article III.
17   Kansas has not demonstrated an impaired interest in this case
18   as a matter of right under the Rule 24 standard.
19          Rule 23 and Shady Grove precludes Kansas' request to
20   intervene in order to strike the political subdivisions class
21   allegations under Rule 23.  And even if they are allowed, which
22   they're not, the motion is premature as class definition is
23   defined at the class certification age and we respectfully
24   request the Court reserve the motion until that time.
25          And, finally, the Court should deny Kansas' request
```

1    for permissive intervention because Kansas' claims as a

2    Defendant do not have common interests of law to back up

3    Plaintiffs' claims in this case.

4          **THE COURT:**  But why would I wait to decide the motion

5    until class certification?  Because as the discussion I had

6    with the folks from Kansas, I mean, if the class is certified,

7    then they at that time can raise objections and do all the --

8    there are remedies for them.  There are processes for which

9    they can address the concerns that they have now at that time.

10         I mean, I guess I just feel like I'm delaying the

11   inevitable which --

12         **MS. SWOPE:**  Well --

13         **THE COURT:**  -- is they want me to make a decision and

14   if I deny it, whether it's now or at class certification, they

15   want to take it up to the Tenth Circuit.

16         **MS. SWOPE:**  Right, but, I mean, essentially, what

17   they're asking for Your Honor to do is to ignore the proper

18   procedure of a class action litigation.  Disputes of the scope

19   of -- as I mentioned, disputes over the scope of a definition

20   of class are issues for class certification and they should not

21   be decided at the pleading stage.

22         I'm citing two cases that are in our briefs, *Friedman*

23   *versus Dollar Thrifty* and *Vinday* (phonetic) *versus Envision*

24   *Healthcare*.  And so -- and there's another case which is

25   *Anderson Living versus WPX Energy* which is a District of

1    New Mexico case.

2          And what the *Anderson* case said is striking class

3    allegations prior to certification is not appropriate unless

4    the allegations are facially inaccurate based on inconvertible

5    facts.  So I guess the -- to answer your question why would I

6    want to wait, the question -- I think the answer to that is

7    that it's not procedurally appropriate to strike class

8    allegations when the pleadings have not been perfected yet and

9    we're not at class cert.

10          We're in the middle of pending ten motions to

11    dismiss.  Your Honor will issue a ruling at that time.  There's

12    -- there may or may not be under Rule 15 an opportunity to

13    amend the complaint at that time.  We're at the stage of

14    perfecting pleadings and striking class allegations at this

15    time is not procedurally appropriate under the case law.

16          **THE COURT:**  So where along the process does the State

17    of Kansas -- to your mind, where along in the process do they

18    get to have the substantive question that they've put in front

19    of me addressed?

20          **MS. SWOPE:**  I think that if -- two answers to that,

21    Your Honor, which are alternative answers but not necessarily

22    conflicting.  The first is at class certification.  If they

23    have an issue with the class certification definition, they can

24    intervene at that time.

25          But, second, Your Honor, Kansas can retain -- Kansas'

68

1   motion is based on its decision or interest in retaining its

2   sovereign rights under parens patriae.  And the best way for

3   Kansas to do that is to file a complaint.

4           And we -- in no scenario do co-lead class plaintiffs

5   want to represent the State of Kansas in this class action.

6   And that complaint will be coordinated as is many, many, many

7   other MDL litigations where states file their complaints.

8           **THE COURT:**  I guess -- if I understand their

9   argument, I mean, one of the things I think they're saying is

10  that, yeah, of course they have the right to -- "they" being

11  Kansas have the right to act.  But as a corollary to that, they

12  also have the right not to act or act in their own time and in

13  their own way.

14          **MS. SWOPE:**  That's correct.

15          **THE COURT:**  And so it's not -- I think they're

16  arguing they don't have an obligation to -- the invocation of

17  rights doesn't come only by affirmative action.  It may also

18  come through a choice not to act or act at a different time.

19          **MS. SWOPE:**  That's correct but they don't -- that is

20  correct but they still haven't -- and rules are rules.  Right.

21  There are standards for standing for motions to intervene.  And

22  they haven't met those standards.  So because their interests

23  are not being impaired, they do not have an injury and they

24  shouldn't be allowed to intervene in this case.  And that's the

25  first step.

1              If you apply the standards to the facts of this case,

2    they should not be allowed to intervene because they do not

3    have standing and they do not meet the standards under Rule 24

4    either as a right or permissively.

5              **THE COURT:**  All right.  Thank you.  Anything else you

6    want to add?  I'm not trying to cut you off but if you have

7    anything else.

8              **MS. SWOPE:**  I think we're done.  Thank you, Your

9    Honor.

10             **THE COURT:**  All right.

11             **MS. SWOPE:**  Thank you for your time today and thank

12   you for allowing us to come to Albuquerque.

13             **THE COURT:**  Thank you.

14             **MS. SWOPE:**  It's been a beautiful day here.

15             **THE COURT:**  Always happy to have you here, yeah.

16             **MS. SWOPE:**  I saw some balloons out in the sky.  They

17   are very pretty today.  Thank you.

18             **THE COURT:**  Mr. Dodd can hook you up with a ride

19   probably.

20             Do the Defendants want to weigh in on the -- do the

21   current Defendants want to weigh in on this matter?

22             **MR. BERSHTEYN:**  Yes, Your Honor.  Again, Boris

23   Bershteyn.  Your Honor, I will be very brief as behooves the

24   party with no position on this motion, just three small points.

25             One is just a point of clarification, just something

1    Ms. Swope just mentioned.  Of course, Defendants emphatically

2    take the position that Plaintiffs haven't pleaded sufficient

3    facts to state a claim under Rule 8 or Rule 12.  They haven't

4    taken a further step of seeking sanctions under Rule 11 but

5    that's neither here nor there.

6            The second point is just what it is that we've taken

7    no position on.  We've taken no position on the matter before

8    the Court today which is the State of Kansas' motion to

9    intervene.  Not surprisingly, much of the discussion that the

10   Court has had so far this morning has been about whether Kansas

11   is correct on merits.

12           So its motion to dismiss blends into those issues.

13   Those are issues that are somewhat distinct from whether Kansas

14   can intervene to vindicate that position.  And Defendants just

15   respectfully reserve the opportunity should that day come to

16   take a position on Kansas' motion to dismiss in some form

17   whether it be for it or against it.  At the moment, however,

18   it's just an intervention before the Court.

19           And that brings me to my third point which is just

20   that I'd like to, at least on the record, distance ourselves

21   from Plaintiffs' suggestion that the Court effectively pocket

22   vetoed the motion before it today which is the motion to

23   intervene until class certification.

24           The -- as I stated, it seems transparent from their

25   presentation, the motivation for that is not that they want

71

1    this Court to consider granting it.  They want the Court to

2    deny it but apparently want to deny Kansas the opportunity to

3    appeal that decision.

4           Putting aside the propriety of that motivation -- and

5    by the way, I'm -- we're not trying to gin up an appeal.  We're

6    not urging the Court to deny Kansas' motion to intervene.

7           **THE COURT:**  The pros people can take me up all the

8    time.  I mean, it's a -- it is what it is, yeah.

9           **MR. BERSHTEYN:**  But that's not in our position.  Our

10   only position here really is the suggestion of this Court

11   should defer the motion to intervene doesn't seem to make much

12   sense.  If Kansas were allowed to intervene, of course, they

13   can take whatever positions they wish and we will all take

14   whatever positions we wish on Kansas' position.

15          And the Court can address in the appropriate order

16   but none of that is at all undermined by ruling on the Kansas

17   initial intervention today now that they're bringing that

18   motion.

19          **THE COURT:**  Well, yeah, and I can just tell you all

20   -- I mean, I always feel a little reticent to commit myself to

21   something sitting up here but I'm strongly disinclined to sit

22   on it until class certification.  I mean, you'll -- I have

23   every expectation sitting here now and have until we got here

24   today that you'll get a ruling -- whether it's granting the

25   motion or denying the motion, you'll get a ruling from me one

1    way or the other.  I mean, that's what I'm paid to do is make

2    decisions.

3          So I'm going to make a decision and if it's denying

4    the motion, then they should have the opportunity to have it

5    viewed by the Tenth Circuit.  That's their prerogative and

6    their right.

7          **MR. BERSHTEYN:**  It seems immeasurably sensible and

8    that's all for Defendants.

9          **THE COURT:**  All right.  Thank you.  I appreciate it.

10          Any response from Kansas?

11          **MR. SMITH:**  Yes, Your Honor.

12          **THE COURT:**  It's Mr. Smith, right?

13          **MR. SMITH:**  Yes, Your Honor.

14          **THE COURT:**  Okay.

15          **MR. SMITH:**  So there are a few points that Kansas

16    would like to address on the response from the political

17    subdivisions.  First is to the extent to which The Kansas

18    Restraint to Trade Act allows for a county to bring an action.

19    What they cannot do -- what the political subdivisions cannot

20    do is then expand the rights that they have under one

21    subsection of The Restraint of Trade Act to the Attorney

22    General's authority under The Restraint of Trade Act.

23          So their proprietary or individual right to bring

24    this action, they cannot then expand it to the Attorney

25    General's right under K.S.A. 50-162.

1          THE COURT:  And that right is -- what do you view the

2     -- what are the parameters of that right, into your mind under

3     the statute?

4          MR. SMITH:  Under the Attorney General's statute?

5          THE COURT:  Yes.

6          MR. SMITH:  That he has the sovereign -- well, that

7     Kansas as a state has the sovereign ability to bring an action

8     on behalf of itself but also on behalf of any of its political

9     subdivisions.  The statute also expressly allows the Attorney

10    General to intervene in any action where the State may have an

11    interest or a political subdivision may have an interest.

12          To the point of political subdivisions and class

13    actions, I want to clarify.  I misspoke earlier on citing to a

14    North Carolina case.  Specifically, I was referring to the

15    *County of Dorchester versus AT&T*.  That was in South Carolina.

16    It's fair to mix up the Carolinas.  And in that, they denied --

17    they -- the proposed class of counties could not proceed

18    because it impeded on other counties and the State's ability to

19    bring an action contrary to law -- contrary to State law

20    specifically.

21          In that, if I recall correctly, the facts were

22    relating to a 9-1-1 service fee that AT&T was imposing upon all

23    political subdivisions and insofar as it is materially similar

24    here is that it implicated every single political subdivision

25    statewide and the State's interest.

74

```
 1              Separately but similarly in In re: Auto Parts
 2   antitrust litigation and the Eastern District of Michigan, that
 3   Court dismissed the named governmental entity's plaintiffs
 4   because they declined to explore every municipal and regional
 5   government in the nation in terms of trying to find whether
 6   there was the ability to certify a class under that action.
 7   Both of those were cited in our proposed motion to dismiss but
 8   because Your Honor mentioned it earlier, I wanted to make sure
 9   that we clarified that.
10              On the issue of intervention, the bar that Kansas has
11   to clear here is a low bar.  The Tenth Circuit has a liberal
12   granting of intervention and Kansas' burden to establish its
13   interest and impairments is a minimal burden and insofar as it
14   is to the impairment, Kansas only has to show a mere
15   possibility that its interest would be impaired, which it has
16   here.
17              My friends on the political subdivision side, they
18   have invoked Kane (4) stating that for some -- let me make sure
19   I articulate it correctly -- that the Court in Kane (4) said
20   that now the proposed intervenors have to have the same
21   interest as the proposed -- or the Defendants in the case.
22              But that doesn't square with Kane (3) clearly but
23   also with Rule 24, the reason being, as the Court explained in
24   their footnotes in Kane (3), is that if they were required to
25   pursue the exact same identical interests as the political
```

75

1    subdivisions have proposed here, that would mean that, per se,

2    that party would be adequately represented and defeat Rule 24.

3            So Kansas rejects the notion that the Modified

4    Piggyback Standing Rule was modified in *Kane (4)* for that

5    purpose.

6            As to the prematurity aspect of this, there's two

7    matters that we wanted to address.  First is with my friends

8    over at the Shell Oil Defendants.  We agree in terms of there

9    is no sense of waiting for a motion now -- I mean, a decision

10   on the motion now.

11           But if this were to proceed and the Court decided to

12   decline making a decision until class certification, the

13   possibility of -- Kansas would be continued to be injured

14   insofar as what we have alleged that the political subdivisions

15   are seeking to represent here would continue forward.  So

16   Kansas' injury would continue to go forward in this litigation.

17           **THE COURT:**  Let me just ask you.

18           **MR. SMITH:**  Sure.

19           **THE COURT:**  The injury that you're talking about, I

20   think you'll concede is sort of a novel -- this is a novel take

21   on the law just to -- and if I -- procedurally.  So if I grant

22   your motion but then deny the motion to dismiss, it puts you in

23   a -- well, I mean, you feel like you're kind of stuck then,

24   right?  Because you can't appeal my denial of your motion to

25   dismiss.

1        Then -- and so what is -- I mean, where does that

2    leave you?  I mean, ultimately, isn't it better for you

3    substantively if I deny your motion to dismiss and then you can

4    appeal me and think about addressing the substance of your

5    request?

6        **MR. SMITH:**  Well, if you can imagine, we disagree.

7    We think that right now the Court should obviously make a

8    decision in favor of Kansas' intervention here.  Insofar as it

9    would be Kansas' motion for -- proposed motion to dismiss would

10   be denied.  For lack of better terms, Kansas would continue to

11   piggyback on until the class certification stage in order to

12   make a challenge at that stage about the political

13   subdivisions' ability to represent Kansas statewide.

14        Also on the prematurity issue, I wanted to point out

15   in our reply at Footnote 6, we discuss what the Tenth Circuit's

16   view on prematurity is, specifically, that it's rooted in

17   preventing great waste of judicial resources and that the

18   would-be intervenor -- their interests -- it would only be

19   premature if the interests of the would-be intervenor would be

20   protected by the original parties which here -- I mean, even my

21   friends on the political subdivision side, they concede that

22   they can't represent or do not intend to represent State

23   government's interests.

24        And, finally, I think the last thing I want to

25   address is the *Rodriguez v Exxon Mobil* class action just

1    because we -- us three are also counsel of record for that

2    litigation as well.  I just wanted to clarify some facts there.

3    So originally the lawsuit was brought by Ford County in the

4    District of Kansas.  Before serving the Defendants, it was

5    based on a theory of deception of the recyclability of

6    plastics.

7            And before they served the Defendants, they -- a

8    class action of individual consumers was filed in the Western

9    District of Missouri.  And once both cases were assigned a

10   judge, the Plaintiffs then decided to serve the political --

11   I'm sorry -- to serve the plastics defendants.  Exxon Mobil at

12   that moment entered its appearance to reject the notion that it

13   should be in the Western District of Missouri and requested

14   that the Court transfer it to the District of Kansas.

15           In the meantime while that was happening, Ford County

16   decided to voluntarily dismiss its suit in the District of

17   Kansas and consolidate it into the Western District of Missouri

18   before Judge Bough.  Judge Bough denied Exxon Mobil's motion to

19   transfer to the District of Kansas because it was no longer an

20   active suit.

21           And Exxon Mobil filed a petition of mandamus against

22   the Court on that and ultimately the Court sided with Exxon

23   Mobil on that and transferred it back to the District of

24   Kansas.  The reason why is Exxon Mobil alleged -- Kansas did

25   not take a position at this point or in any of those facts but

1    Exxon Mobil alleged that Ford County and the Plaintiffs were

2    judge-shopping waiting to see which judge they received.

3         So the notion that for some reason, we intervened and

4    then suddenly it transferred to the District of Kansas though

5    we did make the argument that it was a wrong forum just like we

6    -- or venue just like we have here for Kansas' interests

7    insofar as they are implicated.  I just wanted to clarify that

8    that was not because of Kansas' action but we were granted

9    intervention as of right in a text order.

10        **THE COURT:**  Okay.  Thank you.  I appreciate that.

11   Let me ask you.  What about this -- and I think we talked a

12   little bit about it but maybe we didn't talk enough about it.

13   With the proposed amendment, if you will, to the complaint that

14   expressly excludes states from the class, how -- does that

15   address the concerns that you have here?

16        **MR. SMITH:**  Unfortunately, no.  And --

17        **THE COURT:**  I was afraid you were going to say that.

18        **MR. SMITH:**  I am so sorry, Your Honor.  So the reason

19   why is the political subdivisions -- or the Plaintiff political

20   subdivisions have proposed this undefined non-State

21   governmental entities and we are arguing that that could

22   implicate the Tenth Circuit's arm of the State analysis in

23   determining what is an arm of the State for the purposes of a

24   non-State governmental entity.

25        For example -- and this is to not throw a curve ball

1    to the Court but we are currently assessing whether or not

2    there are any interests that the State of Kansas might have in

3    the proposed derivatives class.  The allegation --

4              **THE COURT:**  I should have seen that coming.

5              **MR. SMITH:**  You should have seen it, yes, sir.  Yes,

6    Your Honor.

7              So in that, they allege all persons and entities and

8    by that, that should -- that could implicate the Kansas Public

9    Employees Retirement System and based on the Tenth Circuit's

10   arm-of-the-State analysis KPERS, which is the abbreviation for

11   the statewide public employees' retirement system, is

12   considered an arm of the State by the analysis and by State

13   statute.

14             So our concern is that even if they propose and the

15   Court amends the pleadings to a non-State governmental entity,

16   we don't know who that is.  And further, it still doesn't

17   alleviate the issue of usurping the Kansas Attorney General's

18   sole authority under K.S.A. 50-162 and expanding the scope of a

19   political subdivision's right under The Restraint of Trade Act

20   to the Attorney General's authority under The Restraint of

21   Trade Act.

22             **THE COURT:**  So if I went -- if I adopted the -- your

23   argument, is there ever a time in which the political

24   subdivision of Kansas could bring a lawsuit on behalf of all

25   other political subdivisions, again, just limited to Kansas

1    without sort of the permission of the AG?

2         **MR. SMITH:**  So there's no statute that requires the

3    express permission of the Attorney General in order to bring an

4    action like that.

5         **THE COURT:**  But wouldn't you be able to intervene in

6    my hypothetical class action and using the same argument that

7    you're using here?

8         **MR. SMITH:**  Our position is yes.

9         **THE COURT:**  Okay.

10        **MR. SMITH:**  That --

11        **THE COURT:**  So it effectively would create a veto or

12   a permissive -- I mean, a condition before a political

13   subdivision in Kansas would be allowed to bring a class action

14   on behalf of all other political subdivisions in Kansas?

15        **MR. SMITH:**  So we do it differently in that under

16   *Burger* -- I believe I'm pronouncing that correctly -- the

17   Supreme Court case that we cited in our response -- or in our

18   reply.  Kansas -- the Kansas Attorney General is specifically

19   authorized to intervene and you wouldn't be creating a new

20   rule.  You would be following the precedent under *Burger* and

21   following what is already permitted expressly by K.S.A. 50-162.

22        **THE COURT:**  I see.  So it's not that it would --

23   there would be sort of a prerequisite or a condition.  It's

24   just that you could jump -- you, the Attorney General's office,

25   could jump in and intervene and take over the case?

1          **MR. SMITH:**  Yes, that is correct and that is actually

2   consistent with a lot of the case law in Kansas.  If you care

3   to hear -- so in Kansas, there is *Memorial Hospital Association*

4   *v* -- I believe it's pronounced *Knutson*.  We cited it in our

5   proposed motion to dismiss, that whenever the public interest

6   is involved or the State as a party, the Attorney General is

7   the primary counsel to appear and specifically that the

8   Attorney General of the State is a superior party to appear

9   over the County Attorney or the County whenever the State and

10  the public interests are involved.

11         **THE COURT:**  I mean, the Kansas -- well, I guess it's

12  a question.  I mean, the Kansas statute sort of providing and

13  vesting the Attorney General with certain powers and what have

14  you is not much different than what I understand to be most

15  states' structure about the powers vested in the AG; is it?  I

16  mean, is it unique in any respect that you know of?

17         **MR. SMITH:**  In fairness, I did not do a full analysis

18  of all States' Attorney Generals' authority but our position is

19  that as this litigation has been pled, we do believe that other

20  states have an interest in this litigation that has been

21  implicated here.

22         **THE COURT:**  Sure.  But I guess my question is, does

23  the statutory framework providing the power to the Kansas

24  Attorney General, is that different or unique with respect to

25  your knowledge?  I'm not asking you to know every state's

1   statutory framework.  But to your knowledge, is there anything

2   unique about the structure of --

3          **MR. SMITH:**  I wouldn't argue that it's unique.  What

4   I would argue is that each state has the sovereign prerogative

5   to allocate its authority how it sees fit.  I'll give you an

6   example and I believe that we did put this in our proposed

7   motion to dismiss.  We did look at the State of Maryland and we

8   did look at the State of California.

9          Based on -- and to be clear, I'm not Barred in either

10  state but our interpretation of those statutes is that in

11  California that California had the sovereign prerogative to

12  designate or permit some political subdivisions to bring

13  actions like this but in Kansas, that is not the case.

14         I can't speak for, as an example, Missouri or

15  New Mexico but we do think that it depends on how that state

16  decided to set up its own exercise of sovereign authority which

17  is fairly consistent with the notion under the Tenth Circuit

18  about whenever a state allocates its ability to exercise the

19  parens patriae or the clause of sovereign interest on behalf of

20  the state to a state agency, to a political subdivision, to a

21  non-governmental organization that is acting on behalf of the

22  state, there is significant case law in the Tenth Circuit that

23  suggests that whenever the state delegates that authority to a

24  political subdivision, that is perfectly fine because that's

25  that state's prerogative.

1          Our issue is that here, that's not Kansas'

2    prerogative.  Kansas' prerogative is not to allow Ford County

3    to represent the statewide interest and certainly not to allow

4    four non-Kansas political subdivisions to represent the

5    statewide interest of Kansas.

6          **THE COURT:**  And how do you reconcile that position

7    with Rule 23 generally and the whole purpose of class actions?

8          **MR. SMITH:**  So I think it really depends on what the

9    factual allegations that are brought and what the claims are.

10   And what I mean by that is here, our view is that the

11   allegations are so generalized and non-unique and non-localized

12   that it literally implicates every arm of the state, every

13   corner of the state, every person of the state, more or less.

14   And as I mentioned earlier, the only thing that might be bigger

15   would be Big Water, if the political subdivisions were to go

16   after Big Water.

17         Our position is that if a political subdivision

18   sought to bring a class action that is localized -- again, I

19   think earlier I mentioned something for a price-fixing --

20         **THE COURT:**  With utilities.

21         **MR. SMITH:**  -- with municipal public utilities.  We

22   think that that would be fine.  The Attorney General would most

23   likely, especially if it's under The Kansas Restraint of Trade

24   Act, have the ability to intervene under Kansas law.

25         But we think that that would still be fine for the

84

1  political subdivisions to bring those actions.  Our issue is

2  that we think that the political subdivisions have expanded the

3  scope of and the purpose of Rule 23 to infringe on Kansas'

4  Tenth Amendment and Eleventh Amendment sovereignty.

5          **THE COURT:**  All right.  Thank you.  Anything else you

6  want to add?

7          **MR. SMITH:**  No, Your Honor.  Thank you.

8          **THE COURT:**  All right, thank you.

9          Okay.  Anybody else have anything they want to say

10  before we -- I was pessimistic we were going to finish by lunch

11  but maybe we will -- it may happen.  All right.

12          Well, as always, I really enjoyed the presentations.

13  Thank you all for coming.  I know it's a pain for a lot of you

14  but I do appreciate it and it's helpful to me.

15          So we'll try to get a decision on the motion to

16  intervene -- I'm looking at my clerks -- turned around quickly

17  and you'll get a decision.  I'm not going to sit on it.  I just

18  -- you'll get a decision one way or the other.  So I won't make

19  you any promises about timing but we'll work expeditiously.

20  All right.  Thank you all.  Have a nice trip home.  We'll see

21  you later.  We'll be in recess.  We're all dismissed.

22          **THE CLERK:**  All rise.

23      **(This proceeding adjourned at 11:45 a.m.)**

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    July 19, 2025

            Signed                                       Dated


TONI HUDSON, TRANSCRIBER