**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| *In re: Shale Oil Antitrust Litigation*<br><br>This Document Relates to:<br><br>ALL ACTIONS | No. 1:24-md-03119-MLG-LF |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO CERTIFY THE COURT'S MOTION TO DISMISS ORDER FOR INTERLOCUTORY APPEAL**

## I. INTRODUCTION

In a thorough and well-reasoned opinion, reached after full briefing and oral argument, this Court considered and rejected Defendants' arguments that the political question and act of state doctrines bar Plaintiffs' claims. After reviewing the entirety of the CCAC, the Court agreed with Plaintiffs that their "central theory is that Defendants—none of whom are OPEC members or foreign sovereigns—formed a domestic cartel to constrain production to fix prices in the United States." Order at 10.[1]

As the Court held, the political question and act of state doctrines do not apply to the specific allegations in this case. "The jury question is whether Defendants conspired with each other to restrain output and inflate prices," *id.* at 12, and adjudicating Plaintiffs' claims requires no judgment about the conduct of any foreign sovereign. Defendants now ask the Court to certify that ruling for immediate appeal under 28 U.S.C. §1292(b). The request should be denied.

Section 1292(b) is a narrow exception to the final judgment rule, reserved for exceptional cases that present pure, controlling questions of law on which courts genuinely disagree. A pure, controlling question of law usually involves the interpretation of a statute, regulation, or common law doctrine that could control many future cases. Defendants' Motion presents nothing close.

---

[1] Unless otherwise noted, "Mot." refers to Defendants' Joint Motion to Certify the Court's Motion to Dismiss Order for Interlocutory Appeal (Dkt. No. 334); "Order" refers to the Court's August 31, 2026 Memorandum Opinion and Order resolving Defendants' Motions to Dismiss (Dkt. No. 306); all ¶ and ¶¶ references are to Plaintiffs' Consolidated Class Action Complaint ("CCAC") (Dkt. No. 86). As used throughout, "OPEC" refers to the Organization of Petroleum Exporting Countries and, from December 2016 onward, includes OPEC+. *See* ¶95. All internal citations and quotations are omitted, all emphasis is added, and all quotations are cleaned up.

There is no disagreement amongst the Circuits about the line where the political question and act of state doctrines end and district court jurisdiction begins. This Court applied binding Supreme Court precedent. *See* Order at 10-11, 15. The two out-of-circuit decisions on which Defendants relied in their motions to dismiss, and continue to rely on now, applied those same Supreme Court cases. Defendants point to no other opinions where a different standard was applied.

Instead, Defendants seek immediate appeal because the Court "adopt[ed]" what Defendants call Plaintiffs' "mischaracterization" of the CCAC. Mot. at 13. But the Court's interpretation of the factual allegations in the CCAC is a case-specific question about the contents of a single pleading, not an abstract question of law—as Defendants effectively concede when they argue that the Tenth Circuit "could reasonably reach a different result interpreting the political question and act of state doctrines *in the context of the facts alleged*." *Id.* at 3-4. In short, Defendants seek to have the Tenth Circuit review the CCAC and apply the law to the specific facts as this Court has already done, but reach a different conclusion. That is not the purpose of 28 U.S.C. §1292(b) appeals, and Courts routinely deny such improper requests. Defendants' Motion should be denied.

## II. BACKGROUND

Plaintiffs allege that Defendants—eight domestic shale oil producers and two of their CEOs during the relevant period—agreed among themselves to "coordinate, and ultimately constrain, domestic shale oil production," artificially inflating the prices of crude oil and its derivative products throughout the United States. ¶1; *see* Order at 1-2, 8. Defendants moved to dismiss, arguing that the political question and act of state doctrines deprived the Court of subject

matter jurisdiction because the CCAC purportedly alleges a global conspiracy involving OPEC. Dkt. No. 129 at 10-18. Plaintiffs opposed, explaining that OPEC's status as a potential enabler of Defendants' conspiracy to coordinate domestic shale production, including OPEC's participation in Defendants' conspiratorial meetings, does not strip this Court of jurisdiction. Dkt. No. 156 at 1, 4-15. Defendants replied, Dkt. No. 191, and the Court heard oral argument. *See* Mot. at 14 (citing May 20, 2025 Hr'g Tr.).

On August 31, 2026, the Court granted Defendants' Joint Motion to Dismiss in part. Order at 3-4. As relevant here, the Court held that "neither the political question nor the act of state doctrines requires dismissal of this matter." *Id.* at 10. The Court found that Defendants' dealings with OPEC were "complementary (not central)" to Plaintiffs' allegations of conspiracy, and that "OPEC is its own international cartel with its own aims." *Id.* at 10 n.18. Plaintiffs, the Court explained, "may rely on OPEC's actions for context without requiring a judicial determination regarding any of its members' conduct," and "at trial, the fact-finder would not need to conclude that Defendants entered into an agreement with OPEC member nations to fix prices as a condition precedent for finding liability." *Id.* at 11.

The Court then applied binding Supreme Court precedent. It applied each of the factors from *Baker v. Carr*, 369 U.S. 186, 217 (1962), *id.* at 13-14, and held the act of state doctrine inapplicable under *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400 (1990). *Id.* at 15. In addressing the authorities Defendants argue require dismissal, the Court distinguished *D'Augusta v. American Petroleum Institute*, 117 F.4th 1094 (9th Cir. 2024), and *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011) on their facts. *Id.* at 12-13.

Forty-three days after the Order issued, Defendants filed the instant Motion, seeking certification of the Court's political question and act of state rulings only. Mot. at 1.

## III. ARGUMENT

A district court may certify an otherwise non-appealable order only if it "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). Defendants must establish all three requirements. *Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 108670, at *2 (D. Kan. Jan. 9, 2020) ("[t]he criteria are conjunctive, not disjunctive."). Defendants bear a "heavy" burden—because piecemeal appeals are strongly disfavored, §1292(b) is applied sparingly and only in exceptional circumstances. *In re SemGroup Energy Partners, L.P.*, 729 F. Supp. 2d 1276, 1311 (N.D. Okla. 2010*)* (subsequent history omitted); *Park v. Trican Well Serv., L.P.*, 2015 WL 6160272, at *1 (W.D. Okla. Oct. 20, 2015) ("[i]nterlocutory appeals are not appropriate to merely provide review of difficult rulings in hard cases."). Defendants satisfy none of the statutory requirements.

### 1. The Order Does Not Present a Controlling Question of Law

Defendants propose certifying the question of "whether antitrust claims based on allegations of a single conspiracy involving sovereign co-conspirators and material sovereign conduct are nonjusticiable under the political question and/or act of state doctrines, depriving the Court of subject matter jurisdiction." Mot. at 5-6. This is not a controlling question of law.

A "question of law" under §1292(b) is a question about "the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *XTO Energy, Inc. v. ATD, LLC*,

189 F. Supp. 3d 1174, 1193 (D.N.M. 2016); Mot. at 6. It is not a question about how settled law applies to the particular factual allegations of a specific case. *See, e.g.*, *Certain Underwriters at Lloyd's, London, Subscribing To Pol'y No. 501/NM03ACMB v. Nance*, 2006 WL 4109675, at *3 (D.N.M. Aug. 24, 2006) ("[d]istrict courts should certify questions when they are unsure what the law is, not when there is merely a dispute as to how the law applies to the facts of a particular situation."); *Burge v. Teva Pharms. Indus., Ltd.*, 2024 WL 4692050, at *2 (D. Kan. Nov. 6, 2024) ("[a] question that asks how the law applies to a particular set of facts won't do."). Issues proper for §1292(b) appeal are those with "a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Tarver v. Ford Motor Co.*, 2017 WL 9477739, at *2 (W.D. Okla. Mar. 10, 2017). Not even a "mixed question of law and fact" is suitable for interlocutory appeal. *See Sleepbit, LLC v. Push Software Interactions, Inc.*, 2019 WL 5536379, at *2 (N.D. Okla. Oct. 25, 2019).

The question Defendants seek to certify fails this test. Defendants do not seek clarity on the meaning of the political question or act of state doctrines, but rather "the way that these doctrines apply" to the allegations in this case. Mot. at 4. Questions of this ilk are the "antithesis" of a controlling question of law. *In re SemGroup*, 729 F. Supp. 2d at 1312 ("[t]he antithesis of a proper §1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts."). Moreover, the Supreme Court clarified that application of the political question doctrine *requires* a fact-specific inquiry. *See Baker*, 369 U.S. at 217.

The bulk of Defendants' argument is devoted to parsing the CCAC. They count "over 330 total allegations regarding OPEC," catalogue "24 paragraphs" describing Defendants' meetings

mentioning OPEC officials, and compare the paragraphs Plaintiffs cited in their opposition brief with the allegations those paragraphs contain. Mot. at 13-16. This line of argument is self-evidently fact-specific and would require the Tenth Circuit to delve into a 385-paragraph complaint. *Tarver*, 2017 WL 9477739, at *2 (§1292(b) appeal not proper when it would "require[e] a Court of Appeals to delve beyond the surface of the record in order to determine the facts.").

The absence of a controlling question of law is evident in Defendants' brief. Defendants accept the governing framework this Court applied: a) the six *Baker* factors; and b) *Kirkpatrick*'s rule that the act of state doctrine applies only where the relief sought or defense interposed would require a court to declare invalid the official act of a foreign sovereign. *See* Order at 11, 15. Indeed, Defendants argue that the Tenth Circuit can cure this Court's misreading of the CCAC by applying the very same *Baker* and *Kirkpatrick* framework the Court already did. *See* Mot. at 10-13. Defendants seek a do-over, not guidance.

Defendants' authorities do not suggest otherwise. The questions ultimately certified for appeal in most of those cases present the required "pure" questions of law. *See Kerr v. Hickenlooper*, 2012 WL 4359076, at *2 (D. Colo. Sept. 21, 2012) (certifying question of "whether a Guarantee Clause claim presents a non-justiciable political question" which the court characterized as "highly unsettled"); *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 856-60 (S.D.N.Y. 1983) (expressly inviting motion for certification of interlocutory appeal based on established Circuit split as to whether act of state doctrine applied when "but for the wrongful acts of the defendants a foreign government would not have seized plaintiffs' property"), *aff'd*, 767 F.2d 908 (2d Cir. 1985); *Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1142 (S.D.

Cal. 2015) (certifying "novel[]" issue of interplay between "application of the political question doctrine and the firefighter's rule"), *aff'd*, 860 F.3d 1193 (9th Cir. 2017); *Mottola v. Nixon*, 464 F.2d 178, 179 (9th Cir. 1972) (deciding on interlocutory appeal whether reservists had standing to "enjoin the President and the Secretary of Defense from ordering military personnel to conduct military operations in Cambodia"); *Smith v. Reagan*, 663 F. Supp. 692, 697 (E.D.N.C. 1987) (certifying act of state appeal when the very existence of a class hinged on "whether living American servicemen, who were declared missing in action or prisoners of war in Southeast Asia during the 1960's and 1970's, continue to be held captive by unfriendly governments and political sovereignties in Southeast Asia" and deciding that question "would, at least in part, involve classified intelligence and military information"); *Williams v. Curtiss-Wright Corp.*, 694 F.2d 300, 303 (3d Cir. 1982) (deciding act of state interlocutory appeal after district court misread a prior circuit opinion to "create an exception to the act of state doctrine based on the ministerial-discretionary dichotomy" that did not exist elsewhere in caselaw).[2]

### 2. There Is No Substantial Ground for Difference of Opinion

Nor can Defendants' meet that second factor governing §1292(b). "A party's strong disagreement with the court's ruling is not sufficient for there to be a 'substantial ground for difference;' the proponent of an appeal must make some greater showing." *In re SemGroup*, 729 F. Supp. 2d at 1312. As Defendants' own cases acknowledge, the movant must show both an absence of controlling authority and decisions that have "reached precisely the opposite

[2] *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 530 (5th Cir. 1992) involved "the national oil company of the United Mexican States" and was decided on sovereign immunity grounds. Plaintiffs here have not sued a quasi-sovereign oil company.

conclusion." Mot. at 8 (quoting *Boellstorff v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 552247, at *3 (D. Colo. Feb. 20, 2007)). Defendants cannot meet either condition.

### a. The Court Applied Binding Supreme Court Precedent

Defendants assert that "[t]here is no binding Tenth Circuit authority clarifying the legal issues in question." Mot. at 3. But the law governing Defendants' motion was set and settled by the Supreme Court, which this Court applied:

- *Baker*'s six-factor test, Order at 11, 13-14 (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962));
- the principle that "the Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid," *id.* at 10-11 (quoting *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012));
- the rule that a case does not become nonjusticiable merely because it "touches foreign relations," *id.* at 13 (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 229-30 (1986)); and
- the limitation of the act of state doctrine to cases in which a court would be required "to declare invalid the official act of a foreign sovereign performed within its own territory," *id.* at 15 (quoting *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990)).

It is also well settled that a Sherman Act conspiracy is "not insulated by the fact that [the] conspiracy involved some acts by the agent of a foreign government." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 706 (1962).

Defendants do not argue that these cases are not good law, nor that the Court should have applied different ones. The absence of a Tenth Circuit decision applying these settled legal standards to a shale oil cartel that allegedly formed under specific market conditions prevailing in 2020 does not render the standards themselves unsettled.

**b. *D'Augusta* and *Spectrum Stores* Do Not Conflict With the Order**

Defendants' claimed authority split rests entirely on *D'Augusta v. American Petroleum Institute*, 117 F.4th 1094 (9th Cir. 2024), and *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938 (5th Cir. 2011). Mot. at 9-13. But there is no conflict. Those courts applied the same settled Supreme Court law this Court did, and Defendants would have the Tenth Circuit apply that same law as well. Instead, it is the *allegations* in *D'Augusta*, *Spectrum Stores*, and this case that are "materially different," making *D'Augusta* and *Spectrum Stores* distinguishable on their facts. Order at 12-13 ("[n]one of the features *D'Augusta* or *Spectrum Stores* deemed material are present here.").

*D'Augusta* involved allegations that oil companies "colluded with the U.S. government, including then-president Trump, to negotiate with Russia and Saudi Arabia to end their price war on oil." Order at 12 (quoting 117 F.4th at 1098). *Spectrum Stores* involved claims against Citgo—"wholly owned by Venezuela"—and a conspiracy carried out through sovereign-owned oil companies, the "core" of which "consist[ed] of agreements entered into by foreign sovereign states to limit production of crude oil." *Id.* at 12-13 (quoting 632 F.3d at 944, 947). Plaintiffs have not sued a foreign government or a sovereign-owned oil company, do not ask the Court to regulate OPEC's production decisions or invalidate any foreign government's actions, and implicate no executive branch policy choice. *Id.*; Dkt. No. 156 at 14-15.

More fundamentally, both *D'Augusta* and *Spectrum Stores* recognize the very distinction on which the Order rests. The Ninth Circuit in *D'Augusta* distinguished between claims requiring adjudication of foreign policy and allegations of "private conduct among [non-OPEC-related] Defendants," and held that it "ha[d] jurisdiction to address these allegations of private conduct."

Order at 12 (quoting 117 F.4th at 1103-04). The Fifth Circuit in *Spectrum Stores* likewise considered whether the plaintiffs there had alleged "an independent conspiracy based on refining decisions," Dkt. No. 156 at 15 (quoting 632 F.3d at 947)—an inquiry that would have been pointless if OPEC's presence in a case rendered every claim nonjusticiable—and cautioned that "[a] general invocation of 'foreign policy,' without more, will not suffice," 632 F.3d at 950.

Far from conflicting with the Court's Order, *D'Augusta* and *Spectrum Stores* apply the same rule: claims that would require adjudicating the conduct of foreign sovereigns are nonjusticiable, while claims based on private, domestic conduct are not. Defendants' assertion that "every other court" to consider such claims has dismissed them, Mot. at 3, omits that the private-conduct allegations in *D'Augusta* failed because they were inadequately pleaded. Order at 12. This Court has already determined that the domestic conduct lacking in *D'Augusta* and *Spectrum Stores* was both adequately pled and the "central theory" of this case, *id.* at 10, 15-26, and Defendants do not seek review of that holding.

### c. Defendants' *Baker* Critique is Similarly Unpersuasive

Defendants' second bite at the *Baker* apple fares no better. On the first *Baker* factor, the Order did not reject the principle that the conduct of foreign relations is committed to the political branches; it held that this case does not require the Court to decide any question so committed. Order at 13. That conclusion flows directly from the Supreme Court: "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker*, 369 U.S. at 211; *see* Dkt. No. 156 at 9.

On the second and third *Baker* factors, Defendants suggest the Order's conclusion that the antitrust laws supply workable standards contradict with statements by the Fifth and Ninth Circuits that those laws are poorly suited to resolving "momentous foreign policy questions" or to "decoupl[ing] our country's oil markets from the decisions of foreign nations." Mot. at 11. But as this Court found, neither "momentous foreign policy questions," nor "decoupl[ing] our country's oil markets from the decisions of foreign nations" are implicated by the allegations in this case. Order at 14.

And on the remaining factors, the Court's conclusion that this case requires no contradiction of a political decision, disrespect of a coequal branch, or risk of conflicting pronouncements, *id.*, follows from the same reading of the CCAC. Indeed, the Executive Branch has stated that it "would be illegal for U.S. companies to enter into an agreement with OPEC or any OPEC nation for the purposes of restricting output," Dkt. No. 156 at 11-12 & n.5 (quoting FTC report), and the FTC itself investigated the conduct at issue here. Order at 22.

Each of Defendants' comparisons thus reduces to the same contention: that the Court should have read the CCAC as primarily alleging a nonjusticiable conspiracy between Defendants and OPEC. That is exactly the type of do-the-same-analysis-over argument courts routinely reject for §1292(b) certification.

**d. The Court Applied Settled Act of State Law**

Defendants contend that the Order reflects "a far narrower view of the act of state doctrine" than *D'Augusta*. Mot. at 12. But the Order's articulation of the doctrine comes directly from the Supreme Court. Order at 15 (quoting *Kirkpatrick*, 493 U.S. at 405).

Moreover, the *D'Augusta* language Defendants invoke arose where the plaintiffs sought "to control how sovereign nations—Russia and Saudi Arabia—manage their own petroleum resources." Dkt. No. 156 at 14 (quoting 117 F.4th at 1103). The Fifth Circuit likewise found the doctrine triggered on the specific facts before it because the relief sought in *Spectrum Stores* "would effectively order foreign governments to dismantle their chosen means of exploiting the valuable natural resources within their sovereign territories." *Id.* at 15 (quoting 632 F.3d at 955). Plaintiffs seek no such relief.

A judgment for Plaintiffs would impose no damages on OPEC or its members and no injunction limiting their conduct. *Id.* Nor would it in any way limit the U.S. government. And *Continental Ore Co. v. Union Carbide & Carbon Corp.* forecloses Defendants' argument that a domestic cartel is shielded because a foreign government or official participated in some of its acts. 370 U.S. 690, 706.

**e. Defendants' Disagreement with the Court's Reading of the CCAC Does Not Warrant Certification**

At bottom, Defendants' Motion asks the Court to certify the question whether its reading of the CCAC "was correct." Mot. at 13. Defendants' arguments on this score were fully presented and rejected. *Compare* Mot. at 13-17, *with* Dkt. No. 129 at 10-18, *and* Dkt. No. 191 at 6-9. They also lack merit.

*First*, the Court's reading of the CCAC matches Defendants' own. Before the Judicial Panel on Multidistrict Litigation, Defendants described the question presented as whether "Defendants, current and former independent producers of shale oil, agreed with each other to raise oil prices by restricting domestic shale oil production in violation of Section 1 of the Sherman

Act and the laws of several states." Dkt. No. 156 at 5 & n.4 (quoting *In re Shale Oil Antitrust Litig.*, MDL No. 3119, Dkt. No. 53 at 4 (J.P.M.L. June 3, 2024)). Defendants cannot now call the Court's adoption of that same characterization a "mischaracterization." Mot. at 13.

*Second*, that OPEC officials attended meetings at which Defendants exchanged forward-looking production information, Mot. at 15, does not convert Defendants' alleged agreement among themselves into a claim against OPEC. As the Court noted, Plaintiffs allege that "Defendants also met with each other" at those meetings. Order at 7 n.16. It was therefore entirely proper for the Court to treat those meetings as evidence of Defendants' interfirm communications. Order at 21-22. That a third party—sovereign or not—was in the room when domestic competitors exchanged production plans does not immunize that conduct from the Sherman Act. And because a horizontal output restriction is *per se* unlawful, Defendants' reasons for agreeing to restrict output—including any desire to accommodate OPEC—are legally irrelevant. *FTC v. Superior Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 424 (1990); *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972).

*Third*, Defendants' contention that a conspiracy among companies controlling "less than 2%" of global crude production would be implausible without OPEC, Mot. at 15-16, is a misguided Rule 12(b)(6) argument the Court has already rejected. The CCAC alleges that Defendants control 18% of active U.S. oil rigs and approximately 16.2% of U.S. crude oil production, and the Court found it plausible that Defendants were "able to leverage their collective market share" to affect crude oil prices. Order at 29-30. Defendants do not seek certification of that ruling and cannot obtain review of it by recasting it as a question of justiciability.

*Fourth*, the Court's remark at oral argument, Mot. at 14, does not change the analysis. Without presuming to tell the Court what it was thinking, Plaintiffs believe a fair reading of the transcript and surrounding context illustrates that the passage in question was the Court actively interrogating Plaintiffs' conspiracy allegations in the course of adjudicating Defendants' motions to dismiss. A question from the bench is not a holding, and the Court's considered opinion—issued after full briefing and argument—was reached "[r]eading the CCAC as a whole." Order at 10.

### 3. An Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation

Defendants' showing on the third requirement depends on the premise that reversal "would almost certainly result in the dismissal of all of plaintiffs' claims." Mot. at 17. That premise is wrong.

#### a. Defendants' Best Appellate Outcome Leaves Plaintiffs' Domestic Conspiracy Claims Intact

Even *D'Augusta* and *Spectrum Stores* confirm that allegations of private, domestic conduct are justiciable. Order at 12. And this Court has already held that Plaintiffs plausibly pleaded a domestic conspiracy. Order at 15-26. So, even if the Tenth Circuit were to hold that particular OPEC-related allegations present nonjusticiable questions, the consequence would be to narrow those allegations—not to dismiss Plaintiffs' claim that Defendants agreed among themselves to restrain domestic production.

Defendants all but concede this point, arguing in the alternative that an appeal might clarify the line between "nonjusticiable OPEC-related conduct and any legally viable and purely domestic conspiracy claim." Mot. at 18-19. An appeal whose best-case outcome for Defendants returns the case to this Court with the same claims against the same Defendants does not materially advance

the termination of this litigation.[3] *See, e.g.*, *Dorato v. Smith*, 163 F. Supp. 3d 837, 881 (D.N.M. 2015) ("[w]hen litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation."); *see also id*. at 893-95.

Meanwhile, an interlocutory appeal would either result in parallel appellate litigation, or stall this MDL for a substantial time, while Plaintiffs' Sherman Act claim and dozens of state-law claims sit idle. Further delay is particularly prejudicial where, as here, Plaintiffs first filed this case in January 2024, and allege an ongoing conspiracy that continues to inflate the prices end purchasers pay for gasoline and other fuels. ¶261; Order at 26 n.25.

### 4. Defendants' Unexplained Delay Weighs in Favor of Denial

Defendants waited 43 days after the Order issued to seek certification, and offer no explanation for the delay. Defendants' delay further undercuts their claim that immediate review is needed to spare the parties and the Court burdensome proceedings. *See, e.g.*, *McDonald v. Holder*, 2010 WL 5387482 (N.D. Okla. Dec. 17, 2010) (delay is a factor weighing against certification); *Lindley v. Life Invs. Ins. Co. of Am.*, 2010 WL 2465515 (N.D. Okla. June 11, 2010) (same).

---

[3] Defendants also alternatively argue that an appeal might narrow discovery by clarifying whether Plaintiffs may "rely on evidence regarding OPEC or defendants' interactions with OPEC members." Mot. at 19. The scope of discovery in a specific case is even further afield of the "pure" question of law a §1292(b) appeal requires.

## IV. CONCLUSION

The Court correctly held that the political question and act of state doctrines do not bar Plaintiffs' claims, and Defendants have not satisfied any of the requirements for interlocutory review. For the reasons stated above, Defendants' Joint Motion to Certify the Court's Motion to Dismiss Order for Interlocutory Appeal (Dkt. No. 334) should be denied in its entirety.

DATED: November 13, 2026

Respectfully submitted,
SCOTT+SCOTT ATTORNEYS AT LAW LLP

/s/ *Patrick Coughlin*
Patrick J. Coughlin (*pro hac vice*)
Carmen Medici (*pro hac vice*)
Daniel J. Brockwell (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
dbrockwell@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Patrick McGahan (*pro hac vice*)
Michael Srodoski (*pro hac vice*)
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Karin E. Garvey (*pro hac vice*)
230 Park Ave., 24th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com

COTCHETT, PITRE, & McCARTHY, LLP
Karin B. Swope (*pro hac vice*)
Andrew J. Fuller (*pro hac vice*)
Ellen Wen (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
1809 7th Avenue, Suite 1610
Seattle, WA 98103
Tel: (206) 778-2123
kswope@cpmlegal.com
afuller@cpmlegal.com
ewen@cpmlegal.com
jalhadeff@cpmlegal.com

COTCHETT, PITRE, & McCARTHY, LLP
Joseph W. Cotchett (*pro hac vice*)
Adam Zapala (*pro hac vice*)
840 Malcolm Road
Burlingame, CA 94010
Tel: (650) 697-6000
jcotchett@cpmlegal.com
azapala@cpmlegal.com

BERGER MONTAGUE PC
Michael Dell'Angelo (*pro hac vice*)
Michael J. Kane (*pro hac vice*)
Candice Enders (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3080
mdellangelo@bm.net
mkane@bm.net
cenders@bm.net

BERGER MONTAGUE PC
Richard D. Schwartz (*pro hac vice*)
1720 W. Division
Chicago IL 20622
Tel: (773) 257-0255
rschwartz@bm.net

*Interim Lead Counsel for Plaintiffs and Putative Class*

DODD LAW OFFICE, LLC
Christopher A. Dodd
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

*Interim Liaison Counsel for Plaintiffs and Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2026, I caused to be served a true and correct copy of the foregoing document with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record receiving electronic notification.

/s/ *Patrick Coughlin*
Patrick J. Coughlin (*pro hac vice*)